

April 30, 2013

**By Electronic Case Filing**

Molly Dwyer, Clerk of Court
Office of the Clerk
U.S. Court of Appeals for the Ninth Circuit
95 Seventh Street
San Francisco, CA 94103

    **Re:**   *Peruta v. County of San Diego*, No. 10-56971
            **Response to Appellees' March 29, 2013 Rule 28(j) Letter**

Dear Ms. Dwyer:

    Pursuant to FRAP 28(j), Appellants submit this response to Appellees' supplemental citation of *Woollard v. Gallagher*, No. 12-1437, 2013 WL 1150575 (4th Cir. Mar. 21, 2013), the latest decision addressing a restriction on the right to carry a handgun in public.

    As Appellants have explained, a regulatory scheme that, like Appellee's, amounts to a total ban on the right to carry a loaded firearm in public cannot be reconciled with the fundamental Second Amendment right to keep and bear arms for purposes of self-defense. The Fourth Circuit's contrary conclusion in *Woollard* rests on a method of analysis that is utterly incompatible with the Supreme Court's admonition that courts may not "decide on a case-by-case basis whether the right [to keep and bear arms] is *really worth* insisting upon." *District of Columbia v. Heller*, 554 U.S. 570, 634-35 (2008). It is that principle, and *Heller*'s broader instruction that a complete ban on a meaningful exercise of Second Amendment rights flunks any applicable level of scrutiny, *id.* at 628-29, not the mistaken approaches of other circuits, that should guide this Court's resolution of this case.

    As *Woollard* underscores, the Second Amendment issue presented in this case is a fundamental one that is being considered by courts all over the nation. It is also an issue on which the Supreme Court will likely have the last say. Indeed, just this week, following the en banc court's refusal to disturb Judge Posner's opinion striking down the state's total ban on possession of handguns in public, the Illinois Attorney General's office notified the Court of its intent to file a petition for certiorari in *Moore v. Madigan*, 708 F.3d 901 (7th Cir. 2013), emphasizing the

splits among the circuits. (*See* Appendix A.) That reality only underscores the need for prompt resolution of this case both to ensure that this Court has an opportunity to become a part of the ongoing conversation on the scope of the Second Amendment, and to vindicate the fundamental constitutional right at stake.

        Respectfully submitted,

        s/Paul D. Clement
        Paul D. Clement
        Attorney for *Plaintiffs-Appellants*

**CERTIFICATE OF SERVICE**

      I hereby certify that on April 30, 2013, an electronic PDF of this Response to Appellees' March 29, 2013 Rule 28(j) letter was uploaded to the Court's CM/ECF system, which will automatically generate and send by electronic mail a Notice of Docket Activity to all registered attorneys participating in the case. Such notice constitutes service on those registered attorneys.

                                            s/Paul D. Clement
                                            Paul D. Clement
                                            Attorney for *Plaintiffs-Appellants*

# Appendix A

# IN THE SUPREME COURT OF THE UNITED STATES

No. _____

LISA MADIGAN, PATRICK QUINN, HIRAM GRAU, and TYLER EDMONDS,

*Petitioners,*

v.

MICHAEL MOORE, CHARLES HOOKS, PEGGY FLETCHER, JON MAIER, SECOND AMENDMENT FOUNDATION, INC., MARY E. SHEPARD, and ILLINOIS STATE RIFLE ASSOCIATION,

*Respondents.*

## APPLICATION FOR AN EXTENSION OF TIME IN WHICH TO FILE A PETITION FOR WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

To the Honorable Elena Kagan, Associate Justice of the Supreme Court of the United States and Circuit Justice for the Seventh Circuit:

Pursuant to 28 U.S.C. § 2101(c) and Supreme Court Rules 13.5, 22, and 30.2, petitioners Lisa Madigan, Patrick Quinn, Hiram Grau, and Tyler Edmonds pray for a thirty-day extension of time to file their certiorari petition in this Court, up to and including June 24, 2013. The Seventh Circuit entered judgment for respondents on December 11, 2012, and denied petitioners' timely petition for rehearing en banc — over the dissent of four judges — on February 22, 2013 (attached). The time to file a petition for certiorari in this Court accordingly expires on May 23, 2013. This application is being filed ten days before that date. This extension should not delay the petition's consideration by the Court because it is currently due on May 23,

respondents are permitted at least thirty days to respond to this petition, see Sup. Ct. R. 13.5, and thus the petition likely would not be set for conference before the Court's summer recess even without this extension.

A copy of the Seventh Circuit's slip opinion (published at 702 F.3d 933) is attached as an exhibit hereto. The jurisdiction of this Court is invoked under 28 U.S.C. § 1254(1).

1. The Seventh Circuit held that the Second Amendment bars Illinois from prohibiting law-abiding citizens from carrying loaded handguns in most public places. In so doing, the Court of Appeals "has entered a decision in conflict with the decision of another United States court of appeals on the same important matter," Sup. Ct. R. 10(a), and in conflict with a subsequent decision of the Illinois Appellate Court.

2. Specifically, the Seventh Circuit created a conflict as to three issues: (a) whether this Court's decision in *District of Columbia v. Heller*, 554 U.S. 570 (2008), determined that the framers intended Second Amendment rights to apply outside the home; (b) if the Second Amendment does apply outside the home, what standard of review applies to the regulation of carrying loaded handguns in that setting; and (c) whether a state government should have the opportunity to file an Answer in response to a lawsuit challenging such regulations, and to present evidence to demonstrate the necessity and effectiveness of those regulations.

a. The Seventh Circuit held that *Heller* decided that the Second Amendment applies outside the home. Slip Op. 7, 18. The Second and Fourth Circuits disagree.

See *Woollard v. Gallagher*, No. 12-1437, 2013 WL 1150575, at *6 (4th Cir. March 21, 2013) (recognizing that historical scope issue was not settled); *Kachalsky v. County of Westchester*, 701 F.3d 81, 89 (2d Cir. 2012) (*Heller* did not settle "the scope of that right beyond the home"); *United States v. Masciandaro*, 638 F.3d 458, 467 (4th Cir. 2011) ("uncertainty remains as to the scope of [the *Heller*] right beyond the home"). In those three cases, the scope inquiry was ultimately irrelevant because the challenged statutes withstood scrutiny. Here, in contrast, the scope inquiry is necessary to the Seventh Circuit's judgment, and its split with other circuits over this Court's holding in *Heller* is squarely presented for certiorari review.

The Seventh Circuit's opinion also conflicts with a subsequent decision of the Illinois Appellate Court rejecting a Second Amendment challenge to the same laws that the Seventh Circuit invalidated. While the Illinois Supreme Court's opinion in a related case is pending, *People v. Aguilar*, 944 N.E.2d 816 (Ill. App. 2011), appeal allowed, 949 N.E.2d 1099 (Ill. May 25, 2011) (table), the Illinois Appellate Court declined to follow the Seventh Circuit's analysis. See, *e.g.*, *People v. Moore*, No. 1-11-0793, 2013 WL 1190275, at *4 (Ill. App. March 22, 2013) ("we do not agree with the Seventh Circuit that the right to self-defense delineated in *Heller* . . . encompasses a right to carry a loaded, readily accessible firearm in public areas").

b. The Seventh Circuit does not expressly adopt a level of scrutiny, but appears to apply a standard akin to strict scrutiny when it holds that petitioners failed to offer "extensive empirical evidence" sufficient to make a "strong showing

that a gun ban was vital to public safety." Slip Op. 13-14. In contrast, the Second and Fourth Circuits recognize that, even assuming there is a right to carry firearms in public for self-defense, such a right is not at the core of the Second Amendment; accordingly, those courts hold that laws restricting public carry receive less rigorous scrutiny than laws prohibiting in-home firearm possession. See *Woollard*, 2013 WL 1150575, at *7 ("'as we move outside the home, firearm rights have always been more limited, because public safety interests often outweigh individual interests in self-defense'") (quoting *Masciandaro*, 638 F.3d at 470-471); *Kachalsky*, 701 F.3d at 93 ("we believe that applying less than strict scrutiny when the regulation does not burden the 'core' protection of self-defense in the home makes eminent sense in this context and is in line with the approach taken by our sister circuits") (collecting cases); *Masciandaro*, 638 F.3d at 471 ("a lesser showing is necessary with respect to laws that burden the right to keep and bear arms outside the home"). The Second and Fourth Circuits thus recognize a "longstanding out-of-the-home/in-the-home distinction [that] bears directly on the level of scrutiny applicable." *Masciandaro*, 638 F.3d at 470; *Kachalsky*, 701 F.3d at 96; see also *Heller v. District of Columbia*, 670 F.3d 1244, 1262-64 (D.C. Cir. 2011) ("*Heller II*"). In clear conflict with these decisions, the Seventh Circuit declined to distinguish public-carry laws from laws regulating in-home possession, requiring petitioners to provide "extensive empirical evidence" to justify laws that do not infringe on the right to possess firearms in the home.

In further conflict with the Second Circuit's decision in *Kachalsky*, the Seventh Circuit refused to defer to legislative policy judgments in cases, like this one, where the relevant empirical evidence is arguably inconclusive. Challengers to New York's public-carry restrictions presented "studies and data" that countered the State's public-safety empirics. *Kachalsky*, 701 F.3d at 99. Faced with this "conflicting evidence," *id.*, the Second Circuit gave "'substantial deference to the predictive judgments of [the legislature]'" and therefore upheld the state laws. *Id.* at 97 (quoting *Turner Broad. Sys., Inc. v. FCC*, 520 U.S. 180, 195 (1997) (brackets in original)). The court explained that, "[i]n the context of firearm regulations, the legislature is 'far better equipped than the judiciary' to make sensitive public policy judgments (within constitutional limits) concerning the dangers in carrying firearms and the manner to combat those risks," and those judgments therefore warrant judicial respect. See *id.* (quoting *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 665 (1994)); see also *id.* at 99 ("It is the legislature's job, not ours, to weigh conflicting evidence and make policy judgments."). The Seventh Circuit's decision, striking down Illinois' laws while conceding that "[a] gun is a potential danger to more people if carried in public than just kept in the home" and that the public safety effect of those laws is "uncertain," Slip Op. at 8, squarely conflicts with *Kachalsky* (and is in obvious tension with this Court's decisions in the *Turner Broadcasting* cases).

c. The Seventh Circuit also departed from the law in other circuits when it struck down the challenged regulations as unconstitutional without remanding to

allow petitioner to answer or present evidence regarding the need for and effectiveness of the challenged statutes. The instant consolidated cases have not proceeded beyond motions to dismiss in the district courts, yet the Seventh Circuit reasoned that there are "no evidentiary issues" remaining because "only legislative facts are relevant to the constitutionality" of the challenged regulations. Other circuits follow a contrary rule. See *Heller II*, 670 F.3d at 1258 & n.\*; *United States v. Carter*, 669 F.3d 411, 421 (4th Cir. 2012). In *Heller II*, the court thus remanded the case to permit the government to introduce evidence regarding the justifications for a firearms registration requirement. See 670 F.3d at 1258 & n.\* Likewise, in *Carter*, the court remanded to allow the government "to present sufficient evidence to substantiate" the challenged regulation. 669 F.3d at 421. In fact, courts routinely receive testimony on sociological and other facts not specific to a particular case when adjudicating a law's facial validity, as when they evaluate the public harms incident to the exercise of certain forms of expression. See, *e.g.*, *J.L. Spoons, Inc. v. Dragani*, 538 F.3d 379, 381-382 (6th Cir. 2008).

3. Good cause exists for this application. The undersigned counsel, who has principal responsibility for the certiorari petition in this case, serves as the Solicitor General in the Office of the Illinois Attorney General. In addition to the undersigned's supervisory responsibilities over the Civil and Criminal Appeals Divisions of that office—including editing and revising briefs and assisting in preparing attorneys for oral argument—he is counsel of record for Illinois Attorney

General Lisa Madigan and other petitioners in *Madigan v. Levin* (U.S. 12-872), and petitioners' opening brief in that case is due on June 3, 2013.

Wherefore petitioner respectfully requests that an order be entered extending the time to file a certiorari petition to and including June 24, 2013.

April 26, 2013                              Respectfully submitted,

Michael A. Scodro
Solicitor General
100 West Randolph Street, 12th Floor
Chicago, Illinois 60601
(312) 814-3698