UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

No. 10-56971

EDWARD PERUTA, et al.,
Plaintiffs-Appellants,

v.

COUNTY OF SAN DIEGO, et al.,
Defendants-Appellees.

On appeal from District Court
Southern District of California, Honorable Irma E. Gonzalez
Case No. CV-02371-IEG (BGSx)

**PETITION FOR REHEARING *EN BANC* BY AMICI CURIAE CALIFORNIA POLICE CHIEFS' ASSOCIATION AND CALIFORNIA PEACE OFFICERS' ASSOCIATION**

Martin J. Mayer, Esq., SBN 73890
Krista MacNevin Jee, Esq., SBN 198650
Paul R. Coble, Esq., SBN 128173
Jones & Mayer
3777 North Harbor Boulevard
Fullerton, CA 92835
(714) 446-1400
Attorneys for Amicus Curiae,
CA Police Chiefs' Assn. and
CA Peace Officers' Assn.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. ii

I.   STATEMENT OF BASIS FOR PETITION ............................................. 3

II.  AUTHORITY FOR PETITION FOR REHEARING
     *EN BANC* ..................................................................................................... 3

III. PROCEDURAL BACKGROUND .............................................................. 4

IV.  GROUNDS FOR REHEARING *EN BANC* ............................................. 4

     A.  The Constitutional Scope of the Second Amendment
         Right to Carry Concealed Weapons in Public is
         Subject to Conflicting Views Among the Circuit
         Courts .................................................................................................. 5

     B.  The Constitutional Validity of California's "Good
         Cause" Showing for the Issuance of Permits to Carry
         Concealed Weapons in Public is an Issue of
         Exceptional Importance .................................................................. 14

V.   CONCLUSION ............................................................................................. 15

CERTIFICATE OF COMPLIANCE PURSUANT TO
CIRCUIT RULE 32-1 ............................................................................................. 16

CERTIFICATE OF SERVICE .............................................................................. 17

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

District of Columbia v. Heller,
    554 U.S. 570 .................................................................. 3, 6, 7, 9, 10, 11, 12, 13

Gonzalez v. Village of W. Milwaukee,
    671 F.3d 649 (7th Cir. 2012) .................................................................................. 7

Kachalsky v. Cacace,
    817 F. Supp. 2d 235 (S.D. N.Y. 2011) ................................................................. 13

Kachalsky v. County of Westchester,
    701 F.3d 81 (2d Cir. 2012) .............................................................................5, 7, 13

McDonald v. City of Chicago,
    130 S. Ct. 3020 ................................................................................................ 3, 7, 9

Nichols v. Brown,
    2013 U.S. Dist. LEXIS 96425 (C.D. Cal. 2013) ........................................... 6, 7, 12

Peterson v. Martinez,
    707 F.3d 1197 (10th Cir. 2013) ............................................................................ 13

Robertson v. Baldwin,
    165 U.S. 275 (1897) ........................................................................................ 11, 13

United States v. Chovan,
    735 F.3d 1127 (9th Cir. 2013) ........................................................................ 3, 6, 8

United States v. Masciandaro,
    638 F.3d 458 (4th Cir. 2011) ........................................................................... 11, 12

United States v. Vongxay,
    594 F.3d 1111 (9th Cir. 2010) .............................................................................. 11

Woollard v. Gallagher,
    712 F.3d 865 (4th Cir. 2013) ........................................................................... 5, 8, 9

**State Cases**

Mack v. United States,
 6 A.3d 1224, 1236 (D.C. 2010) ......................................................................... 13

People v. Flores,
 169 Cal. App. 4th 568 (2008) ............................................................................ 11

**State Statutes**

Penal Code §§ 12025 and 12050 ............................................................................. 8

**Rules**

FRAP, Rule 35 (a) ..................................................................................................... 3

**Constitutional Provisions**

Second Amendment ..................................................... 3, 5, 6, 7, 8, 10, 11, 12, 13, 14

**Other Authorities**

Kiehl, Stephen. Comment: *In Search Of A Standard: Gun Regulations After
 Heller and* McDonald, 70 Md. L. Rev. 1131, 1141-1142 (2011) ............... 9, 10, 11

**TO THE HONORABLE CHIEF JUDGE ALEX KOZINSKI AND CIRCUIT JUDGES:**

Amici Curiae, the California Police Chiefs' Association ("CPCA") and the California Peace Officers' Association ("CPOA"), respectfully submit the following petition for rehearing *en banc*:

## PETITION FOR REHEARING *EN BANC*

CPCA and CPOA[1] submitted an amici curiae brief in support of Respondent County of San Diego, and the San Diego County Sheriff Bill Gore, in the above-captioned matter and hereby submits, in its capacity as amici curiae, this Petition for Rehearing *En Banc*.[2] In the alternative, CPCA and CPOA request that this Court grant Rehearing *En Banc*, *Sua Sponte*. There is adequate justification for rehearing *en banc*, as the issues in this matter are of exceptional importance and there are conflicts among the Circuits.

---

[1] The California State Sheriffs' Association was part of Amici Curiae as to the brief submitted, but has declined to be included in support of this Petition.
[2] To the extent the Court finds that CPCA and CPOA must be a party in order to submit this petition, CPCA and CPOA request that this Court construe this petition to also be a request to intervene as parties. See, e.g., Fed. Rules Civ. Proc., Rule 24 (permissive intervention may be permitted to "a federal or state governmental officer or agency" when there is "(A) a statute or executive order administered by the officer or agency; or (B) any regulation, order, requirement, or agreement issued or made under the statute or executive order." The members of CPCA and CPOA include Police Chiefs and some Sheriffs within the State, who are charged with the statutory duty to evaluate and issue permits to carry concealed weapons pursuant to California law. Therefore, these Associations are directly affected in their administration and implementation of applicable State regulations, and intervention is justified.

2

## I. STATEMENT OF BASIS FOR PETITION

This Petition is specifically based upon the following: (A) the panel decision conflicts with a decision of the United States Supreme Court, as specifically cited herein – namely <u>District of Columbia v. Heller</u>, 554 U.S. 570 and <u>McDonald v. City of Chicago</u>, 130 S. Ct. 3020; 177 L. Ed. 2d 894 (2010); other Circuit decisions as cited herein; and this Court's opinion in <u>United States v. Chovan</u>, 735 F.3d 1127, 1138 (9th Cir. 2013), and other opinions of this Court as cited herein; and (B) the proceeding involves one or more questions of exceptional importance -- namely the parameters of Second Amendment rights as to California's requirement for the showing of "good cause" in the issuance of permits to carry concealed weapons – and the panel's opinion in this matter conflicts with decisions of other United States Courts of Appeals. Therefore, consideration by this Court *en banc* is necessary to secure and maintain uniformity of the Court's decisions.

## II. AUTHORITY FOR PETITION FOR REHEARING *EN BANC*

The Federal Rules of Appellate Procedure provide, in relevant part, that an en banc hearing or rehearing may be ordered when: "(1) en banc consideration is necessary to secure or maintain uniformity of the court's decisions; or (2) the proceeding involves a question of exceptional importance." FRAP, Rule 35 (a). Specifically, "[a] majority of the circuit

judges who are in regular active service and who are not disqualified may order that an appeal or other proceeding be heard or reheard by the court of appeals *en banc*." Further, the Ninth Circuit's Rules provide that the following is an "appropriate ground" for a petition for rehearing *en banc* to be granted: "When the opinion of a panel directly conflicts with an existing opinion by another court of appeals and substantially affects a rule of national application in which there is an overriding need for national uniformity." These standards are met here, whether in response to this petition or by this Court's order for rehearing, *sua sponte*.

## III. PROCEDURAL BACKGROUND

This Court's panel issued its opinion in this matter, filed on February 13, 2014, a true and correct copy of which is attached hereto as Appendix A to this Petition ("Opinion" or "Op."). This Court's panel reversed the District Court's granting of the County of San Diego's motion for summary judgment, as to the validity of requirements for the issuance of permits to carry concealed weapons. At issue is the requirement under California law that an applicant must show "good cause" for the approval of a permit to carry a concealed weapon, along with interpretation of such showing by local Sheriffs or Chiefs of Police. (Op. at p. *5 (citing Cal. Penal Code §§ 26150 and 26155).

## IV. GROUNDS FOR REHEARING *EN BANC*

As set forth above, there are two grounds for this Court to appropriately grant rehearing *en banc*. First, the Opinion conflicts with the decisions of other courts. Second, rehearing is warranted due to questions of exceptional importance.

A. **The Constitutional Scope of the Second Amendment Right to Carry Concealed Weapons in Public is Subject to Conflicting Views Among the Circuit Courts.**

At issue in this matter is the requirement of the San Diego Sheriff that good cause cannot be established based only on a general safety concern, but must be based on individual circumstances presenting a particular risk of harm. (Op. pp. *5-6.) The Opinion concludes that there is a Second Amendment right to bear arms outside of the home. (Op., at pp. *80-81.) However, the Opinion explicitly recognizes that this conclusion of law is part of "an existent circuit split." (Op., at p. *81 citing Moore, 702 F.3d at 936-42; Drake, 724 F. 3d at 431-35; Woollard, 712 F.3d at 876, 879-82; Kachalsky, 701 F.3d at 89, 97-99.) The Opinion's analysis, given the acknowledged split of authority, warrants this Court's rehearing *en banc*, in order to ensure that the legal issues are most fully determined.

The United States Supreme Court has expressly recognized the right of the government to impose reasonable regulations on firearms, including

"prohibitions on carrying concealed weapons . . . ." Supreme Court in District of Columbia v. Heller, 554 U.S. 570, 626 (2008). The Court's panel recognized that the opinion in Heller "direct[ed] our analysis." (Op., at p. *8.) In contrast to the regulations at issue here, the regulation in Heller involved a ban on handguns and restrictions on firearms *in the home*. In fact, the Opinion explicitly recognizes that "straightforward application of the rule in *Heller* will not dispose of this case," because such opinion does not "speak[] explicitly or precisely to the scope of the *Second Amendment* right outside the home." (Op., at p. *11.) Indeed, this Court's opinion in United States v. Chovan, 735 F.3d 1127, 1138 (9th Cir. 2013), recognizes a contrary legal principle than stated in the Opinion, namely that "*Heller* tells us that the *core* of the Second Amendment is 'the right of law-abiding, responsible citizens to use arms in *defense of hearth and home*,'" not a more general right to bear arms generally in "self-defense." In fact, the right at issue here is not merely to bear arms in public, but the purported right to carry them in *public* in a *concealed* manner.

The District Court in Nichols v. Brown, 2013 U.S. Dist. LEXIS 96425 (C.D. Cal. 2013), recognized that "[l]ower courts have been cautious, however, in expanding the scope of this right beyond the contours delineated in *Heller*." The Nichols Court cited opinions from the Seventh and Fourth Circuits to the effect that Heller was *limited* to the right to have firearms for self-defense in the

6

*home*. Citing opinions from the Seventh and Second Districts, the <u>Nichols</u> Court specifically noted that "[c]ourts that have considered the meaning of *Heller* and *McDonald* in the context of open carry rights have found that these cases did not hold that the Second Amendment gives rise to an unfettered right to carry firearms in public." In footnote 6, the <u>Nichols</u> Court asserted that "[t]he Ninth Circuit has yet to address the issue of open carry with respect to the Second Amendment."

To the extent that the Court's Opinion in this matter has now done so, it conflicts with other court decisions. The <u>Nichols</u> Court recognized the conflict of authority, which is furthered by the Opinion: "<u>Gonzalez v. Village of W. Milwaukee</u>, 671 F.3d 649, 659 (7th Cir. 2012) ('Whatever the Supreme Court's decisions in *Heller* and *McDonald* might mean for future questions about open-carry rights, for now this is unsettled territory'); <u>Kachalsky v. County of Westchester</u>, 701 F.3d 81, 96 (2d Cir. 2012) (finding that 'our tradition . . . clearly indicates a substantial role for state regulation of the carrying of firearms in public' and applying intermediate scrutiny to concealed carry licensing program)." In fact, the <u>Nichols</u> Court relied upon the District Court opinion below in this matter as further support for the conclusion that "'the Second Amendment does *not* create a fundamental right to carry a . . . weapon in public.'" (Emphasis added).

7

The Opinion concludes, after significant discussion of historical context as to the right to "bear Arms," that "the carrying of an operable handgun outside the home for the lawful purpose of self-defense" is within the Second Amendment. (Op., at *61.) The Opinion finds that California's regulatory system does not "allow[] the typical responsible, law-abiding citizen to bear arms in public for the lawful purpose of self defense."[3] (Op., at *69.)

In Woollard v. Gallagher, 712 F.3d 865, 878 (4th Cir. 2013), the Fourth Circuit Court of Appeal *assumed* that there was a "Second Amendment right of law-abiding, responsible citizens to carry handguns in public for the purpose of self-defense," but cautioned that challengers of Maryland's restrictions on the public-carrying of weapons were urging the Court to "place the right to arm oneself in public on equal footing with the right to arm oneself at home." The Court recognized that Circuit's "'longstanding out-of-the-home/in-the-home distinction bear[ing] directly on the level of scrutiny applicable.'" Id. (change in original) (quoting United States v. Masciandaro, 638 F.3d 458, 470 (4th Cir. 2011)). The Woollard Court upheld Maryland's requirement of a "good and substantial reason" for the carrying of handguns in many public places, finding

---

[3] Notably, the District Court found that California's regulatory system (namely Penal Code sections 12025 and 12050) does permit the open carrying of loaded weapons for immediate self-defense. As recognized by this Court in United States v. Chovan, 735 F.3d 1127, 1138 (9th Cir. 2013), even a purportedly substantial burden on Second Amendment rights can be "lightened by these [kinds of] exceptions."

8

that intermediate scrutiny applied to the regulation and that "[t]he State has clearly demonstrated that the good-and-substantial-reason requirement advances the objectives of protecting public safety and preventing crime because it reduces the number of handguns carried in public." Id. at 879. More importantly, the Court found that the State's regulation in Woollard struck the "proper balance" between protecting public safety and permitting those with a need to carry such weapons. Id. at 880.

The Opinion is directly contrary to the standard of review employed by the Fourth Circuit in Woollard, as well as achieving a contrary result and concluding a completely different constitutional scope as to the purported right to bear concealed arms in *public*.

As a law review author recently recognized, "in the wake of *Heller* and *McDonald*, . . . lower courts have failed to settle on a standard of review. The emerging trend is toward intermediate scrutiny, but courts have also used strict scrutiny, a reasonableness standard, an undue burden standard, and a hybrid of strict and intermediate scrutiny." Kiehl, Stephen. Comment: *In Search Of A Standard: Gun Regulations After* Heller *and* McDonald, 70 Md. L. Rev. 1131, 1141-1142 (2011). However, "commentators have noted" that:

> "Regardless of the test used, challenged gun laws almost always survive." . . . The Fourth Circuit in particular noted its reluctance to extend gun rights beyond those explicitly granted by *Heller*, pointing to the toll exacted by gun violence: "We do not wish to be

9

> even minutely responsible for some unspeakably tragic act of
> mayhem because in the peace of our judicial chambers we
> miscalculated as to Second Amendment rights."

Kiehl, 70 Md. L. Rev. at, 1142 (quoting Mehr, Tina and Winkler, Adam.

AMERICAN CONSTITUTION SOC'Y, *The Standardless Second Amendment* 1 (Oct.

2010), (noting that state and federal courts have ruled on more than 200 Second

Amendment challenges since *Heller* was decided in 2008); <u>United States v.

Masciandaro</u>, 638 F.3d 458, 475-476 (4th Cir. 2011)).

In addition, the author noted that

> courts have observed that *Heller* tacitly condoned concealed carry
> laws when it stated, in *dicta*, The majority of the 19th-century
> courts to consider the question held that prohibitions on carrying
> concealed weapons were lawful under the Second Amendment or
> state analogues. The District Court for the District of Nebraska,
> for example, stated that states can prohibit the carrying of a
> concealed weapon without violating the Second Amendment. A
> federal court in West Virginia similarly found that the state's
> concealed carry prohibition continues to be a lawful exercise by
> the state of its regulatory authority notwithstanding the Second
> Amendment.

Kiehl, 70 Md. L. Rev. at 1150 (internal quotations omitted) (citing <u>District of

Columbia v. Heller</u>, 554 U.S. 577, 626 (2008); <u>Swait v. Univ. of Neb. at

Omaha</u>, 2008 U.S. Dist. LEXIS 96665, at 6-7 (D. Neb. 2008); <u>United States v.

Hall</u>, 2008 U.S. Dist. LEXIS 59641, at 3 (S.D. W. Va. 2008), *aff'd per curiam*,

337 F. App'x 340 (4th Cir.), *cert. denied*, 130 S. Ct. 774 (2009)).

The law review author also recognized that a California Court in People v. Flores, 169 Cal. App. 4th 568, 575 (2008), "relied on the 1897 Supreme Court case *Robertson v. Baldwin*, which stated that concealed carry laws did not infringe the Second Amendment right to keep and bear arms." Kiehl, 70 Md. L. Rev. at 1150.

The Flores Court found that, since *Heller* "implicit[ly] approv[ed] of concealed firearm prohibitions, . . . [it did not] alter[]the courts' longstanding understanding that such prohibitions are constitutional." Flores, 169 Cal. App. 4th at 575 (citing Robertson v. Baldwin, 165 U.S. 275, 281–282 (1897) ("'the right of the people to keep and bear arms (art. 2) is not infringed by laws prohibiting the carrying of concealed weapons'"). This Court's opinion in United States v. Vongxay, 594 F.3d 1111, 1115 (9th Cir. 2010), explicitly recognized that the discussion as to "long-standing restrictions on gun possession" in the Heller Court's opinion was binding on this Court.

The Court in United States v. Masciandaro, 638 F.3d 458, 470 (4th Cir. 2011), applied intermediate scrutiny to a regulation prohibiting firearms in a national park, based on the fact that, "as we move outside the home, firearm rights have always been more limited, because public safety interests often outweigh individual interests in self-defense." The Masciandaro Court

11

specifically noted that "[w]ere we to require strict scrutiny in circumstances such as those presented here, we would likely foreclose an extraordinary number of regulatory measures, thus handcuffing lawmakers' ability to 'prevent[ ] armed mayhem' in public places, and depriving them of 'a variety of tools for combating that problem,' . . . ." Id. at 471 (internal citations omitted) (omission in original). The Masciandaro Court "conclude[ed] that a lesser showing is necessary with respect to laws that burden the right to keep and bear arms outside of the home," and that such a regulation is valid "if the government can demonstrate that [its regulation] is reasonably adapted to a substantial governmental interest." Id. The Court ultimately found the regulation satisfied intermediate scrutiny, in part because a prohibition against loaded firearms in a national park was "analogous to the litany of state concealed carry prohibitions specifically identified as valid in *Heller*." Id. at 473-474. The Court found that "permitting park patrons to carry unloaded firearms within their vehicles, . . . leaves largely intact the right to 'possess and carry weapons in case of confrontation.'" Id. at 474 (quoting Heller, 554 U.S. at 591).

However, as recognized by the District Court in Nichols v. Brown, 2013 U.S. Dist. LEXIS 96425 (C.D. Cal. 2013) (emphasis in original) (quoting Heller, 554 U.S. at 595), the Second Amendment "does not 'protect the right of

12

citizens to carry arms for *any* sort of confrontation.'" As the Court in Kachalsky v. Cacace, 817 F. Supp. 2d 235, 261 (S.D. N.Y. 2011) (internal quotations, omissions and citations omitted), recognized, some courts have found that there is no right to carry a *concealed* weapon:

> The *Dorr* court observed that the plaintiffs in that case failed to direct the court's attention to any contrary authority recognizing a right to carry a concealed weapon under the Second Amendment and the court's own research efforts revealed none. Accordingly, it concluded, a right to carry a concealed weapon under the Second Amendment has not been recognized to date.

Further, the Kachalsky Court cited to Mack v. United States, 6 A.3d 1224, 1236 (D.C. 2010), which it states, in turn, cited "*Robertson* and *Heller* and not[ed] 'it simply is not obvious that the Second Amendment secures a right to carry a concealed weapon.'" Id. The dissent also cites to the opinion of the Tenth Circuit in Peterson v. Martinez, 707 F.3d 1197, 1211 (10th Cir. 2013), noting that the Peterson Court "concluded that 'the *Second Amendment* does not confer a right to carry concealed weapons.'" (Op., at p. *134.)

The law in this area is widely regarded as being the subject of extensive debate and disagreement. The Opinion itself acknowledges that it disagrees with decisions of the Second, Third and Fourth Circuits. Even if the analysis for doing so is reasoned, such divergence warrants and requires rehearing *en banc* to ensure that this Court's Opinion, directly contrary to other Circuit Courts, is fully evaluated and reflects the reasoning of the full Court.

13

## B. The Constitutional Validity of California's "Good Cause" Showing for the Issuance of Permits to Carry Concealed Weapons in Public is an Issue of Exceptional Importance.

There are significant questions of exceptional importance at issue in this matter, which warrant rehearing *en banc* by this Court. Specifically, the Opinion determines that California's requirement for a showing of "good cause" for the issuance of a permit to carry a concealed weapon in *public* violates the Second Amendment. This decision impairs the ability of Sheriffs and Police Chiefs throughout the entire State to implement California law in a manner specific to the needs of their particular region and jurisdiction. As CPCA and CPOA asserted in their amici curiae brief to the Court in this matter, the State of California is extremely diverse – both geographically and in terms of population density in varying regions. Therefore, the Legislature has purposefully and necessarily left the determination of "good cause" for the issuance of permits to carry concealed weapons to the discretion of Sheriffs and Police Chiefs. The needs of any particular jurisdiction, especially due to the density of a specific area's population, is a matter which requires individualized determination, and such discretion is not inconsistent with the scope of the Second Amendment right at issue in this matter. As the dissent recognized, "the 'right inherited from our English ancestors' did not include a right to carry

14

concealed weapons in public." (Op., at *109-110.) The purpose of such limitation was historically "to punish people who go armed to terrify the King's subjects." (Op., at *110 (internal quotations omitted).) In an age of increasing violence and dense public life in some areas, this concept rings true no less in current times than it did in times past. And whether one agrees with the historical analysis of the majority or the dissent, the scope of the Constitutional rights and impact on public safety that are implicated by the Opinion warrant this full Court's attention and consideration.

## V. <u>CONCLUSION.</u>

For all of the foregoing reasons, Amici Curiae CPCA and CPOA urge this Court to grant the within petition for rehearing *en banc*, or in the alternative, order rehearing *en banc*, *sua sponte*. There are both issues of exceptional importance as to Constitutional rights and public safety implicated in this matter, as well as conflicts in Circuit Courts on the right of individuals to carry concealed weapons in public, which require *en banc* review.

Respectfully submitted,

JONES & MAYER

By: /s/ Martin J. Mayer
    Martin J. Mayer
    Paul R. Coble
    Attorneys for Amici Curiae,
    CA Police Chiefs' Ass'n. and
    CA Peace Officers' Ass'n.

Form 11.     Certificate of Compliance Pursuant to
                     Circuit Rules 35-4 and 40-1

---

**Form Must be Signed by Attorney or Unrepresented Litigant
and Attached to the Back of Each Copy of the Petition or Answer**

---

(signature block below)

I certify that pursuant to Circuit Rule 35-4 or 40-1, the attached petition for panel rehearing/petition for rehearing en banc/answer is: (check applicable option)

\_\_\_\_    Proportionately spaced, has a typeface of 14 points or more and contains _____ words (petitions and answers must not exceed 4,200 words).

**or**

\_\_\_\_    Monospaced, has 10.5 or fewer characters per inch and contains _____ words or _____ lines of text (petitions and answers must not exceed 4,200 words or 390 lines of text).

**or**

__X__    In compliance with Fed. R. App. 32(c) and does not exceed 15 pages.

/s/ Martin J. Mayer
Signature of Attorney or
Unrepresented Litigant

(New Form 7/1/2000)

9th Circuit Case Number(s) | 10-56971

NOTE: To secure your input, you should print the filled-in form to PDF (File > Print > *PDF Printer/Creator*).

*********************************************************************

## CERTIFICATE OF SERVICE
### When All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) Feb 27, 2014.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Signature (use "s/" format)  /s/ Martin J. Mayer

*********************************************************************

## CERTIFICATE OF SERVICE
### When Not All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) _____.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants:

Signature (use "s/" format)