No. 10-56971

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

_____

EDWARD PERUTA, et al.,
*Appellants*

v.

COUNTY OF SAN DIEGO, et al.,
*Appellees*

_____

On Appeal from the United States District Court for the
Southern District of California, No. 09-CV-2371 (Gonzalez, J.)

_____

**BRIEF OF *AMICI CURIAE* LAW CENTER TO PREVENT GUN
VIOLENCE AND MARIN COUNTY SHERIFF ROBERT
DOYLE IN SUPPORT OF CALIFORNIA ATTORNEY
GENERAL KAMALA HARRIS' MOTION FOR
INTERVENTION AND PETITION FOR REHEARING *EN
BANC***

_____

SIMON J. FRANKEL
MICHELLE L. MORIN
COVINGTON & BURLING LLP
One Front Street, 35th Floor
San Francisco, California 94111
Telephone: (415) 591-6000

Attorneys for *Amici Curiae*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1, Law Center to Prevent Gun Violence states that it has no parent corporations.  It has no stock, and therefore no publicly held company owns 10% or more of its stock.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ...................................................... ii

TABLE OF CONTENTS......................................................................................... iii

TABLE OF AUTHORITIES ................................................................................. iv

INTEREST OF AMICI CURIAE............................................................................1

INTRODUCTION .................................................................................................1

ARGUMENT .........................................................................................................5

I.   This Court Should Grant Rehearing *En Banc* to Reconcile the Discrepancies Between the Panel Opinion's Analysis and the Methodology Prescribed by *Heller* and *Chovan*.............................................................................................5

  A.  The Panel Opinion Failed to Apply the Two-Part Inquiry for Second Amendment Challenges Set Forth in *Heller* and *Chovan*. ............................5

  B.  The Panel's Radical Expansion of The Scope of the Second Amendment Is Based On Flawed Historical Analysis And Warrants *En Banc* Review. ........7

II.  This Court Should Grant Rehearing *En Banc* Because the Panel Opinion's Decision Conflicts with Decisions of the Supreme Court and of Four Other Circuits.................................................................................................................9

  A.  The Panel Opinion Conflicts with the Supreme Court's Decision in *Robertson* and with Decisions of the Second, Third, Fourth, and Tenth Circuits..............................................................................................................9

III. This Court Should Grant Rehearing *En Banc* Because This Case Raises Questions of Exceptional Importance. .............................................................11

  A.  The Panel Opinion Has Far-Reaching Consequences for Both Public Safety and Law Enforcement.....................................................................................12

CONCLUSION ...................................................................................................15

# TABLE OF AUTHORITIES

Page

C<small>ASES</small>

*Aymette v. State*,
21 Tenn. 154 (1840)...........................................................................7

*Baker v. Kealoha*,
No. 12-16258 (9th Cir. argued Dec. 6, 2012) ....................................4

*District of Columbia v. Heller*,
554 U.S. 570 (2008)...................................................................*passim*

*Drake v. Filko*,
724 F.3d 426 (3d Cir. 2013) ......................................................*passim*

*Kachalsky v. Cnty. of Westchester*,
701 F.3d 81 (2d Cir. 2012) .........................................................*passim*

*McKay v. Hutchens*,
12-57049 (9th Cir. argued Oct. 7, 2013) ...........................................4

*Nunn v. State*,
1 Ga. 243 (1846) ................................................................................7

*Peruta v. County of San Diego*,
No. 10-56971, 2014 U.S. App. LEXIS 2786, 2014 WL 555862
(9th Cir. Feb. 13, 2014) ..............................................................*passim*

*Peruta v. County of San Diego*,
758 F. Supp. 2d 1106 (S.D. Cal. 2010) ..............................................2

*Peterson v. Martinez*,
707 F.3d 1197 (10th Cir. 2013) ..............................................3, 6, 11

*Richards v. Prieto*,
No. 11-16255 (9th Cir. argued Dec. 6, 2012) ....................................4

*Robertson v. Baldwin*,
165 U.S. 275 (1897)..............................................................3, 4, 9, 10

*State v. Reid*,
  1 Ala. 612 (1840) ...................................................................................7

*Thomas v. Torrance Police Dept.*,
  12-56236 (9th Cir. filed Jul. 3, 2012) ...................................................4

*Turner Broad. Sys. Inc. v. FCC*,
  520 U.S. 180 (1997) ...........................................................................11

*United States v. Chester*,
  628 F.3d 673 (4th Cir. 2010) ...........................................................5, 6

*United States v. Chovan*,
  735 F.3d 1127 (9th Cir. 2013) ....................................................*passim*

*United States v. Masciandaro*,
  638 F.3d 458 (4th Cir. 2011), *cert. denied*, ⸺ U.S. ⸺,
  132 S.Ct. 756 (2011)...........................................................................14

*United States v. Miller*,
  307 U.S. 174 (1939) .............................................................................8

*Woollard v. Gallagher*,
  712 F.3d 865 (4th Cir. 2013) .....................................................*passim*

**STATUTES**

Ariz. Rev. Stat. § 3102...........................................................................13

Cal. Penal Code § 25850(a) ...................................................................15

Cal. Penal Code § 26150.........................................................................12

Cal. Penal Code § 26155.........................................................................12

Cal. Penal Code 26350(a) .......................................................................15

Haw. Rev. Stat. Ann. § 134-9(a) ..............................................................4

**RULES**

Fed. R. App. P. 44.....................................................................................3

Fed. R. Civ. P. 5.1.....................................................................................3

CONSTITUTIONAL PROVISIONS

U.S. Const. amend. II..........................................................................*passim*

OTHER AUTHORITIES

Lizette Alvarez, *Jury Reaches Partial Verdict in Florida Killing Over Loud Music*,
    N.Y. Times, Feb. 15, 2014, http://www.nytimes.com/2014/02/16/
    us/florida-killing-over-loud-music.html?_r=0....................................................13

SAUL CORNELL, A WELL REGULATED MILITIA (2006) ...........................................11

ALEXANDER DECONDE, GUN VIOLENCE IN AMERICA (2001) ..................................11

James V. Grimaldi and Fredrick Kunkle, *Gun used in Tucson was purchased
    legally; Arizona laws among most lax in nation*, Wash. Post, Jan. 9, 2011,
    http://www.washingtonpost.com/wp-
    dyn/content/article/2011/01/09/AR2011010901912.html..................................13

Salvador Hernandez, *Concealed-weapon permit applications flood O.C.
    Sheriff's Department*, Orange County Register, Feb. 26, 2014, http://www.
    ocregister.com/articles/ applications-603207-sheriff-concealed.html..................2

Frances Robles, *A Movie Date, a Text Message, and a Fatal Shot*,
    N.Y. Times, Jan. 21, 2014, http://www.nytimes.com/2014/01/22/us/
    a-movie-date-a-text-message-and-a-fatal-shot.html?_r=0 .................................13

Violence Policy Center, Concealed Carry Killers
    http://www.vpc.org/ccwkillers.htm ...................................................................14

## INTEREST OF AMICI CURIAE

*Amicus* Law Center to Prevent Gun Violence (the "Law Center") is a national law center dedicated to preventing gun violence.[1]  Founded after an assault weapon massacre at a San Francisco law firm in 1993, the Law Center provides legal and technical assistance in support of gun violence prevention.  The Law Center tracks and analyzes federal, state, and local firearms legislation, as well as legal challenges to firearms laws.  The Law Center filed an *amicus* brief in support of San Diego County in the above-captioned matter, and has also provided informed analysis as an *amicus* in a variety of other firearm-related cases, including *District of Columbia v. Heller* and *McDonald v. City of Chicago*.

*Amicus* Sheriff Robert T. Doyle is Marin County, California's chief law enforcement officer, and his responsibilities include issuance of permits to carry concealed weapons in Marin County.  Sheriff Doyle has a compelling interest in maintaining discretion over the issuance of such permits, which he believes is critical to public safety in Marin County.

## INTRODUCTION

On February 13, 2014, a split panel of this Court ruled that the Second Amendment requires every state in this Circuit to issue a permit to carry a hidden,

---

[1] The Law Center was formerly known as Legal Community Against Violence.  *Amici* affirm, pursuant to Fed. R. App. P. 29(c)(5), that no counsel for a party authored this brief in whole or in part and that no person other than *amici* and their counsel made a monetary contribution to its preparation or submission.

loaded gun in public to virtually anyone who wants one.  The panel's radical

expansion of the Second Amendment right is unprecedented in American history

and contradicts the decisions of the Supreme Court, this Court, and at least four

other circuits.  This decision has profound implications for public safety in this

Circuit, and should be reviewed by this Court *en banc*.

The panel's decision effectively invalidated California's longstanding

statutory scheme governing concealed carry permits, which requires applicants to

demonstrate "good cause" for the issuance of such a permit.  The panel held[2]—

contrary to every other circuit to have considered similar laws—that the "good

cause" requirement is only valid if it is satisfied by a general desire for self-

defense.  This decision eviscerates law enforcement's existing authority to restrict

concealed weapons, and represents an unprecedented change to California law that

will put thousands, if not millions, of additional guns on the streets.[3]

---

[2] The panel reversed the district court, which found that the law survived
intermediate scrutiny, noting that the county "has an important and substantial
interest in public safety and in reducing the rate of gun use in crime. In particular,
the government has an important interest in reducing the number of concealed
weapons in public in order to reduce the risks to other members of the public who
use the streets and go to public accommodations."  *Peruta v. County of San Diego*,
758 F. Supp. 2d 1106, 1117 (S.D. Cal. 2010).

[3] Indeed, over 500 concealed-weapon permit applications flooded the
Orange County Sheriff's Department in the two weeks since the panel's opinion.
Salvador Hernandez, *Concealed-weapon permit applications flood O.C. Sheriff's
Department*, Orange County Register, Feb. 26, 2014, http://www.ocregister.com/
articles/applications-603207-sheriff-concealed.html. Yet despite the dramatic
effect of its holding effectively invalidating a state law, neither the panel opinion

Accordingly, *Amici* respectfully ask that this Court grant the Attorney General's request and rehear this case *en banc* for at least the following reasons:

- The analytical methods the opinion employs are in conflict with those prescribed by the Supreme Court, the Ninth Circuit, and other circuits.[4] Specifically, the opinion discards the two-part inquiry set forth in *Heller* and *Chovan*, substitutes a logically flawed and unsupported alternative methodology, and expands its analysis to encompass statutes not at issue, and questions not presented.

- In effectively finding that carrying loaded concealed weapons in public is constitutionally-protected conduct that may not be restricted by a "good cause" requirement, the opinion conflicts with decisions of the Second, Third, Fourth and Tenth Circuits in *Kachalsky*, *Drake*, *Woollard*, and *Peterson*.[5] It also conflicts with the Supreme Court's decision in *Robertson v. Baldwin*, which found that carrying concealed weapons is *not* protected

---

nor the question presented on appeal were certified to California's Attorney General under Fed. R. App. P. 44 and Fed. R. Civ. P. 5.1.

[4] *See District of Columbia v. Heller*, 554 U.S. 570 (2008); *United States v. Chovan*, 735 F.3d 1127, 1136 (9th Cir. 2013); *see also Kachalsky v. Cnty. of Westchester*, 701 F.3d 81, 89-93 (2d Cir. 2012), *Drake v. Filko*, 724 F.3d 426, 429 (3d Cir. 2013); *Woollard v. Gallagher*, 712 F.3d 865, 875-75 (4th Cir. 2013); *Peterson v. Martinez*, 707 F.3d 1197, 1208-09 (10th Cir. 2013) (applying same two-step inquiry).

[5] *See supra*, note 3.

conduct—a decision the panel fails to even acknowledge.[6]  The opinion

unnecessarily reaches far beyond *Heller* or any other opinion to date, and

conflicts with a long history of "good cause" restrictions across the country.

- Whether the Second Amendment includes a right to carry a concealed
  loaded weapon in public, and whether any such right can properly be subject
  to a "good cause" restriction of the type applied in San Diego County, are
  questions of exceptional importance, with far-reaching implications for
  public safety and law enforcement.

The Defendant below—the Sheriff of San Diego County, an elected

official—has announced that he will not seek rehearing.  However, the Attorney

General of California has sought intervention and rehearing *en banc*.  Because of

the importance of this case to public safety, to law enforcement, and to the

vigorous national debate surrounding the Second Amendment, the Law Center and

Sheriff Doyle respectfully suggest that this Court grant the Attorney General's

request and rehear this case *en banc*.[7]

_____

[6] *Robertson v. Baldwin*, 165 U.S. 275, 281-82 (1897).

[7] Within this circuit, Hawaii has a very similar law regulating the issuance of
concealed carry permits.  *See* Haw. Rev. Stat. Ann. § 134-9(a).  That law's fate
will likely be decided by the outcome of this case, further demonstrating the
critical need for *en banc* review.  *See Baker v. Kealoha*, No. 12-16258 (9th Cir.
argued Dec. 6, 2012).  Moreover, several other cases are pending which raise
similar issues about California's laws.  *See, e.g.*, *Richards v. Prieto*, No. 11-16255
(9th Cir. argued Dec. 6, 2012); *McKay v. Hutchens*,12-57049 (9th Cir. argued Oct.
7, 2013); *Thomas v. Torrance Police Dept.*, 12-56236 (9th Cir. filed Jul. 3, 2012).

**ARGUMENT**

**I.    This Court Should Grant Rehearing *En Banc* to Reconcile the Discrepancies Between the Panel Opinion's Analysis and the Methodology Prescribed by *Heller* and *Chovan*.**

**A.    The Panel Opinion Failed to Apply the Two-Part Inquiry for Second Amendment Challenges Set Forth in *Heller* and *Chovan*.**

The panel opinion brazenly disregards the two-part inquiry adopted by the Ninth Circuit and by other courts[8] reviewing Second Amendment challenges to firearm regulations.[9]  As explained by this Court in *Chovan*, under *Heller* "[t]he first question is 'whether the *challenged law* imposes a burden on conduct falling within the scope of the Second Amendment's guarantee.'"[10]  If the conduct at issue is not within the scope of the Second Amendment's protection, then the law is valid.[11]  If the regulation burdens conduct within the scope of the Second Amendment, then the Court must apply the appropriate means-end scrutiny.[12]

As the dissent points out, the panel completely ignores both steps of this straightforward analysis.[13]  First, instead of examining the burden on the Second

---

[8] *See, e.g.*, *Woollard*, 712 F.3d at 869, 876; *Kachalsky*, 701 F.3d at 96.

[9] *See Peruta v. County of San Diego*, No. 10-56971, slip op. at 62, 2014 U.S. App. LEXIS 2786 at *89, 2014 WL 555862 at *26 (9th Cir. Feb. 13, 2014) (noting that no standard of heightened scrutiny was applied).  Citations herein are to the "for publication" slip copy (hereinafter, "Op."), attached as Exh. A and available at http://cdn.ca9.uscourts.gov/datastore/opinions/2014/02/19/10-56971%20web.pdf.

[10] *Chovan*, 735 F.3d at 1134 (emphasis added) (citing *United States v. Chester*, 628 F.3d 673, 680 (4th Cir. 2010)).

[11] *See Chovan*, 735 F.3d at 1134.

[12] *Id.* (citing *Chester*, 628 F.3d at 680).

[13] Op. at 101-02 (Thomas, J., dissenting).

5

Amendment imposed *by the challenged law*—San Diego County's standard for issuing *concealed carry* permits—the panel reaches out to examine California's entire statewide scheme regulating both concealed and open carry.[14] Had the opinion properly applied the first step of the *Heller-Chovan* analysis,[15] it would have been forced to conclude that carrying a concealed weapon is *not* within the scope of the Second Amendment right. Its analysis should have ended there.

Second, after misconstruing the first inquiry, the panel fails to apply the second step of the *Chovan* analysis at all—"apply[ing] an appropriate level of scrutiny."[16] Instead, the majority opinion decides that it will use "an alternative approach for the most severe cases" that involves "per se invalidation" with no scrutiny applied whatsoever.[17] The panel claims that this is "the approach used in *Heller* itself,"[18] but this disregards *Chovan's* holding that the two-step approach "reflects the Supreme Court's holding in *Heller*."[19] Thus, the panel's failure to apply any level of scrutiny directly conflicts with this Court's precedent in *Chovan* and warrants *en banc* review and correction.

---

[14] Op. at 48-56.

[15] *See Peterson*, 707 F.3d at 1201, 1208-09 (discussing implications of plaintiff's decision to challenge only Colorado's concealed-carry statute but not Denver's open-carry ordinance, and holding that "the carrying of concealed firearms is not protected by the Second Amendment[.]").

[16] *Chovan*, 735 F.3d at 1136 (citing *Chester*, 628 F.3d at 680).

[17] Op. at 47, 51.

[18] Op. at 47.

[19] 735 F.3d at 1136.

**B.    The Panel's Radical Expansion of The Scope of the Second Amendment Is Based On Flawed Historical Analysis And Warrants *En Banc* Review.**

Despite a lack of precedent for its approach, the panel nonetheless took it upon itself to contort the Second Amendment right not only to apply outside the home, but to apply with such force as to render unconstitutional virtually all regulations of firearms in public.  The panel arrives at this conclusion by engaging in circular and flawed reasoning, which included at least three critical errors.

First, as the dissent points out,[20] the panel cites and relies on cases that *upheld* the restrictions on carrying concealed weapons in public for the proposition that in *this* case, the Second Amendment guarantees a right to carry concealed weapons in public.[21]  This error alone calls into question the soundness of the panel's reasoning.

Second, the panel categorically dismisses any and all historical sources not addressing the Second Amendment as protecting an individual right—even crediting dissenting over majority opinions.[22]  The Supreme Court in *Heller* did not reject historical sources in this sweeping manner.[23]  Indeed, the Court in *Heller* assessed both favorable and unfavorable historical evidence; for instance, it

---

[20] Op. at 87 & n.6 (Thomas, J., dissenting).
[21] Op. at 25-31 & n.8 (discussing, *e.g.*, *Aymette v. State*, 21 Tenn. 154 (1840), *State v. Reid*, 1 Ala. 612 (1840), *Nunn v. State*, 1 Ga. 243 (1846)).
[22] Op. at 29 & n.9.
[23] *See Heller*, 554 U.S. at 576-619.

7

analyzed and harmonized diverging provisions of state constitutions,[24] and carefully limited conflicting opinions to their precise holdings.[25] Nothing in *Heller* supports the selective historical inquiry engaged in by the panel in this case.

Third, the panel fundamentally misconstrues *Heller*, which describes the Second Amendment right as "the right of law-abiding, responsible citizens to use arms in defense of hearth and home."[26] *Heller* says nothing about the reach of the Second Amendment *outside* the home—as the majority concedes.[27] On the contrary, as the dissent points out, *Heller* made abundantly clear that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions" that are "presumptively lawful," and it cited several cases *upholding* state restrictions on concealed carry.[28]

Only by ignoring the prescribed methods for Second Amendment analysis was the panel opinion able to find absolute constitutional protection for public concealed carry. Supreme Court and Ninth Circuit precedent does not support this dramatic expansion of the Second Amendment—and dramatic contraction of the

---

[24] *See id.* at 601-05.

[25] *See, e.g.*, *id.* at 623-24 (describing the limited holding of *United States v. Miller*, 307 U.S. 174 (1939)).

[26] *Heller*, 554 U.S. at 635; *see, e.g.*, Op. at 43-47, 51-54, 60.

[27] *See* Op. at 10.

[28] *See* Op. at 70 (Thomas, J., dissenting) (citing *Heller*, 554 U.S. at 626-27 & n.26).

ability of legislatures and law enforcement to regulate the proliferation of guns in public.

## II. This Court Should Grant Rehearing *En Banc* Because the Panel Opinion's Decision Conflicts with Decisions of the Supreme Court and of Four Other Circuits.

As the panel readily admits, its radical expansion of the Second Amendment to invalidate a "good cause" concealed carry law is in direct conflict with three circuits' decisions upholding such laws.[29] As discussed below, the majority's decision is also in conflict with a Tenth Circuit decision and with a decision of the Supreme Court.

### A. The Panel Opinion Conflicts with the Supreme Court's Decision in *Robertson* and with Decisions of the Second, Third, Fourth, and Tenth Circuits.

In *Robertson v. Baldwin*, the Supreme Court expressly declared "the right of the people to keep and bear arms . . . is not infringed by laws prohibiting the carrying of concealed weapons."[30] As the dissent notes, the Supreme Court's 2008 decision in *Heller* did not overrule this well-recognized exception to the Second Amendment right, and it remains binding on the Ninth Circuit.[31] The panel opinion does not even mention, much less seek to distinguish, the Supreme Court's

---

[29] Op. at 57-58 (discussing *Drake*, 724 F.3d at 431-35, *Woollard*, 712 F.3d at 876, and *Kachalsky*, 701 F.3d at 89, 97-99).
[30] 165 U.S. 275, 281-82 (1897).
[31] Op. at 94 (Thomas, J., dissenting).

decision in *Robertson*, which is directly contrary to the result reached by the majority. That failure alone warrants *en banc* review.

The panel opinion also directly conflicts with the conclusions of four other circuits. In *Kachalsky* and *Woollard*, the Second and Fourth Circuits considered regulatory schemes just like San Diego County's that require a particularized need for self defense for the issuance of a license to carry a concealed firearm.[32] In both those cases, the courts expressed doubt that protected conduct was burdened by the laws at issue at all, and went on to uphold the laws under intermediate scrutiny.[33]

In *Drake*, the Third Circuit considered a New Jersey law requiring persons who wished to carry a handgun in public to show "justifiable need."[34] The Third Circuit held the requirement "qualifies as a 'presumptively lawful,' 'longstanding' regulation and therefore does not burden conduct within the scope of the Second Amendment's guarantee."[35]

---

[32] *Kachalsky*, 701 F.3d at 86; *Woollard*, 712 F. 3d at 869 (discussing, respectively, New York's and Maryland's concealed-carry regulations schemes).

[33] *Kachalsky*, 701 F.3d at 93-94 ("The proper cause requirement falls outside the core Second Amendment protections identified in *Heller*."); *Woollard*, 712 F. 3d at 876 ("as we move outside the home, firearm rights have always been more limited, because public safety interests often outweigh individual interests in self-defense") (citation omitted).

[34] *Drake*, 724 F.3d at 428-29.

[35] *Id.* at 429-30. Although the *Peruta* majority criticizes *Drake* for relying "on more recent mid-twentieth century developments to justify New Jersey's permitting scheme," *see* Op. at n.21, *Heller* itself relies on such developments to justify other "longstanding" restrictions that fall outside the scope of the Second Amendment. *See Drake*, 724 F.3d at 433-34 (noting that bans on felons possessing

And in *Peterson*, the Tenth Circuit considered Colorado's concealed-handgun licensing regime, and concluded that "bans on the concealed carrying of firearms are longstanding"[36] and that "the Second Amendment does not confer a right to carry concealed weapons."[37]

## III. This Court Should Grant Rehearing *En Banc* Because This Case Raises Questions of Exceptional Importance.

California's legislature, like many others, has exercised its "predictive judgment" to determine that empowering law enforcement to prevent individuals who have no legitimate need to carry concealed loaded firearms in public will best preserve public safety and prevent crime.[38] The panel's decision to contravene that judgment, and to decree that the San Diego County Sheriff's Office (and other California law enforcement, including *Amicus* Sheriff Doyle) *must* issue permits to

---

firearms date from this era).

[36] Indeed, such restrictions are nearly as old as the Republic. *See* Op. at 80-82 (Thomas, J., dissenting). In the decades before the Civil War, at least eight states outlawed the carrying of concealed weapons, and states continued to regulate concealed carry after the war. SAUL CORNELL, A WELL REGULATED MILITIA 131-40 (2006); ALEXANDER DECONDE, GUN VIOLENCE IN AMERICA at 79 (2001). To the extent these prohibitions were challenged in court, they overwhelmingly survived constitutional review—as the Supreme Court acknowledged in *Heller*. *See* 554 U.S. at 626. Between 1903 and 1927, at least eleven states passed new laws that prohibited the carrying of a concealed or concealable weapon without a permit, and many of those granted broad discretion to law enforcement officers deciding whether to issue such permits. *See Peruta*, No. 10-56971, Amicus Br. of Legal Community Against Violence, *et. al.* (Dkt. 56), at 28-30 & n.31 (citing statutes).

[37] 707 F.3d at 1210, 1211.

[38] *Turner Broad. Sys. Inc. v. FCC*, 520 U.S. 180, 195-96 (1997); *see also Kachalsky*, 701 F.3d at 97; *Drake*, 724 F.3d at 436-37.

carry loaded concealed handguns to anyone who requests one based on a generalized concern for personal safety, will have a dramatic impact on public safety and law enforcement.

### A. The Panel Opinion Has Far-Reaching Consequences for Both Public Safety and Law Enforcement.

California's Legislature made a judgment to empower counties to grant concealed carry permits *if* applicants demonstrate "good cause."[39] This standard allows counties to calibrate the issuance of concealed carry permits to the needs of their communities. San Diego County decided that the best way to implement this permitting framework for its dense urban county (the fifth most populous in the United States) was by requiring applicants to show "a set of circumstances that distinguish the applicant from the mainstream and causes him or her to be placed in harm's way."[40] The panel decision strikes down this requirement, and instead requires San Diego County (and every jurisdiction in the entire Ninth Circuit) to issue a concealed carry permit to virtually anyone who wants one.[41]

One need look no further than the daily news to see that this decision places the public's safety in jeopardy. In Florida, which has a system nearly identical to the one that the panel decision would force on the entire Ninth Circuit, Chad Oulson was shot in a Florida movie theater on January 13, 2014 by a man with a

---

[39] Cal. Penal Code §§ 26150, 26155.
[40] Op. at 6-7 (discussing San Diego County's policy).
[41] Op. at 69; *see* Op. at 71 (Thomas, J., dissenting).

concealed weapons permit after an argument over texting and popcorn.[42]

Similarly, in 2012, concealed carry permit holder Michael Dunn pulled out a gun and fatally shot Jordan Davis after an argument over loud music in a gas station parking lot.[43] And in Arizona, another state with almost no limits on who may carry a concealed weapon,[44] Jared Lee Loughner shot Congresswoman Giffords and 18 others outside a Tucson supermarket in 2011.[45] These incidents are just a few examples of the grave dangers that necessarily accompany the proliferation of concealed weapons in public places. The data is clear: the more guns that are carried in public, the more likely that violent crimes and death will occur.[46] The spread of hidden guns in public also endangers the lives of law enforcement: firearms are the leading cause of death for law enforcement officers nationwide.[47]

---

[42] *See e.g.*, Frances Robles, *A Movie Date, a Text Message, and a Fatal Shot*, N.Y. Times, Jan. 21, 2014, http://www.nytimes.com/2014/01/22/us/a-movie-date-a-text-message-and-a-fatal-shot.html?_r=0.

[43] *See*, e.g., Lizette Alvarez, *Jury Reaches Partial Verdict in Florida Killing Over Loud Music*, N.Y. Times, Feb. 15, 2014, http://www.nytimes.com/2014/02/16/us/florida-killing-over-loud-music.html?_r=0.

[44] Arizona allows qualified individuals to carry a concealed handgun without a permit. *See* Ariz. Rev. Stat. § 3102.

[45] *See, e.g.*, James Grimaldi & Fredrick Kunkle, *Gun used in Tucson was purchased legally; Arizona laws among most lax in nation*, Wash. Post, Jan. 9, 2011,http://www.washingtonpost.com/wp-dyn/content/article/2011/01/09/AR2011010901912.html.

[46] As the dissent points out. Op.at 97-8 (citing data presented by appellee).

[47] Although individuals carrying *illegally* perpetrate many crimes, concealed weapons carried by *licensees* have killed at least 14 officers since 2007. Violence Policy Center, *Concealed Carry Killers*, http://www.vpc.org/ccwkillers. htm.

Of course, the panel opinion did not examine this issue at all, since it applied an unprecedented categorical analysis[48] rather than the approach endorsed in *Chovan*, which would have taken into account the government's interest in preserving public safety and keeping concealed loaded guns out of the hands of people like Michael Dunn and Jared Lee Loughner.

*****

The panel's sweeping opinion perfectly illustrates the perils of venturing unnecessarily into the "vast terra incognita" of alleged Second Amendment rights in public.[49]  For this reason and many others, other circuits have tread carefully when deciding Second Amendment challenges to these and other gun laws, recognizing that such decisions involve sensitive public policy issues and the balancing of important governmental and individual interests.  In contrast, the panel opinion summarily dismisses the idea of judicial deference to either law enforcement or the legislature.[50]  This Court should grant *en banc* review to put the power to protect public safety back where it belongs: with California's legislature and law enforcement officials.[51]

---

[48] *See* Op. at 47.

[49] *United States v. Masciandaro*, 638 F.3d 458, 475 (4th Cir. 2011), *cert. denied*, —— U.S. ——, 132 S.Ct. 756 (2011).

[50] *See* Op. at 65-68; *compare Kachalsky*, 701 F.3d at 97; *Drake*, 724 F.3d at 436-37; *Woollard*, 712 F.3d at 881.

[51] Beyond the legal errors described above, the panel made several factual errors.  First, San Diego *County* is not incorporated.  Of the county's 4,261 square

14

## CONCLUSION

For the foregoing reasons, *Amici* respectfully suggest that the Court grant the

Attorney General's request for intervention and rehear this case *en banc*.

Dated:  February 27, 2014  Respectfully submitted,

**COVINGTON & BURLING LLP**
  SIMON J. FRANKEL
  MICHELLE L. MORIN

By:  ___ s/ Simon J. Frankel _____
      SIMON J. FRANKEL

Attorneys for *Amici Curiae*

---

miles, 3,572 are *unincorporated*.  http://www.sandag.org/resources/demographics
_and_other_data/demographics/fastfacts/unin.htm.  And the opinion incorrectly
states that "open carry is prohibited in San Diego County, and elsewhere in
California, without exception."  Op. at 53.  One *can* carry unloaded firearms
publicly in unincorporated areas, with certain exceptions, and loaded firearms can
be carried publicly in less densely-populated areas.  *See* Cal. Penal Code §§
25850(a), 26350(a).  The panel opinion thus assumes incorrectly that California
"express[es] a preference for concealed rather than open carry," Op. at 55-56.

**CERTIFICATION OF COMPLIANCE**

This brief complies with the type-volume limitation of 9th Cir. R. 29-2(c)(2), 32 and 35 because the brief does not exceed 15 pages, excluding material not counted under Fed. R. App. P. 32.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using MS-Word in 14-point Times New Roman font.

February 27, 2014          s/ Simon J. Frankel

Date          *Attorney Name*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 27, 2014, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Signature: <u>s/ Simon J. Frankel</u>