# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| Edward Peruta, *et al.*, | ) |
| | ) |
|     Plaintiffs-Appellants, | )  No. 10-56971 |
| | ) |
|   v. | )  D.C. No. 3:09-cv-02371-IEG BGS |
| | ) |
| County of San Diego, *et al.*, | ) |
| | ) |
|     Defendants-Appellees | ) |
| | ) |

## BRADY CAMPAIGN TO PREVENT GUN VIOLENCE'S REPLY TO APPELLANTS' OPPOSITION TO MOTION FOR LEAVE TO INTERVENE

BRADY CENTER TO PREVENT GUN
   VIOLENCE
LEGAL ACTION PROJECT
Jonathan E. Lowy
Alla Lefkowitz
Robert B. Wilcox, Jr.
840 First Street, N.E. Suite 400
Washington, DC 20002
Tel: (202) 370-8104
Fax: (202) 370-8102
Email: jlowy@bradymail.org

HOGAN LOVELLS US LLP
Neil R. O'Hanlon, SBN 67018*
1999 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Tel: (310) 785-4660
Fax: (310) 785-4601
Email: neil.ohanlon@hoganlovells.com

Jonathan L. Diesenhaus
Adam K. Levin
James W. Clayton
Kathryn L. Marshall
555 Thirteenth Street, N.W.
Washington, DC 20004
Tel: (202) 637-5600
Fax: (202) 637-5910
Email: adam.levin@hoganlovells.com

Dated: April 2, 2014

*Counsel for Proposed Intervenor*
*\* Counsel of Record*

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................ iii

INTRODUCTION .................................................................................................1

I.    IF THE STATE INTERVENES, BRADY DOES NOT NEED TO ESTABLISH STANDING ................................................................2

II.    BRADY HAS STANDING TO INTERVENE ...........................................3

    A.    The Brady Members Have Suffered a Concrete and Particularized Harm that Is Actual or Imminent............................4

    B.    The Brady Members' Injuries Are Redressable .................................10

CONCLUSION ....................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

Brady Campaign to Prevent Gun Violence United with the Million Mom
    March v. Ashcroft, 339 F.Supp.2d 68 (D.D.C. 2004)......................................4, 9

Central Delta Water Agency v. United States,
    306 F.3d 938 (9th Cir. 2002) ...........................................................................7, 9

Churchill v. Babbitt, 150 F.3d 1072 (9th Cir. 1998)
    as amended, 158 F.3d 491 (9th Cir. 1998) ..........................................................6

Covington v. Jefferson Co., 358 F.3d 626 (9th Cir. 2004)...........................................9

Diamond v. Charles, 476 U.S. 54 (1986).............................................................2, 10

Didrickson v. U.S. Dept. of Interior, 982 F.2d 1332 (9th Cir. 1992) ........................2

Duke Power Co. v. Carolina Envtl. Study Grp., Inc.,
    438 U.S. 59 (1978)...............................................................................................6

Ecological Rights Found. v. Pac. Lumber Co.,
    230 F.3d 1141(9th Cir. 2000) ..............................................................................4

Harris v. Bd. of Supervisors, Los Angeles Cnty.,
    366 F.3d 754 (9th Cir. 2004) ...............................................................................9

Jewel v. Nat'l Sec. Agency, 673 F.3d 902 (9th Cir. 2011).........................................5

Kootenai Tribe of Idaho v. Veneman, 313 F.3d 1094 (9th Cir. 2002).......................9

Massachusetts v. Envtl. Prot. Agency, 549 U.S. 497 (2007) ................................2, 5

Mountain States Legal Foundation v. Glickman,
    92 F.3d 1228 (D.C. Cir. 1996).............................................................................6

National Rifle Ass'n of America, Inc. v. McCraw,
    719 F.3d 338 (5th Cir. 2013) ...............................................................................2

Peruta v. Cnty. of San Diego, 758 F. Supp. 2d 1106 (S.D. Cal. 2010).....................8

United States v. Masciandaro, 638 F.3d 458 (4th Cir. 2011) ...................................8

W. Watersheds Project v. Kraayenbrink, 632 F.3d 472 (9th Cir. 2011) ....................2

**OTHER AUTHORITIES**

Cheryl K. Chumley, California Sheriffs See Surge in Concealed Carry
    Permits, The Washington Times (March 18, 2014)..............................................7

John Donohue, The Impact of Concealed-Carry Laws, EVALUATING GUN
    POLICY: EFFECTS ON CRIME AND VIOLENCE 289, 320 (Jens Ludwig &
    Phillip Cook eds. 2003).......................................................................................8

Mark Duggan, More Guns, More Crime, 109 J. POL'Y. ECON. 1086 (2001).............8

# INTRODUCTION

Plaintiff-Appellants do not dispute that the Brady Campaign to Prevent Gun Violence ("Brady") has satisfied all of the Rule 24 requirements for intervention. Their opposition is limited to the argument that the Brady members lack standing. However, not only do the Brady members have standing, but Brady must only establish standing in connection with its Motion for Leave to Intervene ("Motion") if the Court denies the State of California's motion to intervene. If the Court grants the State's motion (as it should), there is no reason to deny Brady's intervention, especially since Brady is the only intervenor seeking to defend San Diego's policy governing the carrying of concealed weapons ("CCW").

Alternatively, if the State is not permitted to intervene, Brady should be permitted to intervene since its members have standing. Each Brady member who submitted a declaration in support of the Motion has a concrete, particularized apprehension of gun violence because of his or her unique experiences. These individualized fears have increased as a result of the panel's decision and affect the Brady members' enjoyment of their lives and constitute legally cognizable injuries. Appellants never confront, much less refute, that the Brady members are injured in this way. Finally, Appellants' suggestion that the Brady members have not presented a redressable injury is incorrect; the members' fears are presently ameliorated by San Diego's policy limiting CCW to individuals with good cause.

## I. IF THE STATE INTERVENES, BRADY DOES NOT NEED TO ESTABLISH STANDING

Brady does not need to independently establish standing if another litigant with standing petitions for en banc review. See Motion at 6; cf. W. Watersheds Project v. Kraayenbrink, 632 F.3d 472, 482 (9th Cir. 2011) ("*absent* the government, however, [Rule 24(a)(2)] Intervenors must now, and for the first time, establish Article III standing") (emphasis added); Didrickson v. Dep't of the Interior, 982 F.2d 1332, 1338-39 (9th Cir. 1992) (Rule 24 (b) "permissive defendant-intervenor must have independent jurisdictional grounds on which to pursue an appeal, *absent* an appeal by the party on whose side the intervenor intervened") (emphasis added).[1] Even a case relied upon by Appellants indicates that standing of a potential intervenor is not an issue when the State is in fact an appellant before the court. See Diamond v. Charles, 476 U.S. 54, 64 (1986). The intervenor's "ability to ride 'piggyback' on the State's undoubted standing exists only if the State is in fact an appellant before the Court". Id. Appellants do not contest that the State can intervene; the State plainly satisfies the intervention

---

[1] Appellant California Rifle and Pistol Association Foundation —which works "hand-in-hand" with the National Rifle Association ("NRA") on litigation—should be familiar with the principle the NRA has relied on. See e.g., National Rifle Ass'n of America, Inc. v. McCraw, 719 F.3d 338, 344 n.3 (5th Cir. 2013) ("The parties also agree that the district court was correct that it need not address the NRA's associational standing because Massachusetts v. EPA holds that '[o]nly one of the petitioners needs to have standing to permit us to consider the petition for review.'")(citing 549 U.S. 497, 518 (2007)).).

factors; and the Court should grant its motion. Thus, Appellants' arguments should be rejected at the outset and Brady should be permitted to intervene.

Nor should Brady's motion be denied on the grounds that its intervention would be cumulative. The Court should grant the Motion because Brady is the only proposed intervenor seeking to vindicate important and unique interests. The State's intervention does not change Brady's strong interest in defending the constitutionality of San Diego's policy and protecting the interests of the Brady members. The State seeks to intervene to defend California law, because the Court's opinion "draws into question the constitutionally of California's entire statutory scheme governing the public carrying of firearms." See State of California's Motion to Intervene at 3, 4, 5, and 11. These interests are distinct. There is an important interest in defending San Diego's CCW policy even if the State intervenes to defend California law.

## II. BRADY HAS STANDING TO INTERVENE

In the event the Court refuses to allow the State to intervene, Brady still should be permitted to intervene because it has standing. Appellants seek to prevent Brady from protecting the interests of its members because, in their view, the Brady members face no increased risk of harm from public carry of concealed and loaded firearms distinct from that faced by the ordinary citizen. Appellants also apparently contest that an increase in guns carried in public increases the risk

3

of gun violence. Appellants misunderstand the nature of the Brady members' injury, mischaracterize the cases supporting the Motion, and distort the record.

### A. The Brady Members Have Suffered a Concrete and Particularized Harm that Is Actual or Imminent

The Brady members will suffer injury if the panel's decision is not reversed. Each member has a concrete and particularized apprehension of gun violence in public that will be increased and will materially affect his or her life if San Diegans are permitted to carry concealed and loaded guns without good cause. See Motion at 10. This Circuit and others have recognized that such apprehension is a legally cognizable injury. See Ecological Rights Found. v. Pac. Lumber Co., 230 F.3d 1141, 1150 (9th Cir. 2000) ( "[T]he contention that the person's future life will be less enjoyable—that he or she really has or will suffer in his or her degree of aesthetic or recreational satisfaction" constitutes injury in fact); Brady Campaign to Prevent Gun Violence United with the Million Mom March v. Ashcroft, 339 F.Supp.2d 68, 76 (D.D.C. 2004) (holding that there was an injury because of the "particular, personal reasons to fear that they may be particularly susceptible to [gun]-related violent crime"). Appellants ignore the Brady members' stated fear and attempt to cast the members' injuries as based on a generalized increased risk of harm. This characterization does not hold up under close scrutiny.

The Brady members have clearly stated how the fear and risk is particular and personal to them. See Motion at 10-11. For example, one Brady member—

4

who survived the mass shooting in Aurora, Colorado—declared that she "specifically reviewed the gun violence prevention laws of the places we considered moving to, including the concealed carry permitting procedure in San Diego County" and that she made her "decision to relocate to San Diego based in part on the County's policy of requiring good cause to obtain a concealed weapons permit." Declaration of Jacqueline Keavney Lader ¶10, Ex. F to the Motion. She also attested that, now that she resides in San Diego, she "frequently visit[s] parks and other places in San Diego, such as beaches, health clubs, and grocery stores. This change in the law [due to the panel's decision] will change where and when [she] visit[s] these places" and that she will "no longer go to some places because of [her] fear for [her] personal safety . . . due to the recent court decision. Id. ¶ 12.

The fact that others could assert a heightened fear of gun violence based on the panel's ruling does not defeat Brady's standing in this case. "[I]t does not matter how many persons have been injured by the challenged action" so long as the party seeking relief can "show that the action injures him in a concrete and personal way." See Massachusetts v. Envtl. Prot. Agency, 549 U.S. 497, 517 (2007) (citations omitted); see also Jewel v. Nat'l Sec. Agency, 673 F.3d 902, 910-11 (9th Cir. 2011).

Appellants' argument that the Brady members' injuries are too speculative to support standing also is mistaken. The test for injury-in-fact depends not on

whether the harm is *certain* to occur but that there is a "reasonable probability of the challenged action's threat to [his or her] concrete interest." Churchill v. Babbitt, 150 F.3d 1072, 1078 (9th Cir. 1998) as amended, 158 F.3d 491 (9th Cir. 1998); see also Mountain States Legal Foundation v. Glickman, 92 F.3d 1228, 1234 (D.C. Cir. 1996).

     As an initial matter, Appellants fail to properly identify the harm at issue, which is the *apprehension* and *fear* of gun violence. Because apprehension is subjective, it is certain to be increased in the Brady members once CCW permits are issued without good cause. In that way, it is similar to the injury held to confer standing in Duke Power Co. v. Carolina Environmental Study Group, 438 U.S. 59 (1978)—a case the Appellants selectively quote and consistently mischaracterize. In that case, the Supreme Court held that "the emission of non-natural radiation into appellees' environment would also seem a direct and present injury given our *generalized concern* about exposure to radiation and the *apprehension* flowing from the *uncertainty* about the health and genetic consequences." Id. at 74 (1978) (emphasis added). The release of hundreds (if not thousands) of concealed and loaded guns in the hands of people with no good cause to carry in public clearly could cause a rational person's "apprehension" about uncertain health consequences from gun violence. While Appellants suggest that people must be geographically close to the locus of the harm, that misunderstands that the

6

increased risk of gun violence from portable, concealed firearms is akin to the increased "apprehension" from a nuclear power plant's emissions

Not only do Appellants ignore Brady's articulated injury, they also demand that Brady demonstrate injury that is certain to occur. Appellants concoct five contingencies that they claim must be established by Brady to demonstrate an increased risk that they will suffer gun violence in public. Opp. at 13. This approach would demand a trial on the merits to determine standing and is made up out of whole cloth. Tellingly, Appellants cite no case to support this heightened standard. In fact, this Circuit has rejected Appellants' argument that a "series of contingencies" is somehow fatal to establishing standing. See Cent. Delta Water Agency v. United States, 306 F.3d 938, 950 (9th Cir. 2002).

Moreover, even if Brady were required to demonstrate a reasonable probability that these contingencies would be met, it could do so. First, since the panel's decision invalidated the good cause requirements, applications for CCW permits have surged across California. See Cheryl K. Chumley, California Sheriffs See Surge in Concealed Carry Permits, The Washington Times (March 18, 2014).[2] Second, some percentage of those applicants will certainly qualify for a permit without the barrier of a good cause requirement. Third, Appellants concede that additional San Diegans will carry concealed and loaded firearms in public; in fact,

---

[2] *Available at* http://www.washingtontimes.com/news/2014/mar/18/california-sheriffs-see-surge-concealed-carry-perm/.

that is the outcome they seek.

As to the last two of Appellants' invented requirements, the studies Brady cited in its Petition for Rehearing (Ex. A to the Motion), see, e.g., Mark Duggan, More Guns, More Crime, 109 J. POL'Y. ECON. 1086 (2001); John Donohue, The Impact of Concealed-Carry Laws, EVALUATING GUN POLICY: EFFECTS ON CRIME AND VIOLENCE 289, 320 (Jens Ludwig & Phillip Cook eds. 2003); the record evidence below, see Peruta v. Cnty. of San Diego, Case No. 3:09-cv-02371-IEG-BGS (S.D. Cal.), Declaration of Franklin E. Zimring, Dkt. No. 38-5; and the District Court's decision, Peruta v. Cnty. of San Diego, 758 F.Supp.2d 1106, 1117 (S.D. Cal. 2010), all establish a "reasonable probability" that increasing the number of concealed weapons in public increases the risk of public gun violence. Indeed, as the Fourth Circuit correctly recognized, "[i]t is not far-fetched to think the Heller Court wished to leave open the possibility that such a danger would rise exponentially as one moved the right from the home to the public square." United States v. Masciandaro, 638 F.3d 458, 475-76 (4th Cir. 2011).

While Appellants suggest that Brady members cannot have standing unless they can prove they will be shot, that would treat the increased risk of gun violence differently than other risks; the law requires only that they show an increased probability that they will be shot. Thus, Appellants' attempts to distinguish the cases cited in Brady's Motion are premised on a basic misunderstanding.

The cases show that there is standing when there is an increased probability of future risk to the litigant who is within the locus of the potential harm, for example: the increased risk of identity theft impacts the people whose personal information was stolen, Krotter v. Starbuck Corp., 628 F.3d 1139, 1142 (9th Cir. 2010); the increased risk from an improperly run landfill impacts property owners living nearby, Covington v. Jefferson Cnty., 358 F.3d 626, 638 (9th Cir. 2004); the increased risk of deficient medical services impacts people who use those services, Harris v. Board of Supervisors, Los Angeles Cnty., 366 F.3d 754, 762 (9th Cir. 2004); the increased risk of salinated water impacts the farmers who use that water supply, Cent. Delta Water Agency, 306 F.3d at 947-950; and the increased risk of decreased enjoyment when regulations are lifted impacts people that visit those places, Kootenai Tribe of Idaho v. Veneman, 313 F.3d 1094, 1109-10 (9th Cir. 2002). Here, the increased risk of gun violence in public spaces impacts the people who go to those public places. See e.g., Brady Campaign, 339 F.Supp.2d at 75-76 (holding that ATF's policy regarding assault weapons increases the risk of assault weapon related crimes involving Brady members).

Treating the increased risk of gun violence differently than other increased risks would mean "that the risk of [gun violence] is somehow less concrete than the risk that failure to assess the risks that a government-sponsored program poses

to an endangered species in a foreign country." Id. at 76.[3]  In short, under the appropriate standard, Brady has standing to intervene.

### B. The Brady Members' Injuries Are Redressable

Appellants' redressability argument turns their own logic on its head.  The Appellants seek to use the courts to strike down San Diego's CCW policy in order to grant previously rejected candidates CCW permits.  At the same time, they seek to bar the Brady members from court by claiming that the panel's decision has no impact on how San Diego administers its CCW policy.  The fact is that prior to the panel's decision there had been no change in the CCW policy.  After the decision, several counties have drafted new CCW policies and thousands of new Californians have applied for CCW permits.  The only reason why the vast majority of these new permits will be issued and consequently will be used to carry concealed weapons in public is the panel's decision.

## CONCLUSION

For the foregoing reasons and for the reasons stated in Brady's Motion, the Court should grant the Motion.

---

[3] Appellants' reliance on Diamond v. Charles, 476 U.S. 54, 64 (1986) is misplaced.  See Opp. at 12-13.  Diamond is not a case about apprehension or increased risk in the vein of Duke Power or the other Ninth Circuit standing cases; it relates to the uncertain loss of a speculative future benefit.  See Diamond, 476 U.S. at 66.  Those are not the facts here.

Dated: April 2, 2014

<div style="display: flex;">

<div>
BRADY CENTER TO PREVENT GUN
  VIOLENCE
LEGAL ACTION PROJECT
Jonathan E. Lowy
Alla Lefkowitz
Robert B. Wilcox, Jr.
840 First Street, N.E. Suite 400
Washington, DC 20002
Tel: (202) 370-8104
Fax: (202) 370-8102
jlowy@bradymail.org
</div>

<div>
HOGAN LOVELLS US LLP

By: /s/ Neil R. O'Hanlon
    Neil R. O'Hanlon, SBN 67018*
    1999 Avenue of the Stars
    Suite 1400
    Los Angeles, CA 90067
    Tel: (310) 785-4660
    Fax: (310) 785-4601
    neil.ohanlon@hoganlovells.com

    Jonathan L. Diesenhaus
    Adam K. Levin
    James W. Clayton
    Kathryn L. Marshall
    555 Thirteenth Street, N.W.
    Washington, DC 20004
    Tel: (202) 637-5600
    Fax: (202) 637-5910
    adam.levin@hoganlovells.com

*Counsel for Proposed Intervenor*
*\* Counsel of Record*
</div>

</div>

**CERTIFICATE OF COMPLIANCE**

This Reply in Support of Brady's Motion complies with the page limitations of Rule 27(d)(2) of the Federal Rules of Appellate Procedure because it does not exceed 10 pages. This Reply also complies with the typeface requirements of FRAP 32(a)(5)(A) and the type style requirements of FRAP 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Office Word 2010 in 14-point font and in Times New Roman.

/s/ Neil R. O'Hanlon
Neil R. O'Hanlon

*Attorney for Proposed Intervenor*

Dated: April 2, 2014

**CERTIFICATE OF SERVICE**

I hereby certify that on April 2, 2014, I filed this Reply in Support of Brady's Motion with the Clerk of Court for the United States Court of Appeals for the Ninth Circuit by using the CM/ECF system, which will electronically serve this brief on all parties and participants in this case.

/s/ Neil R. O'Hanlon
Neil R. O'Hanlon

*Attorney for Proposed Intervenor*

Dated: April 2, 2014