No. 10-56971

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

_____

EDWARD PERUTA, et al.,
*Appellants*

v.

COUNTY OF SAN DIEGO, et al.,
*Appellees*

_____

On Appeal from the United States District Court for the
Southern District of California, No. 09-CV-2371 (Gonzalez, J.)

_____

BRIEF OF *AMICUS CURIAE* THE LAW CENTER TO
PREVENT GUN VIOLENCE IN SUPPORT OF
REHEARING *EN BANC*

_____

SIMON J. FRANKEL
MICHELLE L. MORIN
COVINGTON & BURLING LLP
One Front Street, 35th Floor
San Francisco, California 94111
Telephone: (415) 591-6000

Attorneys for *Amicus Curiae*

**CORPORATE DISCLOSURE STATEMENT**

Pursuant to Fed. R. App. P. 26.1, The Law Center to Prevent Gun Violence states that it has no parent corporations.  It has no stock, and therefore no publicly held company owns 10% or more of its stock.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT.................................................ii

TABLE OF CONTENTS...............................................................................iii

TABLE OF AUTHORITIES.........................................................................iv

INTEREST OF AMICUS CURIAE ................................................................1

INTRODUCTION .........................................................................................1

ARGUMENT .................................................................................................5

I.  *Peruta's* Analytical Approach to Second Amendment Challenges Conflicts with That Prescribed by *Heller* and *Chovan*..................................................5

    A.  *Peruta* Discarded *Chovan's* Two-Step Approach. ....................................5

    B.  *Peruta's* Flawed Alternative Approach Neither Justifies Its Departure from *Heller*, Nor Supports Its Conclusions. ..................................................7

II.  *Peruta's* Holding Conflicts with Decisions of the Supreme Court and of Four Other Circuits. .........................................................................................10

    A.  Concealed Carry Is Not Conduct Protected by the Second Amendment...........10

    B.  In Declaring Concealed Carry to Be Protected Conduct, *Peruta* Creates a Split with Four Other Circuits. .......................................................................11

III.  This Case Raises Questions of Exceptional Importance. ...........................12

    A.  *Peruta* Has Far-Reaching Consequences for Public Safety and Law Enforcement........................................................................................12

    B.  *Peruta* Has Important Implications for the Law of This Circuit. ..................15

CONCLUSION ............................................................................................16

NINTH CIRCUIT RULE 28-2.6 STATEMENT...........................................18

CERTIFICATION OF COMPLIANCE........................................................18

CERTIFICATE OF SERVICE......................................................................19

# TABLE OF AUTHORITIES

Page

CASES

*Aymette v. State,*
   21 Tenn. 154 (1840) ........................................................................8

*Baker v. Kealoha,*
   564 Fed. App'x 903 (9th Cir. Mar. 20, 2014) ........................................ 4, 15

*Baker v. Kealoha,*
   No. 11-cv-528, D.I. 81 Minutes (D. Haw. July 11, 2014) ............................4

*District of Columbia v. Heller,*
   554 U.S. 570 (2008) ................................................................*passim*

*Drake v. Filko,*
   724 F.3d 426 (3d Cir. 2013) ......................................................*passim*

*Fyock v. City of Sunnyvale,*
   No. C-13-5807, 2014 WL 984162, at *3-8 (N.D. Cal. Mar. 5, 2014)................... 6, 14

*Jackson v. City & Cnty. of S.F.,*
   746 F.3d 953 (9th Cir. 2014) ...........................................................6

*Kachalsky v. Cnty. of Westchester,*
   701 F.3d 81 (2d Cir. 2012)........................................................*passim*

*McDonald v. City of Chicago,*
   561 U.S. 742 (2010) ....................................................................1

*McKay v. Hutchens,*
   No. 12-57049 D.I. 64 Order (9th Cir. Oct. 7, 2013) ....................................5

*Morris v. U.S. Army Corps of Eng'rs,*
   --- F. Supp. 3d ---, No. 3:13-cv-00336, 2014 WL 5177343, at *2 (D. Idaho Oct. 13, 2014) ................................................................................15

*Nichols v. Harris,*
   17 F. Supp. 3d 989, 1002 (C.D. Cal. 2014) ........................................ 6, 15

*Nunn v. State,*
    1 Ga. 243 (1846) ........................................................................................8

*Palmer v. District of Columbia,,*
    No. 1:09-cv-1482, 2014 WL 3702854 at *5-7 (D.D.C. July 24, 2014).......................15

*Peruta v. Cnty. of San Diego,*
    742 F.3d 1144 (9th Cir. 2014) ...............................................................*passim*

*Peruta v. Cnty. of San Diego,*
    758 F. Supp. 2d 1106 (S.D. Cal. 2010) ....................................................3

*Peruta v. County of San Diego,*
    771 F.3d 570 (9th Cir. 2014) ...................................................................2

*Peruta v. Cnty. of San Diego,*
    No. 10-56971 D.I. 56 *Amicus* Br. (9th Cir. Aug. 19, 2011) ........................12

*Peterson v. Martinez,*
    707 F.3d 1197 (10th Cir. 2013)...........................................................3, 6, 12

*Richards v. Prieto,*
    No. 11-16255 D.I. 88 Motion (9th Cir. Dec. 16, 2014) .................................4

*Robertson v. Baldwin,*
    165 U.S. 275 (1897) ...........................................................................4, 6, 10

*State v. Buzzard,*
    4 Ark. 18 (1842) ...................................................................................8

*State v. Reid,*
    1 Ala. 612 (1840)..................................................................................8

*Thomson v. Torrance Police Dep't,*
    No. 12-56236 D.I. 28 Order (9th Cir. Feb. 18, 2014) .................................5

*Turner Broad. Sys. Inc. v. FCC,*
    520 U.S. 180 (1997) .............................................................................13

*United States v. Chester,*
    628 F.3d 673 (4th Cir. 2010) ...............................................................5, 6

*United States v. Chovan,*
    735 F.3d 1127 (9th Cir. 2013) ..................................................................*passim*

*United States v. Masciandaro,*
    638 F.3d 458 (4th Cir. 2011), *cert. denied*, —— U.S. ——,
    132 S.Ct. 756 (2011) ...........................................................................16

*United States v. Miller,*
    307 U.S. 174 (1939) ..............................................................................8

*Woollard v. Gallagher,*
    712 F.3d 865 (4th Cir. 2013) ................................................................*passim*

STATUTES

Ariz. Rev. Stat. § 13-3102 ........................................................................14

Cal. Penal Code § 25850(a) .......................................................................16

Cal. Penal Code § 26150 .............................................................................13

Cal. Penal Code § 26155 .............................................................................13

Cal. Penal Code 26350(a) ...........................................................................16

Haw. Rev. Stat. Ann. § 134-9(a) ...............................................................4

RULES

Fed. R. App. P. 44 ........................................................................................15

Fed. R. Civ. P. 5.1 ........................................................................................15

CONSTITUTIONAL PROVISIONS

U.S. Const. amend. II ..................................................................................*passim*

OTHER AUTHORITIES

Lizette Alvarez, *Jury Reaches Partial Verdict in Florida Killing Over Loud Music,*
    N.Y. Times, Feb. 15, 2014, http://www.nytimes.com/2014/02/16/
    us/florida-killing-over-loud-music.html?_r=0 ....................................14

SAUL CORNELL, A WELL REGULATED MILITIA (2006) ..................................12

vi

ALEXANDER DECONDE, GUN VIOLENCE IN AMERICA (2001) .......................................12

Florida Department of Agriculture and Consumer Services, Division of Licensing,
   Number of Licensees by Type, Nov. 30, 2014,
   http://www.freshfromflorida.com/content/download/7471/118627/Number_of
   _Licensees_By_Type.pdf. ...............................................................................................3

James V. Grimaldi and Fredrick Kunkle, *Gun used in Tucson was purchased
   legally; Arizona laws among most lax in nation*, Wash. Post, Jan. 9, 2011,
   http://www.washingtonpost.com/wp-
   dyn/content/article/2011/01/09/AR2011010901912.html....................................14

Ed Joyce, *With restrictions relaxed, thousands apply to carry concealed firearms in OC*, Southern
   California Public Radio, April 14, 2014. .........................................................................3

Clifton B. Parker, Right-to-carry gun laws linked to increase in violent crime, Stanford
   research shows, Stanford Report, Nov. 14 (2014), *available at*
   http://news.stanford.edu/news/2014/november/donohue-guns-study-
   111414.html. ..................................................................................................................14

Frances Robles, *A Movie Date, a Text Message, and a Fatal Shot*,
   N.Y. Times, Jan. 21, 2014, http://www.nytimes.com/2014/01/22/us/
   a-movie-date-a-text-message-and-a-fatal-shot.html?_r=0 .........................................14

Violence Policy Center, Concealed Carry Killers
   http://www.vpc.org/ccwkillers.htm ..........................................................................15

## INTEREST OF AMICUS CURIAE

*Amicus* The Law Center to Prevent Gun Violence (the "Law Center") is a national law center dedicated to preventing gun violence.[1]  Founded after an assault weapon massacre at a San Francisco law firm in 1993, the Law Center provides legal and technical assistance in support of gun violence prevention.  The Law Center tracks and analyzes federal, state, and local firearm legislation, as well as legal challenges to firearm laws.  The Law Center filed an *amicus* brief in support of San Diego County in the above-captioned matter, and has also provided informed analysis as an *amicus* in a variety of other major firearm-related cases, including *District of Columbia v. Heller*, 554 U.S. 570 (2008) and *McDonald v. City of Chicago*, 561 U.S. 742 (2010).

## INTRODUCTION

On February 13, 2014, a split panel of this Court ruled that the Second Amendment requires every state in this Circuit to issue a permit to carry a concealed, loaded handgun, in almost all public areas, to virtually anyone who desires one.  The panel's radical expansion of the Second Amendment right is completely unprecedented, and contradicts decisions of the Supreme Court, this Court, and at

---

[1] The Law Center was formerly known as Legal Community Against Violence. The Law Center affirms, pursuant to Fed. R. App. P. 29(c)(5), that no counsel for a party authored this brief in whole or in part and that no person other than *amicus curiae* and its counsel made a monetary contribution to its preparation or submission.

This brief is filed pursuant to the Court's Order dated December 3, 2014, allowing for filing of *amicus curiae* briefs by any party within 21 days of that Order.

1

least four other circuits. Rather than considering the narrow question presented of "whether the scope of the Second Amendment extended to concealed carry of handguns in public and, if so, whether San Diego County's 'good cause' requirement unconstitutionally infringed on that right,"[2] the majority instead "assess[ed] whether *the* [entire] *California scheme* [for licensing firearms] deprives any individual of his constitutional rights."[3] By reaching far beyond the challenged county sheriff's concealed carry permitting rules, the majority was able to "magically endow" previously unprotected conduct—the concealed carrying of guns in public places— with Second Amendment protection.[4] This decision has profound implications for public safety and the rule of *stare decisis* in this Circuit, and should be reviewed by this Court *en banc*.

The panel's divided decision greatly narrowed California's "presumptively lawful" and longstanding statutory requirement that an applicant for a concealed carry permit must demonstrate "good cause."[5] Namely, the majority struck down the San Diego County Sheriff's Department's implementation of the "good cause" standard, which required applicants to make a showing of need beyond a generalized assertion

---

[2] *Peruta v. Cnty. of San Diego*, 771 F.3d 570, 576 (9th Cir. 2014) (Thomas, J., dissenting).

[3] *Id.* (Thomas, J., dissenting) (citing *Peruta v. Cnty. of San Diego*, 742 F.3d 1144, 1169 (9th Cir. 2014)).

[4] *Peruta*, 742 F.3d at 1194 (Thomas, J., dissenting).

[5] *Id.* at 1179 (Thomas, J., dissenting).

of self-defense.[6] Many other California jurisdictions implement the "good cause" requirement in this fashion and, as a result, the panel's decision will likely put hundreds of thousands, if not millions, of additional concealed handguns on the streets[7] by eviscerating law enforcement's authority to place reasonable limitations on concealed weapons permits in order to protect public safety.[8]

The Law Center respectfully asks this Court to rehear this case *en banc* for the following reasons:

- The decision in *Peruta* discards the mode of analysis for Second Amendment challenges adopted by the Supreme Court, a preceding panel of this Court, and other circuits,[9] and substitutes a selective, ahistorical, and logically flawed

---

[6] The panel reversed the district court, which had found that the law survived intermediate scrutiny. *Peruta v. Cnty. of San Diego*, 758 F. Supp. 2d 1106, 1117 (S.D. Cal. 2010) (reversed on appeal).

[7] These numbers are not exaggerated. The state of Florida, which has almost half the population of California and a permissive concealed carry permitting system, has issued more than 1.3 *million* licenses for individuals to carry a concealed weapon in public. *See* Florida Department of Agriculture and Consumer Services, Division of Licensing, Number of Licensees by Type, Nov. 30, 2014, *available at* http://www.freshfromflorida.com/content/download/7471/118627/Number_of_Licensees_By_Type.pdf (last visited December 22, 2014).

[8] Indeed, in Orange County alone, over 3,500 concealed-weapon permit applications flooded the Sheriff's Department in just the two-month period following the panel's opinion. Prior to the opinion, the department was receiving only about 500 applications per *year*. Ed Joyce, *With restrictions relaxed, thousands apply to carry concealed firearms in OC*, Southern California Public Radio, April 14, 2014.

[9] *See District of Columbia v. Heller*, 554 U.S. 570 (2008); *United States v. Chovan*, 735 F.3d 1127, 1136-37 (9th Cir. 2013); *see also Kachalsky v. Cnty. of Westchester*, 701 F.3d 81, 89-93 (2d Cir. 2012), *Drake v. Filko*, 724 F.3d 426, 429 (3d Cir. 2013); *Woollard v. Gallagher*, 712 F.3d 865, 875 (4th Cir. 2013); *Peterson v. Martinez*, 707 F.3d 1197, 1208-09 (10th Cir. 2013) (applying same two-step inquiry).

3

approach to rationalize the panel's wish to consider matters beyond the scope of the challenged statute. On this unsteady foundation, *Peruta* for the first time endows unprotected conduct, the concealed carry of firearms, with Second Amendment protection.

- In holding that carrying a loaded, concealed weapon in public has somehow become constitutionally-protected conduct, the opinion conflicts with decisions of the Second, Third, Fourth and Tenth Circuits.[10] The split panel decision also directly conflicts with the Supreme Court's finding in *Robertson v. Baldwin* that carrying concealed weapons is *not* protected conduct under the Second Amendment.[11]

- Whether the Second Amendment includes a right to carry a concealed, loaded weapon in public, and whether any such right may properly be subject to a "good cause" restriction of the type applied in San Diego County, are questions of exceptional importance, with far-reaching implications for public safety and law enforcement—as demonstrated by a number of cases stayed pending resolution of this appeal.[12]

---

[10] *See supra*, note 9.

[11] *Robertson v. Baldwin*, 165 U.S. 275, 281-82 (1897).

[12] The fate of Hawaii's law regulating the issuance of concealed carry permits, Haw. Rev. Stat. Ann. § 134-9(a), will likely be decided by the outcome of this case, further demonstrating the critical need for *en banc* review. *See Baker v. Kealoha*, 564 Fed. App'x 903, 904-05 (9th Cir. Mar. 20, 2014) (remanding for further proceedings consistent with *Peruta*). The district court case in Hawaii is stayed pending resolution of post-opinion matters in *Peruta*. *Baker v. Kealoha*, No. 11-cv-528, D.I. 81 Minutes (D.

4

Because of the importance of this case to public safety, to law enforcement, and to the vigorous national debate surrounding the Second Amendment, the Law Center respectfully asks this Court to rehear this case *en banc.*

## ARGUMENT

### I. *Peruta's* Analytical Approach to Second Amendment Challenges Conflicts with That Prescribed by *Heller* and *Chovan.*

#### A. *Peruta* Discarded *Chovan's* Two-Step Approach.

The *Peruta* panel did not come to this case with a blank slate. This Circuit had already held, consistent with Circuit and Supreme Court precedent, and with the approach taken by other circuits, that a two-step inquiry governs Second Amendment challenges.[13] First, the court asks whether the challenged law burdens conduct protected by the Second Amendment.[14] Following the Supreme Court's *Heller* decision, the *Chovan* court noted that "the core of the Second Amendment is 'the right of law-abiding, responsible citizens to use arms in defense of hearth and home.'"[15] If the conduct at issue is not within the scope of the Second Amendment's protection,

---

Haw. July 11, 2014). Several other pending cases raise similar issues about California's laws. *See, e.g., Richards v. Prieto*, No. 11-16255, D.I. 88 Motion (9th Cir. Dec. 16, 2014) (Appellee's Motion for Relief from Stay, requesting concurrent consideration with *Peruta*); *McKay v. Hutchens*, No. 12-57049, D.I. 64 Order (9th Cir. Oct. 7, 2013) (stayed pending resolution of *Peruta*); *Thomson v. Torrance Police Dep't*, No. 12-56236, D.I. 28 Order (9th Cir. Feb. 18, 2014) (same).

[13] *Chovan*, 735 F.3d at 1136.

[14] *Id.* (citing *United States v. Chester*, 628 F.3d 673, 680 (4th Cir. 2010)).

[15] *Id.* at 1138 (quoting *Heller*, 554 U.S. at 635).

then the law is valid and the inquiry ends.[16]  If the challenged law burdens protected conduct, then the court applies an appropriate level of scrutiny.[17]  That inquiry had been the framework relied upon by legislatures and courts before *Peruta*,[18] and it remains the framework applied in this Circuit today.[19]

As the dissent pointed out, the *Peruta* majority brazenly disregarded both steps of the two-part inquiry.[20]  First, instead of examining the burden on the Second Amendment imposed *by the challenged law*—San Diego County's standard for issuing *concealed carry* permits—the panel reached out to examine California's *entire* statewide scheme regulating both concealed and open carry.[21]  Had the opinion properly applied the first step of the *Chovan* analysis, it would have concluded, as the Tenth Circuit did in *Peterson*, that carrying a concealed weapon is *not* within the scope of the Second Amendment right.[22]  The panel's analysis should have ended there.

---

[16] *Id.* at 1134.

[17] *Id.* (citing *Chester*, 628 F.3d at 680).

[18] *See, e.g.*, *Woollard*, 712 F.3d at 869, 876; *Kachalsky*, 701 F.3d at 96.

[19] *See, e.g.*, *Jackson v. City & Cnty. of S.F.*, 746 F.3d 953, 960 (9th Cir. 2014); *Nichols v. Harris*, 17 F. Supp. 3d 989, 1002 (C.D. Cal. 2014); *Fyock v. City of Sunnyvale*, No. C-13-5807, 2014 WL 984162, at *3-8 (N.D. Cal. Mar. 5, 2014).

[20] *Peruta*, 742 F.3d at 1194 (Thomas, J., dissenting).

[21] *Peruta*, 742 F.3d at 1168-73.

[22] *See, e.g.*, *Peterson*, 707 F.3d at 1201, 1208-09 (holding that "carrying of concealed firearms is not protected by the Second Amendment" in a case where plaintiff challenged only Colorado's concealed-carry statute but not Denver's open-carry ordinance); *see also Robertson*, 165 U.S. at 281-82.

After misconstruing the first inquiry, the panel then completely failed to apply the second step of the *Chovan* analysis—"apply[ing] an appropriate level of scrutiny."[23] Instead, the majority decided it would use "an alternative approach for the most severe cases" that involves "per se invalidation" with no scrutiny applied whatsoever.[24]  The panel claimed that this is "the approach used in *Heller* itself,"[25] but this disregards *Chovan's* holding that the two-step approach "reflects the Supreme Court's holding in *Heller*."[26]  The panel's failure to apply any level of scrutiny directly conflicts with this Court's precedent in *Chovan* and warrants *en banc* review and correction.

**B.    *Peruta's* Flawed Alternative Approach Neither Justifies Its Departure from *Heller*, Nor Supports Its Conclusions.**

Despite a lack of precedent for its approach, the panel nonetheless took it upon itself to dramatically expand the Second Amendment right, not only finding it to apply outside the home, but with such force as to render unconstitutional  San Diego's implementation of the "good cause" requirement, despite its similarity to concealed carry permitting laws unanimously upheld in other circuits.  The panel arrived at its conclusion by engaging in circular and flawed reasoning that included at least three critical errors.

---

[23] *Chovan*, 735 F.3d at 1136 (citing *Chester*, 628 F.3d at 680).
[24] *Peruta*, 742 F.3d at 1168-70.
[25] *Peruta*, 742 F.3d at 1168.
[26] *Chovan*, 735 F.3d at 1136.

First, as the dissent pointed out,[27] ample historical evidence demonstrates that prohibitions on concealed carry have long been considered consistent with the Second Amendment and "presumptively lawful."[28] Yet the majority cites and relies on the very cases that *upheld* restrictions on carrying concealed weapons in public for the proposition that in *this* case, the Second Amendment guarantees a right to carry concealed weapons in public and as such, San Diego's permitting system must fail.[29]

Second, the panel categorically dismissed any and all historical sources not addressing the Second Amendment as protecting an individual right—even crediting dissenting over majority opinions.[30] The Supreme Court in *Heller* did not reject historical sources in this sweeping manner.[31] Indeed, the Court in *Heller* assessed both favorable and unfavorable historical evidence; for instance, it analyzed and harmonized diverging provisions of state constitutions,[32] and carefully limited conflicting opinions to their precise holdings.[33] Nothing in *Heller* supports the selective historical inquiry engaged in by the panel in this case.

---

[27] *Peruta*, 742 F.3d at 1187 & n.6 (Thomas, J., dissenting).

[28] *Peruta*, 742 F.3d at 1182-1191 (Thomas, J., dissenting).

[29] *Peruta*, 742 F.3d at 1157-58 & n.8 (discussing, *e.g.*, *Aymette v. State*, 21 Tenn. 154 (1840), *State v. Reid*, 1 Ala. 612 (1840), *Nunn v. State*, 1 Ga. 243 (1846)).

[30] *Peruta*, 742 F.3d at 1159 & n.9 (citing dissent in *State v. Buzzard*, 4 Ark. 18 (1842)).

[31] *See Heller*, 554 U.S. at 576-619.

[32] *See id.* at 601-05.

[33] *See, e.g.*, *id.* at 623-24 (describing the limited holding of *United States v. Miller*, 307 U.S. 174 (1939)).

8

Third, the panel fundamentally misconstrues *Heller*, which describes the Second Amendment right as "the right of law-abiding, responsible citizens to use arms *in defense of hearth and home*."[34]  *Heller* says nothing about the reach of the Second Amendment *outside* the home—as the majority concedes.[35]  On the contrary, as the dissent points out, *Heller* made abundantly clear that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions" that are "presumptively lawful," and cited several cases *upholding* state restrictions on concealed carry, noting that "the majority of the 19th-century courts to consider the question held that prohibitions on carrying concealed weapons were lawful under the Second Amendment.[36]

Only by ignoring the prescribed methods for Second Amendment analysis could the *Peruta* panel conjure constitutional protection for public concealed carry. Supreme Court and Ninth Circuit precedent does not support this dramatic expansion of the Second Amendment—and the correspondingly dramatic contraction of the ability of legislatures and law enforcement to regulate the proliferation of guns in public.

---

[34] *Heller*, 554 U.S. at 635 (emphasis added); *see, e.g.*, *Peruta*, 742 F.3d at 1165-66, 1168-69, 1171-72.

[35] *See Peruta*, 742 F.3d at 1150 & n.2.

[36] *See Peruta*, 742 F.3d at 1179 (Thomas, J., dissenting) (citing *Heller*, 554 U.S. at 626-27 & n.26).

**II.** ***Peruta's* Holding Conflicts with Decisions of the Supreme Court and of Four Other Circuits.**

As the panel readily admitted, its radical expansion of the Second Amendment to invalidate San Diego's implementation of the "good cause" requirement is in direct conflict with three circuits' decisions upholding similar laws.[37] As discussed below, the majority's decision is also in conflict with decisions from the Tenth Circuit and the Supreme Court.

**A. Concealed Carry Is Not Conduct Protected by the Second Amendment.**

In *Robertson v. Baldwin*, the Supreme Court expressly declared that "the right of the people to keep and bear arms . . . is not infringed by laws prohibiting the carrying of concealed weapons."[38] As the dissent notes, the Supreme Court's 2008 decision in *Heller* did not overrule this well-recognized exception to the Second Amendment right, and it remains binding on the Ninth Circuit.[39] The divided panel opinion does not even mention, much less seek to distinguish, the Supreme Court's decision in *Robertson*, which is directly contrary to the result reached by the majority. That failure alone warrants *en banc* review.

---

[37] *Peruta*, 742 F.3d at 1173 (discussing *Drake*, 724 F.3d at 431-35, *Woollard*, 712 F.3d at 876, 879-82, and *Kachalsky*, 701 F.3d at 89, 97-99).

[38] 165 U.S. at 281-82.

[39] *Peruta*, 742 F.3d at 1191 (Thomas, J., dissenting).

10

**B.    In Declaring Concealed Carry to Be Protected Conduct, *Peruta* Creates a Split with Four Other Circuits.**

The panel opinion also directly conflicts with the conclusions of four other circuits.  In *Kachalsky* and *Woollard*, the Second and Fourth Circuits considered regulatory schemes, similar to San Diego County's, that require an applicant to show a particularized need for self-defense in order to obtain a license to carry a concealed firearm.[40]  In both cases, the courts expressed doubt that  these provisions burdened Second Amendment rights at all, and went on to uphold the laws under intermediate scrutiny. [41]

In *Drake*, the Third Circuit considered a New Jersey law requiring concealed carry permit applicants to show "justifiable need."[42]  The Third Circuit held that the requirement "qualifies as a 'presumptively lawful,' 'longstanding' regulation and therefore does not burden conduct within the scope of the Second Amendment's guarantee."[43] The court also found, in the alternative, that the requirement

---

[40] *Kachalsky*, 701 F.3d at 86; *Woollard*, 712 F. 3d at 869 (discussing, respectively, New York's and Maryland's concealed-carry permitting schemes).

[41] *Kachalsky*, 701 F.3d  at 93-94 ("The proper cause requirement falls outside the core Second Amendment protections identified in *Heller*."); *Woollard*, 712 F. 3d at 876 ("as we move outside the home, firearm rights have always been more limited, because public safety interests often outweigh individual interests in self-defense") (citation omitted).

[42] *Drake*, 724 F.3d at 428-29.

[43] *Id.* at 429-30.

"withstands intermediate scrutiny," noting the "reasonable fit" between the law and the "significant, substantial and important interest" of protecting public safety.[44]

Finally, in *Peterson*, the Tenth Circuit considered Colorado's concealed carry licensing regime, and concluded that "bans on the concealed carrying of firearms are longstanding"[45] and that "the Second Amendment does not confer a right to carry concealed weapons."[46] The divided panel decision in *Peruta* is directly at odds with each of these holdings and should be reviewed *en banc*.

## III. This Case Raises Questions of Exceptional Importance.

### A. *Peruta* Has Far-Reaching Consequences for Public Safety and Law Enforcement.

California's legislature, like others, has exercised its "predictive judgment" to determine that empowering law enforcement to prevent individuals who have no specified need to carry a concealed, loaded firearm in public will best preserve public

---

[44] *Id.* at 437-40.

[45] *Peterson*, 707 F.3d at 1210. Indeed, such restrictions are nearly as old as the Republic. *See Peruta*, 742 F.3d at 1184-89 (Thomas, J., dissenting). In the decades before the Civil War, at least eight states outlawed the carrying of concealed weapons, and states continued to regulate concealed carry after the war. SAUL CORNELL, A WELL REGULATED MILITIA 131-40 (2006); ALEXANDER DECONDE, GUN VIOLENCE IN AMERICA at 79 (2001). To the extent these prohibitions were challenged in court, they overwhelmingly survived constitutional review—as the Supreme Court acknowledged in *Heller*. *See* 554 U.S. at 626. Between 1903 and 1927, at least eleven states passed new laws that prohibited the carrying of a concealed or concealable weapon without a permit, and many of those granted broad discretion to law enforcement officers deciding whether to issue such permits. *See Peruta*, No. 10-56971 (9th Cir. Aug. 19, 2011), D.I. 56 *Amicus* Br. of Legal Community Against Violence, *et. al.*, at 28-30 & n.31 (citing statutes).

[46] *Peterson*, 707 F.3d at 1210-11.

12

safety and prevent crime.[47]  The panel's decision to contravene that judgment, and to decree that concealed carry permits *must* issue to otherwise-qualified applicants with only generalized self-defense concerns, will have a dramatic impact on public safety and law enforcement.

The California Legislature made a judgment to empower counties to grant concealed carry permits *if* applicants demonstrate "good cause."[48]  This standard allows counties to tailor the issuance of concealed carry permits to the particular needs of their communities.  San Diego County decided that the best way to implement this permitting framework for its dense urban community (the fifth most populous in the United States) was by requiring applicants to show "a set of circumstances that distinguish the applicant from the mainstream and causes him or her to be placed in harm's way."[49]  The divided panel decision strikes down this requirement, and instead forces San Diego County (along with every jurisdiction in the entire Ninth Circuit) to issue a concealed carry permit to any otherwise-qualified applicant who merely claims a generalized need for self-defense.[50]

One need look no further than the daily news to see that this decision places the public's safety in jeopardy.  In Florida, which has a system nearly identical to the one that the panel decision would force on the entire Ninth Circuit, Chad Oulson was

---

[47] *Turner Broad. Sys. Inc. v. FCC*, 520 U.S. 180, 195-96 (1997); *see also Kachalsky*, 701 F.3d at 97; *Drake*, 724 F.3d at 436-37.

[48] Cal. Penal Code §§ 26150(a)(2), 26155(a)(2).

[49] *Peruta*, 742 F.3d at 1148-49 (discussing San Diego County's policy).

[50] *Peruta*, 742 F.3d at 1170-72, 1179; *see id.* at 1179-80 (Thomas, J., dissenting).

13

shot in a Florida movie theater on January 13, 2014 by a man with a concealed

weapons permit after an argument over texting and popcorn.[51]  Similarly, in 2012,

concealed carry permit holder Michael Dunn pulled out a gun and fatally shot Jordan

Davis after an argument over loud music in a gas station parking lot.[52]  In Arizona,

another state with almost no limits on who may carry a concealed weapon,[53] Jared Lee

Loughner, carrying a legally-concealed handgun, shot Congresswoman Gabrielle

Giffords and 18 others, killing six, including a 9-year-old girl, outside a Tucson

supermarket in 2011.[54]

     These incidents are just a few examples of the grave dangers that accompany

the proliferation of concealed weapons in public, a proposition which is supported by

an ever-growing body of data.  The evidence is clear: the more guns carried in public,

the more likely it is that violent crimes and death will occur.[55]  The spread of hidden

---

[51] *See e.g.*, Frances Robles, *A Movie Date, a Text Message, and a Fatal Shot*, N.Y. Times, Jan. 21, 2014, http://www.nytimes.com/2014/01/22/us/a-movie-date-a-text-message-and-a-fatal-shot.html?_r=0.

[52] *See*, e.g., Lizette Alvarez, *Jury Reaches Partial Verdict in Florida Killing Over Loud Music*, N.Y. Times, Feb. 15, 2014, http://www.nytimes.com/2014/02/16/us/florida-killing-over-loud-music.html.

[53] Arizona allows qualified individuals to carry a concealed handgun without a permit.  *See* Ariz. Rev. Stat. § 13-3102.

[54] *See, e.g.*, James Grimaldi & Fredrick Kunkle, *Gun used in Tucson was purchased legally; Arizona laws among most lax in nation*, Wash. Post, Jan. 9, 2011, http://www.washingtonpost.com/wp-dyn/content/article/2011/01/09/AR2011010901912.html.

[55] *See* Clifton B. Parker, Right-to-carry gun laws linked to increase in violent crime, Stanford research shows, Stanford Report, Nov. 14 (2014), *available at* http://news.stanford.edu/news/2014/november/donohue-guns-study-111414.html. This point was also made in the *Peruta* dissent.  *See Peruta*, 742 F.3d at 1192 (citing data presented by appellee).

guns in public also endangers the lives of law enforcement, as firearms are the leading cause of death for officers nationwide.[56]

The panel opinion did not consider these implications at all, since it applied an unprecedented categorical analysis rather than the approach endorsed in *Chovan*,[57] which would have taken into account the government's interest in preserving public safety by keeping concealed, loaded guns out of the hands of people like Michael Dunn and Jared Lee Loughner.

### B. *Peruta* Has Important Implications for the Law of This Circuit.

Numerous cases in the courts of this Circuit and others have already cited to *Peruta*, whether for its novel approach to Second Amendment analysis or for its holding that the Second Amendment right extends outside the home.[58] Yet *Peruta's* holding was reached without the benefit of briefing by California's Attorney General, nor certification under Fed. R. App. P. 44 and Fed. R. Civ. P. 5.1. Allowing *Peruta* to remain on the books violates a fundamental rule of Circuit law: once a panel decides a legal issue, that ruling binds subsequent panels, absent intervening higher authority.

---

[56] Although individuals carrying firearms *illegally* perpetrate many crimes, concealed weapons carried by *licensees* have killed at least 17 law enforcement officers since 2007. Violence Policy Center, *Concealed Carry Killers*, http://www.vpc.org/ccwkillers.htm.

[57] *See Peruta*, 742 F.3d at 1166.

[58] *See, e.g.*, *Palmer v. District of Columbia*, No. 1:09-cv-1482, 2014 WL 3702854 at *5-7 (D.D.C. July 24, 2014) (right extends outside the home); *Nichols*, 17 F. Supp. 3d at 1003 (same); *Fyock*, 2014 WL 984162 at *3 (same); *Baker*, 564 F. App'x at 904-05 (remanding in light of *Peruta*); *Morris v. U.S. Army Corps of Eng'rs*, --- F. Supp. 3d ---, No. 3:13-cv-00336, 2014 WL 5177343, at *2 (D. Idaho Oct. 13, 2014) (applying alternative "destroys the right" approach).

No such intervening authority exists to overrule the holdings of *Chovan*, and certainly not without the benefit of California's position on the sweeping implications of the panel's broadened definition of the "challenged" law at issue. The case should be reheard *en banc* for this reason, in addition to the other reasons discussed above.

## CONCLUSION

*Peruta* illustrates the perils of venturing unnecessarily into the "vast *terra incognita*" of Second Amendment challenges in public places.[59] Other circuits have tread carefully when deciding such challenges, recognizing that these decisions involve sensitive public policy issues and important governmental and individual interests. In contrast, the split panel opinion summarily dismisses judicial deference.[60] This Court should grant *en banc* review to rectify the glaring legal errors of the divided *Peruta* panel and return the power to protect public safety to California's legislature and law enforcement officials.[61]

---

[59] *United States v. Masciandaro*, 638 F.3d 458, 475 (4th Cir. 2011), *cert. denied*, ⸺ U.S. ⸺, 132 S.Ct. 756 (2011).

[60] *See Peruta*, 742 F.3d at 1173-76; *compare Kachalsky*, 701 F.3d at 97; *Drake*, 724 F.3d at 436-37; *Woollard*, 712 F.3d at 881.

[61] The panel also made several factual errors, including that San Diego *County* is not incorporated. Of the county's 4,261 square miles, 3,572 are *unincorporated*. http://www.sandag.org/resources/demographics_and_other_data/demographics/fastfacts/unin.htm. And open carry is not "prohibited in . . . California, without exception." *Peruta*, 742 F.3d at 1171. One *can* carry unloaded firearms in unincorporated areas, with certain exceptions, and loaded firearms can be carried publicly in less densely-populated areas. Cal. Penal Code §§ 25850(a), 26350(a).

Dated:    December 23, 2014          Respectfully submitted,

**COVINGTON & BURLING LLP**
 SIMON J. FRANKEL
 MICHELLE L. MORIN

By: _____s/ Simon J. Frankel_____
        SIMON J. FRANKEL

Attorneys for *Amicus Curiae*

## NINTH CIRCUIT RULE 28-2.6 STATEMENT

In accordance with Ninth Circuit Rule 28-2.6, there are two other cases in this Court that are deemed related to the above-captioned matter in that they raise closely related issues: *Richards v. Prieto*, 11–16255 (9th Cir.) and *Baker v. Kealoha*, No. 12–16258, (9th Cir.).

December 23, 2014                    s/ Simon J. Frankel
Date                                 *Attorney Name*


## CERTIFICATION OF COMPLIANCE

This brief complies with the type-volume limitation of 9th Cir. R. 29-2(c)(2), 32 and 35 because the brief contains 4,163 words, excluding material not counted under Fed. R. App. P. 32.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using MS-Word in 14-point Garamond font.

December 23, 2014                    s/ Simon J. Frankel
Date                                 *Attorney Name*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 23, 2014, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Signature: s/ Simon J. Frankel

December 23, 2014