IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

EDWARD PERUTA, et al.,
*Plaintiffs-Appellants*,

v.

COUNTY OF SAN DIEGO, et al.,
*Defendants-Appellees*.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF CALIFORNIA
(CV 09-02371-IEG)

**APPELLANTS' OPPOSITION TO SUA SPONTE
REHEARING EN BANC**

C.D. Michel SBN 144258
Glenn S. McRoberts SBN 144852
Sean A. Brady SBN 262007
Anna M. Barvir SBN 268728
MICHEL & ASSOCIATES, P.C.
180 East Ocean Blvd., Suite 200
Long Beach, CA 90802
Tel.: (5620 216-4444
Fax: (562) 216-4445
cmichel@michellawyers.com

Paul D. Clement
Erin E. Murphy
Bancroft PLLC
1919 M Street, N.W.
Suite 470
Washington, D.C. 20036
Tel.: (202) 234-0090
pclement@bancroftpllc.com

Paul Neuharth, Jr. SBN 147073
PAUL NEUHARTH, JR., APC
1140 Union St., Suite 102
San Diego, CA 92101
Tel.: (619) 231-0401
Fax: (619) 231-8759
pneuharth@sbcglobal.net

*Counsel for Plaintiffs-Appellants*

# TABLE OF CONTENTS

PAGE(S)

OPPOSITION TO SUA SPONTE REHEARING EN BANC . . . . . . . . . . . . . 1

STATEMENT OF THE FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*ARGUME*NT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

I.    The Panel Correctly Concluded That the Second Amendment
      Is Not Confined to the Home . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

II.   The Panel Correctly Concluded That Law-Abiding Citizens May
      Not Be Denied the Only Available Avenue for Exercising
      Their Constitutional Right To Carry a Firearm Outside the Home
      for Self-Defense . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

**PAGE(S)**

## FEDERAL CASES

*District of Columbia v. Heller*,
    554 U.S. 570 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Drake v. Filko*,
    724 F.3d 426, 431 (3d Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 13

*Kachalsky v. Cnty. of Westchester*,
    701 F.3d 81 (2d Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 13

*Moore v. Madigan*,
    702 F.3d 933 (7th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 8, 13

*Peruta v. County of San Diego*,
    742 F.3d 1144 (9th Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Tyler v. Hillsdale County Sheriff's Dept.*,
    --- F.3d ---, 2014 WL 7181334 (6th Cir. Dec. 18, 2014) . . . . . . . . . . . . . 13

*United States v. Chovan*,
    735 F.3d 1127 (9th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

*United States v. Stevens*,
    559 U.S. 460 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Woollard v. Gallagher*,
    712 F.3d 865 (4th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 13

## STATE CASES

*Andrews v. State*,
    50 Tenn. 165 (1871) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

PAGE(S)

**STATE CASES**

*Marbury v. Madison*,
     1 Cranch 137, 178 (1803) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*McCutcheon v. FEC*, - - - U.S. - - -,
     134 S. Ct. 1434 (2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Nunn v. State*,
     1 Ga. 243 (1846) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*State v. Reid,*
     1 Ala. 612, 616-17 (1840) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

**STATUTES, RULES & REGULATIONS**

Cal. Penal Code § 25850 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Cal. Penal Code § 26035 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Cal. Penal Code § 26045 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Cal. Penal Code § 26055 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Cal. Penal Code § 26150 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Cal. Penal Code § 26155 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Cal. Penal Code § 26160 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Cal. Penal Code § 26165 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

# TABLE OF AUTHORITIES (CONT.)

**PAGE(S)**

## STATUTES, RULES & REGULATIONS (CONT.)

Cal. Penal Code § 26185 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Cal. Penal Code § 26350 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Cal. Penal Code § 26400 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

## OPPOSITION TO SUA SPONTE REHEARING EN BANC

In the wake of the Supreme Court's landmark decision in *District of Columbia v. Heller*, 554 U.S. 570 (2008), five individuals and one organization initiated this lawsuit seeking to vindicate the Second Amendment rights of San Diego residents to carry a firearm outside the home for self-defense. Specifically, the plaintiffs challenged the San Diego County Sheriff's policy of narrowly interpreting "good cause" in California's statute establishing the requirements to obtain a license to carry a handgun outside the home as requiring individuals to demonstrate some particularized need to do so. As the plaintiffs argued, this policy has the practical effect of denying the vast majority of law-abiding San Diego residents their constitutional right to carry a firearm outside the home for self-defense. The plaintiffs did not seek any sweeping or unusual expansion of the right to carry, but sought only to have the same ability to carry as already enjoyed by California residents in other counties, where the Sheriffs do not employ an unconstitutionally narrow conception of "good cause."

A panel of this Court agreed, reaching the "unsurprising" conclusions that "the right to bear arms includes the right to carry an operable firearm outside the home for the lawful purpose of self-defense," and that San Diego may not flatly prohibit "the typical responsible, law-abiding citizen" from exercising that right. *Peruta v. County of San Diego*, 742 F.3d 1144, 1169 (9th Cir. 2014). Shortly

thereafter, the Sheriff announced that, while he would not change his challenged policy or issue the plaintiffs licenses unless and until the District Court orders him to do so, he also would not pursue en banc or Supreme Court review of the panel's decision. But three weeks ago—months after the panel decision and more than five years after this litigation first began—this Court *sua sponte* called for the views of the parties on whether it should rehear the case en banc.

It should not. As the plain text and historical understanding of the Second Amendment confirm, the panel's conclusion that the right protected by the Second Amendment is not confined to the home is manifestly correct. Indeed, that conclusion is compelled by *Heller* itself, which plainly contemplated a right that was not homebound. The panel's conclusion that law-abiding citizens may not be denied that right is equally correct, and once again is compelled by *Heller* itself, which made crystal clear that law-abiding individuals may not be prohibited from exercising a right that the Second Amendment protects. While the question at stake is certainly of the utmost importance, because the panel's decision is consistent with both the Constitution and Supreme Court precedent, there is no need for this Court to reconsider it en banc. Five years is long enough for the plaintiffs to wait for their Second Amendment rights to be vindicated.

## STATEMENT OF THE FACTS

With few very limited exceptions, California generally has made it unlawful for the typical resident to openly carry a loaded firearm outside the home. *See* Cal. Penal Code §§ 25850, 26350, 26400, 26035, 26045, and 26055 (Addend. 1-2, 5-7). California allows an individual to carry a loaded handgun in a concealed fashion, but only if he or she has a license to do so issued by a sheriff or police chief. *Id.* §§ 26150, 26155 (Addend. 2-4).

To obtain such a license from a sheriff, an applicant must submit a written application showing that he or she is an adult who either resides in or spends substantial time at a business or principal place of employment in that county. *Id.* § 26150(a)(3) (Addend. 3). The applicant must also, among other things, pass a criminal background check and successfully complete a training course covering handgun safety and California firearm laws. *Id.* §§ 26165, 26185 (Addend. 4-5). Finally, the sheriff must conclude that the applicant is of "good moral character" and has "good cause" to carry a loaded handgun in public. *Id.* § 26150(a) (Addend. 2-3). The state has delegated to each sheriff or police chief the authority to issue a written policy within these parameters. *Id.* § 26160 (Addend. 4).

Although many sheriffs throughout California have adopted policies that treat the desire to carry a handgun for self-defense as "good cause," San Diego's has not. Instead, in San Diego, an applicant can establish good cause only by

demonstrating "circumstances which would make a person a specific target in contrast to a random one," such as a documented threat to his or her safety. E.R. IV 0874. And the Sheriff has made it quite clear that "Licenses are NOT issued based on 'fear' alone." E.R. IV 0874. As a result, the typical law-abiding resident of San Diego has no right to carry a loaded handgun outside the home.

Shortly after the Supreme Court recognized in *Heller* that the Second Amendment protects an individual right to keep and bear arms, five individuals and the CRPA Foundation initiated this challenge to the Sheriff's policy, contending that it violates the Second Amendment. Although the District Court rejected that argument, a divided panel of this Court reversed and concluded that the Sheriff's "'good cause' permitting requirement impermissibly infringes on the Second Amendment right." *Peruta*, 742 F.3d at 1179. The Sheriff subsequently announced that, while he will not comply with the panel's decision unless and until the District Court orders him to do so, he does not intend to seek reconsideration of that decision en banc or in Supreme Court. This Court has now *sua sponte* called for the parties' views on whether this case should be reheard en banc.

## ARGUMENT

This case boils down to one and only one question: whether the Second Amendment protects a right to carry a firearm outside the home for self-defense. If it does, then there can be no serious dispute that a policy that categorically denies

that right to law-abiding individuals is unconstitutional. While that question is certainly one of paramount importance, it is not a question that this Court needs to consider en banc because the panel has already correctly resolved it. As the panel's very thorough and well-reasoned decision explains, the Second Amendment does in fact protect a right to carry a firearm outside the home, and the Sheriff's policy does in fact unconstitutionally deny that right to law-abiding citizens. Indeed, both of those conclusions are compelled by binding Supreme Court precedent—not to mention the plain text of the Second Amendment itself.

The decision below does not conflict with any decision of this Court, and this is not a case in which the practical implications of the decision merit en banc consideration. Leaving the panel decision in place will simply mean that San Diego residents will receive the benefit of the same "good cause" standard that has long held sway in other California counties. There have been no practical problems in the counties that have operated with a good cause standard that is more compatible with the Second Amendment. And while there are material differences in the varying approaches of the Courts of Appeals, there is no way for this Court acting en banc to eliminate those differences. That being so, there is little to gain from rehearing en banc, which will only prolong the plaintiffs' five-year struggle to vindicate their constitutional rights.

**I.**     **The Panel Correctly Concluded That the Second Amendment Is Not Confined to the Home.**

"Constitutional rights are enshrined with the scope they were understood to have when the people adopted them." *Heller*, 554 U.S. at 634-35. The Supreme Court's extensive review of that historical understanding in *Heller* led it to the conclusion that the Second Amendment "guarantee[s] the individual right to possess and carry weapons in case of confrontation." *Id.* at 592; *see also id*. at 628 ("the inherent right of self-defense has been central to the Second Amendment"). Although the Court went on to note that "the *need* for [self-defense] is most acute" in the home, the Court found the right itself, not the place where one exercises it, "central to the Second Amendment." *Id.* (emphasis added).

As the panel correctly concluded, that "right 'could not rationally have been limited to the home.' " *Peruta*, 742 F.3d at 1153 (quoting *Moore v. Madigan*, 702 F.3d 933, 936 (7th Cir. 2012)). That much is clear from the plain text of the Constitution. "The Second Amendment secures the right not only to 'keep' arms but also to '*bear*' them." *Peruta*, 742 F.3d at 1151. The Supreme Court "already has supplied the . . . plain meaning" of "bear," *id.*, which is to "wear, bear, or carry . . . upon the person or in the clothing or in a pocket, for the purpose . . . of being armed and ready for offensive or defensive action in a case of conflict with another person." *Heller*, 554 U.S. at 584. "One needn't point to statistics to recognize that the prospect of conflict—at least, the sort of conflict for which one would wish to

be 'armed and ready'—is just as menacing (and likely more so) beyond the front porch as it is in the living room." *Peruta*, 742 F.3d at 1152; *see also Moore*, 702 F.3d at 937. Accordingly, the plain text of the Second Amendment alone forecloses any suggestion that the right it protects is confined to the home.

So, too, does "the original public understanding of the Second Amendment right." *Peruta*, 742 F.3d at 1153. As *Heller* noted, William Blackstone's *Commentaries on the Laws of England* confirm that, "by the time of the founding," "the right of having and using arms for self-preservation and defense" was "understood to be an individual right protecting against both *public* and private violence." 554 U.S. at 594 (emphasis added). Likewise, St. George Tucker "insisted" that "any law 'prohibiting any person from *bearing* arms' crossed the constitutional line." *Peruta*, 742 F.3d at 1154 (emphasis added). And although there were some early laws that restricted the right to bear arms outside the home, they generally were confined to the bearing of "dangerous or unusual weapons," not of the kinds of arms typically carried by law-abiding persons for the lawful purpose of self-defense. *Id.*

The Supreme Court's decision in *Heller* also plainly contemplates a right to carry a firearm outside the home. When the Court searched in vain for past restrictions as severe as D.C.'s handgun ban, it deemed restrictions that applied *outside* the home most analogous and noted with approval that "some of those

[restrictions] have been struck down." 554 U.S. at 629. In doing so, the Court placed particular emphasis on two cases in which courts concluded that states could not prohibit people from carrying pistols openly if they also prohibited them from carrying them concealed. *See id.* (discussing *Nunn v. State*, 1 Ga. 243 (1846), and *Andrews v. State*, 50 Tenn. 165 (1871)). Such laws could hardly "'amount[] to a destruction of the right'" to self-defense or represent "severe" restrictions on its exercise, *id.* at 629-30 (quoting *State v. Reid*, 1 Ala. 612, 616-17 (1840)), if the protections afforded by the Second Amendment stopped at one's property line. The same is clear from the Court's suggestion that laws forbidding firearms in schools and certain government buildings are "presumptively lawful." *Id.* at 626-27 & n.26. The Court would have had no need to single out these truly "sensitive places," *id.* at 626, if there were no right to keep and bear arms outside the home.

In short, "[t]o confine the right to be armed to the home is to divorce the Second Amendment from the right of self-defense described in *Heller* and *McDonald.*" *Moore*, 702 F.3d at 937. It is therefore unsurprising that not a single Court of Appeals that has considered the question has reached that untenable conclusion. *See, e.g.*, *Kachalsky v. Cnty. of Westchester*, 701 F.3d 81, 89 (2d Cir. 2012) (assuming without deciding that right extends outside home); *Drake v. Filko*, 724 F.3d 426, 431 (3d Cir. 2013) (same); *Woollard v. Gallagher*, 712 F.3d 865, 876 (4th Cir. 2013) (same). Nor did the dissent reach that conclusion here; instead,

it mistakenly reconceptualized this case as concerning only whether "the Second Amendment . . . protect[s] the *concealed* carrying of handguns in public." *Peruta*, 742 F.3d at 1180 (Thomas, J. dissenting) (emphasis added). In fact, the only question at issue here is whether law-abiding citizens are entitled to carry a loaded firearm in *some* fashion outside the home for self-defense. Because the text of the Second Amendment, its original understanding, and its recent interpretation by the Supreme Court all confirm that the panel's affirmative answer to that question is correct, there is no need for this Court to reconsider the issue en banc.

## II. The Panel Correctly Concluded That Law-Abiding Citizens May Not Be Denied the Only Available Avenue for Exercising Their Constitutional Right To Carry a Firearm Outside the Home for Self-Defense.

Nor is there any need for this Court to reconsider en banc the panel's manifestly correct conclusion that the Sheriff may not deny law-abiding citizens the only available means for exercising their constitutional right to carry a firearm outside the home. The Sheriff's policy of denying licenses to all but those who can supply some particularized need for self-defense is not meaningfully different from "ban[ning] all political speech, but exempt[ing] from this restriction particular people (like current or former political figures), particular places (like private property), and particular situations (like the week before an election)." *Peruta*, 742 F.3d at 1169-70. "Although these exceptions might preserve small pockets of freedom, they would do little to prevent destruction of the right to free speech as a

whole." *Id.* at 1170. So, too, with a policy that confines exercise of Second Amendment rights "to a few people, in a few places, at a few times." *Id.*

Again, that follows directly from *Heller*. Once it was established that the Second Amendment protects an individual right to keep and use handguns for self-defense, it was clear that "a complete prohibition of their use is invalid." *Heller*, 554 U.S. at 629. And once it is established that the Second Amendment protects a right to carry outside the home, it is equally clear that a law that prohibits most individuals from doing so is invalid. Indeed, it is axiomatic that the government may not prohibit law-abiding individuals from exercising their constitutional rights. After all, "[t]he Constitution is not a document 'prescribing limits, and declaring that those limits may be passed at pleasure.'" *United States v. Stevens*, 559 U.S. 460, 470, 471 (2010) (quoting *Marbury v. Madison*, 1 Cranch 137, 178 (1803)). There is no exception to that principle for the Second Amendment.

That the panel invalidated the Sheriff's policy without resorting to a levels-of-scrutiny analysis does not render its decision inconsistent with other decisions of this Court. The panel did not eschew the "two-step approach" adopted in *United States v. Chovan,* 735 F.3d 1127, 1136 (9th Cir. 2013); to the contrary, it expressly "appl[ied] that approach." *Peruta*, 742 F.3d at 1150. In doing so, however, it also recognized that there was no need to complete the second step because a restriction as "severe" as the Sheriff's on conduct at the "core" of the Second Amendment

necessarily fails *any* standard of scrutiny. *Id.* at 1170. That analysis is in keeping both with *Chovan*'s two-step approach and with *Heller*, which confirms that "[a] law effecting a '*destruction* of the right' rather than merely *burdening* it is . . . an infringement under any light." *Id.* at 1168 (quoting *Heller*, 554 U.S. at 629).

Indeed, even under intermediate scrutiny, a law still must be "closely drawn to avoid unnecessary abridgement" of constitutional rights. *McCutcheon v. FEC*, - - - U.S. - - -, 134 S. Ct. 1434, 1456-57 (2014). Yet, as the dissent was forced to acknowledge, the inevitable result of the Sheriff's policy is that "[n]ot everyone who may ultimately need the protection of a handgun may obtain a permit." *Id.* at 1193 (Thomas, J., dissenting). That alone ought to defeat any suggestion that it is sufficiently tailored. Likewise, the dissent's acknowledgement that the Sheriff's policy is, at bottom, a simple attempt at "reducing the number of guns in public circulation," *id.* at 1192, cannot be reconciled with the notion that individuals have a *constitutional right* to carry firearms outside their homes.

That does not mean that California's entire statutory scheme has now been thrown into disarray. In fact, many a county in California has long applied state law just as the panel's decision contemplates, treating a desire to carry a handgun for self-defense as "good cause." The state has never suggested that these counties are violating state law; to the contrary, it has steadfastly insisted that it is up to each sheriff to determine what constitutes "good cause." Nor has it ever been

suggested that there are serious practical problems in those counties that have a "good cause" standard more compatible with the Second Amendment. Thus, this is not a case in which the practical consequences of the panel's decision counsel in favor of en banc review. The panel's decision simply means that San Diego County will have the same "good cause" standard that has long applied unproblematically in many other counties in California.

Nor does the panel's decision establish—either explicitly or implicitly—a constitutional right to carry a *concealed* handgun in public. To be sure, the decision entitles law-abiding residents of San Diego who can satisfy all other requirements to obtain concealed-carry licenses. But that result is a product of *the state*'s preference for concealed carry, as reflected in its decision to flatly prohibit open carry but make concealed-carry licenses available for "good cause" shown. Nothing about the panel's decision prevents the state from altering that preference, and to the extent the Sheriff cannot do so himself, that is a consequence of state law, not the panel's decision. Accordingly, whether the Second Amendment permits limits on the *manner* in which the right it protects may be exercised outside the home is a question that the panel's decision correctly leaves for another day. The dissent, by contrast, would declare concealed carry outside the scope of the Second Amendment entirely, and in doing so force California to allow open carry. *See Peruta*, 742 F.3d at 1191 (Thomas, J., dissenting).

In sum, as the panel "conclude[d] by emphasizing," some "*regulation* of the right to bear arms is not only legitimate but quite appropriate." *Peruta*, 742 F.3d at 1178. But "the enshrinement of constitutional rights necessarily takes certain policy choices off the table," *Heller*, 554 U.S. at 634, and one of those is a near-total ban on the exercise of rights that the Second Amendment protects. Because that is precisely what the Sheriff's policy achieves, it is unconstitutional.

Of course, not all courts considering analogous licensing schemes have reached that conclusion. *See, e.g.*, *Kachalsky*, 701 F.3d at 100-01; *Drake*, 724 F.3d at 434; *Woollard*, 712 F.3d at 876. But the panel's decision is certainly no outlier, as other courts have agreed that *Heller* and *McDonald* demand a much more rigorous form of scrutiny than those courts applied. *See, e.g.*, *Moore*, 702 F.3d at 941-42; *Tyler v. Hillsdale County Sheriff's Dept.*, --- F.3d ---, 2014 WL 7181334 (6th Cir. Dec. 18, 2014). Accordingly, en banc review will not obviate the need for the Supreme Court to step back into the Second Amendment debate; instead, it will only delay that inevitable outcome. That is not a result that the plaintiffs should be forced to tolerate when they have already waited more than five years to vindicate their fundamental constitutional rights.

**CONCLUSION**

For the foregoing reasons, the Court should not rehear this case en banc.

December 24, 2014

Respectfully submitted,

**MICHEL & ASSOCIATES, P.C.**

 s/ C. D. Michel
C. D. Michel
Glenn S. McRoberts
Sean A. Brady
Anna M. Barvir
MICHEL & ASSOCIATES, P.C.
180 E. Ocean Boulevard
Suite 200
Long Beach, CA  90802
Telephone: (526) 216-4444
E-mail: cmichel@michellawyers.com

Paul D. Clement
Erin E. Murphy
BANCROFT PLLC
1919 M Street, N.W.
Suite 470
Washington, D.C.  20036
Telephone: (202) 234-0090
E-Mail: pclement@bancroftpllc.com

Paul D. Clement
Erin E. Murphy
BANCROFT PLLC
1919 M Street, N.W.
Suite 470
Washington, D.C.  20036
Telephone: (202) 234-0090
E-Mail: pclement@bancroftpllc.com
Attorneys for *Plaintiffs-Appellants*



# ADDENDUM

# INDEX TO ADDENDUM

**Page**

Cal. Penal Code § 25850 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Addend. 1

Cal. Penal Code § 26150 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Addend. 2

Cal. Penal Code § 26155 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Addend. 3

Cal. Penal Code § 26160 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Addend. 4

Cal. Penal Code § 26165 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Addend. 4

Cal. Penal Code § 26185 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Addend. 4

Cal. Penal Code § 26350 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Addend. 5

Cal. Penal Code § 26400 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Addend. 6

Cal. Penal Code § 26035 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Addend. 7

Cal. Penal Code § 26055 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Addend. 7

## Cal. Penal Code § 25850

(a)  A person is guilty of carrying a loaded firearm when the person carries a loaded firearm on the person or in a vehicle while in any public place or on any public street in an incorporated city or in any public place or on any public street in a prohibited area of unincorporated territory.

(b)  In order to determine whether or not a firearm is loaded for the purpose of enforcing this section, peace officers are authorized to examine any firearm carried by anyone on the person or in a vehicle while in any public place or on any public street in an incorporated city or prohibited area of an unincorporated territory. Refusal to allow a peace officer to inspect a firearm pursuant to this section constitutes probable cause for arrest for violation of this section.

(c)  Carrying a loaded firearm in violation of this section is punishable, as follows:

(1)  Where the person previously has been convicted of any felony, or of any crime made punishable by a provision listed in Section 16580, as a felony.

(2)  Where the firearm is stolen and the person knew or had reasonable cause to believe that it was stolen, as a felony.

(3)  Where the person is an active participant in a criminal street gang, as defined in subdivision (a) of Section 186.22, under the Street Terrorism Enforcement and Prevention Act (Chapter 11 (commencing with Section 186.20) of Title 7 of Part 1), as a felony.

(4)  Where the person is not in lawful possession of the firearm, or is within a class of persons prohibited from possessing or acquiring a firearm pursuant to Chapter 2 (commencing with Section 29800) or Chapter 3 (commencing with Section 29900) of Division 9 of this title, or Section 8100 or 8103 of the Welfare and Institutions Code, as a felony.

(5)  Where the person has been convicted of a crime against a person or property, or of a narcotics or dangerous drug violation, by imprisonment pursuant to subdivision (h) of Section 1170, or by imprisonment in a county jail not to exceed one year, by a fine not to exceed one thousand dollars ($1,000), or by both that imprisonment and fine.

(6)  Where the person is not listed with the Department of Justice pursuant to Section 11106 as the registered owner of the handgun, by imprisonment pursuant to subdivision (h) of Section 1170, or by imprisonment in a county jail not to exceed one year, or by a fine not to exceed one thousand dollars ($1,000), or both that fine and imprisonment.

(7)  In all cases other than those specified in paragraphs (1) to (6), inclusive, as a misdemeanor, punishable by imprisonment in a county jail not to exceed one year, by a fine not to exceed one thousand dollars ($1,000), or by both that imprisonment and fine.

(d)(1)  Every person convicted under this section who has previously been convicted of an offense enumerated in Section 23515, or of any crime made punishable under a provision listed in Section 16580, shall serve a term of at least three months in a county jail, or, if granted probation or if the execution or imposition of sentence is suspended, it shall be a condition thereof that the person be imprisoned for a period of at least three months.

(2)  The court shall apply the three-month minimum sentence except in unusual cases where the interests of justice would best be served by granting probation or suspending the imposition or execution of sentence without the minimum imprisonment required in this section or by granting probation or suspending the imposition or execution of sentence with conditions other than those set forth in this section, in which case, the court shall specify on the record and shall enter on the minutes the circumstances indicating that the interests of justice would best be served by that disposition.

(e)  A violation of this section that is punished by imprisonment in a county jail not exceeding one year shall not constitute a conviction of a crime punishable by imprisonment for a term exceeding one year for the purposes of determining federal firearms eligibility under Section 922(g)(1) of Title 18 of the United States Code.

(f)  Nothing in this section, or in Article 3 (commencing with Section 25900) or Article 4 (commencing with Section 26000), shall preclude prosecution under Chapter 2 (commencing with Section 29800) or Chapter 3 (commencing with Section 29900) of Division 9 of this title, Section 8100 or 8103 of the Welfare and Institutions Code, or any other law with a greater penalty than this section.

(g)  Notwithstanding paragraphs (2) and (3) of subdivision (a) of Section 836, a peace officer may make an arrest without a warrant:

(1)  When the person arrested has violated this section, although not in the officer's presence.

(2)  Whenever the officer has reasonable cause to believe that the person to be arrested has violated this section, whether or not this section has, in fact, been violated.

(h)  A peace officer may arrest a person for a violation of paragraph (6) of subdivision (c), if the peace officer has probable cause to believe that the person is carrying a handgun in violation of this section and that person is not listed with the Department of Justice pursuant to paragraph (1) of subdivision (c) of Section 11106 as the registered owner of that handgun.

## Cal. Penal Code § 26150

(a)  When a person applies for a license to carry a pistol, revolver, or other firearm capable of being concealed upon the person, the sheriff of a county may issue a license to that person upon proof of all of the following:

(1)     The applicant is of good moral character.

(2)     Good cause exists for issuance of the license.

(3)      The applicant is a resident of the county or a city within the county, or the applicant's principal place of employment or business is in the county or a city within the county and the applicant spends a substantial period of time in that place of employment or business.

(4)     The applicant has completed a course of training as described in Section 26165.

(b)     The sheriff may issue a license under subdivision (a) in either of the following formats:

(1)     A license to carry concealed a pistol, revolver, or other firearm capable of being concealed upon the person.

(2)      Where the population of the county is less than 200,000 persons according to the most recent federal decennial census, a license to carry loaded and exposed in only that county a pistol, revolver, or other firearm capable of being concealed upon the person.

## Cal. Penal Code § 26155

(a)     When a person applies for a license to carry a pistol, revolver, or other firearm capable of being concealed upon the person, the chief or other head of a municipal police department of any city or city and county may issue a license to that person upon proof of all of the following:

(1)     The applicant is of good moral character.

(2)     Good cause exists for issuance of the license.

(3)     The applicant is a resident of that city.

(4)     The applicant has completed a course of training as described in Section 26165.

(b)     The chief or other head of a municipal police department may issue a license under subdivision (a) in either of the following formats:

(1)     A license to carry concealed a pistol, revolver, or other firearm capable of being concealed upon the person.

(2)     Where the population of the county in which the city is located is less than 200,000 persons according to the most recent federal decennial census, a license to carry loaded and exposed in only that county a pistol, revolver, or other firearm capable of being concealed upon the person.

(c)     Nothing in this chapter shall preclude the chief or other head of a municipal police department of any city from entering an agreement with the sheriff of the county in which the city is located for the sheriff to process all applications for licenses, renewals of licenses, and amendments to licenses, pursuant to this chapter.

## Cal. Penal Code § 26160

Each licensing authority shall publish and make available a written policy summarizing the provisions of Section 26150 and subdivisions (a) and (b) of Section 26155.

## Cal. Penal Code § 26165

(a)     For new license applicants, the course of training for issuance of a license under Section 26150 or 26155 may be any course acceptable to the licensing authority, shall not exceed 16 hours, and shall include instruction on at least firearm safety and the law regarding the permissible use of a firearm.

(b)     Notwithstanding subdivision (a), the licensing authority may require a community college course certified by the Commission on Peace Officer Standards and Training, up to a maximum of 24 hours, but only if required uniformly of all license applicants without exception.

(c)     For license renewal applicants, the course of training may be any course acceptable to the licensing authority, shall be no less than four hours, and shall include instruction on at least firearm safety and the law regarding the permissible use of a firearm. No course of training shall be required for any person certified by the licensing authority as a trainer for purposes of this section, in order for that person to renew a license issued pursuant to this article.

(d)     The applicant shall not be required to pay for any training courses prior to the determination of good cause being made pursuant to Section 26202.

## Cal. Penal Code § 26185

(a)(1)  The fingerprints of each applicant shall be taken and two copies on forms prescribed by the Department of Justice shall be forwarded to the department.

(2)     Upon receipt of the fingerprints and the fee as prescribed in Section 26190, the department shall promptly furnish the forwarding licensing authority a report of all data and information pertaining to any applicant of which there is a record in its office, including information as to whether the person is prohibited by state or federal law from possessing, receiving, owning, or purchasing a firearm.

(3)     No license shall be issued by any licensing authority until after receipt of the report from the department.

(b)     Notwithstanding subdivision (a), if the license applicant has previously applied to the same licensing authority for a license to carry firearms pursuant to this article and the applicant's fingerprints and fee have been previously forwarded to the Department of Justice, as provided by this section, the licensing authority shall note the previous identification numbers and other data that would provide positive identification in the files of the Department of Justice on the copy of any subsequent license submitted to the department in conformance with Section 26225 and no additional application form or fingerprints shall be required.

(c)     If the license applicant has a license issued pursuant to this article and the applicant's fingerprints have been previously forwarded to the Department of Justice, as provided in this section, the licensing authority shall note the previous identification numbers and other data that would provide positive identification in the files of the Department of Justice on the copy of any subsequent license submitted to the department in conformance with Section 26225 and no additional fingerprints shall be required.

## Cal. Penal Code § 26350

(a)(1)  A person is guilty of openly carrying an unloaded handgun when that person carries upon his or her person an exposed and unloaded handgun outside a vehicle while in or on any of the following:

(A)     A public place or public street in an incorporated city or city and county.

(B)     A public street in a prohibited area of an unincorporated area of a county or city and county.

(C)     A public place in a prohibited area of a county or city and county.

(2)     A person is guilty of openly carrying an unloaded handgun when that person carries an exposed and unloaded handgun inside or on a vehicle, whether or not on his or her person, while in or on any of the following:

(A)     A public place or public street in an incorporated city or city and county.

(B)     A public street in a prohibited area of an unincorporated area of a county or city and county.

(C)     A public place in a prohibited area of a county or city and county.

(b)(1)  Except as specified in paragraph (2), a violation of this section is a misdemeanor.

(2)     A violation of subparagraph (A) of paragraph (1) of subdivision (a) is punishable by

imprisonment in a county jail not exceeding one year, or by a fine not to exceed one thousand dollars ($1,000), or by both that fine and imprisonment, if both of the following conditions exist:

(A)     The handgun and unexpended ammunition capable of being discharged from that handgun are in the immediate possession of that person.

(B)     The person is not in lawful possession of that handgun.

(c)(1)   Nothing in this section shall preclude prosecution under Chapter 2 (commencing with Section 29800) or Chapter 3 (commencing with Section 29900) of Division 9, Section 8100 or 8103 of the Welfare and Institutions Code, or any other law with a penalty greater than is set forth in this section.

(2)     The provisions of this section are cumulative and shall not be construed as restricting the application of any other law. However, an act or omission punishable in different ways by different provisions of law shall not be punished under more than one provision.

(d)     Notwithstanding the fact that the term "an unloaded handgun" is used in this section, each handgun shall constitute a distinct and separate offense under this section.

## Cal. Penal Code § 26400

(a)     A person is guilty of carrying an unloaded firearm that is not a handgun in an incorporated city or city and county when that person carries upon his or her person an unloaded firearm that is not a handgun outside a vehicle while in the incorporated city or city and county.

(b)(1)  Except as specified in paragraph (2), a violation of this section is a misdemeanor.

(2)     A violation of subdivision (a) is punishable by imprisonment in a county jail not exceeding one year, or by a fine not to exceed one thousand dollars ($1,000), or by both that fine and imprisonment, if the firearm and unexpended ammunition capable of being discharged from that firearm are in the immediate possession of the person and the person is not in lawful possession of that firearm.

(c)(1)  Nothing in this section shall preclude prosecution under Chapter 2 (commencing with Section 29800) or Chapter 3 (commencing with Section 29900) of Division 9, Section 8100 or 8103 of the Welfare and Institutions Code, or any other law with a penalty greater than is set forth in this section.

(2)     The provisions of this section are cumulative and shall not be construed as restricting

the application of any other law. However, an act or omission punishable in different ways by different provisions of law shall not be punished under more than one provision.

(d)     Notwithstanding the fact that the term "an unloaded firearm that is not a handgun" is used in this section, each individual firearm shall constitute a distinct and separate offense under this section.

**Cal. Penal Code § 26035**

Nothing in Section 25850 shall prevent any person engaged in any lawful business, including a nonprofit organization, or any officer, employee, or agent authorized by that person for lawful purposes connected with that business, from having a loaded firearm within the person's place of business, or any person in lawful possession of private property from having a loaded firearm on that property.

**Cal. Penal Code § 26055**

Nothing in Section 25850 shall prevent any person from having a loaded weapon, if it is otherwise lawful, at the person's place of residence, including any temporary residence or campsite.

**Form 11.**    **Certificate of Compliance Pursuant to**
**Circuit Rules 35-4 and 40-1**

<div style="border:2px solid black">

**Form Must be Signed by Attorney or Unrepresented Litigant
and Attached to the Back of Each Copy of the Petition or Answer**

</div>

**(signature block below)**

I certify that pursuant to Circuit Rule 35-4 or 40-1, the attached petition for panel rehearing/petition for rehearing en banc/answer is: (check applicable option)

_____    Proportionately spaced, has a typeface of 14 points or more and contains _____ words (petitions and answers must not exceed 4,200 words).

**or**

_____    Monospaced, has 10.5 or fewer characters per inch and contains _____ words or _____ lines of text (petitions and answers must not exceed 4,200 words or 390 lines of text).

**or**

_ X __    In compliance with Fed. R. App. 32(c) and does not exceed 15 pages.

_/C.D. Michel_____
Signature of Attorney or
Unrepresented Litigant

**(New Form 7/1/2000)**

## CERTIFICATE OF SERVICE

I hereby certify that on December 24, 2014, an electronic PDF of

**APPELLANTS' OPPOSITION TO SUA SPONTE REHEARING EN BANC**

was uploaded to the Court's CM/ECF system, which will automatically generate

and send by electronic mail a Notice of Docket Activity to all registered attorneys

participating in the case. Such notice constitutes service on those registered

attorneys.

Date: December 24, 2014            /s/ C. D. Michel
                                       C. D. Michel
                                       Attorneys for *Plaintiffs-Appellants*