IN THE
UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

**FILED**

**MAY 2 4 2011**

MOLLY C. DWYER
CLERK, U.S. COURT OF APPEALS

EDWARD PERUTA, et. al.,

*Plaintiffs-Appellants,*

v.

COUNTY OF SAN DIEGO, et. al.,

*Defendants-Appellees.*

APPEAL FROM THE
UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF CALIFORNIA

**APPELLANTS' EXCERPTS OF RECORD
VOLUME V of VIII**

C. D. Michel (S.B.N. 144258)
Glenn S. McRoberts (S.B.N. 144852)
Sean A. Brady (S.B.N. 262007)
Bobbie K. Ross (S.B.N. 273983)
MICHEL & ASSOCIATES, P.C.
180 East Ocean Blvd., Suite 200
Long Beach, CA 908502
Tel. No. (562) 216-4444
Fax No: (562) 216-4445
e-mail: cmichel@michellawyers.com

**Counsel for Plaintiffs-Appellants**

Pursuant to Federal Rules of Appellate Procedure for the Ninth Circuit 30-1,

Appellants, EDWARD PERUTA et al., by and through their attorney of record, C.

D. Michel of Michel & Associates, P. C. hereby confirm to the contents and form

of Appellants' Excerpts of Record on appeal.

Date: May 23, 2011                              MICHEL & ASSOCIATES, P.C.

                                                C. D. Michel
                                                Attorney for Plaintiffs/Appellants

# CHRONOLOGICAL ORDER

| TAB NO. | FILING DATE | NAME OF DOCUMENT | VOL. | PAGE NO. |
|---------|-------------|------------------|------|----------|
| 1. | 12/10/2010 | Order: (1) Denying Plaintiffs' Motion For Partial Summary Judgment, and (2) Granting Defendant's Motion For Summary Judgment | I | ER000001 - ER000017 |
| 2. | 11/15/2010 | Transcripts of Motion For Summary Judgment Hearing | I | ER000018 - ER000080 |
| 3. | 1/14/2010 | Order Denying Defendant's Motion to Dismiss | I | ER000081 - ER000098 |

# CHRONOLOGICAL ORDER

| TAB NO. | FILING DATE | NAME OF DOCUMENT | VOL. | PAGE NO. |
|---------|-------------|------------------|------|----------|
| 4. | 12/14/2010 | Notice of Appeal To The United States Court of Appeals For The Ninth Circuit | II | ER000099 - ER000101 |
| 5. | 12/10/2010 | Judgment In A Civil Case | II | ER000102 |
| 6. | 11/30/2010 | Notice of Lodgment of Recent Authority In Support of Plaintiffs' Motion for Partial Summary Judgment | II | ER000103 - ER000123 |
| 7. | 11/10/2010 | Order Granting Plaintiffs' ExParte Motion For Leave To File Sur-Reply | II | ER000124 |
| 8. | 11/9/2010 | Defendant William D. Gore's Opposition to Plaintiffs' Motion For Leave to File A Sur-Reply and Objection to Plaintiffs' New Separate Statement | II | ER000125 - ER000126 |
| 9. | 11/8/2010 | Plaintiffs' Consolidated Separate Statement of Undisputed and Disputed Facts | II | ER000127 - ER000144 |
| 10. | 11/8/2010 | Plaintiffs' Ex Parte Motion for Leave to File Sur-Reply In Response to Defendant's Motion for Summary Judgment, Exhibit "A" (Proposed Sur-Reply) | II | ER000145 - ER000157 |

| TAB NO. | FILING DATE | NAME OF DOCUMENT | VOL. | PAGE NO. |
|---|---|---|---|---|
| 11. | 11/8/2010 | Declaration of Sean Brady In Support of Plaintiffs' Ex Parte Motion for Leave to File Sur Reply in Response to Defendant's Reply In Support of Defendant's Motion For Summary Judgment | II | ER000158 - ER000161 |
| 12. | 11/8/2010 | Declaration of Stephen Helsley In Support of Plaintiffs' Sur Reply To Defendants' Reply To Plaintiffs' Consolidated Opposition To Defendant's Motion For Summary Judgment & Reply To Defendants' Opposition To Plaintiffs' Motion for Partial Summary Judgment | II | ER000162 - ER000168 |
| 13. | 11/1/2010 | Defendant William D. Gore's Reply Points and Authorities In Support of Motion For Summary Judgment | II | ER000169 - ER000188 |
| 14. | 11/1/2010 | Defendant William D. Gore's Objections to Evidence Offered With Plaintiffs' Opposition | II | ER000189 - ER000191 |

| TAB NO. | FILING DATE | NAME OF DOCUMENT | VOL. | PAGE NO. |
|---------|-------------|------------------|------|----------|
| 15. | 10/19/2010 | Order Granting Plaintiffs' ExParte Application to File Documents In Support of Plaintiffs' Consolidated Opposition to Defendant's Motion For Summary Judgment and Reply to Defendant's Motion For Summary Judgment and Reply to Defendant's Opposition to Plaintiffs' Motion for Partial Summary Judgment | II | ER000192 - ER000193 |
| 16. | 10/18/2010 | Plaintiffs' ExParte Application to File Documents In Support of Plaintiffs' Consolidated Opposition to Defendant's Motion for Summary Judgment and; Reply to Defendant's Opposition to Plaintiffs' Motion for Partial Summary Judgment Under Seal | II | ER000194 - ER000199 |
| 17. | 10/18/2010 | Plaintiffs' Objections to Evidence Offered In Support of Defendant's Motion For Summary Judgment | II | ER000200 - ER000209 |
| 18. | 10/18/2010 | Consolidated Opposition to Defendant's Motion for Summary Judgment And; Reply to Defendant's Opposition to Plaintiffs' Motion for Partial Summary Judgment | II | ER000210 - ER000238 |

| TAB NO. | FILING DATE | NAME OF DOCUMENT | VOL. | PAGE NO. |
|---|---|---|---|---|
| 19. | 10/18/2010 | Declaration of Sean Brady In Support of Plaintiffs' Consolidated Opposition To Defendant's Motion for Summary Judgment And; Reply to Defendant's Opposition to Plaintiffs' Motion for Partial Summary Judgment | II | ER000239 - ER000242 |
| 20. | 10/18/2010 | Declaration of Edward Peruta In Support of Plaintiffs' Opposition To Defendant's Motion for Summary Judgment And; Reply to Defendant's Opposition to Plaintiffs' Motion for Partial Summary Judgment | II | ER000243 - ER000246 |
| 21. | 10/18/2010 | Declaration of Carlisle E. Moody In Support of Plaintiffs' Opposition To Defendant's Motion for Summary Judgment | II | ER000247 - ER000253 |
| 22. | 10/18/2010 | Declaration of Gary Mauser In Support of Plaintiffs' Opposition To Defendant's Motion for Summary Judgment | II | ER000254 - ER000257 |
| 23. | 10/18/2010 | Declaration of Brian Patrick In Support of Plaintiffs' Opposition To Defendant's Motion for Summary Judgment | II | ER000258 - ER000261 |

| TAB NO. | FILING DATE | NAME OF DOCUMENT | VOL. | PAGE NO. |
|---------|-------------|------------------|------|----------|
| 24. | 10/18/2010 | Exhibits "A" Through "P" In Support of Plaintiffs' Consolidated Opposition To Defendant's Motion For Summary Judgment And; Reply to Defendant's Opposition to Plaintiffs' Motion For Partial Summary Judgment | II & VI | ER000262 - ER000325 |
| 25. | 10/18/2010 | Application for Leave to File Amicus Brief In Support of Plaintiffs' Motion For Summary Judgment; Amicus Brief In Support of Plaintiffs' Motion For Summary Judgment [Proposed] | III | ER000326 - ER000349 |
| 26. | 10/6/2010 | Order Granting Defendants William Gore's Ex Parte Motion To File Exhibits In Support of Motion For Summary Judgment Under Seal | III | ER000350 |
| 27. | 10/4/2010 | Defendant William D. Gore's Ex Parte Motion to File Exhibits Nos. 2 Through 15 In Support of Motion For Summary Judgment Under Seal | III | ER000351 - ER000355 |
| 28. | 10/4/2010 | Defendant William D. Gore's Memorandum of Points And Authorities In Support of Motion For Summary Judgment And In Opposition To Plaintiffs' Motion For Partial Summary Judgment | III | ER000356 - ER000398 |

| TAB NO. | FILING DATE | NAME OF DOCUMENT | VOL. | PAGE NO. |
|---------|-------------|------------------|------|----------|
| 29. | 10/4/2010 | Defendant William D. Gore's Separate Statement of Undisputed Material Facts In Support of Motion For Summary Judgment | III | ER000399 - ER000403 |
| 30. | 10/4/2010 | Declaration of Franklin E. Zimring In Support of Defendant's Motion For Summary Judgment | III | ER000404 - ER000435 |
| 31. | 10/4/2010 | Declaration of Blanca Pelowitz In Support of Defendant's Motion For Summary Judgment | III | ER000436 - ER000446 |
| 32. | 10/4/2010 | Notice of Documents Lodged In Support of Motion For Summary Judgment On Behalf of Defendant William D. Gore | III, VI, VII | ER000447 - ER000779 |
| 33. | 10/4/2010 | Application of Brady Center to Prevent Gun Violence to File Brief As Amicus Brief; Brief of Amicus Curiae Brady Center To Prevent Gun Violence | IV | ER000780 - ER000811 |
| 34. | 9/8/2010 | Order Granting Plaintiffs' ExParte Application To File Documents In Support of Plaintiffs' Motion For Partial Summary Judgment Under Seal | IV | ER000812 |
| 35. | 9/3/2010 | Notice of Motion and Motion for Partial Summary Judgment | IV | ER000813 - ER000815 |
| 36. | 9/3/2010 | Memorandum of Points and Authorities In Support of Plaintiffs' Motion for Partial Summary Judgment | IV | ER000816 - ER000845 |

| TAB NO. | FILING DATE | NAME OF DOCUMENT | VOL. | PAGE NO. |
|---|---|---|---|---|
| 37. | 9/3/2010 | Separate Statement of Undisputed Facts In Support of Plaintiffs' Motion for Partial Summary Judgment | IV | ER000846 - ER000856 |
| 38. | 9/3/2010 | Exhibits "A" Through "WW" In Support of Plaintiffs' Motion for Partial Summary Judgment | IV & VIII | ER000857 - ER001066 |
| 39. | 9/3/2010 | Declaration of Edward Peruta In Support of Plaintiffs' Motion For Summary Judgment | IV | ER001067 - ER001072 |
| 40. | 9/3/2010 | Declaration of Michelle Laxson In Support of Plaintiffs' Motion for Summary Judgment | IV | ER001073 - ER001076 |
| 41. | 9/3/2010 | Declaration of Mark Cleary In Support of Plaintiffs' Motion For Summary Judgment | IV | ER001077 - ER001082 |
| 42. | 9/3/2010 | Declaration of Silvio Montanarella on Behalf of California Rifle and Pistol Association Foundation In Support of Plaintiffs' Motion For Summary Judgment | IV | ER001083 - ER001086 |
| 43. | 9/3/2010 | Declaration of James Dodd In Support of Plaintiffs' Motion For Summary Judgment | IV | ER001087 - ER001089 |
| 44. | 9/3/201 | Plaintiffs' Ex Parte Application to File Documents In Support of Plaintiffs' Motion For Partial Summary Judgment Under Seal | IV | ER001090 - ER001093 |

| TAB NO. | FILING DATE | NAME OF DOCUMENT | VOL. | PAGE NO. |
|---|---|---|---|---|
| 45. | 9/3/2010 | Declaration of Sean Brady In Support of Plaintiffs' Ex Parte Application to File Documents In Support of Plaintiffs' Motion For Partial Summary Judgment Under Seal | IV | ER001094 - ER001097 |
| 46. | 7/9/2010 | Defendant William D. Gore's Answer To Plaintiffs' First Amended Complaint | IV | ER001098 - ER001101 |
| 47. | 6/25/2010 | First Amended Complaint | IV | ER001102 - ER001125 |
| 48. | 6/25/2010 | Order Granting Motion For Leave to Amend Complaint | IV | ER001126 - ER001131 |
| 49. | 5/24/2010 | Plaintiffs' Reply to Opposition to Motion for Leave to Amend Complaint | V | ER001132 - ER001144 |
| 50. | 5/18/2010 | County of San Diego And William D. Gore's Opposition To Plaintiff's Motion to Amend | V | ER001145 - ER001148 |
| 51. | 4/22/2010 | Notice of Motion and Motion For Leave to Amend Complaint; Exhibit "A" (Proposed First Amended Complaint); Memorandum of Points and Authorities In Support of Plaintiffs' Motion For Leave to Amend Complaint; Declaration of C. D. Michel | V | ER001149 - ER001185 |
| 52. | 1/20/2010 | Defendant William D. Gore's Answer to Complaint | V | ER001186 - ER001191 |

| TAB NO. | FILING DATE | NAME OF DOCUMENT | VOL. | PAGE NO. |
|---|---|---|---|---|
| 53. | 12/14/2009 | Defendant William D. Gore's Reply Points and Authorities In Support of Motion to Dismiss Complaint | V | ER001192 - ER001195 |
| 54. | 12/7/2009 | Plaintiff's Memorandum of Points And Authorities In Opposition To Defendant William Gore's Motion to Dismiss | V | ER001196 - ER001231 |
| 55. | 11/12/2009 | Defendant William D. Gore's Notice of Motion and Motion to Dismiss Complaint | V | ER001232 - ER001233 |
| 56. | 11/12/2009 | Defendant William D. Gore's Points and Authorities In Support of Motion to Dismiss Complaint | V | ER001234 - ER001238 |
| 57. | 11/12/2009 | Defendant William D. Gore's Notice of Lodgment In Support of Motion to Dismiss Complaint | V | ER001239 - ER001247 |
| 58. | 10/23/2009 | Complaint For Damages | V | ER001248 - ER001257 |
| | 5/23/2011 | United States District Court - Southern District Docket Sheet | -- | -- |

**TAB 49**

1 | C.D. Michel – SBN 144257
Clint B. Monfort – SBN 255609
2 | Sean A. Brady – SBN 262007
cmichel@michellawyers.com
3 | MICHEL & ASSOCIATES, P.C.
180 E. Ocean Blvd., Suite 200
4 | Long Beach, CA 90802
Telephone: (562) 216-4444
5 | Facsimile:   (562) 216-4445
Attorneys for Plaintiffs / Petitioners
6 |
Paul Neuharth, Jr. – SBN 147073
7 | pneuharth@sbcglobal.net
PAUL NEUHARTH, JR., APC
8 | 1440 Union Street, Suite 102
San Diego, CA 92101
9 | Telephone:  (619) 231-0401
Facsimile:   (619) 231-8759
10 | Attorney for Plaintiff / Petitioner EDWARD PERUTA

11

12 | **UNITED STATES DISTRICT COURT**

13 | **SOUTHERN  DISTRICT OF CALIFORNIA**

14

15 | EDWARD PERUTA,                         )    **CASE NO: 09-CV-2371 IEG (BGS)**
                                        )
16 |           Plaintiff,                )    **REPLY TO OPPOSITION TO**
                                        )    **MOTION FOR LEAVE TO AMEND**
17 |      v.                             )    **COMPLAINT**
                                        )
18 | COUNTY OF SAN DIEGO,                 )    Date: June 1, 2010
WILLIAM D. GORE,                       )    Time: 10:30 a.m.
19 | INDIVIDUALLY AND IN HIS              )    Courtroom: 1
CAPACITY AS SHERIFF,                   )    Honorable Irma E. Gonzalez
20 |                                      )
           Defendants.                 )
21 | _____ )

22

23

24

25

26

27

28

# I.   INTRODUCTION

Defendants' arguments against adding the California Rifle & Pistol Association Foundation ("CRPAF"), as well as the other proposed plaintiffs, are apparently based on a misunderstanding of the nature of the common legal claims being made and the common declaratory and injunctive remedies being sought by all plaintiffs through the Proposed First Amended Complaint (the "Amended Complaint")

Generally, and with the proviso that the nuances of, and theories behind, Plaintiffs' claims may evolve as this case progresses and as Defendants' defenses emerge, all of the Plaintiffs challenge how the Defendants interpret and apply California Penal Code section 12050, particularly as to its "good cause" and residency requirements. Specifically, Plaintiffs challenge Defendants' adopted government policy purporting to apply that misinterpretation to *all* applicants or would-be applicants for a CCW in San Diego.

All of the Plaintiffs seek declaratory relief invalidating Defendants' policy and the *general application* of its unlawful CCW issuance (or non-issuance) policy, which unconstitutionally applies Penal Code section 12050 *et seq,* as a matter of policy, *to everyone* who has applied or wants to apply for a license; not just the specifically named plaintiffs.  So neither the legal claims alleged, nor the relief sought, depend on proving facts specific to each plaintiff or each application. No Plaintiff seeks to compel the issuance of a CCW to them by this lawsuit alone. Rather, the issue in the Amended Complaint is whether Defendants' stated CCW issuance  policy regarding "good cause" and residency is lawful *in general.* Even the equal protection claim, although it will require some factual discovery to determine whether similarly situated individuals are unconstitutionally being treated differently, is primarily a question of law.

Plaintiffs see these issues as matters of broad public concern in need of resolution. Toward that end, Plaintiffs wish to avoid litigating unnecessary procedural issues that might distract from resolving the substantive legal issues presented.  One

1  primary purpose for adding new plaintiffs is to try to avoid having standing issues
2  (particularly ones that might rise to the level of a jurisdictional challenge) emerge later
3  in this case after significant resources have been invested by the parties and this Court.

4      Largely ignoring the legal issues this case chiefly presents, Defendants'
5  Opposition instead proffers two central arguments against Plaintiffs' Motion for Leave
6  to Amend.  First, Defendants contend that proposed plaintiff CRPAF does not have
7  standing because the claims asserted *and* the relief requested in the Amended
8  Complaint require "'individualized proof specific to each [CCW] application."
9  Further, Defendants contend that allowing CRPAF as a plaintiff might well require the
10 participation of every individual CRPAF member in the lawsuit. (Opp. at pp. 2-3, lns.
11 24-26; 1-2).

12     Second, with respect to the other proposed plaintiffs, Defendants contend that
13 adding these additional parties would unnecessarily complicate or delay this case
14 because individualized discovery would be required for each of these plaintiffs. (Opp.
15 at p. 3, lns. 26-28).

16     Considering the commonality of the legal claims and remedies being sought,
17 Plaintiffs' Motion should be granted. It includes the same legal claims that arise from
18 the Defendants' same conduct (i.e., the same nucleus of operative facts), seeks the
19 same declaratory and injunctive remedies for all Plaintiffs, and is brought against the
20 same Defendants as the initial Complaint.

21 **II.    ARGUMENT**

22     **A.    CRPAF Has Associational Standing**

23     CRPAF is an association of individuals primarily dedicated to promoting the
24 exercise and preservation of Second Amendment rights, including self-defense.
25 CRPAF seeks the same declaratory and injunctive remedy on behalf of all its
26 members, and all of those members will benefit from enjoining Defendants' restrictive
27 and arbitrary CCW issuance policy, which they allege unconstitutionally infringes on
28 the fundamental right to keep and bear arms.  CRPAF's goal is protection of Second

1   Amendment rights. That goal is common to CRPAF's entire membership.

2       Whether an association satisfies the third prong of the standing test set out in
3   *Hunt v. Wash. State Apple Adver. Comm'n* (1977) 432 U.S. 333 at 343, and cited by
4   Defendants, depends on the claims it asserts *and* the relief it requests. *Warth v. Seldin*,
5   422 U.S. 490, 511, 45 L. Ed. 2d 343, 95 S. Ct. 2197 (1975). Defendants make two
6   arguments to support their position that CRPAF does not satisfy the third *Hunt* prong.
7   First, Defendants argue that the relief sought by CRPAF "require[s] 'individualized
8   proof' specific to each permit application." (Opp. at p. 3, lns. 1-3). Second, that even
9   if the *relief* sought by Plaintiffs does not bar associational standing, that the nature of
10  Plaintiffs' legal *claims* are so "individualized" that they would "require an 'ad hoc
11  factual inquiry' for each member represented by the association." (Opp. at p. 3, lns.
12  13-16).

13      Defendants' arguments misunderstand the claims and relief sought by CRPAF,
14  and indeed of the rest of the Plaintiffs too.  To reiterate, all Plaintiffs (including
15  CRPAF) claim that Defendants' refusal to accept self-defense as sufficient "good
16  cause" for a CCW license infringes on the right to bear arms and cannot be
17  constitutionally justified by the government, and thereby violates the Second
18  Amendment.  Because Defendants refuse to accept self-defense, absent an additional
19  showing of a specific articulated threat to the applicant, as sufficient "good cause" to
20  issue a CCW license, all of the Plaintiffs allege that the heightened "good cause"
21  standard and accompanying policy adopted by Defendants is set unconstitutionally too
22  high.  Plaintiffs also allege that the durational residency requirement, adopted as a
23  standard to establish the residency required by the state statute, violates the Second
24  Amendment, Equal Protection, the Right to Travel, and Privileges and Immunities.
25  Finally, to the extent that Defendants vary from their heightened "good cause" or
26  residency policies and issue CCW licenses to favored persons with no more "good
27  cause" or residency than similarly situated persons who are denied a permit, all
28  Plaintiffs allege an Equal Protection violation.  All Plaintiffs seek a judicial

1   declaration confirming their claims, and injunctive relief to this effect.

2          Defendants' CCW license issuance policy has affected, and unless enjoined will

3   continue to, affect *all applicants and potential applicants for a CCW license*, not just

4   the named plaintiffs. This includes members of CRPAF, some of whom have applied,

5   and some of whom would apply for a CCW but for Defendants' restrictive policies on

6   good cause and/or residency, which discourages those who want a CCW from

7   bothering to apply and chills their exercise of a constitutional right.

8          **1.     CRPAF Seeks Common *Relief* for All of its Members**

9          CRPAF, on behalf of its members, contends that the heightened standards

10  Defendants' impose as their policy on what must be established to meet the "good

11  cause" and residency requirements for issuing CCWs constitute an unconstitutional

12  interpretation of section 12050's requirements. Although specific Plaintiffs are named

13  in the Amended Complaint along with CRPAF, neither their claims nor the relief they

14  seek are individually unique or different from the relief sought by CRPAF. Since the

15  Defendants' current policy has been in effect for years, the named Plaintiffs merely

16  represent the multitude of other people who were unconstitutionally denied a CCW by

17  Defendants' restrictive issuance policy, or who were deterred thereby from even

18  applying for a CCW in the first place.  Plaintiffs and CRPAF seek relief from

19  Defendants' unconstitutional policy for the public at large, not any particular

20  individual. (Pls.' First Am.  Compl., ¶¶ 148-150.)

21         CRPAF's situation is akin to the plaintiff in *International Union, United Auto,*

22  *etc. v. Brock* (U.S. 1986) 477 U.S. 274. In *Brock*, a labor union challenged, on behalf

23  of its members, the Secretary of Labor's interpretation of the eligibility provisions of

24  the Trade Act of 1974, which provisions provided benefits to certain laid off workers.

25  The Court of Appeals wrongly denied the union standing, and held that because those

26  UAW members "who had suffered an alleged injury had done so in varying amounts

27  requiring individualized proof," the relief sought could not be obtained unless "each

28  individual claimant was a party plaintiff. *Brock*, 477 at 280 (internal citation omitted).

1   The U.S. Supreme Court reversed, explaining that "the Court of Appeals misconstrued
2   the nature of petitioners' claims. Neither these claims nor the relief sought required the
3   District Court to consider the individual circumstances of any aggrieved UAW
4   member. The suit raises a pure question of law: whether the Secretary properly
5   interpreted the Trade Act's TRA eligibility provisions." *Id.* at 287. "Thus, though the
6   unique facts of each UAW member's claim will have to be considered by the proper
7   state authorities before any member will be able to receive the benefits allegedly due
8   him, the UAW can litigate this case without the participation of those individual
9   claimants and still ensure that "the remedy, if granted, will inure to the benefit of those
10  members of the association actually injured." *Id.* at 288 (citing *Warth,* 422 U.S. at
11  515).

12      Just as the Court of Appeals in *Brock,* Defendants here misconstrue the nature
13  of Plaintiffs claims and the remedies sought.  "[A]ssociational standing is often
14  granted where the challenge raises a pure question of law that is not specific to
15  individual members." *See Playboy Enters., Inc. v. Pub. Serv. Comm'n of P.R.,* 906 F.2d
16  25, 35 (1st Cir. 1990) (citing *Brock,* 477 U.S. at 286). It is unnecessary, and would be
17  a waste of the Court's resources, to consider the individual circumstances of each and
18  every aggrieved CRPAF member, because the Complaint chiefly raises questions of
19  law: whether the Sheriff and Defendants properly interpreted the Penal Code's "good
20  cause" and residency provisions.

21      And, to paraphrase the Supreme Court in *Brock,* "though unique facts of each
22  [member-applicant (i.e., competency with a firearm, criminal history, etc.)] will have
23  to be considered by [Defendants] before any member will be able to receive [a CCW],
24  the [CRPAF] can litigate this case without the participation of those individual
25  [member-applicants] and still ensure that 'the remedy, if granted, will inure to the
26  benefit of those members of the association actually injured.'" *Id.* at 288 (citing *Warth,*
27  422 U.S. at 515).

28

1   Defendants cite *Ass'n of Christian Schs. Int'l v. Stearns*, 2010 U.S. App. LEXIS
2   745 (9th Cir. Cal. Jan. 12, 2010) to support their argument. In *Stearns*, an organization
3   representing Christian students sued the University of California, seeking declaratory
4   relief that the school's policy of refusing to approve religious-based courses that did
5   not "treat the study of religion or ethics from the standpoint of scholarly inquiry" was
6   unconstitutional, and also seeking an injunction on that policy. *Id*. at *6. The District
7   Court denied the group standing. On appeal, the Ninth Circuit upheld the decision of
8   the district court to deny the group standing because "The Plaintiffs' *as-applied claims*
9   and the relief they seek, although equitable in nature, both require 'individualized
10  proof' *specific to each rejected course and the school that offered it.*" *Id*. at *7
11  (emphasis added). The *Stearns* court reasoned that "individual course decisions 'are
12  not common to the entire membership.' Relief would not be 'shared by all in equal
13  degree.' Instead, each course decision affects only one [organizational] school, and
14  relief would benefit only that school." *See Ass'n of Christian Schs. Int'l v. Stearns*
15  (2008) 678 F.Supp.2d 980, 985.

16      Unlike the plaintiffs in *Stearns*, Plaintiffs do not seek to vindicate the
17  constitutional worthiness of any particular individual to have a CCW, nor even to
18  compel the issuance of a CCW to any individual plaintiff. No individualized decisions
19  need be made. Rather, Plaintiffs seek relief for *all* current, future, and contemplated
20  CCW applicants, including all members of the CRPAF, who have applied for a CCW
21  or might want to, and who have been or would be denied a CCW as a result of the
22  policy held out by defendants as the one Defendants apply to *all* applicants to establish
23  "good cause" and residency.

24      **2.   Plaintiffs' *Claims* Do Not All Require an
             "Ad Hoc Factual Inquiry"**

26      Preliminarily, we note that even if Plaintiffs' claims were found to require some
27  amount of "individualized proof" or the participation of *some* CRPAF members in the
28  suit, that would not necessarily foreclose CRPAF's standing. (See *National Ass'n of*

1  *College Bookstores v. Cambridge Univ. Press* (S.D.N.Y. 1997) 990 F. Supp. 245, 250

2  (The fact that a limited amount of individuated proof may be necessary does not in

3  itself preclude associational standing); citing *New York State Nat'l Org. of Women v.*

4  *Terry* (2d Cir. 1989) 886 F.2d 1339, 1349 (associational standing present though

5  evidence from some individual members required); see also *UAW v. Brock*, 477 U.S.

6  at 282 (*Hunt* test was formalized version of doctrine announced in *Warth v. Seldin*,

7  422 U.S. 490, 511, 45 L. Ed. 2d 343, 95 S. Ct. 2197 (1975), which held that

8  associational standing was not present in cases requiring "the individual participation

9  of *each* injured party . . . .") (emphasis added)).  As mentioned, Plaintiffs' legal

10  challenges do not require participation of any CRPAF members, let alone all of them.

11  (See *Hospital Council of Western Pennsylvania v. Pittsburgh*, 949 F.2d 83,89-90 (3d

12  Cir. Pa. 1991) (So long as the nature of the claim and of the relief sought does not

13  make the individual participation of each injured party indispensable to proper

14  resolution of the cause, the association may be an appropriate representative of its

15  members entitled to invoke the court's jurisdiction); (and *see Welch v. Eli Lilly & Co.*,

16  2008 U.S. Dist. LEXIS 61648, *14-20 (S.D. Ind. Aug. 7, 2008) (holding the NAACP

17  had standing to challenge an alleged pattern or practice of race discrimination *against*

18  *individuals*.)

19        Defendants nonetheless incorrectly rely on *Stearns* and *Rent Stabilization Ass'n*

20  *v. Dinkins* (2d. Cir. N.Y. 1993) 5 F.3d 591, 595-597, to assert that regardless of the

21  nature of the *relief* plaintiffs seek, CRPAF does not have associational standing

22  because the *claims* asserted "require an 'ad hoc factual inquiry' for each member

23  thereof. (Opp. at p. 3, lns. 13-16). But both *Stearns* and *Dinkins* dealt solely with

24  standing relating to *as applied* claims that required fact-intensive analysis of each

25  individual claimant.  (See 2010 U.S. App. LEXIS 745 at *7; see also *Dinkins*, 5 F.3d

26  at 595-596). *Dinkins* involved an organization purporting to represent various

27  landowners who claimed to be the victims of takings. *Dinkins*, 5 F.3d at 596. In

28  denying the organization standing, the court in *Dinkins* reasoned that "whether a

taking has occurred depends not only on a legal interpretation of takings jurisprudence, but also on a variety of financial and other information unique to each landlord," and that the court "would have to engage in an ad hoc factual inquiry for each landlord who alleges that he has suffered a taking." *Id.*

Such is not the case here. Plaintiffs assert seven claims for relief in their Complaint, only one of which, the Second Claim for Relief (Equal Protection), would require any 'factual inquiry' – as to individuals granted or not granted a CCW and their comparative circumstances, and not even necessarily the individual Plaintiffs' circumstances. All Plaintiffs' other claims are direct *legal* challenges to Defendants' CCW issuance policies, requiring no individual fact-specific inquiry.

Unlike Plaintiffs' claims here, the issue in *Stearns* depended on the need for evaluating the specific merits of a class course, just as the issue in *Dinkins* depended on evaluating the unique property aspects of land.  Defendants' reliance on *Stearns* and *Dinkins* is misplaced.  Because the challenges here are to the policy itself, the claims present primarily questions of law. They do not depend on, nor need, an inquiry into the facts of each CRPAF member to establish Defendants' constitutional violations.

### 3.  CRPAF Also Has Standing Because CRPAF Itself Is Injured by Defendants' Policy

When an organization is forced to devote its time and energy to dealing with certain conduct, it is injured by that conduct. *See, e.g. Havens Realty Corp.* v. *Coleman*, 455 U.S. 363 (1982). CRPAF is an organization dedicated to promoting the exercise and preservation of Second Amendment rights.  This includes raising awareness about unconstitutional laws, defending and expanding the legal recognition of rights protected by the Second Amendment, promoting firearms and hunting safety, protecting hunting rights, enhancing marksmanship skills of those participating in shooting sports, and educating the general public about firearms and the laws relating to firearms. Because its members rely on CRPAF to not only inform them of the scope

1  of their Second Amendment rights, but to guard against infringements thereto,

2  unlawful policies such as, and including Defendants', divert CRPAF's limited

3  resources, including time and treasure.

4    **B.    The Four Proposed Individual Plaintiffs Should be Allowed Added**

5        **1.    Leave to Amend Is Given Liberally**

6  "The court should freely give leave when justice so requires." Fed. R. Civ. P.

7  15(a). The policy favoring leave to amend is "a necessary companion to notice

8  pleading and discovery" (*Lone Star Invest. Club v. Schlotzsky's, Inc.* (5th Cir. 2001)

9  238 F.3d 363, 367), and should be applied with "extreme liberality." *Eminence*

10  *Capital, LLC v. Aspeon, Inc.* (9th Cir. 2003) 316 F.3d 1048, 1051; see also *Moore v.*

11  *Baker* (11th Cir. 1993) 989 F.2d 1129, 1131, holding that "justifying reason must be

12  apparent for denial of a motion to amend."

13        **2.    Additional Plaintiffs Will *Not* Unduly Prejudice Defendants**

14            **Nor Unduely Burden This Court**

15  As previously explained, adding the proposed plaintiffs will neither confuse any

16  legal issues, nor significantly or unnecessarily expand this litigation. (See *Jones v.*

17  *Bates*, 127 F.3d 839, 847 n.8 (9th Cir. Cal. 1997)). Plaintiffs' Prayer for relief in the

18  Complaint is virtually identical to that of the Prayer in the original Complaint.

19  (*Compare* Compl. at pg. 3, ¶¶ 1-3, *and* Pls.' First Am. Compl., ¶¶ 148-150). Thus,

20  although the Motion seeks to add new claims and plaintiffs, they are all still based on

21  the same policy and seek the same relief as the original complaint in this matter; they

22  do not significantly expand the litigation. The proposed plaintiffs' claims are nearly

23  the same as, and based upon the same set of factual circumstances as the original sole

24  Plaintiff. And allowing the additional parties now avoids the costliness of separate

25  suits later.

26  Moreover, the Opposition fails to explain how or which of the proposed

27  plaintiffs or allegations will cause confusion. To justify denial of leave to amend, the

28  prejudice must be substantial. *Morongo Band of Mission Indians v. Rose* (9th Cir.

1  1990) 893 F.2d 1074, 1079.  Defendants' inability to articulate a specific example of

2  how the issues will expand and become confusing, indicates how *insubstantial* any

3  potential prejudice to Defendants really is.

4  As explained above, Plaintiffs' claims for relief are chiefly questions of law.

5  Defendants mention the "36 new paragraphs of factual allegations regarding the four

6  new individual plaintiffs" (Opp. at pg. 3, lns. 24-25), but this merely expresses

7  defendants' concerns about new *paragraphs*, not new facts. The amended complaint

8  does not significantly affect the scope of this litigation. Defendants have failed to

9  demonstrate any undue prejudice by the addition of the proposed plaintiffs to this

10  lawsuit.

11  **3.     There Was No Undue Delay by Plaintiffs**

12  The Motion was filed by the date this Court allowed for the filing of amended

13  pleadings. Defendants do not provide a reason they would be prejudiced by the timing

14  of the Motion. Thus, there is no undue delay. Further, a showing of delay alone usually

15  will not justify denial of leave to amend anyway. *DCD Programs, Ltd.*, 833 F.2d 185,

16  186. Any of Defendants' concerns that Plaintiffs' Complaint would complicate this

17  Court's previous discovery orders is easily remedied, as this Court has discretion to

18  modify the scheduling Order accordingly.

19  **III.   CONCLUSION**

20  For the foregoing reasons, Plaintiffs' Motion for Leave to Amend Complaint

21  should be granted.

22  Date: May 24, 2010                          **MICHEL & ASSOCIATES, P.C.**

23

24

25                                               /s/ C.D. Michel
                                                 C.D. Michel
26                                               E-mail:cmichel@michellawyers.com
                                                 Counsel for Plaintiff Edward Peruta

27

28

**IN THE UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| EDWARD PERUTA, | ) **CASE NO. 09-CV-2371 IEG (BGS)** |
| Plaintiff, | ) **CERTIFICATE OF SERVICE** |
| v. | ) |
| COUNTY OF SAN DIEGO, WILLIAM D. GORE, INDIVIDUALLY AND IN HIS CAPACITY AS SHERIFF, | ) |
| Defendants. | ) |

IT IS HEREBY CERTIFIED THAT:

I, the undersigned, am a citizen of the United States and am at least eighteen years of age. My business address is 180 E. Ocean Blvd., Suite 200, Long Beach, California, 90802.

I am not a party to the above-entitled action. I have caused service of:

**REPLY TO OPPOSITION TO MOTION FOR LEAVE TO AMEND COMPLAINT**

on the following party by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

James M. Chapin
John J. Sasone
County of San Diego
Office of County Counsel
1600 Pacific Highway
Room 355
San Diego, CA 92101-2469
(619) 531-5244
Fax: (619-531-6005
james.chapin@sdcounty.ca.gov

Paul Neuharth, Jr.
PAUL NEUHARTH, JR., APC
1440 Union Street, Suite 102
San Diego, CA 92101
Telephone:  (619) 231-0401
Facsimile:   (619) 231-8759
pneuharth@sbcglobal.net

I declare under penalty of perjury that the foregoing is true and correct. Executed on May 24, 2010.

/s/ C.D. Michel
C. D. Michel
Attorney for Plaintiffs

1   @PFDesktop\::ODMA/MHODMA/IMANAGE1;Interwoven;161720;3
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ER001144

**TAB 50**

1 | JOHN J. SANSONE, County Counsel
Answering Defendant of San Diego
2 | By JAMES M. CHAPIN, Senior Deputy (SBN 118530)
1600 Pacific Highway, Room 355
3 | San Diego, CA 92101
Telephone: (619) 531-5244
4 | james.chapin@sdcounty.ca.gov

5 | Attorneys for Defendants County of San Diego and William D. Gore

6

7

8 | **UNITED STATES DISTRICT COURT**

9 | **SOUTHERN DISTRICT OF CALIFORNIA**

10

11 | EDWARD PERUTA,                          )   USSD No. 09-CV-2371 IEG (BGS)
                                          )
12 |          Plaintiff,                    )
                                          )   **COUNTY OF SAN DIEGO AND**
13 |     v.                                )   **WILLIAM D. GORE'S OPPOSITION**
                                          )   **TO PLAINTIFF'S MOTION TO**
14 | COUNTY OF SAN DIEGO, WILLIAM D.        )   **AMEND**
     GORE, INDIVIDUALLY AND IN HIS         )
15 | CAPACITY AS SHERIFF,                    )
                                          )   Date:  June 1, 2010
16 |          Defendants.                   )   Time:  10:30 a.m.
                                          )   Courtroom: 1
17 |                                         )   Honorable Irma E. Gonzalez

18 | _____   [Defendants Demand Jury Trial]

19 |                                 **I**

20 |                          **INTRODUCTION**

21 |          The Complaint in this action was filed on October 23, 2009.  On February 24,

22 | 2010, the Court entered an Order setting dates following the Early Neutral Evaluation.

23 | At that time, there was a single Plaintiff and a single distinct set of allegations relating

24 | to the application of Edward Peruta for a concealed weapons permit.  The Court entered

25 | orders relating to discovery, experts and other dates based upon the assumption that the

26 | case was limited to a single Plaintiff.

27 |          On April 22, 2010, the last day for filing an amended complaint, this motion for

28 | leave to amend was filed.  The amended complaint proposes to add five new plaintiffs

1                    09-CV-2371 IEG (BGS)

1   and makes allegations about the new plaintiffs that raise issues of fact not raised by the

2   original complaint and which compound and confuse the legal issues previously sought

3   to be addressed by this litigation.

4       Furthermore, one of the new plaintiffs is an association which has no standing to

5   litigate an "as applied" constitutional challenge which is the essence of the proposed

6   amended complaint.

7       For these reasons and as more fully set forth below, Defendants oppose the

8   motion for leave to amend.

9                                      II

10              **THE CALIFORNIA RIFLE AND PISTOL**
              **ASSOCIATION FOUNDATION LACKS STANDING**

11

12      All allegations and claims for relief in the proposed amended complaint relate to

13   Defendants' administration of California Penal Code section 12050 and interpretation

14   of residency and good cause requirements in the context of granting and denying permit

15   applications submitted by individuals.  The California Rifle and Pistol Association

16   Foundation ["CRPAF"] cannot apply for a permit and cannot pursue an "as applied"

17   challenge to this statute.

18      Associational standing permits an organization to litigate as a representative of its

19   members if: "(a) [the organization's] members would otherwise have standing to sue in

20   their own right; (b) the interests [the organization] seeks to protect are germane to the

21   organization's purpose; and (c) neither the claim asserted nor the relief requested

22   requires the participation of individual members in the lawsuit." *Hunt v. Wash. State*

23   *Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977).

24      CRPAF cannot satisfy the third prong of the Supreme Court's associational

25   standing test, which mandates that "neither the claim asserted nor the relief requested

26   requires the participation of individual members in the lawsuit."  The plaintiffs' as-

27   ///

28   ///

1   applied claims and the relief they seek, although equitable in nature, both require

2   "individualized proof" specific to each permit application. *See, Ass'n of Christian Schs.*

3   *Int'l v. Stearns*, 2010 U.S. App. LEXIS 745 (9th Cir. Cal. Jan. 12, 2010).

4       Whether an organization satisfies the third *Hunt* prong depends on the claims it

5   asserts and the relief it requests.  The more specific claims and relief are to individual

6   organization members, the less likely it is that the organization has standing.  Courts are

7   likely to grant associational standing where "the [l]aw does not require the participation

8   of individual [association] members, [because] there is complete identity between the

9   interests of the consortium and those of its member[s] . . . and the necessary proof could

10   be presented 'in a group context.'" *N.Y. State Club Ass'n, Inc. v. City of New York*, 487

11   U.S. 1, 10 n.4 (1988) (*quoting Hunt*, 432 U.S. at 344). .

12       Second, "the relief sought is only half the story." *Rent Stabilization Ass'n of City*

13   *of N.Y. v. Dinkins*, 5 F.3d 591, 596 (2d Cir. 1993).  Even if Plaintiffs' individualized

14   declaratory relief request did not prohibit associational standing, the individualized

15   nature of Plaintiffs' as-applied claims would bar standing.  When the claims require an

16   "ad hoc factual inquiry" for each member represented by the association, the

17   organization does not have associational standing.

18       Since each permit application is granted or denied based upon specific,

19   individualized information, and requires a factual inquiry for each applicant, the

20   CPRAF cannot have associational standing in this litigation.

21

**III**

**THE FOUR NEW INDIVIDUAL PLAINTIFFS RAISE
WHOLLY NEW FACTUAL AND LEGAL ISSUES**

22

23

24       The proposed amended complaint contains 36 new paragraphs of factual

25   allegations regarding the four new individual plaintiffs.  Defendants are aware that at

26   least some of the allegations are not true.  With this amended pleading, the course of

27   this litigation would expand five-fold from a strictly factual standpoint and significantly

28   from a legal standpoint because of the broad constitutional claims that are made.

3

09-CV-2371 IEG (BGS)

1
IV

2
**CONCLUSION**

3
The motion should be denied for lack of associational standing and because the

4
four new individual plaintiffs have unique and different factual circumstances from the

5
original plaintiff which will significantly alter the breadth and scope of this litigation.  If

6
any amendment is permitted by the court, the scheduling order should be modified.

7
DATED:                                JOHN J. SANSONE, County Counsel

8
By: s/ *James M. Chapin*

9
JAMES M. CHAPIN, Senior Deputy
Attorneys for Defendants County of San Diego
and William D. Gore

10
james.chapin@sdcounty.ca.gov

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4                           09-CV-2371 IEG (BGS)

ER001148

**TAB 51**

1   C.D. Michel – SBN 144257
    Don B. Kates – SBN 39193
2   cmichel@michellawyers.com
    MICHEL & ASSOCIATES, P.C.
3   180 E. Ocean Blvd., Suite 200
    Long Beach, CA 90802
4   Telephone: (562) 216-4444
    Facsimile:  (562) 216-4445
5   Attorneys for Plaintiffs / Petitioners

6   Paul Neuharth, Jr. (State Bar #147073)
    pneuharth@sbcglobal.net
7   PAUL NEUHARTH, JR., APC
    1440 Union Street, Suite 102
8   San Diego, CA 92101
    Telephone: (619) 231-0401
9   Facsimile:  (619) 231-8759
    Attorney for Plaintiff / Petitioner EDWARD PERUTA
10

11           IN THE UNITED STATES DISTRICT COURT

12          SOUTHERN DISTRICT OF CALIFORNIA

13

14  EDWARD PERUTA,                    )  CASE NO. 09-CV-2371 IEG (BLM)
                                      )
15          Plaintiff,                )  **NOTICE OF MOTION AND**
                                      )  **MOTION FOR LEAVE TO AMEND**
16      v.                            )  **COMPLAINT; EXHIBIT "A"**
                                      )  **(PROPOSED FIRST AMENDED**
17  COUNTY OF SAN DIEGO,              )  **COMPLAINT)**
    WILLIAM D. GORE,                  )
18  INDIVIDUALLY AND IN HIS           )  Date:      June 1, 2010
    CAPACITY AS SHERIFF,              )  Time:      10:30 a.m.
19                                    )  Courtroom: 1; Fourth Floor
            Defendants.               )  Hon. Irma E. Gonzalez
20  _____   )

21       **TO DEFENDANTS AND THEIR ATTORNEYS OF RECORD:**

22       PLEASE TAKE NOTICE THAT on June 21, 2010 at 10:30 a.m., Plaintiff

23  will, and by simultaneous submission herewith of the motion itself hereby does,

24  move this Court for an Order granting Plaintiff leave to amend the Complaint in

25  this matter and file a First Amended Complaint.

26  / / /

27  / / /

28  / / /

1

1     This Motion is made pursuant to Federal Rule of Civil Procedure ("FRCP")

2 15(a) and is based on this Notice, the supporting Memorandum of Points and

3 Authorities, the Declaration of C.D. Michel, Exhibit "A," the pleadings and papers

4 on file herein, the record to date in this matter, and upon such other matters as may

5 be presented to the Court at the time of the hearing.

6     DATED:  April 22, 2010       **MICHEL & ASSOCIATES, PC**

7

8                         By:   / s /C.D. Michel

9                              C.D. Michel
                             Attorney for Plaintiffs

10

11

12     DATED:  April 22, 2010       **PAUL NEUHARTH, JR., APC**

13                         By:   / s /Paul Neuharth, Jr.

14                              Paul Neuharth, Jr.
                             Attorney for Plaintiff

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ER001150

1

# IN THE UNITED STATES DISTRICT COURT

2

## SOUTHERN DISTRICT OF CALIFORNIA

3

4  EDWARD PERUTA,                         ) **CASE NO. 09-CV-2371 IEG (BLM)**

5                    Plaintiffs,           ) **CERTIFICATE OF SERVICE**
                                          )
6            v.                            )
                                          )
7  COUNTY OF SAN DIEGO,                    )
   AND WILLIAM D. GORE,                    )
8  INDIVIDUALLY AND IN HIS                 )
   CAPACITY AS SHERIFF,                    )
9                                          )
                     Defendants.           )
10

11  IT IS HEREBY CERTIFIED THAT:

12      I, the undersigned, am a citizen of the United States and am at least eighteen
    years of age. My business address is 180 E. Ocean Blvd., Suite 200, Long Beach,
13  California, 90802.

14      I am not a party to the above-entitled action. I have caused service of:

15  **NOTICE OF MOTION AND MOTION FOR LEAVE TO AMEND
    COMPLAINT; EXHIBIT "A" (PROPOSED FIRST AMENDED**
16  **COMPLAINT)**

17  on the following party by electronically filing the foregoing with the Clerk of the
    District Court using its ECF System, which electronically notifies them.

18  James M. Chapin                    Paul Neuharth, Jr. (State Bar #147073)
    County of San Diego                PAUL NEUHARTH, JR., APC
19  Office of County Counsel           1440 Union Street, Suite 102
    1600 Pacific Highway               San Diego, CA 92101
20  Room 355                           Telephone:  (619) 231-0401
    San Diego, CA 92101-2469           Facsimile:  (619) 231-8759
21  (619) 531-5244                     pneuharth@sbcglobal.net
    Fax: (619) 531-6005
22  james.chapin@sdcounty.ca.gov

23      I declare under penalty of perjury that the foregoing is true and correct.
24  Executed on April 22, 2010

25                          / s / C.D. Michel
                            C. D. Michel
26                          Attorney for Plaintiffs

27

28

3

# EXHIBIT A

ER001152

1  C.D. Michel – SBN 144257
   Clint B. Monfort - SBN 255609
2  Sean A. Brady - SBN 262007
   cmichel@michellawyers.com
3  MICHEL & ASSOCIATES, P.C.
   180 E. Ocean Blvd., Suite 200
4  Long Beach, CA 90802
   Telephone: (562) 216-4444
5  Facsimile:  (562) 216-4445
   www.michellawyers.com
6  Attorneys for Plaintiffs / Petitioners

7  Paul Neuharth, Jr. (State Bar #147073)
   pneuharth@sbcglobal.net
8  PAUL NEUHARTH, JR., APC
   1440 Union Street, Suite 102
9  San Diego, CA 92101
   Telephone: (619) 231-0401
10 Facsimile:  (619) 231-8759
   Attorney for Plaintiff / Petitioner EDWARD PERUTA

11

12           IN THE UNITED STATES DISTRICT COURT

13           SOUTHERN DISTRICT OF CALIFORNIA

14
   EDWARD PERUTA, MICHELLE )      CASE NO: 09-CV-2371 IEG (BLM)
15 LAXSON, JAMES DODD, DR.   )
   LESLIE BUNCHER, MARK      )      FIRST AMENDED COMPLAINT
16 CLEARY, and CALIFORNIA RIFLE )   [PROPOSED]
   AND PISTOL ASSOCIATION    )
17 FOUNDATION                )      42 U.S.C. sections 1983, 1988
                             )
18        Plaintiffs,         )
                             )
19     v.                    )
                             )
20 COUNTY OF SAN DIEGO,       )
   WILLIAM D. GORE,          )
21 INDIVIDUALLY AND IN HIS   )
   CAPACITY AS SHERIFF,      )
22                           )
          Defendants.        )
23 _____ )

24      NOW COME Plaintiffs, by and through the above Counsel, and allege

25 against Defendants as follows:

26 / / /

27 / / /

28 / / /

                              1

## INTRODUCTION

1. Twenty-five years ago, a committee of the California Assembly found disarray in the issuance of concealed weapons permits ("CCW") by local government entities in California: "permit standards often are nonexistent or unclear; the key standards for issuance are undefined and their interpretation is highly discretionary; and many jurisdictions have no written policies."[1]

2. In June 2008, the United States Supreme Court held that the Second Amendment to the United States Constitution protects a fundamental, individual right to keep, and to bear, arms for self defense. *District of Columbia v. Heller,* 128 S.Ct. 2783 (2008).

3. When considering an application for a CCW, the standards Defendants have set are so high they are illegal and unconstitutional. Defendants do not consider this constitutionally guaranteed right to self-defense to be sufficient to meet the "good cause" required by California law for the issuance of a permit.

4. Further, Defendants deny many CCW applications from those who maintain an address and residence in San Diego on grounds that such applicants do not meet the statutory residency requirement.

5. The fundamental individual right to bear arms for self-defense does not end at the doorstep to one's home. Plaintiffs seek equitable and declaratory relief to that effect, to compel Defendants to articulate and adopt a constitutional policy regarding the issuance of CCW licenses, and to review CCW applications, determine residency, and issue CCW licenses in a manner consistent with California law, and with the United States Constitution.

/ / /

/ / /

---

[1] Abstract to SMOKING GUN – THE CASE FOR CONCEALED WEAPON PERMIT REFORM, http://www.ncjrs.gov/App/Publications/abstract.aspx?ID=104228.

2

**PARTIES**

**[Plaintiffs]**

6. Plaintiff Edward PERUTA is a natural person, a citizen of the United States and of the State of California, and a resident of San Diego County, California.

7. PERUTA maintains a residence in San Diego County. Plaintiff maintains a permanent mailing address in San Diego, California, and PERUTA and his wife keep a room in San Diego in which they keep a wardrobe and other personal items.

8. PERUTA and his wife reside in San Diego in a motor home for extended periods of time. PERUTA reserved space at Campland on the Bay, in San Diego, California, from November 15, 2008 through April 15, 2009. PERUTA has also previously reserved space at the same place for months at a time.

9. PERUTA is the founder and sole stockholder of *American News and Information Services, Inc.*, a news and information company that operates throughout the United States, and which gathers and provides raw, breaking news video, photographs, and news tips to various mainstream media outlets.

10. As part of PERUTA's media duties and employment, he often enters high crime areas. This puts him at risk of criminal assault and in need of a firearm to defend himself. In pursuing his occupation, PERUTA and his wife travel extensively throughout the United States in their motor home, carrying large sums of cash, valuables and equipment, making them a target for violent crimes.

11. As part of PERUTA's travels, he and his wife often find it necessary to stay in remote rural areas of the United States, including California, where law enforcement personnel are frequently unavailable.

12. In November 2008, PERUTA requested a CCW application form from the San Diego County Sheriff's License Division. At that time he was interviewed by a licensing supervisor to determine whether he satisfied the Defendants' licensing criteria. Basically, he had to first apply to get an official application form

3

1   before he could actually apply for a CCW.

2       13. In February 2009, PERUTA submitted an application for a CCW.

3   PERUTA provided the required eight (8) hour Firearms Safety and Proficiency

4   Certificate (California Penal Code § 12050(E)(I)).

5       14. PERUTA is eligible to possess firearms.

6       15. PERUTA was denied a CCW by Defendants upon a finding by the San

7   Diego County Sheriff's licensing division that Plaintiff did not have "good cause"

8   and was not a "resident" of San Diego County.

9       16. Defendants deemed that PERUTA did not have "good cause" because

10  PERUTA, beyond a desire to exercise his Second Amendment right to bear arms in

11  self-defense, could not document a more specific demonstrable threat of harm as a

12  primary reason for desiring a CCW license.

13      17. Defendants also found that PERUTA is not a San Diego county resident

14  because his residence is his mobile home.

15      18. PERUTA appealed this denial as far as possible administratively.

16      19. Re-submission of an application would be futile.

17      20. Plaintiff Michelle LAXSON is a 26-year-old natural person, a citizen of

18  the United States and of the State of California, and a resident of San Diego

19  County, California.

20      21. Plaintiff LAXSON owns her own hairdressing business.

21      22. LAXSON wishes to have a CCW for self-defense because her work

22  requires her to travel alone and to carry large amounts of cash, sometimes at night,

23  and often through neighborhoods known to have a heightened level of crime.

24      23. LAXSON applied for a CCW on or about January 25, 2010, but was told

25  that same day that a CCW license would not be issued for failure to establish "good

26  cause" as determined and required by Defendants.

27  / / /

28  / / /

4

24. LAXSON is legally qualified to possess a firearm and, other than the supposed inadequacy of her "good cause," can satisfy the legal requirements for issuance of a CCW.

25. LAXSON is involved in the community through various charities to which she devotes time or money, including Mama's Kitchen, the YMCA, Child Help, Friends of Scott, Locks of Love, the Zoological Society, and various local school events and fundraisers. She is an active member in her local church.

26. But for her lack of a CCW, LAXSON would carry a concealed, loaded firearm in public for self-defense.

27. Plaintiff James DODD is a 67-year-old natural person, a citizen of the United States and of the State of California, and a resident of San Diego County, California.

28. Plaintiff DODD is a retired Navy Officer. He served in the Navy for 22 years, and served two combat tours of duty in the Vietnam War.

29. Apart from his military career, Plaintiff DODD has received extensive firearms training from shooting schools such as Gunsite and Front Sight.

30. Plaintiff DODD also took a CCW class in San Diego on or about July 26, 2000, in anticipation of applying for a CCW from Defendant San Diego County.

31. Plaintiff DODD desires a CCW to exercise his Second Amendment right to bear arms in self-defense. At his age, he is less physically capable of defending himself, and his wife, from violent crime without a firearm. Upon requesting an application for a CCW in early August 2000, Plaintiff DODD was told by the Sheriff's Department that he would be wasting $200 by applying because Defendants would not issue Plaintiff DODD a CCW because he did not have "good cause." DODD was informed that filing a formal application and paying the associated fees was a waste of time and money because he did not have "good cause" to obtain a CCW.

5

1    32. But for the Defendants instructing him that he did not qualify for and

2    would not be issued a CCW license, Plaintiff DODD would have formally applied

3    for a CCW license.

4    33. Plaintiff Doctor Leslie BUNCHER is a 71 year old natural person, a

5    citizen of the United States and of the State of California, and a resident of San

6    Diego County, California.

7    34. Plaintiff Dr. BUNCHER is retired after working as a medical physician

8    for approximately thirty (30) years.  Part of Dr. BUNCHER's medical practice

9    involved him performing abortions.

10   35. Because of the socially controversial nature of Dr. BUNCHER's

11   practice, he was the target of various threats to his well-being.  Dr. BUNCHER has

12   had anti-abortion protestors enter his office, and has received threatening electronic

13   mails and letters calling him a murderer and telling him to repent.

14   36. Dr. BUNCHER obtained a CCW from one of Defendant GORE's

15   predecessors in the early 1970's and maintained it for decades. Dr. BUNCHER

16   failed to timely renew his CCW. Sometime after it expired he went to the Sheriff's

17   station and inquired about reapplying for a new CCW. He was told by defendants'

18   employees that he would not be issued a permit if he applied because he was no

19   longer practicing medicine and thus lacked "good cause."

20   37. Upon being told he would be rejected, Dr. BUNCHER nonetheless

21   returned days later with evidence of specific threats that continued to be made

22   against him and other doctors. Dr. BUNCHER showed Defendants that his name

23   and address remained available on the internet as a doctor associated with

24   abortions.  He then officially applied for a CCW license, but was nonetheless

25   denied on September 28, 2008.

26   38. Defendants sent the Doctor a Denial Letter stating that the

27   documentation he provided did not support a showing of good cause, and that "fear

28   alone" does not constitute "good cause."

1    39. Dr. BUNCHER served in the military as a Military Police officer and
2    taught shooting courses at the Military Police Academy.

3    40. Dr. BUNCHER presently volunteers as a reserve officer for the Humane
4    Society and a reserve officer for the Chula Vista Police Force, Mounted Division.
5    As a reserve officer he is permitted access to areas deemed fire-dangers and closed
6    to the public.

7    41. Dr. BUNCHER wishes to have a CCW to defend himself and his wife
8    from violent crime in general, and specifically from individuals who have
9    threatened him in the past because he performed pregnancy terminations.

10    42. But for his lack of a CCW, Dr. BUNCHER would carry a concealed,
11    loaded firearm in public for self-defense on occasions he deemed appropriate.

12    43. Plaintiff Mark CLEARY is a 58-year-old natural person, a citizen of the
13    United States and of the State of California, and a resident of San Diego County,
14    California.

15    44.   Plaintiff CLEARY is a registered nurse at a hospital in San Diego
16    County. As part of his employment, Plaintiff CLEARY must tend to patients who
17    are deemed legally insane pursuant to the California Welfare and Institutions Code,
18    and who are often dangerous to themselves and others.

19    45. Plaintiff CLEARY has worked with mentally ill patients since 1994. He
20    worked between 1999 and 2008 throughout Southern California, including San
21    Diego County, conducting mental health evaluations of patients pursuant to
22    California Welfare and Institutions Code section 5150.  During his career, Plaintiff
23    CLEARY was subjected to several death threats from patients. He has filed six
24    police reports to Defendants documenting some of these threats.

25    46. Plaintiff CLEARY continues to work with mentally ill patients in a lock-
26    down facility where he has worked since 2007.

27    / / /
28    / / /

7

1     47. Plaintiff CLEARY wishes to have a CCW for self-defense against his

2 past and present patients, and the ones he will surely tend to in the future, who

3 suffer from mental illness and many of whom have a history of being dangerous to

4 others.

5     48. Plaintiff CLEARY was originally issued a CCW by Defendants in

6 November of 2005 after being denied previously. The CCW was issued to Plaintiff

7 CLEARY only after he became a member of the Honorary Deputy Sheriff's

8 Association in San Diego County and made a request for reconsideration of his

9 application to Defendant GORE personally.

10     49. Defendants granted his renewal application for a CCW in November of

11 2007 while he was working at the same hospital where he is currently employed.

12 At that time, Plaintiff CLEARY remained a member of the Honorary Deputy

13 Sheriff's Association.

14     50. On or about November 23, 2010, Plaintiff CLEARY submitted an

15 application for a renewal of his CCW.

16     51. Plaintiff CLEARY ceased being a member of the Honorary Deputy

17 Sheriff's Association in December of 2009 after he stopped paying his membership

18 dues.

19     52. In January 2010, Plaintiff CLEARY spoke with Jerry Quinlin of

20 Defendant GORE's office, who requested additional documentation from Plaintiff

21 CLEARY, including a letter from CLEARY's supervisor. When Plaintiff

22 CLEARY explained that he feared losing his job by making such a request of his

23 supervisor and that Defendants already had a letter from the same employer for his

24 previous application, Mr. Quinlin told Plaintiff CLEARY that he could withdraw

25 his CCW application.

26 ///

27 ///

28 ///

8

53. Plaintiff CLEARY refused to withdraw his CCW application and reminded Defendants of the police reports he had filed involving threats from his past patients and that he still worked at the same hospital from which he already submitted a letter illustrating the type of patients he tends to. Plaintiff CLEARY presented his current hospital identification as evidence of his employment there, and offered to present paycheck stubs.

54. On March 17, 2010, Defendants denied Plaintiff CLEARY's renewal application for failure to establish "good cause."

55. But for his lack of a CCW, Plaintiff CLEARY would carry a concealed, loaded firearm in public for self-defense on appropriate occasions.

56. Plaintiff CALIFORNIA RIFLE AND PISTOL ASSOCIATION FOUNDATION ("CRPA FOUNDATION") is a non-profit entity classified under section 501(c)(3) of the Internal Revenue Code and incorporated under California law, with headquarters in Fullerton, California.

57. Contributions to the CRPA FOUNDATION are used for the direct benefit of Californians. Funds contributed to and granted by the Foundation benefit a wide variety of constituencies throughout California, including gun collectors, hunters, target shooters, law enforcement, and those who choose to own a firearm to defend themselves and their families. The CRPA FOUNDATION seeks to: raise awareness about unconstitutional laws, defend and expand the legal recognition of the rights protected by the Second Amendment, promote firearms and hunting safety, protect hunting rights, enhance marksmanship skills of those participating in shooting sports, and educate the general public about firearms. The CRPA FOUNDATION supports law enforcement and various charitable, educational, scientific, and other firearms-related public interest activities that support and defend the Second Amendment rights of all law-abiding Americans.

///
///

9

1    58. In this suit, the CRPA FOUNDATION represents the interests of its

2    many citizen and taxpayer members and members of its related association the

3    California Rifle and Pistol Association who reside in San Diego and who wish to

4    obtain CCWs, but who have been denied CCWs for supposed lack of residence, or

5    supposed lack of "good cause," or who have been told by the Sheriff's Office not

6    to bother applying for a CCW because of the aforesaid reasons. These members

7    are too numerous to conveniently bring this action individually. The CRPA

8    FOUNDATION and the individuals whose interests are represented by the CRPA

9    FOUNDATION are and will be affected by Defendants' failure to issue CCW

10   licenses according to law.

11                          **[Defendants]**

12   59. Defendant William GORE is the Sheriff of San Diego County. As such,

13   he is responsible for formulating, executing and administering the laws, customs

14   and practices that Plaintiffs challenge, and is in fact presently enforcing the

15   challenged laws, customs, and practices against Plaintiffs (and, in the case of the

16   CRPA Foundation, those they represent). Defendant GORE is sued in his

17   individual capacity and in his official capacity as Sheriff.

18   60. Defendant San Diego County is a municipal entity organized under the

19   Constitution and laws of the State of California.

20                    **JURISDICTION AND VENUE**

21   61. This Court has subject matter jurisdiction over this action pursuant to 28

22   U.S.C. sections 1331, 1343, 1367, 2201, 2202, and 42 U.S.C. section 1983.

23   62. Venue lies in this court pursuant to 28 U.S.C. section 1391.

24                        **REGULATORY SCHEME**

25        **[California Law - Permits to Carry Concealed Firearms]**

26   63. With very few and very limited exceptions, California has banned the

27   unlicensed public carrying of concealed handguns (California Penal Code §

28   12025), and the unlicensed public carrying of loaded firearms (California Penal

10

1  Code § 12031). Because California does not permit the open carriage of loaded

2  firearms, concealed carriage with a CCW permit is the only means by which an

3  individual can bear arms in public places in order to exercise his or her Second

4  Amendment right to armed self-defense.

5      64. California law allows for the issuance of a license to carry a firearm in

6  public for self-defense. In counties with small populations, an individual may

7  obtain a license to openly carry a loaded handgun. (California Penal Code §

8  12050(a)).

9      65. Depending on the jurisdiction, in order to obtain a CCW one must

10  submit an application to either the police chief or the county sheriff ("Issuing

11  Authority") for the city or county in which the applicant either resides or spends a

12  substantial amount of time while conducting business at the applicant's principal

13  place of employment or business located in that county. (California Penal Code §

14  12050, *et seq*).

15     66. CCW applicants must pass a criminal background check (California

16  Penal Code § 12052), and successfully complete a handgun training course.

17  (California Penal Code §12050(a)(1)(E)).

18     67. Even if an applicant successfully completes a background check and the

19  handgun training course, a CCW is issued only if the applicant is additionally

20  found to be of good moral character and, in the discretion of the Issuing Authority,

21  has "good cause" for carrying a concealed firearm. (California Penal Code § 12050

22  (a)(1)(A), (B)).

23     68. Because Issuing Authorities have discretion to determine whether an

24  applicant is of good moral character, and whether an applicant has "good cause"

25  for a CCW, there is little consistency among jurisdictions in establishing the

26  criteria for issuing CCWs. That lack of consistency leads to disparate treatment of

27  similarly situated applicants by a particular Issuing Authority, or by the various

28  Issuing Authorities from jurisdiction to jurisdiction.

11

1    69.  In some counties, such as San Diego, applicants are rarely issued

2  CCWs, but in other counties, CCWs are issued to most law-abiding, responsible

3  adult applicants. Applicants who do receive CCWs in jurisdictions (typically

4  urban) that do not issue CCWs liberally are often wealthy and/or politically

5  important, friends of the Issuing Authority, or individuals who contribute to the

6  Issuing Authority's campaign fund or to the campaign funds of other politicians.

7  Many people lacking those "qualifications" are denied CCWs.

8    70.  This pattern is so pervasive that many people lacking these unofficial

9  "qualifications" or connections generally do not waste their time or money by

10  applying for a CCW.

11                    **[Second and Fourteenth Amendments]**

12    71.  The Second Amendment to the United States Constitution, by way of its

13  incorporation into the Fourteenth Amendment, prohibits states and localities from

14  depriving law-abiding individuals of their right both to keep and to bear arms.

15    72.  The inherent right of self-defense is central to the Second Amendment.

16    73.  The Second Amendment guarantees the right of law-abiding responsible

17  adults to "possess and carry weapons in case of confrontation." This right includes

18  the ability of law-abiding citizens to obtain a license to carry loaded handguns for

19  self-defense in public.

20    74. States may not completely ban the carrying of handguns for self-defense,

21  nor impose regulations on the right to carry handguns that are inconsistent with the

22  Second Amendment.

23    75.  Almost all states effectively recognize the Second Amendment right to

24  carry a handgun for self-defense by either not regulating the carrying of handguns

25  by law-abiding citizens (*i.e.*, they do not require a license to carry a firearm in

26  public), or by regulating only to the extent that individuals who pass a background

27  check and complete a gun-safety program are, as a matter of course, issued a

28  license to carry a handgun in public.

1    76.  In some of those states, a person needs a license to legally carry a
2    handgun only if the person carries the handgun concealed.

3                        **GENERAL ALLEGATIONS**
4                        **[Defendants' Issuance Policy]**

5    77.  Defendant Sheriff William GORE has formulated and adopted, and is
6    continuing to abuse his discretion and apply San Diego County's unconstitutional
7    policies and standards for establishing "good cause" and "residency" when denying
8    CCWs. Defendants' policy, to the extent it has been articulated and published
9    publicly, is attached as Exhibit A.

10    78.  The Second Amendment right to bear arms, and the fundamental right to
11    self-defense and self-preservation, are not deemed by Defendants to constitute
12    "good cause" for the issuance of a CCW.

13    79.  Defendants do not actually require "residency" in San Diego County *per*
14    *se* (the statutory standard). Rather, they improperly require a lack of any residency
15    elsewhere.

16    80.  Plaintiffs are informed and believe and thereupon allege that Defendants
17    sometimes issue CCWs to applicants whose "good cause" *is* credible threats of
18    harm to self or family, or a need to transport large sums of money or valuable
19    property, or engaging in a business or occupation that exposes the applicant to
20    attack.  Defendants, however, issue a CCW in such circumstances only when the
21    applicant is a personal friend of the Sheriff or of someone with influence over the
22    Sheriff, has contributed money to the Sheriff's campaign or to the campaign of
23    others who have influence over the Sheriff, is wealthy or otherwise politically
24    influential, or is a public official.

25    81.  Plaintiffs are also informed and believe and thereupon allege that
26    Defendants sometimes issue CCWs to applicants who do *not* have "good cause"
27    under Defendants' standard, but who are a personal friend of the sheriff or of
28    someone with influence over the sheriff, is a contributor of money to the sheriff's

13

1    campaign or to the campaigns of others who have influence over the sheriff; are
2    wealthy or otherwise politically influential, or is a public official.
3        82. Defendants have created a screening process whereby would-be CCW
4    applicants are required to, in essence, apply to apply for a CCW permit. Unless
5    applicants are determined to have "good cause," as defined by Defendants, during
6    the initial screening of applicants process, they are told that formally applying for a
7    CCW would be pointless and a waste of money, that they will not be issued a
8    CCW, and that they should not apply because their CCW application will be
9    denied.
10                              **[All Plaintiffs]**
11       83. By reason of the Second Amendment, the Fourteenth Amendment's Due
12   Process Clause, the Equal Protection Clause and California Penal Code section
13   12050, each of the Defendants has "good cause" and meets the "good cause"
14   requirement for a CCW license.
15       84. Plaintiffs also meet the residency requirements for issuance of a CCW.
16       85. In the alternative, with respect to Plaintiff PERUTA, he is
17   constitutionally entitled to a CCW permit even if he does not meet the statutory
18   requirement of "residency" in San Diego.
19       86. Plaintiffs meet all of the statutory criteria in California Penal Code
20   section 12050 for issuance of a CCW insofar as such criteria are constitutionally
21   valid.
22       87. Defendants' arbitrary, capricious, and subjective interpretation and
23   application of California Penal Code section 12050's "good cause" requirement is
24   an abuse of discretion and has resulted in the illegal and unconstitutional denial of
25   CCW permits to Plaintiffs.
26       88. There is no valid reason not to consider Plaintiffs' "good cause" and
27   residency adequate to obtain a CCW under California Penal Code § 12050.
28   / / /

1       89. But for the lack of a CCW, Plaintiffs would carry concealed weapons for

2   self-defense.

3                             **[Right to Bear Arms]**

4       90. Defendants' manner of interpreting and applying California Penal Code

5   section 12050's requirements is an abuse of discretion and infringes upon

6   Plaintiffs' right to keep and bear arms under the Second and Fourteenth

7   Amendments, which includes the right to possess and carry weapons in public for

8   self-defense in case of confrontation.

9       91. Denial of a CCW is a denial of the right to carry a firearm for

10  self-defense, a purpose guaranteed by the Second Amendment.

11                            **[Equal Protection]**

12      92. The Fourteenth Amendment to the United States Constitution provides

13  that no state shall "deny to any person within its jurisdiction the equal protection of

14  the laws."

15      93. Defendants' "good cause" and residency policies are an abuse of

16  discretion, subjective, inherently prone to abuse, and results in the unequal

17  treatment of similarly situated individuals applying for a CCW.

18      94. Many of those whose CCW applications are granted because they have

19  the "qualifications" or connections described above are otherwise similarly situated

20  to Plaintiffs, in that they too generally have no significant need or "good cause"

21  that is greater than any of Plaintiffs' self-defense needs.

22      95. Defendants' residency requirement subjects Plaintiff PERUTA and other

23  San Diego residents to unequal treatment.

24      96. Plaintiff PERUTA is a resident of San Diego County by virtue of the fact

25  that he maintains a permanent mailing address in San Diego, keeps personal

26  belongings there, and resides in San Diego County for extended periods of time.

27  ///

28  ///

1    97.  Plaintiff PERUTA should be deemed to have good cause and his

2   application processed even if he does not meet Defendants' residency requirement

3   because treating a person in his circumstance differently from full-time residents

4   denies him equal protection of the laws.

5    98.  Plaintiff PERUTA was denied a CCW, at least in part, because the San

6   Diego Licensing Division made a finding that Plaintiff's residency in a motor home

7   did not meet Defendants' residency requirement.

8    99.  Plaintiff PERUTA was treated differently than similarly situated

9   residents of San Diego County, at least in part, because he does not reside in San

10   Diego County all of the time.

11                              **[Right to Travel]**

12    100.  The Fourteenth Amendment and other provisions of the Constitution

13   guarantee individuals the right to interstate travel and to change their residence

14   from state to state.

15    101.  A state may not impose a penalty upon those who exercise a right

16   guaranteed by the Constitution.

17    102.  Defendants reject CCW applicants, including Plaintiff PERUTA, who

18   do not reside in San Diego County full time.

19    103.  Defendants base such rejections on their inconsistent, unconstitutional,

20   and illegal interpretation and mis-application of California Penal Code section

21   12050's residency requirement.

22    104.  Defendants' policy of requiring full-time residency in San Diego

23   County as a prerequisite to issuing a CCW is an abuse of discretion, is

24   unauthorized by California law, and violates the right to travel guaranteed by the

25   United States Constitution. The policy deters people, including Plaintiff PERUTA,

26   from traveling and spending time outside of San Diego County.

27   / / /

28   / / /

16

1                        **[Penal Code Section 12050]**

2       105. California Penal Code section 12050 requires Defendants to issue

3 CCWs to all responsible, law-abiding adult residents of San Diego County who

4 have "good cause" to carry a firearm for self-defense.

5       106. Defendants' policies are an abuse of discretion and unlawfully exceed

6 California Penal Code section 12050's "good cause" requirement by inconsistently,

7 arbitrarily, capriciously, and subjectively refusing to acknowledge that Plaintiffs

8 have "good cause."

9       107. Defendants' policies unlawfully exceed California Penal Code section

10 12050's "residency" requirement by refusing to acknowledge that lawful residency,

11 even if not full time, satisfies the statutory residency requirement.

12              **[Privileges and Immunities - Article IV]**

13       108. Article IV, section 2 of the United States Constitution provides: "The

14 Citizens of each State shall be entitled to all Privileges and Immunities of Citizens

15 in the several States." This clause bars discrimination against citizens of other

16 States where no substantial reason for the discrimination exists beyond the mere

17 fact that they are citizens of other states.

18       109. Defendants deny applicants CCW applications and licenses based on

19 lack of residency if the applicant resides in San Diego only part of the year.

20       110. Defendants denied Plaintiff PERUTA a CCW based in part on the fact

21 that he spends time in and travels to jurisdictions other than San Diego County.

22

23                 **FIRST CLAIM FOR RELIEF**
    **SECOND AND FOURTEENTH AMENDMENTS - RIGHT TO BEAR ARMS**

24                    **42 U.S.C. § 1983**
               **AGAINST ALL DEFENDANTS**

25       111. Plaintiffs hereby re-allege and incorporate by reference the allegations

26 set forth in the foregoing paragraphs as if set forth herein in full.

27 /// 

28 ///

ER001169

1    112. By refusing to issue CCWs to individuals, including Plaintiffs, based

2  on their subjective and unconstitutional standard of "good cause" that requires a

3  showing beyond the need for self-defense, Defendants are abusing their discretion

4  and propagating customs, policies, and practices that infringe on Plaintiffs' right to

5  possess and carry firearms as guaranteed by the Second and Fourteenth

6  Amendments.

7    113. Defendants cannot satisfy their burden of justifying these customs,

8  policies, and practices that infringe on Plaintiffs' rights.

9    114. Plaintiffs are entitled to permanent injunctive relief against such

10  customs, policies, and practices.

11

12    **SECOND CLAIM FOR RELIEF**
**FOURTEENTH AMENDMENT - EQUAL PROTECTION**
**42 U.S.C. § 1983**

13    **AGAINST ALL DEFENDANTS**

14    115. Plaintiffs hereby re-allege and incorporate by reference the allegations

15  set forth in the foregoing paragraphs as if set forth herein in full.

16    116. Plaintiff PERUTA was treated differently than other similarly situated

17  residents of San Diego County because he resides in San Diego only part of the

18  year.

19    117. Plaintiffs were treated differently than other similarly situated CCW

20  applicants because Plaintiffs are not politically-connected, wealthy, or contributors

21  to the Sheriff's campaign, as are those individuals issued a CCW.

22    118. By maintaining and enforcing a set of customs, practices, and policies

23  that inconsistently and arbitrarily deny Plaintiffs a CCW based on a subjective

24  determination of "good cause" and/or length of one's residency in San Diego, while

25  at the same time issuing CCWs to other similarly situated individuals, Defendants

26  are abusing their discretion and propagating customs, policies, and practices that

27  violate Plaintiffs' rights to equal protection under the Fourteenth Amendment.

28  / / /

18

1    119. Defendants cannot satisfy their burden of justifying these customs,

2  policies, and practices that deprive Plaintiffs equal protection under the law.

3    120.  Plaintiffs are entitled to permanent equitable relief against such

4  customs, policies, and practices.

5
6                    **THIRD CLAIM FOR RELIEF**
                 **FOURTEENTH AMENDMENT - RIGHT TO TRAVEL**
                            **42 U.S.C. § 1983**
7                    **AGAINST ALL DEFENDANTS**

8    121.  Plaintiffs hereby re-allege and incorporate by reference the allegations

9  set forth in the foregoing paragraphs as if set forth herein in full.

10    122.  The residency requirement, as interpreted and applied by Defendants,

11  deters individuals such as Plaintiff PERUTA from exercising their right to travel

12  because the residency requirement penalizes applicants for traveling and spending

13  time outside of San Diego.

14    123.  San Diego's policy burdens the right to travel.

15    124.  Defendants can neither identify a compelling state interest for

16  demanding that individuals reside more than part time in San Diego County, nor

17  demonstrate that the County's residency requirement is necessary to further that

18  interest.

19    125.  Because Defendants cannot satisfy their burden of justifying the

20  residency requirement they impose for CCW issuance, Defendants are abusing their

21  discretion and propagating customs, policies, and practices that violate Plaintiffs'

22  right to travel under the Fourteenth Amendment to the United States Constitution.

23    126.  Plaintiffs are entitled to permanent injunctive relief against such

24  customs, policies and practices.

25  / / /

26  / / /

27  / / /

28  / / /

19

1

**FOURTH CLAIM FOR RELIEF**
**VIOLATION OF CALIFORNIA PENAL CODE SECTION 12050**

2

**42 U.S.C. § 1983**
**AGAINST ALL DEFENDANTS**

3

127.  Plaintiffs hereby re-allege and incorporate by reference the allegations

4

set forth in the foregoing paragraphs as if set forth herein in full.

5

128.  Plaintiffs meet each of the statutory qualifications for licensure under

6

California Penal Code section 12050, but Defendants refuse to examine Plaintiffs'

7

qualifications on their merits because Defendants' "good cause" standard requires a

8

showing of comparatively greater hazard than those faced by other residents of the

9

county.

10

129.  For example, instead of examining Plaintiff PERUTA's individual

11

qualifications on their merits, Defendants denied Plaintiff a CCW license by reason

12

of Defendants' unlawful policies which exclude residents if they also reside

13

elsewhere and for all Plaintiffs require a showing of some specific threat rather

14

than just good cause to fear being attacked in general.

15

130.  Defendants' CCW issuing policies exceed the scope of their discretion

16

and abuse the discretion granted in California Penal Code section 12050, and

17

subject Plaintiffs to irreparable harm.

18

131.  Plaintiffs are entitled to declaratory and equitable relief.

19

**FIFTH CLAIM FOR RELIEF**
**ARTICLE IV, §2 - PRIVILEGES *AND* IMMUNITIES**

20

**42 U.S.C. § 1983**

21

**AGAINST ALL DEFENDANTS**

22

132.  Plaintiffs hereby re-allege and incorporate by reference the allegations

23

set forth in the foregoing paragraphs as if set forth herein in full.

24

133.  Plaintiff PERUTA was denied a CCW based in whole or in part on his

25

failure to satisfy Defendants' residency requirement.

26

134.  Such conduct by Defendants deprives Plaintiff PERUTA of the

27

privileges and immunities of citizenship in violation of Article IV, Section 2 of the

28

United State Constitution.

20

1      135. Defendants' policies regarding the issuance of CCW licenses are

2 unlawful and subject individuals, including Plaintiff PERUTA, to irreparable harm.

3      136. Plaintiff PERUTA is entitled to declaratory and equitable relief.

4

5 **SIXTH CLAIM FOR RELIEF**<br>**SECOND AMENDMENT,**<br>**FOURTEENTH AMENDMENT,**

6 **AND CALIFORNIA PENAL CODE SECTION 12050**<br>**42 U.S.C. § 1983**

7 **AGAINST ALL DEFENDANTS**

8      137. Plaintiffs hereby re-allege and incorporate by reference the allegations

9 set forth in the foregoing paragraphs as if set forth herein in full.

10      138. Plaintiffs desire a Decree from this Court directing Defendants to

11 consider self-defense to be "good cause" for an otherwise qualified applicant to be

12 issued a CCW.

13

14 **SEVENTH CLAIM FOR RELIEF**<br>**FOURTEENTH AMENDMENT - DUE PROCESS**<br>**42 U.S.C. § 1983**

15 **AGAINST ALL DEFENDANTS**

16      139. Plaintiffs hereby re-allege and incorporate by reference the allegations

17 set forth in the foregoing paragraphs as if set forth herein in full.

18      140. Plaintiffs have a right to access and review Defendants' CCW policies,

19 to obtain applications to apply for a CCW, to submit applications, and to have

20 those applications reviewed in a fair, impartial, and constitutional manner and

21 obtain a CCW when they meet the constitutional and legal prerequisites or

22 standards.

23      141. Plaintiffs desire a Decree from this Court directing Defendants to adopt

24 a constitutional application process for issuing CCW licenses.

25 **DECLARATORY RELIEF ON ALL COUNTS**

26      142. Plaintiffs hereby re-allege and incorporate by reference the allegations

27 set forth in the foregoing paragraphs as if set forth herein in full.

28 / / /

21

ER001173

1     143. There is an actual and present controversy between the parties in that
2   Plaintiffs contend that Defendants' are illegally and unconstitutionally interpreting,
3   administering, and applying the California CCW licensing statutes arbitrarily,
4   capriciously, and holding applicants to unconstitutional and illegal standards.
5   Defendants deny and dispute this contention. Plaintiffs desire a judicial declaration
6   of their rights and Defendants' duties in this matter.
7     144. There is an actual and present controversy between the parties hereto
8   in that Plaintiffs contend that Defendants' policies as to "good cause" are an abuse
9   of discretion and are unauthorized by law, and contrary to the Second Amendment.
10  Defendants deny and dispute this contention. Plaintiffs desire a judicial declaration
11  of their rights and Defendants' duties, and that Defendants' policies are contrary to
12  law.
13    145. There is an actual and present controversy between the parties hereto in
14  that Plaintiffs contend Defendants' practice is to deny CCW licensure unless an
15  applicant is a personal friend of the sheriff or of someone with influence over the
16  sheriff, a contributor of money to the Sheriff or his campaigns or to others who
17  have influence over the Sheriff; is wealthy or otherwise politically influential, or is
18  a public official. Defendants deny and dispute this contention. Plaintiffs desire a
19  judicial declaration of their rights and Defendants' duties, and that Defendants'
20  policies are contrary to law.
21    146. There is an actual and present controversy between the parties hereto in
22  that Plaintiffs contend that Defendants' policies as to residency requirements are
23  unauthorized by law and contrary to the Second Amendment, the Equal Protection
24  Clause, the right to travel guaranteed by the Fourteenth Amendment, and the
25  Privileges and Immunities Clause of Article IV, Section 2 of the U.S. Constitution.
26  Defendants deny and dispute this contention. Plaintiffs desire a judicial declaration
27  of their rights and Defendants' duties, to wit that Defendants' policies are contrary
28  to law.

09-CV-2371 IEG (BLM)
ER001174

1    147.  There is an actual and present controversy between the parties hereto in

2  that Plaintiffs contend that Defendants' "good cause" and residency policies are

3  unauthorized by and violate California Penal Code section 12050. Defendants deny

4  and dispute this contention. Plaintiffs desire a judicial declaration of their rights

5  and Defendants' duties.

6                                    **PRAYER**

7    WHEREFORE, Plaintiffs request that judgment be entered in their favor and

8  against Defendants as follows:

9    148.  An order permanently enjoining Defendants, their officers, agents,

10  servants, employees, and all persons in active concert or participation with them

11  who receive actual notice of the injunction, from enforcing the "good cause" or

12  other requirement of California Penal Code section 12050 as currently applied

13  against applicants who seek a CCW for self-defense and who are otherwise

14  qualified to obtain a CCW;

15    149.  Declaratory relief that Defendants' interpretation of the "good cause"

16  provisions of California Penal Code § 12050 is unconstitutional either on its face

17  and/or as applied to applicants who are otherwise legally qualified to possess

18  firearms and who assert self-defense as their "good cause" for seeking a license to

19  carry a concealed weapon;

20    150.  An order permanently enjoining Defendants, their officers, agents,

21  servants, employees, and all persons in active concert or participation with them

22  who receive actual notice of the injunction, from requiring any duration of local

23  residence prior to acknowledging satisfaction of the statutory residency

24  requirement and  accepting an application under California Penal Code § 12050;

25    151.  Costs of Suit, including attorney fees and costs pursuant to 42 U.S.C. §

26  1988 and California law;

27  ///

28  ///

23

1       152. Any further relief as the Court deems just and proper.

2    Respectfully Submitted,

3    **Date:** April 22, 2010                    **MICHEL & ASSOCIATES, P.C.**

4                                                 / s /C.D. Michel
5                                                 C.D. Michel
                                                  E-mail:cmichel@michellawyers.com
6                                                 Counsel for Plaintiffs

7
8    **Date:** April 22, 2010                    **PAUL NEUHARTH, JR., APC**

9                                                 / s /Paul Neuharth
                                                  Paul Neuharth, Attorney at Law
10                                                Counsel for Plaintiff

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ER001176

1  C.D. Michel – SBN 144257
   Don B. Kates – SBN 39193
2  cmichel@michellawyers.com
   MICHEL & ASSOCIATES, P.C.
3  180 E. Ocean Blvd., Suite 200
   Long Beach, CA 90802
4  Telephone: (562) 216-4444
   Facsimile:  (562) 216-4445
5  Attorneys for Plaintiffs / Petitioners

6  Paul Neuharth, Jr. (State Bar #147073)
   pneuharth@sbcglobal.net
7  PAUL NEUHARTH, JR., APC
   1440 Union Street, Suite 102
8  San Diego, CA 92101
   Telephone:  (619) 231-0401
9  Facsimile:   (619) 231-8759
   Attorney for Plaintiff / Petitioner EDWARD PERUTA

10

11          IN THE UNITED STATES DISTRICT COURT

12          SOUTHERN DISTRICT OF CALIFORNIA

13  EDWARD PERUTA,                    )   CASE NO. 09-CV-2371 IEG (BLM)
                                      )
14          Plaintiff,                )   MEMORANDUM OF POINTS AND
                                      )   AUTHORITIES IN SUPPORT OF
15      v.                            )   PLAINTIFF'S MOTION FOR
                                      )   LEAVE TO AMEND COMPLAINT
16  COUNTY OF SAN DIEGO,              )
    WILLIAM D. GORE,                  )   Date:      June 1, 2010
17  INDIVIDUALLY AND IN HIS           )   Time:      10:30 a.m.
    CAPACITY AS SHERIFF,              )   Courtroom: 1, Fourth Floor
18                                    )   Hon. Irma E. Gonzales
            Defendants.               )
19  _____   )

20  I.   INTRODUCTION

21      Through this motion, Plaintiff seeks leave to file a First Amended Complaint

22  pursuant to FRCP 15(a). Plaintiff's First Amended Complaint, attached to

23  Plaintiff's Notice of Motion as Exhibit "A," adds claims that Defendant's conduct

24  violates Penal Code section 12050, the requirements of Due Process, and the

25  Privileges and Immunities Clause of the United States Constitution based on new

26  information Plaintiff has learned and on theories developed since the filing of its

27  original Complaint. Plaintiff's Amended Complaint also joins four (4) individual

28  plaintiffs and one (1) organizational plaintiff.

                                      1

1    Plaintiff's First Amended Complaint is timely, does not cause any prejudice to
2    Defendants, and should therefore be permitted by this Court.

3    **II.   STATEMENT OF FACTS**

4    Plaintiff filed this lawsuit on October 9, 2009.  Defendant, Sheriff William D.
5    Gore, filed a motion to dismiss Plaintiff's complaint on November 12, 2009. This
6    Court denied Defendant's motion on January 14, 2010. Since filing the Complaint,
7    Plaintiff has discovered additional information and developed new legal theories
8    necessitating the filing of the an amended complaint.  (Plaintiff's First Amended
9    Complaint is attached to Plaintiff's Notice of Motion as Exhibit "A.")

10   Plaintiff has learned the identities of other individuals who were unlawfully
11   denied issuance of concealed weapons permits by Defendants, and who wish to be
12   included as plaintiffs in this suit. (See Declaration of C.D. Michel, "Michel Decl."
13   at ¶¶ 4-5.)  Through ongoing informal discovery efforts and further research on
14   behalf of plaintiffs joining in this suit, plaintiffs have determined and allege that
15   Defendant's conduct violates the requirements set forth in Penal Code section
16   12050, the Privileges and Immunities Clause of the United States Constitution, and
17   the requirements of Due Process. (Michel Decl. at ¶ 4-5.)   Plaintiffs also seek a
18   declaration from the Court that the right to self defense constitutes "good cause"
19   for the issuance of a concealed carry weapons permit. (See Exhibit "A.")

20   Plaintiff's counsel has contacted Defendants' counsel to seek Defendants'
21   written consent to the amendment pursuant to FRCP 15. (Michel Decl. at ¶ 6.)
22   However, Defendants have not consented to the filing of this First Amended
23   Complaint as of the time of filing due to objections to Plaintiffs' amended claims
24   (Michel Decl. at ¶ 6.)  Accordingly, Plaintiff seeks an order permitting Plaintiff to
25   file the First Amended Complaint attached to Plaintiff's Notice of Motion as
26   Exhibit "A."

27   ///
28   ///

2

# III.  ARGUMENT

## A.      Leave Should Be Granted To Amend the Complaint

FRCP 15(a) provides that leave to amend a pleading "shall be freely given when justice so requires." The United States Supreme Court and the Ninth Circuit courts have repeatedly reaffirmed that leave to amend is to be granted with "extreme liberality." *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987) (citation omitted); see, e.g., *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 230 (1962) (leave to amend should be freely given); *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) ("Absent prejudice, or a strong showing of any of the remaining *Foman* factors, there exists a *presumption* under Rule 15(a) in favor of granting leave to amend.") (emphasis in original); *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981) (courts should be guided by policy favoring decisions on the merits "rather than on the pleadings or technicalities"). This liberality in granting leave to amend is not dependent on whether the amendment will add new parties. *DCD Programs v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987). Rather, the primary factors relied upon by the Supreme Court and the Ninth Circuit in denying a motion for leave to amend are "bad faith, undue delay, prejudice to the opposing party, and futility of amendment." *Id*. None of these factors are present in this case.

## B.      Amendment Should Be Permitted

Plaintiff's First Amended Complaint is timely and should be allowed. Plaintiff falls well within the liberal standard for freely allowing the amendment of pleadings. See *Foman v. Davis*, 371 U.S. 178, 182 (1962) ("In the absence of . . . undue delay, bad faith or dilatory motive on the part of the movant . . . undue prejudice to the opposing party by virtue of allowance of the amendment . . . the leave sought should, as the rules require, be 'freely given.'")

/ / /

/ / /

3

1    Moreover, Defendants will not be prejudiced by the filing of Plaintiff's First
2  Amended Complaint.  Plaintiff's First Amended Complaint does not change the
3  nature of the lawsuit, nor are Defendants precluded from seeking discovery in
4  relation to the First Amended Complaint. Accordingly, Defendants will not be
5  prejudiced by an order granting leave to file Plaintiffs' First Amended Complaint.
6    Plaintiff offers its Amended Complaint in good faith and without undue delay.
7  Since filing its original complaint, Plaintiff has discovered new information
8  regarding Defendants' policies and practices.  Specifically, Plaintiff has learned
9  that Defendants' unlawful policies regarding the issuance of concealed carry
10  weapons permits have been applied beyond Plaintiff Peruta's individual case to
11  other residents of San Diego County. These residents now joining as plaintiffs in
12  this suit have determined and allege that Defendant's conduct violates the
13  requirements set forth in Penal Code section 12050, the Privileges and Immunities
14  Clause of the United States Constitution, and the requirements of Due Process.
15    This information supports Plaintiff's new claims as well as Plaintiff's
16  assertion of additional details in support of its previously asserted claims. *See*
17  *Coilcraft, Inc. v. Inductor Warehouse*, 2000 U.S. Dist. LEXIS 6097, *8-9 (no bad
18  faith where plaintiff made "reasonable inquiry" into facts supporting new claim,
19  introduced relevant evidence, and "has never mis-characterized the nature of the
20  lawsuit").
21    In sum, Plaintiff's First Amended Complaint is submitted for filing timely and
22  in good faith, contains claims similar to those originally asserted and does not
23  prejudice Defendants. Consequently, none of the factors on which courts base
24  denial of motions for leave to amend are present here. Thus, Plaintiff's motion for
25  leave should be granted.
26  / / /
27  / / /
28  / / /

4

09-CV-2371 IEG (BLM)

1  V.    CONCLUSION

2          For the foregoing reasons, the Court should grant Plaintiff leave to file the

3  First Amended Complaint attached to Plaintiff's Notice of Motion as Exhibit "A"

4

5  DATED:  April 22, 2010                    **MICHEL & ASSOCIATES, PC**

6                                            By:  / s /C.D. Michel

7                                                 C.D. Michel
                                                  Attorney for Plaintiff

8

9  DATED:  April 22, 2010                    **PAUL NEUHARTH, JR., APC**

10                                           By:  / s / Paul Neuharth, Jr.

11                                                Paul Neuharth, Jr.
                                                  Attorney for Plaintiff

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

5

# IN THE UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| EDWARD PERUTA, | ) **CASE NO. 09-CV-2371 IEG (BLM)** |
| Plaintiff, | ) **CERTIFICATE OF SERVICE** |
| v. | ) |
| COUNTY OF SAN DIEGO, WILLIAM D. GORE, INDIVIDUALLY AND IN HIS CAPACITY AS SHERIFF, | ) ) ) ) |
| Defendants. | ) |

IT IS HEREBY CERTIFIED THAT:

I, the undersigned, am a citizen of the United States and am at least eighteen years of age. My business address is 180 E. Ocean Blvd., Suite 200, Long Beach, California, 90802.

I am not a party to the above-entitled action. I have caused service of:

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT**

on the following party by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

James M. Chapin
County of San Diego
Office of County Counsel
1600 Pacific Highway
Room 355
San Diego, CA 92101-2469
(619) 531-5244
Fax: (619)-531-6005
james.chapin@sdcounty.ca.gov

Paul Neuharth, Jr.
PAUL NEUHARTH, JR., APC
440 Union Street, Suite 102
San Diego, CA 92101
Telephone:   (619) 231-0401
Facsimile:   (619) 231-8759
pneuharth@sbcglobal.net

I declare under penalty of perjury that the foregoing is true and correct. Executed on April 22, 2010

/S/ C.D. Michel
C. D. Michel
Attorney for Plaintiffs

6

1    C.D. Michel – SBN 144257
     Don B. Kates – SBN 39193
2    cmichel@michellawyers.com
     MICHEL & ASSOCIATES, P.C.
3    180 E. Ocean Blvd., Suite 200
     Long Beach, CA 90802
4    Telephone: (562) 216-4444
     Facsimile: (562) 216-4445
5

6    Paul Neuharth, Jr. (State Bar #147073)
     pneuharth@sbcglobal.net
7    PAUL NEUHARTH, JR., APC
     1440 Union Street, Suite 102
8    San Diego, CA 92101
     Telephone: (619) 231-0401
     Facsimile: (619) 231-8759
9    Attorney for Plaintiff / Petitioner EDWARD PERUTA

10

11           **IN THE UNITED STATES DISTRICT COURT**

12           **SOUTHERN DISTRICT OF CALIFORNIA**

13    EDWARD PERUTA,        )    **CASE NO: 09-CV-2371 IEG (BLM)**

14        Plaintiff,        )    **DECLARATION OF C.D. MICHEL**

15       v.               )

16    COUNTY OF SAN DIEGO,    )
     WILLIAM D. GORE,         )
17    INDIVIDUALLY AND IN HIS   )
     CAPACITY AS SHERIFF,      )
18                        )
        Defendants.      )
19

20    I, C.D. Michel, declare as follows:

21       1.      I am over the age of eighteen and not a party to this action. I am an

22    attorney licensed to practice law before all Courts of the State of California and am

23    admitted to practice before the U.S. District Court (Eastern, Central, and Southern

24    Districts of California) and the U.S. Supreme Court. I am Senior Counsel at

25    Michel & Associates, P.C. ("MA").

26       2.      I am an of attorney of record for Plaintiffs in this matter. I have

27    personal knowledge of the facts stated in this Declaration and, if called to testify,

28    could and would testify competently and under oath to these facts.

1

3.     Plaintiff filed this lawsuit on October 9, 2009.  Defendant, Sheriff William D. Gore, filed a motion to dismiss Plaintiff's complaint on November 12, 2009. This Court denied Defendant's motion on January 14, 2010.

4.     Since filing the Complaint in this case, Plaintiff has discovered new information and developed new legal theories regarding Defendants' policies and practices.

5.     Plaintiff has learned that Defendants' policies regarding the issuance of concealed carry weapons permits have been applied beyond Plaintiff Peruta's individual case to other residents of San Diego County. These residents now joining as plaintiffs in this suit have determined and allege that Defendant's conduct violates the requirements set forth in Penal Code section 12050, the Privileges and Immunities Clause of the United States Constitution, and the requirements of Due Process.  A true and correct copy of Plaintiff's First Amended Complaint is attached to Plaintiff's Notice of Motion as Exhibit "A."

6.     On April 21, 2010 I met and conferred with opposing counsel in a good faith effort to seek Defendants' written consent to the filing of Plaintiff's First Amended Complaint pursuant to FRCP 15.  Defendants declined to stipulate or consent to the filing of Plaintiff's First Amended Complaint.

7.     In accordance with 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated this 22nd day of April, 2010, at Long Beach, California.

_____
C.D. MICHEL

2

# IN THE UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

EDWARD PERUTA,

          Plaintiff,

     v.

COUNTY OF SAN DIEGO,
WILLIAM D. GORE,
INDIVIDUALLY AND IN HIS
CAPACITY AS SHERIFF,

          Defendants.

)**CASE NO. 09-CV-2371 IEG (BLM)**
)
)**CERTIFICATE OF SERVICE**
)
)
)
)
)
)
)
)
)

**IT IS HEREBY CERTIFIED THAT:**

     I, the undersigned, am a citizen of the United States and am at least eighteen years of age.  My business address is 180 E. Ocean Blvd., Suite 200, Long Beach, California, 90802.

     I am not a party to the above-entitled action. I have caused service of:

## DECLARATION OF C.D. MICHEL

on the following party by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

| | |
|---|---|
| James M. Chapin | Paul Neuharth, Jr. (State Bar #147073) |
| County of San Diego | PAUL NEUHARTH, JR., APC |
| Office of County Counsel | 1440 Union Street, Suite 102 |
| 1600 Pacific Highway | San Diego, CA 92101 |
| Room 355 | Telephone:  (619) 231-0401 |
| San Diego, CA 92101-2469 | Facsimile:   (619) 231-8759 |
| (619) 531-5244 | pneuharth@sbcglobal.net |
| Fax: (619-531-6005 | |
| james.chapin@sdcounty.ca.gov | |

     I declare under penalty of perjury that the foregoing is true and correct. Executed on April 22, 2010

                /s/ C.D. Michel
                C. D. Michel
                Attorney for Plaintiffs

3

09-CV-2371 IEG (BLM)

ER001185

**TAB 52**

1  JOHN J. SANSONE, County Counsel
   County of San Diego
2  By JAMES M. CHAPIN, Senior Deputy (SBN 118530)
   1600 Pacific Highway, Room 355
3  San Diego, California  92101 2469
   Telephone: (619) 531-5244
4  Facsimile: (619) 531-6005
   james.chapin@sdcounty.ca.gov
5

6  Attorneys for Defendant William D. Gore

7

8                    UNITED STATES DISTRICT COURT

9                 SOUTHERN DISTRICT OF CALIFORNIA

10

11  EDWARD PERUTA,                     )  USSD No. **09-CV-2371 IEG (BLM)**
                                       )
12              Plaintiff,             )
                                       )  **DEFENDANT WILLIAM D. GORE'S**
13         v.                          )  **ANSWER TO COMPLAINT**
                                       )
14  COUNTY OF SAN DIEGO, WILLIAM D.    )
    GORE, INDIVIDUALLY AND IN HIS      )
15  CAPACITY AS SHERIFF,               )
                                       )  Dept:   1 – Courtroom of the
16              Defendants.            )          Hon. Irma E. Gonzalez
                                       )
17                                     )
                                       )
18  _____     )

19       Defendant William D. Gore ("Defendant Gore") answers the Complaint for

20  Damages filed herein by admitting, denying and alleging as follows:

21       1.    In response to Paragraph 1 of the Complaint, Defendant Gore lacks

22  sufficient information and belief to admit or deny the allegations contained in those

23  paragraphs, and on that basis, denies each and every allegation contained therein.

24       2.    In response to Paragraph 2 of the Complaint, Defendant Gore denies the

25  allegations contained therein.

26       3.    In response to Paragraphs 3, 4, 5, and 6 of the Complaint, Defendant Gore

27  admits the allegations contained therein.

28  ///

                                    1

1    4.    In response to Paragraphs 7 and 8, of the Complaint, Defendant Gore denies
2    the allegations contained therein.

3    5.    In response to Paragraph 9 of the Complaint, Defendant Gore admits the
4    allegations contained therein.

5    6.    In response to Paragraph 10 of the Complaint, Defendant Gore denies the
6    allegations contained therein.

7    7.    In response to Paragraphs 11, 12, and 13 of the Complaint, Defendant Gore
8    admits the allegations contained therein.

9    8.    In response to Paragraph 14 of the Complaint, Defendant Gore lacks
10   sufficient information and belief to admit or deny the allegations contained in those
11   paragraphs, and on that basis, denies each and every allegation contained therein.

12   9.    In response to Paragraphs 15 and 16 of the Complaint, Defendant Gore
13   denies the allegations contained therein.

14   10.   In response to Paragraphs 17, 18, 19, 20, 21, 22, 23, 24, 25, 26 and 27 of the
15   Complaint, Defendant Gore lacks sufficient information and belief to admit or deny the
16   allegations contained in those paragraphs, and on that basis, denies each and every
17   allegation contained therein.

18   11.   In response to Paragraph 28 of the Complaint, Defendant Gore admits the
19   allegations contained therein.

20   12.   In response to Paragraph 29 of the Complaint, Defendant Gore lacks
21   sufficient information and belief to admit or deny the allegations contained in those
22   paragraphs, and on that basis, denies each and every allegation contained therein.

23   13.   In response to Paragraphs 30 and 31 of the Complaint, Defendant Gore
24   denies the allegations contained therein.

25   14.   In response to Paragraphs 32 and 33 of the Complaint, Defendant Gore lacks
26   sufficient information and belief to admit or deny the allegations contained in those
27   paragraphs, and on that basis, denies each and every allegation contained therein.

28   ///

2

1     15.    In response to Paragraphs 34 and 35 of the Complaint, Defendant Gore

2    admits the allegations contained therein.

3     16.    In response to Paragraphs 36, 37, 38 and 39 of the Complaint, Defendant

4    Gore denies the allegations contained therein.

5     17.    In response to Paragraph 40 of the Complaint, Defendant Gore hereby

6    incorporates by reference its response to Paragraphs 1 through 39 of the Complaint, as

7    contained in Paragraphs 1 through 16 of this Answer, as though fully set forth.

8     18.    In response to Paragraphs 41 and 42 of the Complaint, Defendant Gore

9    denies the allegations contained therein.

10    19.    In response to Paragraph 43 of the Complaint, Defendant Gore hereby

11    incorporates by reference its response to Paragraphs 1 through 42 of the Complaint, as

12    contained in Paragraphs 1 through 18 of this Answer, as though fully set forth.

13    20.    In response to Paragraphs 44 and 45 of the Complaint, Defendant Gore

14    denies the allegations contained therein.

15    21.    In response to Paragraph 46 of the Complaint, Defendant Gore hereby

16    incorporates by reference its response to Paragraphs 1 through 45 of the Complaint, as

17    contained in Paragraphs 1 through 20 of this Answer, as though fully set forth.

18    22.    In response to Paragraph 47 of the Complaint, Defendant Gore admits the

19    allegations contained therein.

20    23.    In response to Paragraph 48 of the Complaint, Defendant Gore denies the

21    allegations contained therein.

22                  **AFFIRMATIVE DEFENSES**

23                         1

24    As a first, separate and distinct affirmative defense, defendant alleges that the

25    complaint fails to state facts sufficient to constitute a claim upon which relief can be

26    granted.

27    ///

28    ///

09-CV-2371 IEG (BLM)

ER001188

2

As a second, separate and distinct affirmative defense, defendant alleges that plaintiff has failed to sue a proper and indispensable party.

3

As a third, separate and distinct affirmative defense, defendant alleges that the complaint is barred by laches.

4

As a fourth, separate and distinct affirmative defense, defendant alleges that he is entitled to qualified immunity from liability under title 42, United States Code section 1983 and that plaintiff's claims do not arise out of any clearly established constitutional right.

5

As a fifth, separate and distinct affirmative defense, defendant alleges that the action is barred by the statute of limitations.

6

As a sixth, separate and distinct affirmative defense, defendant alleges that the action is barred by plaintiff's failure to exhaust administrative remedies, including but not limited to, internal administrative procedures and/or statutory administrative procedures and, therefore, this Court lacks jurisdiction over plaintiff's claim.

7

As a seventh, separate and distinct affirmative defense, defendant alleges that plaintiff lacks standing to maintain this action.

8

As an eighth, separate and distinct affirmative defense, defendant alleges that plaintiff has an adequate remedy at law.

9

As a ninth, separate and distinct affirmative defense, defendant alleges that the Complaint is moot.

4

09-CV-2371 IEG (BLM)

1      WHEREFORE, said defendant prays as follows:

2      1.      That the action be dismissed with prejudice;

3      2.      That the request for injunctive relief be denied and plaintiff take nothing by

4 his action;

5      3.      That defendant recover his costs of suit incurred herein, including attorneys'

6 fees; and

7      4.      For such other and further relief as the Court deems proper and just.

8 DATED: January 20, 2010      JOHN J. SANSONE, County Counsel

9      By: s/ JAMES M. CHAPIN, Senior Deputy
Attorneys for Defendant William D. Gore

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

5

09-CV-2371 IEG (BLM)

## Declaration of Service

I, the undersigned, declare:

I, the undersigned, declare under penalty of perjury that I am over the age of eighteen years and not a party to the case; I am employed in, or am a resident of, the County of San Diego, California, where the service occurred; and my business address is: 1600 Pacific Highway, Room 355, San Diego, California.

On January 20, 2010, I served the following documents: **Defendant William D. Gore's Answer to Complaint** in the following manner:

☐ By placing a copy in a separate envelope, with postage fully prepaid, for each addressee named below and depositing each in the U. S. Mail at San Diego, California.

☒ By electronic filing, I served each of the above referenced documents by E-filing, in accordance with the rules governing the electronic filing of documents in the United States District Court for the Southern District of California, as to the following parties:

Paul H. Neuharth, Jr., Esq.
Law Offices of Paul H Neuharth
1140 Union Street, Suite 102
San Diego, CA  92101
T: (619) 231-0401
F: (619) 231-8759
E-mail: pneuharth@sbcglobal.net
(Attorney for Plaintiff)

I declare under penalty of perjury that the foregoing is true and correct. Executed on January 20, 2010, at San Diego, California.

By: s/ JAMES M. CHAPIN
E-mail: james.chapin@sdcounty.ca.gov

Edward Peruta v. County of San Diego, et al.; USDC No. 09-CV-2371-IEG (BLM)

ER001191

**TAB 53**

1   JOHN J. SANSONE, County Counsel
    Answering Defendant of San Diego
2   By JAMES M. CHAPIN, Senior Deputy (SBN 118530)
    1600 Pacific Highway, Room 355
3   San Diego, CA 92101
    Telephone: (619) 531-5244
4   james.chapin@sdcounty.ca.gov

5   Attorneys for Defendant William D. Gore

6

7

8                  UNITED STATES DISTRICT COURT

9              SOUTHERN DISTRICT OF CALIFORNIA

10

11  EDWARD PERUTA,                    )    USSD No. **09-CV-2371 IEG (BLM)**
                                      )
12              Plaintiff,            )    **DEFENDANT WILLIAM D. GORE'S**
                                      )    **REPLY POINTS AND AUTHORITIES**
13       v.                           )    **IN SUPPORT OF MOTION TO**
                                      )    **DISMISS COMPLAINT**
14  COUNTY OF SAN DIEGO, WILLIAM D.   )    **[Fed.R.Civ.P., 12(b)(6)]**
    GORE, INDIVIDUALLY AND IN HIS     )
15  CAPACITY AS SHERIFF,              )
                                      )    Date:   December 21, 2009
16              Defendants.           )    Time:   10:30 a.m.
                                      )    Dept:   1 – Courtroom of the
17                                    )            Hon. Irma E. Gonzalez
    _____ )
18                                         I

19                  **THE SECOND AMENDMENT**

20       Plaintiff's opposition claims that the Second Amendment gives him the

21  constitutional right to "bear arms in order to be armed and ready in case of conflict with

22  another person." That is not the holding of *District of Columbia v. Heller*, 554 U.S. __;

23  128 S. Ct. 2783; 171 L.Ed.2d 637 (2008) (see analysis in motion points and authorities.)

24  There are numerous federal and state statutory proscriptions on the carrying of loaded

25  and concealed firearms. If Plaintiff's position was accurate, gang members and drug

26  dealers could lawfully carry loaded, concealed weapons without restriction. The *Heller*

27  court emphasized that the right to keep and bear arms is "not a right to keep and carry

28  any weapon whatsoever in any manner whatsoever and for whatever purpose." *Id.* at

                                    I                    09-CV-2371 IEG (BLM)

1    ___; 171 L.Ed.2d at 678. And it endorsed regulatory measures that are presumptively

2    lawful. *Heller* at ___, n. 26; 171 L.Ed.2d at 678, n. 26. Plaintiff cites to no case

3    nationwide which has stuck down concealed weapons regulations since *Heller*.

4    California law specifically permits Plaintiff to possess a loaded weapon in his residence,

5    including any temporary residence or campsite, which would include his recreational

6    vehicle. Penal Code § 12031(l).

**II**

**THERE IS NO CONSTITUTIONALLY PROTECTED
INTEREST IN A CONCEALED WEAPONS PERMIT**

10   Penal Code section 12050 gives extremely broad discretion to the sheriff

11   concerning the issuance of such licenses. *Nichols v. County of Santa Clara*, 223 Cal.

12   App. 3d 1236, 1241 (1990); *Salute v. Pitchess*, 61 Cal. App. 3d 557, 560 (1976). In

13   *CBS, Inc. v. Block*, 42 Cal.3d 646, 655 (1986), that discretion was described as

14   "unfettered." The court noted that in Los Angeles County, with a population of over 7

15   million, the sheriff had issued only 35 licenses, while in Orange County, the sheriff had

16   issued over 400. *Id.* at pp. 649, 655. Licenses to carry a concealed firearm are rarities.

17   The statute leaves their issuance to the unfettered discretion of the sheriff, in the interest

18   of controlling dangerous weapons. *Id.* at p. 655.

19   In *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972) the court stated: "To have

20   a property interest in a benefit, a person clearly must have more than an abstract need or

21   desire for it. He must have more than a unilateral expectation of it. He must, instead,

22   have a legitimate claim of entitlement to it."

23   "In light of this statute's delegation of such broad discretion to the sheriff, it is

24   well established that an *applicant* for a license to carry a concealed firearm has no

25   legitimate claim of entitlement to it under state law, and therefore has no 'property'

26   interest to be protected by the due process clause of the United States Constitution."

27   *Nichols v. County of Santa Clara*, 223 Cal. App. 3d at 1241; *Erdelyi v. O'Brien*, 680

28   F.2d 61, 63 (9th Cir. 1982).

2                                    09-CV-2371 IEG (BLM)

1  Plaintiff cannot state a constitutional claim because he has no protected property

2  interest which triggers 42 U.S.C. section 1983. *Erdelyi v. O'Brien*, 680 F.2d 61 (9th

3  Cir. 1982); *Nichols v. County of Santa Clara*, 223 Cal. App. 3d at 1245.

### III

### EQUAL PROTECTION

6  Plaintiff's allegations further fail to state an equal protection claim as set forth in

7  the motion filed herein. He fails to allege intentional discrimination by the Defendant

8  and appears to claim that the sheriff has his own narrow interpretation of the residency

9  requirement. As long as that interpretation is consistent, the sheriff is not treating

10 persons differently. Plaintiff points to a definition of residency from the Elections

11 Code. A more common definition is that used in Revenue and Taxation Code section

12 17014(a) which defines a resident as "[e]very individual who is in this state for other

13 than a temporary or transitory purpose." Plaintiff in his Complaint clearly places

14 himself in San Diego County for a temporary or transient purpose.

15 Further, he fails to allege facts which support his claim that the good cause

16 determination of the sheriff is constitutionally flawed. While Plaintiff makes

17 allegations of his need for a permit, he fails to state what *evidence* he produced to

18 Defendant to meet his burden of proof in the application process.

19 Most significantly, since the statute requires that Plaintiff meet all *three*

20 requirements of Penal Code section 12050 to be eligible for a permit, the failure to meet

21 the residency provision alone ends his constitutional claim. See also, 62 Cal. Ops. Atty.

22 Gen. 708 (1979).

### CONCLUSION

24 The Complaint fails to state a claim upon which relief can be granted. The

25 motion to dismiss should be granted without leave to amend.

26 DATED: December 14, 2009         Respectfully submitted,

27                                  JOHN J. SANSONE, County Counsel

28                                  By: s/ JAMES M. CHAPIN, Senior Deputy
                                    Attorneys for Defendant William D. Gore
                                    E-Mail: james.chapin@sdcounty.ca.gov
                                    3                    09-CV-2371 IEG (BLM)

## Declaration of Service

I, the undersigned, declare:

I, the undersigned, declare under penalty of perjury that I am over the age of eighteen years and not a party to the case; I am employed in, or am a resident of, the County of San Diego, California, where the service occurred; and my business address is: 1600 Pacific Highway, Room 355, San Diego, California.

On December 14, 2009, I served the following documents: **DEFENDANT WILLIAM D. GORE'S REPLY POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS COMPLAINT [Fed.R.Civ.P., 12(b)(6)** in the following manner:

☐ By placing a copy in a separate envelope, with postage fully prepaid, for each addressee named below and depositing each in the U. S. Mail at San Diego, California.

☒ By electronic filing, I served each of the above referenced documents by E-filing, in accordance with the rules governing the electronic filing of documents in the United States District Court for the Southern District of California, as to the following parties:

Paul H. Neuharth, Jr., Esq.
Law Offices of Paul H Neuharth
1140 Union Street, Suite 102
San Diego, CA  92101
T: (619) 231-0401
F: (619) 231-8759
E-mail: pneuharth@sbcglobal.net
(Attorney for Plaintiff)

I declare under penalty of perjury that the foregoing is true and correct. Executed on December 14, 2009, at San Diego, California.

By: s/ JAMES M. CHAPIN
E-mail: james.chapin@sdcounty.ca.gov

Edward Peruta v. County of San Diego, et al.; USDC No. 09-CV-2371-IEG (BLM)

ER001195

**TAB 54**

PAUL H. NEUHARTH, JR (State Bar # 147073)
1140 Union Street, Suite 102
San Diego, CA 92101
Telephone No.: (619) 231-0401
Facsimile No.: (619) 231-8759
Email: pneuharth@sbcglobal.net

Attorney for Plaintiff
EDWARD PERUTA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

EDWARD PERUTA,

      Plaintiff,

    vs.

COUNTY OF SAN DIEGO,
WILLIAM D. GORE,
INDIVIDUALLY AND IN HIS
CAPACITY AS SHERIFF

      Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.: 09-CV-2371-IEG (BLM)

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT WILLIAM GORE'S MOTION TO DISMISS**

**Date:  December 21, 2009**
**Time: 10:30a.m.**
**Dept.: 1- Courtroom of the Hon.**
**Irma      E. Gonzalez**

Case No. 09CV2371 IEG (BLM)

ER001196

## TABLE OF CONTENTS

INTRODUCTION.................................................................................................1

ARGUMENT...................................................................................................3
I.   THERE IS A CONSTITUTIONAL RIGHT TO KEEP AND BEAR
     ARMS....................................................................................................3

          A.  The good cause requirement of California Penal Code

               section 12050 violates the Second Amendment ...........................3

          B.  Defendant Gore's policy of requiring full time residency

               Violates Plaintiff's Second Amendment right to keep

               and bear arms ...................................................................8

II.  DEFENDANT GORE'S UNEQUAL TREATMENT OF PLAINTIFF
     IS A VIOLATION OF THE EQUAL PROTECTION CLAUSE
     OF THE FOURTEENTH AMENDMENT OF THE UNITED
     STATES CONSTITUTION.................................................................10

III. DEFENDANT GORE'S POLICY OF REQUIRING
     FULLTIME RESIDENCY VIOLATES PLAINTIFF'S
     RIGHT TO TRAVEL.......................................................................15

CONCLUSION...............................................................................................15

Case No. 09CV2371 IEG (BLM)

# <u>TABLE OF AUTHORITIES</u>

**CASES**                                                                                   **PAGE(S)**

*District of Columbia v. Heller*, 128 S. Ct. 2783; 171 L.Ed.2d 637 (2008).....................3
*United States v. Hall* (S.D.W.Va., Aug. 4, 2008, No. 2:08-00006) 2008 U.S.Dist., Lexis 59641).................................................................................................................3
*State v. Chandler*, 5 La. Ann. 489 – 90 (1850)...................................................4
*Nunn v. State*, 1 Ga. 243, (1846)..........................................................4
*United States v. Miller*, 307 U.S. 174, 59 S. Ct. 816, 83 L. Ed. 1206 (1939) .................6
*City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1985) ...............10
*New Orleans v. Dukes*, 427 U.S. 297, 303-04 (1976)...........................................10
*Attorney Gen. of New York v. Soto-Lopez*, 476 U.S. 898, 904 (1986)........................11, 15

**STATUTES**                                                                            **PAGE(S)**

California Penal Code

    Section 12031, subds.(a),(c)....................................................5

    Section 12025.........................................................................5

    Section 12025, subd.(d).........................................................5

    Section 12050.....................................................................5, 7

California Election Code

    Section 349, subd.(b)...........................................................12

    Section 349, subd.(c)..........................................................8, 12

    Section 2032........................................................................8

1
2

<u>PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN</u>

<u>OPPOSITION TO DEFENDANTS' MOTION TO DISMISS</u>

3      COME NOW Plaintiff Edward Peruta, by and through counsel, and submit his
4  Memorandum of Points and Authorities in Opposition to Defendants' Motion to Dismiss.

5
6                          **INTRODUCTION**

7      Plaintiff, Edward Peruta, alleges he was denied a permit to carry a concealed weapon
8  because Defendant Gore found that Mr. Peruta did not have good cause and that he was not a
9  resident of San Diego.  Plaintiff opposes Defendant Gore's motion to dismiss because the
10 complaint does state claims based on constitutional grounds.

11     California Penal Code section 12050 is challenged on the grounds that the good cause
12 requirement, on its face and/or the application of, violates the Second Amendment to bear arms.
13 In California only persons that obtain the license to carry a concealed weapon may lawfully
14 possess a loaded firearm for the lawful purpose of being armed and ready in case of conflict with
15 another person. California Penal Code section 12050 grants county sheriffs the authority to issue
16 permits to carry concealed weapons. That authority provides county sheriffs with the unbridled
17 discretion to decide whether an applicant has good cause for a permit to carry a concealed
18 weapon.  Defendant Gore has taken that authority and arbitrarily denied plaintiff a permit to
19 carry a concealed weapon. By arbitrarily denying Plaintiff a permit to carry a concealed weapon,
20 Defendant Gore violated Plaintiff's Second Amendment right to bears arms so that he may be
21 armed and ready in case of conflict with another person.

22     Plaintiff showed good cause for the issuance of a concealed carrying permit.  Plaintiff's
23 good cause is based in part on the facts that he is at risk for violent attacks because he lives
24 fulltime in his motor home in which he carries large amounts of cash and valuables; his business
25 as a news media member places him in dangerous high crime areas, and; he often stays in remote
26 areas removed from immediate assistance from law enforcement. (Complaint ¶ 19 – 22.)

27     Defendant Gore's application of the residency and good cause requirements of California
28 Penal Code section 12050 are challenged on the grounds that his actions violate the Equal

1

1 Protection Clause of the Fourteenth Amendment.  Defendant Gore's actions have violated the
2 Equal Protection Clause because he is not treating Plaintiff like other residents of San Diego.
3 Plaintiff became a resident in San Diego when he established a habitation in San Diego for a
4 fixed period of time. Defendant Gore has arbitrarily refused to recognize Plaintiff as a resident
5 and in doing so he violated the Equal Protection Clause.  Further, Defendant Gore's refusal to
6 find good cause for a permit to carry a concealed weapon is irrational and in violation of the
7 Equal Protection Clause.

8      Plaintiff showed he was a resident of San Diego. Plaintiff's San Diego residency is based
9 in part on the facts that he has maintained a single room residence in San Diego, and was
10 residing in his motor home at Campland on the Bay for a fixed period of time when he applied
11 for the concealed carrying weapons permit. (Complaint ¶ 17-18.)

12      Defendant Gore's application of the residency requirement is also challenged on the
13 grounds that his actions violate the constitutional right to travel.  Plaintiff's right to travel has
14 been infringed because Defendant Gore is requiring that Plaintiff live fulltime in San Diego in
15 order to be considered a resident so that he may grant a permit to carry a concealed weapon. By
16 requiring Plaintiff live fulltime in San Diego, Defendant Gore has infringed upon Plaintiff's right
17 to travel.

18      Penal Code sections 12025, 12031, and 12050 are filed herewith as "Exhibit A." *West*
19 *Virginia Firearm Laws*, 2009 handbook, is filed herewith as "Exhibit B."  California Election
20 Codes 349 and 2032 are filed herewith as "Exhibit C."  Plaintiff Edward Peruta's California
21 identification is filed herewith as "Exhibit D."
22 / / /
23 / / /
24 / / /
25 / / /
26 / / /
27 / / /
28 / / /

2

1
2
3
4
5
6
7

# ARGUMENT

## I.
## THERE IS A CONSTITUTIONAL
## RIGHT TO KEEP AND BEAR ARMS

### A.
### THE GOOD CAUSE REQUIREMENT OF
### CALIFORNIA PENAL CODE § 12050
### VIOLATES THE SECOND AMENDMENT

8    Plaintiff's first cause of action alleges in part that the statutory "good cause" requirement
9  violates his right to keep and bear arms under the Second Amendment of the United States
10  Constitution.

11    As agreed with by Defendant Gore, the United States Supreme Court, in *District of*
12  *Columbia v. Heller*, 128 S. Ct. 2783; 171 L.Ed.2d 637 (2008), made clear that the  Second
13  Amendment guarantees the individual right to possess and carry weapons in case of
14  confrontation, self-defense, or other traditionally lawful purposes, unconnected with service in a
15  militia.  However, as Defendant Gore correctly stated, this right is not unlimited. The Court
16  identified some presumptively lawful regulatory purposes, which included "prohibitions on the
17  possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms
18  in sensitive places such as schools and government buildings, or laws imposing conditions and
19  qualifications on the commercial sale of arms." *Heller*, at 2817; 171 L.Ed.2d at 678–679.  By
20  no means did the Court intend for this to be an exhaustive list of presumptively lawful regulatory
21  purposes of the right to bear arms. *Heller*, at 2817; 171 L.Ed.2d at 679, (fn. 26).

22    Contrary to Defendant Gore's assertions, Plaintiff does not argue that all regulatory
23  measures limiting his Second Amendment right to keep and bear arms are unlawful.  In fact,
24  Plaintiff does not argue that a complete prohibition on carrying concealed weapons necessarily
25  violates the Second Amendment.  In *Heller*, the Court noted that the majority of 19th – Century
26  courts held prohibitions on carrying concealed weapons lawful. *Heller*, at 2817; 171 L.Ed.2d at
27  678–679.    However, the Court did not clearly affirm those 19th-Century court decisions.
28  Defendant Gore cites *United States v. Hall* (S.D.W.Va., Aug. 4, 2008, No. 2:08-00006) 2008

3

1  U.S.Dist., Lexis 59641), in support of the position that state laws which prohibit the carrying of
2  concealed weapons do not violate the Second Amendment. It appears, though, in states that
3  prohibit the carrying of concealed weapons residents are allowed to openly carry weapons for
4  self-defense purposes, unlike in California. In West Virginia, the state in which *Hall* was
5  decided, "no license is necessary to visibly carry a handgun if the person may lawfully possess a
6  firearm." *West Virginia Firearm Laws*, 2009 handbook, pg. 1. Additionally, in *State v.*
7  *Chandler*, 5 La. Ann. 489 – 90 (1850), the court held that a state law making it unlawful to carry
8  a concealed weapon was not a violation of the citizens right to bear arms guaranteed by the
9  United States Constitution, because "[i]t interfered with no man's right to carry arms... 'in full
10 open view...'" *Chandler*, at 5 La. Ann., 489 – 90. Further, in *Nunn v. State*, 1 Ga. 243, (1846),
11 the court declared a state law that sought to suppress the secretly carrying of certain weapons
12 was valid because there was no prohibition against openly bearing arms. *Nunn v. State*, at 251.
13 These cases indicate that prohibitions on carrying concealed weapons do not violate the Second
14 Amendment if individuals still have the opportunity to bear arms lawfully, such as openly
15 carrying arms. Thus, Defendant Gore's proposition that prohibitions on carrying concealed
16 weapons are lawful is only sometimes true, because the lawfulness of the prohibition is
17 dependent on the other state law weapons regulations, such as open carrying laws.

18         The purpose of the Second Amendment is to ensure the individual right to self-defense in
19 case of conflict with another person. In *Heller*, the Court affirmed Justice Ginsburg's definition
20 of the meaning of "bear arms." Justice Ginsburg defined "bear arms" to mean "wear, bear, or
21 carry...upon the person or in the clothing or in a pocket, for the purpose...of being armed and
22 ready for offensive or defensive action in a case of conflict with another person." *Heller*, at 2794;
23 171 L.Ed.2d at 652 - 653. From this definition, it is clear that the intent of the Second
24 Amendment is to ensure the individual right of being armed and ready in case of conflict with
25 another person. Being armed and ready clearly means carrying a weapon that is immediately
26 capable of being used for its intended purpose. This means an individual must be able to
27 lawfully carry a loaded firearm. Just the carrying of arms does not make an individual ready in
28 case of conflict with another person. Thus, an individual cannot lawfully be armed and ready if

4

1   the law prohibits the wearing, bearing or carrying of a loaded firearm without a permit and the

2   permit is impossible to obtain.

3       Currently, California's gun carrying laws do not allow for an individual to be armed and

4   ready for conflict with another person unless that person holds a license or permit to carry a

5   concealed weapon. The opposite is true. Notwithstanding any other gun regulation laws, it is

6   unlawful for an individual to carry a loaded firearm without a concealed carrying weapons

7   permit. *California Penal Code* section 12031(a)(1). Additionally, it is unlawful to carry a

8   weapon without a concealed carrying weapons permit if the weapon is capable of being

9   concealed, whether it is loaded or unloaded. *California Penal Code* section 12025. Although,

10  under *California Penal Code* section 12025(d), an individual may carry a firearm without a

11  permit if it is carried in a belt holster, an individual is completely prohibited from carrying

12  loaded firearm without a concealed carrying weapons permit. Therefore, without a permit to

13  carry a concealed weapon it is impossible for California residents, such as Mr. Peruta, to invoke

14  their Second Amendment right to bear arms in order to be armed and ready in case of conflict

15  another person.

16      Apparently, California lawmakers believed that by enacting Penal Code 12050, lawful

17  citizens such as Plaintiff could invoke their Second Amendment right to keep and bear arms by

18  obtaining a permit to carry a concealed weapon. The problem with Penal Code section 12050 is

19  the good cause requirement. County sheriffs have the unbridled discretion of determining

20  whether to grant or not grant such permits after making a determination of whether the applicant

21  has good cause. Additionally, good cause is not defined, leaving the meaning vague and

22  ambiguous without providing any guidelines for determining whether an applicant has good

23  cause. What this all means, is that lawful citizens solely desiring to invoke their constitutional

24  right to be armed and ready for self-defense purposes may be denied a permit to carry a

25  concealed weapon if the county sheriff determines they have no good cause. Thus, for lawful

26  citizens residing in California, a person's Second Amendment right is dependent upon county

27  sheriffs' policies and practices for determining whether an applicant has good cause for a

28  carrying concealed weapons permit. Clearly, the intent of the Second Amendment was not to

ER001203

1     make an individual's right to keep and bear arms dependent upon a third person, such as a county

2     sheriff's unguided opinion of whether an individual has good cause or not.

3         Defendant Gore appears to take the position that *Heller* only established the right to

4     possess a gun in the home in case of conflict with another person. *Heller* stands for much more

5     than just the right to possess a gun in the home, as the Second Amendment does not only protect

6     to the right to keep and bear arms in the home. Assumingly, if the Court in *Heller* intended to

7     limit the right to keep and bear arms to one's home then it would have made that limitation clear.

8     However, nowhere in *Heller* does the Court state that right to keep and bear arms is limited to

9     the home. What *Heller* does make clear, is that the "inherent right of self-defense has been

10    central to the Second Amendment." *Heller*, at 2817. This is a right that has never been limited

11    to self-defense in one's home and cannot be limited to one's home because many law abiding

12    citizens do not have homes. The United States Constitution provided rights to all citizens of this

13    country and did not discriminate between persons with and without homes.

14         Defendant Gore also incorrectly takes the position that *Heller* is about protecting the

15    manner how weapons are used. Defendant Gore stated that carrying a concealed firearm on the

16    person or in a vehicle is not in the nature of a common use of a gun, which according to

17    Defendant Gore was declared protected by *Heller*. (Motion to Dismiss, pg. 3 lines 15-17.)

18    However, it is not the nature of a common use of a gun that *Heller* protects. Instead, it is the type

19    of weapon that is protected, and those protected weapons are weapons of common use. The

20    *Heller* Court, in affirming *United States* v. *Miller*, 307 U.S. 174, 59 S. Ct. 816, 83 L. Ed. 1206,

21    1939-1 C.B. 373 (1939), declared, "the sorts of weapons protected were those 'in common use at

22    the time.' " *Heller*, at 2817. "[T]he Second Amendment does not protect those weapons not

23    typically possessed by law-abiding citizens for lawful purposes, such as short-barreled rifles."

24    *Heller*, at 2815. Thus, according to *Heller*, it is not the manner in which the weapon is used that

25    is protected, but the types of weapons commonly used that are protected.

26         The inherent right to self-defense has been central to the Second Amendment right. The

27    Second Amendment is clearly all about an individual's right to self-defense. California has

28    attempted to make that inherent right dependent upon the opinion of a third person, such as the

6

1  county sheriff, who determines whether a person has good cause or not.   The Second
2  Amendment does not state that an individual has the right to bear arms if good cause can be
3  shown.  The right to bear arms is given so that an individual can be armed and ready to defend
4  against conflict with another person.  California has violated that enumerated constitutional right
5  by completely prohibiting the carrying of loaded firearms, either openly or concealed, without a
6  permit that is not obtainable until a county sheriff with unbridled discretion determines an
7  individual has good cause.

8      Although it should not be necessary, Plaintiff provided good cause for the issuance of a
9  concealed carrying weapons permit.  Plaintiff has good cause for a permit because he is at risk of
10  violent attacks due to the fact that Plaintiff lives fulltime in his motor home, carrying large
11  amounts of cash and valuables.  Also, Plaintiff, who is sixty years of age with health issues,
12  frequently stays in is motor home with his wife in remote places away from the immediate
13  assistance of law enforcement.  By staying in these remote areas, Plaintiff is vulnerable to violent
14  predators who take advantage the remote locations removed from any immediate law
15  enforcement assistance.  Plaintiff also faces risks of violent attacks because of his business as a
16  breaking news media member.  In doing this business, he is often in high crime areas.  These are
17  the type of situations for which the Second Amendment is intended to provide protection for.
18  The Second Amendment makes it lawful for people to bear arms in order to be armed and ready
19  in case of conflict with another person.  Plaintiff is attempting to invoke that right because he
20  faces real threats of violence.  Defendant Gore is denying Plaintiff his right to bear arms by
21  refusing to recognize that Plaintiff has good cause for a license to carry a concealed weapon.
22  Thus, Defendant Gore's application of California Penal Code section 12050 violates the Second
23  Amendment.

24      Because a showing of good cause, decided by a county sheriff, is required in order for a
25  law abiding citizen to obtain a license to carry a concealed weapon and thereby lawfully bear
26  arms, California Penal Code 12050 violates the Second Amendment of the United States
27  Constitution.   Additionally, Defendant Gore's application of California Penal Code section
28  12050 violates the Second Amendment.

7

**B.**
## DEFENDANT GORE'S POLICY OF REQUIRNG FULL TIME RESIDENCY VIOLATES PLAINTIFF'S SECOND AMENDMENT RIGHT TO KEEP AND BEAR ARMS

Plaintiff's first cause of action also alleges that Defendant Gore's policy of requiring full time residency violates his right to keep and bear arms under the Second Amendment of the United States Constitution. Plaintiff does not contend that a residency requirement violates the Second Amendment, and contends only that the policy of requiring fulltime residency is a violation.

California Penal Code section 12050 is silent as to the definition of a resident. But, California Election Code section 349(c) states, "[t]he residence of a person is that place in which the person's habitation is fixed for some period of time, but wherein he or she does not have the intention of remaining. At a given time, a person may have more than one residence." See, also, California Election section 2032. These code sections leave no doubt that a person is a resident of the place where that person has established a habitation for some fixed period of time, although not indefinitely, and that a person can also have more than one residence. Also, it should be noted that there is no set number of days that it takes to become a resident, but only the act of having a habitation for *some* fixed period of time.

Defendant Gore asserts that Plaintiff admitted to not being a resident of San Diego. (Motion to Dismiss, pg. 1, line 25.) This false assertion of Defendant Gore appears to be based off the fact that Plaintiff lives in a motor home and rents space at Campland on the Bay, in San Diego, rather than living fulltime in a fixed residence. By making the false assertion that Plaintiff admitted to not being a resident, Defendant Gore has clearly made it known that he has established his own definition of a resident, which, apparently means living fulltime in San Diego and possibly even living in a fixed residence. However, requiring a person to be a fulltime resident is contrary to the fact that a residence is temporary in nature and a person may even have more than one residence.

8

1    Plaintiff did not admit that he was not a resident of San Diego. Mr. Peruta is a resident
2 of San Diego. Defendant Gore is using Plaintiff's retirement lifestyle against him to find cause
3 not to issue Plaintiff a license to carry a concealed weapon. Plaintiff resides annually in San
4 Diego, usually during the fall and winter months, which is actually common for retired persons
5 such as Plaintiff. At the very least, during the times in which Plaintiff has established his
6 habitation in San Diego, he is a resident.

7    At the time Plaintiff applied for a permit to carry a concealed weapon, he was staying
8 in his motor home at Campland on the Bay, in San Diego. He had rented space there for five
9 continuous months, not merely a few days or weeks. Plaintiff did not even apply for the
10 concealed carrying weapons permit until he had resided in San Diego for 80 days. This
11 obviously shows that Plaintiff had established his habitation in San Diego for a fixed period of
12 time when he applied for the license, and as such he is and was a resident of San Diego. It
13 should be known that in no way is Plaintiff asserting that he terminated his residency in San
14 Diego after the five months at Campland on the Bay, but provides this information to show that
15 he undoubtedly was a resident when he applied for the concealed carrying weapons permit.

16    Plaintiff's residency actually dates back fifteen years, although, his stays in San Diego
17 have become more consistent and longer over the most recent years. Between February 2007
18 and April 2009, Plaintiff spent nearly one-third of this time in San Diego. However, Plaintiff's
19 residency in San Diego goes back fifteen years, because for fifteen years he and his wife have
20 had the exclusive use of a single room residence at 3151 Driscoll Drive, San Diego, CA, in
21 which they have always maintained a wardrobe. Only for a short period of time while Plaintiff's
22 mother was under hospice car was this room used by another person. This fact is completely
23 ignored by Defendant Gore, and shows he has narrowly defined who may qualify as a resident
24 with no regard to the fact that a person is a resident wherever they have established a habitation
25 for some fixed period of time. Clearly, Plaintiff established a habitation for the past fifteen years
26 in San Diego, by not only using, but also keeping a wardrobe at his single room residence
27 located at 3151 Driscoll Drive, San Diego.

28

ER001207

1    By refusing to recognize Plaintiff as a resident of San Diego, Defendant Gore has
2 shown that it is policy and practice to require fulltime residency in San Diego in order to be
3 granted a license to carry a concealed weapon. However, nowhere in California Penal Code
4 section 12050 does it require fulltime residency.    Defendant Gore's policy of requiring fulltime
5 residency in order to qualify as a resident violates the Second Amendment. Requiring fulltime
6 residency violates the Second Amendment because it disqualifies every individual that has more
7 than one residence from ever being granted a license to carry a concealed weapon, and as
8 discussed above, possession of the license is the only way a resident of California may lawfully
9 be *armed and ready* in case of conflict against another person.

10                                          II.
                          **DEFENDANT GORE'S UNEQUAL TREATMENT**
11                         **OF PLAINTIFF IS A VIOLATION OF THE**
                          **EQUAL PROTECTION CLAUSE OF THE**
12                         **FOURTEENTH AMENDMENT OF THE**
13                         **UNITED STATES CONSTITUTION**

14
15    Defendant Gore's application of the good cause and residency requirement of California
16 Penal Code section 12050 violate Plaintiff's right to equal protection of the laws. Plaintiff's
   right to equal protection of the laws is guaranteed under the Equal Protection Clause of the 14th
17 Amendment of the United States Constitution. "The Equal Protection Clause of the Fourteenth
18 Amendment commands that no State shall 'deny to any person within its jurisdiction the equal
19 protection of the laws,' which is essentially a direction that all persons similarly situated should
20 be treated alike." *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1985).
21 There are varying standards of review when a law is challenged for violating the Equal
22 Protection Clause. "Unless a classification trammels fundamental personal rights or is drawn
23 upon inherently suspect distinctions such as race, religion, or alienage, our decisions presume the
24 constitutionality of the statutory discriminations and require only that the classification
25 challenged be rationally related to a legitimate state interest." *New Orleans v. Dukes*, 427 U.S.
26 297, 303-04 (1976). Thus, when a classification does trammel fundamental personal rights,
27 rational basis scrutiny is not the correct standard of review.
28

                                          10

ER001208

1    The right to bear arms is a constitutional personal right and any legislation regulating that
2  right must not be evaluated under a rational basis test, but instead under a heightened standard of
3  review. In *Heller*, the Court stated that the rational basis test " could not be used to evaluate the
4  extent to which a legislature may regulate a specific enumerated right, be it the freedom of
5  speech, the guarantee against double jeopardy, the right to counsel, or the right to keep and bear
6  arms." *Heller*, at 2818, fn. 27. It went on to say, "if all that was required to overcome the right
7  to keep and bear arms was a rational basis, the Second Amendment would be redundant with all
8  the separate constitutional prohibitions on irrational laws, and would have no effect. *Heller*, at
9  2818, fn. Further, "[w]henever a state law infringes a constitutionally protected right, [the
10  courts] undertake intensified equal protection scrutiny of that law." *Attorney Gen. of New York*
11  *v. Soto-Lopez*, 476 U.S. 898, 904 (1986). The Second Amendment is a constitutionally protected
12  right.

13    Defendant Gore asserts that the rational basis test is the appropriate standard of review in
14  this case because weapon permit applicants do not constitute a protected class. (Motion to
15  Dismiss, pg. 4, line 20.) However, as *Heller* explained, the Second Amendment cannot be
16  evaluated under the rational basis test. The Court declined to establish a level of scrutiny for
17  evaluating the Second Amendment, but it did make clear that rational basis was not appropriate
18  and implied a heightened level of scrutiny was necessary. Thus, Defendant Gore's actions must
19  bear more than just a rational relationship to his action of arbitrarily deciding that Plaintiff did
20  not qualify for the concealed carrying permit.

21                          *Plaintiff is a resident of San Diego but is*
22                       *being treated differently than other residents*

23    The Equal Protection Clause of the 14th Amendment requires that all similarly situated
24  persons be treated alike. Under California Penal Code section 12050, the appropriate and
25  rightful county to which application should be made for a license to carry a concealed weapon is
26  the county where the individual resides.

27    Plaintiff is a resident of San Diego but is not being treated like all residents of San Diego.
28  Residents of San Diego are afforded the opportunity to obtain a license to carry a concealed

                                          11

1  weapon. Plaintiff, a San Diego resident, is being denied that opportunity because Defendant
2  Gore has arbitrarily decided to demand that Plaintiff show he is resides fulltime in San Diego.

3      Defendant Gore is discriminating against Mr. Peruta by arbitrarily deciding that Mr.
4  Peruta is not a resident of San Diego. Apparently, Defendant Gore believes he has the discretion
5  to determine who is and who is not a resident of San Diego and is attempting to apply the same
6  definition of a person's domicile to a person's residence. However, a domicile is different than a
7  resident. Penal Code Section 12050 only makes it a requirement that a person be a resident of a
8  county in which they are applying for a concealed carrying weapons permit. Penal Code Section
9  12050 does not require that a person be domiciled in the county in which they apply for the
10  permit.

11      There is a distinct difference between a person's domicile and person's residence. First,
12  it should be noted that Penal Code section 12050 does not define residence. However, other
13  California code sections make it clear that a residence is temporary in nature and a person may
14  have more than one residence. where as a domicile is fixed in nature and a person can only have
15  one domicile. See, California Election Code section 349(b),(c). See, also, California Election
16  section 2032. From these code sections, a residence is unmistakably temporary in nature and an
17  individual can have more than one residence.

18      Defendant Gore has attempted to describe Plaintiff as an occasional visitor and not a
19  resident of San Diego so that Plaintiff can be denied a license to carry a concealed weapon.
20  Defendant Gore is discriminating against Plaintiff because he has more than one residence and
21  lives fulltime in a motor home. Since January 2006, Plaintiff and his wife have resided fulltime
22  in their motor home.

23      As previously discussed, Plaintiff's San Diego residency dates back 15 years. as he has
24  maintained and had nearly exclusive use of a single room in a residence located at 3151 Driscoll
25  Drive, San Diego, CA. Also, as previously discussed, Plaintiff has resided regularly in San
26  Diego since 2007, although not fulltime. Between February 2007 and April 2009, Plaintiff spent
27  one-third of his time living in San Diego, including continuously living for five months in San
28  Diego between November 15, 2008 and April, 15 2009. It was during that time in which he

ER001210

1   applied for the license to carry a concealed weapon. At the very least, Plaintiff resided in San
2   Diego for 80 consecutive days prior to applying for a license to carry a concealed weapon. That
3   is the period of time during which Plaintiff was living in his motor home at Campland on the
4   Bay, in San Diego. Undoubtedly, this shows Plaintiff's San Diego residency. Further, proof that
5   Plaintiff is a San Diego resident is evidenced from the fact that Plaintiff has a California
6   identification card identifying San Diego as his place of residence.

7       If, at the time Plaintiff applied for the concealed carrying weapons permit in San Diego,
8   Plaintiff would have applied for the permit in any other county; he would have been denied the
9   permit. He would have been denied the permit, because, as the facts show, he was residing in
10  San Diego. Thus, Plaintiff did appropriately apply for a license to carry a concealed weapon in
11  San Diego, because he is a resident of San Diego.

12      Plaintiff is being discriminated against and is not being treated like other similarly
13  situated residents of San Diego, because Defendant Gore refused to recognize his status as a
14  resident of San Diego. Thus, Defendant Gore is in violation of the 14th Amendment's Equal
15  Protection Clause.

16              *Defendant Gore discriminated against Plaintiff by*
17              *arbitrarily determining that Plaintiff did not have*
18              *good cause for a concealed carrying permit*
19

20      California Penal Code section 12050 requires that an applicant applying for a carrying
21  concealed weapons permit show good cause for the permit. California Penal Code section 12050
22  does not include any definition or guidelines of what constitutes good cause. Determining
23  whether an applicant has good cause for the permit is left to the discretion of county sheriffs.
24  Due to the fact that county sheriff's have complete discretion to determine whether an applicant
25  has good cause nothing is in place to prevent the unequal treatment of applicants. Defendant
26  Gore's actions in denying Plaintiff a license to carry a concealed weapon are irrational and
27  arbitrary.
28

ER001211

1     Plaintiff showed good cause by informing Defendant Gore that his business as a breaking
2  news media member at times places him in violent situations. Plaintiff also informed Defendant
3  Gore that he is retired and often carries valuable and large sums of money while traveling in
4  remote areas alone with wife. Plaintiff's age and health conditions have taken away his ability to
5  defend himself or retreat from attackers. Plaintiff is sixty years old and has a defibrillator in his
6  chest as a result of being struck with a heart attack. As such, Plaintiff is limited in his ability to
7  retreat or protect himself from violent attacks. Violent attacks are a real possibility due to the fact
8  he and his wife travel in rural areas with large sums of cash and valuables because they are
9  retired and live fulltime in a motor home. Often, Plaintiff parks his motor home at rest areas
10  along the highway for the night, which attracts numerous unknown visitors of all walks of life.
11  Frequently, they stay overnight in rural areas, which are commonly visited by retired persons in
12  motor homes.   Violent predators take advantage of the remoteness of the location and
13  vulnerability of the elderly. This is a real threat for Plaintiff, and is exactly the type of situation
14  for which the right to bear arms to be *armed and ready* in case of conflict with another person, is
15  intended to provide protection for.

16     Unfortunately, Defendant Gore refused to fully contemplate the real threat of danger that
17  Plaintiff is at risk for and the necessity to protect himself against those threats. Defendant Gore
18  has an irrational policy of refusing to find good cause unless an applicant can show a specific
19  individual who poses a threat, such as a known domestic violent perpetrator. This is a
20  completely irrational policy because often a person is attacked by an unknown individual. It's
21  also irrational, because, as Plaintiff has shown, there are countless situations that place a person
22  at risk of violent attacks. By placing such narrow limits on finding of good cause, Defendant
23  Gore discriminates against persons such as Plaintiff who have good cause for a concealed
24  carrying permit. Defendant Gore's actions are irrational, arbitrary and violate Mr. Peruta's right
25  to equal protection of the laws.

26  ///

27  ///

28

14

### III.
### DEFENDANT GORE'S POLICY OF REQUIRING FULLTIME RESIDENCY VIOLATES PLAINTIFF'S RIGHT TO TRAVEL

Plaintiff's right to travel is being violated because Defendant Gore is demanding that Plaintiff reside fulltime and not travel outside of San Diego before considering whether to grant Plaintiff a license to carry a concealed weapon. "A state law implicates the right to travel when it actually deters such travel..." *Attorney Gen. of New York v. Soto-Lopez*, 476 U.S. 898, 903 (1986). Defendant Gore's fulltime residency requirement actually deters such travel because San Diego residents, such as Plaintiff, must stay fulltime in San Diego in order to have any sort of opportunity to apply and be granted a concealed carrying weapons permit. This deters retired persons, such as Plaintiff, from traveling and spending time outside of San Diego if they desire to lawfully invoke their Second Amendment right to bear arms. Again, this boils down to the fact that in California the only way for a person to bear arms to be *armed and ready* in case of conflict with another person, is to obtain a concealed carrying weapons permit. Plaintiff has established his residency in San Diego, but is being forced to not travel outside of San Diego if he wants to obtain a permit to carry a concealed weapon.

### CONCLUSION

The complaint has stated claims on constitutional grounds. Plaintiff has shown that Defendant Gore has infringed on his constitutionally protected right to bear arms. Additionally, Plaintiff has shown that Defendant Gore has violated the Equal Protection Clause and also Plaintiff's right to travel. Thus, Defendant Gore's motion to dismiss should not be granted.

Respectfully Submitted.

Dated: December 7, 2009

By: s/ PAUL H. NEUHARTH, JR.
PAUL H. NEUHARTH, JR.
Attorney for Plaintiff, Edward Peruta

15

Edward Peruta v. County of San Diego, et al.
Case No. 09-CV-2371 –IEG (BLM)

## DECLARATION OF SERVICE

I, the undersigned, declare under penalty of perjury that I am over the over the age of 18 years and not a party to the within action. I am employed in, or am a resident of the County of San Diego. My business address is 1140 Union Street, Suite 102, San Diego, California 92101.

On December 7, 2009, I served the following document: **(1) PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT WILLIAM GORE'S MOTION TO DISMISS,** in the following manner:

By electronic filing. I served each of the above-referenced documents by E-filing, in accordance with the rules governing the electronic filing of documents in the United States District Court for the Southern District of California, as to the following parties:

John J. Sansone, County Counsel
Answering Defendant of San Diego
By: James M. Chapin, Senior Deputy (SBN118530)
1600 Pacific Highway, Room 355
San Diego, CA 92101
Telephone (619) 531-5244
James.chapin@sdcounty.ca.gov
Attorney for Defendant William D. Gore

I declare under penalty of perjury that the foregoing is true and correct. Executed at San Diego, California this 7th day of December 2009.

By: s/ PAUL H. NEUHARTH, JR.
Email: pneuharth@sbcglobal.net

# EXHIBIT "A"

ER001215

DEERING'S CALIFORNIA CODES ANNOTATED
Copyright (c) 2009 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group.
All rights reserved.

* THIS DOCUMENT REFLECTS ALL URGENCY LEGISLATION ENACTED THROUGH CH. 643 OF *
THE 2009-2010 REG. SESS., CH. 12 OF THE 2009-2010 2d EX. SESS.,
CH. 30 OF THE 2009-10 3d EX. SESS., CH. 24 OF THE 2009-10 4th EX. SESS.,
THE GOVERNOR'S REORG. PLAN #1 OF 2009. EFF. MAY 10, 2009 & PROP 1F APPROVED
EFF. MAY 20, 2009

PENAL CODE
Part 4. Prevention of Crimes and Apprehension of Criminals
Title 2. Control of Deadly Weapons
Chapter 1. Firearms
Article 2. Unlawful Carrying and Possession of Weapons

### GO TO CALIFORNIA CODES ARCHIVE DIRECTORY

*Cal Pen Code § 12025 (2009)*

### § 12025. Carrying concealed firearm; Misdemeanor or felony offense; Sentencing

(a) A person is guilty of carrying a concealed firearm when he or she does any of the following:

(1) Carries concealed within any vehicle which is under his or her control or direction any pistol, revolver, or other firearm capable of being concealed upon the person.

(2) Carries concealed upon his or her person any pistol, revolver, or other firearm capable of being concealed upon the person.

(3) Causes to be carried concealed within any vehicle in which he or she is an occupant any pistol, revolver, or other firearm capable of being concealed upon the person.

(b) Carrying a concealed firearm in violation of this section is punishable, as follows:

(1) Where the person previously has been convicted of any felony, or of any crime made punishable by this chapter, as a felony.

(2) Where the firearm is stolen and the person knew or had reasonable cause to believe that it was stolen, as a felony.

(3) Where the person is an active participant in a criminal street gang, as defined in subdivision (a) of Section 186.22, under the Street Terrorism Enforcement and Prevention Act (Chapter 11 (commencing with Section 186.20) of Title 7 of Part 1), as a felony.

(4) Where the person is not in lawful possession of the firearm, as defined in this section, or the person is within a class of persons prohibited from possessing or acquiring a firearm pursuant to Section 12021 or 12021.1 of this code or *Section 8100 or 8103 of the Welfare and Institutions Code*, as a felony.

(5) Where the person has been convicted of a crime against a person or property, or of a narcotics or dangerous drug violation, by imprisonment in the state prison, or by imprisonment in a county jail not to exceed one year, by a fine not to exceed one thousand dollars ($1,000), or by both that imprisonment and fine.

(6) By imprisonment in the state prison, or by imprisonment in a county jail not to exceed one year, by a fine not to exceed one thousand dollars ($1,000), or by both that fine and imprisonment if both of the following conditions are met:

(A) Both the pistol, revolver, or other firearm capable of being concealed upon the person and the unexpended ammunition capable of being discharged from that firearm are either in the immediate possession of the person or

readily accessible to that person, or the pistol, revolver, or other firearm capable of being concealed upon the person is loaded as defined in subdivision (g) of Section 12031.

(B) The person is not listed with the Department of Justice pursuant to paragraph (1) of subdivision (c) of Section 11106, as the registered owner of that pistol, revolver, or other firearm capable of being concealed upon the person.

(7) In all cases other than those specified in paragraphs (1) to (6), inclusive, by imprisonment in a county jail not to exceed one year, by a fine not to exceed one thousand dollars ($1,000), or by both that imprisonment and fine.

(c) A peace officer may arrest a person for a violation of paragraph (6) of subdivision (b) if the peace officer has probable cause to believe that the person is not listed with the Department of Justice pursuant to paragraph (1) of subdivision (c) of Section 11106 as the registered owner of the pistol, revolver, or other firearm capable of being concealed upon the person, and one or more of the conditions in subparagraph (A) of paragraph (6) of subdivision (b) is met.

(d)

(1) Every person convicted under this section who previously has been convicted of a misdemeanor offense enumerated in Section 12001.6 shall be punished by imprisonment in a county jail for at least three months and not exceeding six months, or, if granted probation, or if the execution or imposition of sentence is suspended, it shall be a condition thereof that he or she be imprisoned in a county jail for at least three months.

(2) Every person convicted under this section who has previously been convicted of any felony, or of any crime made punishable by this chapter, if probation is granted, or if the execution or imposition of sentence is suspended, it shall be a condition thereof that he or she be imprisoned in a county jail for not less than three months.

(e) The court shall apply the three-month minimum sentence as specified in subdivision (d), except in unusual cases where the interests of justice would best be served by granting probation or suspending the imposition or execution of sentence without the minimum imprisonment required in subdivision (d) or by granting probation or suspending the imposition or execution of sentence with conditions other than those set forth in subdivision (d), in which case, the court shall specify on the record and shall enter on the minutes the circumstances indicating that the interests of justice would best be served by that disposition.

(f) Firearms carried openly in belt holsters are not concealed within the meaning of this section.

(g) For purposes of this section, "lawful possession of the firearm" means that the person who has possession or custody of the firearm either lawfully owns the firearm or has the permission of the lawful owner or a person who otherwise has apparent authority to possess or have custody of the firearm. A person who takes a firearm without the permission of the lawful owner or without the permission of a person who has lawful custody of the firearm does not have lawful possession of the firearm.

(h)

(1) The district attorney of each county shall submit annually a report on or before June 30, to the Attorney General consisting of profiles by race, age, gender, and ethnicity of any person charged with a felony or a misdemeanor under this section and any other offense charged in the same complaint, indictment, or information.

(2) The Attorney General shall submit annually, a report on or before December 31, to the Legislature compiling all of the reports submitted pursuant to paragraph (1).

(3) This subdivision shall remain operative until January 1, 2005, and as of that date shall be repealed.

DEERING'S CALIFORNIA CODES ANNOTATED
Copyright (c) 2009 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group.
All rights reserved.

\* THIS DOCUMENT REFLECTS ALL URGENCY LEGISLATION ENACTED THROUGH CH. 643 OF \*
THE 2009-2010 REG. SESS., CH. 12 OF THE 2009-2010 2d EX. SESS.,
CH. 30 OF THE 2009-10 3d EX. SESS., CH. 24 OF THE 2009-10 4th EX. SESS.,
THE GOVERNOR'S REORG. PLAN #1 OF 2009. EFF. MAY 10, 2009 & PROP 1F APPROVED
EFF. MAY 20, 2009

PENAL CODE
Part 4.  Prevention of Crimes and Apprehension of Criminals
Title 2.  Control of Deadly Weapons
Chapter 1.  Firearms
Article 2.  Unlawful Carrying and Possession of Weapons

**GO TO CALIFORNIA CODES ARCHIVE DIRECTORY**

*Cal Pen Code § 12031 (2009)*

**Legislative Alert:** LEXSEE 2009 Cal. ALS 288 -- see section 1, effective 01/01/2010.

§ 12031.  Felony or misdemeanor of carrying loaded firearm in public place or on public street; Exceptions

(a)

(1) A person is guilty of carrying a loaded firearm when he or she carries a loaded firearm on his or her person or in a vehicle while in any public place or on any public street in an incorporated city or in any public place or on any public street in a prohibited area of unincorporated territory.

(2) Carrying a loaded firearm in violation of this section is punishable, as follows:

(A) Where the person previously has been convicted of any felony, or of any crime made punishable by this chapter, as a felony.

(B) Where the firearm is stolen and the person knew or had reasonable cause to believe that it was stolen, as a felony.

(C) Where the person is an active participant in a criminal street gang, as defined in subdivision (a) of Section 186.22, under the Street Terrorism Enforcement and Prevention Act (Chapter 11 (commencing with Section 186.20) of Title 7 of Part 1), as a felony.

(D) Where the person is not in lawful possession of the firearm, as defined in this section, or is within a class of persons prohibited from possessing or acquiring a firearm pursuant to Section 12021 or 12021.1 of this code or *Section 8100 or 8103 of the Welfare and Institutions Code,* as a felony.

(E) Where the person has been convicted of a crime against a person or property, or of a narcotics or dangerous drug violation, by imprisonment in the state prison, or by imprisonment in a county jail not to exceed one year, by a fine not to exceed one thousand dollars ($1,000), or by both that imprisonment and fine.

(F) Where the person is not listed with the Department of Justice pursuant to Section 11106, as the registered owner of the pistol, revolver, or other firearm capable of being concealed upon the person, by imprisonment in the state prison, or by imprisonment in a county jail not to exceed one year, or by a fine not to exceed one thousand dollars ($1,000), or by both that fine and imprisonment.

(G) In all cases other than those specified in subparagraphs (A) to (F), inclusive, as a misdemeanor, punishable by imprisonment in a county jail not to exceed one year, by a fine not to exceed one thousand dollars ($1,000), or by both that imprisonment and fine.

ER001218

(3) For purposes of this section, "lawful possession of the firearm" means that the person who has possession or custody of the firearm either lawfully acquired and lawfully owns the firearm or has the permission of the lawful owner or person who otherwise has apparent authority to possess or have custody of the firearm. A person who takes a firearm without the permission of the lawful owner or without the permission of a person who has lawful custody of the firearm does not have lawful possession of the firearm.

(4) Nothing in this section shall preclude prosecution under Sections 12021 and 12021.1 of this code, *Section 8100 or 8103 of the Welfare and Institutions Code*, or any other law with a greater penalty than this section.

(5)

(A) Notwithstanding paragraphs (2) and (3) of subdivision (a) of Section 836, a peace officer may make an arrest without a warrant:

(i) When the person arrested has violated this section, although not in the officer's presence.

(ii) Whenever the officer has reasonable cause to believe that the person to be arrested has violated this section, whether or not this section has, in fact, been violated.

(B) A peace officer may arrest a person for a violation of subparagraph (F) of paragraph (2), if the peace officer has probable cause to believe that the person is carrying a loaded pistol, revolver, or other firearm capable of being concealed upon the person in violation of this section and that person is not listed with the Department of Justice pursuant to paragraph (1) of subdivision (c) of Section 11106 as the registered owner of that pistol, revolver, or other firearm capable of being concealed upon the person.

(6)

(A) Every person convicted under this section who has previously been convicted of an offense enumerated in Section 12001.6, or of any crime made punishable under this chapter, shall serve a term of at least three months in a county jail, or, if granted probation or if the execution or imposition of sentence is suspended, it shall be a condition thereof that he or she be imprisoned for a period of at least three months.

(B) The court shall apply the three-month minimum sentence except in unusual cases where the interests of justice would best be served by granting probation or suspending the imposition or execution of sentence without the minimum imprisonment required in this subdivision or by granting probation or suspending the imposition or execution of sentence with conditions other than those set forth in this subdivision, in which case, the court shall specify on the record and shall enter on the minutes the circumstances indicating that the interests of justice would best be served by that disposition.

(7) A violation of this section which is punished by imprisonment in a county jail not exceeding one year shall not constitute a conviction of a crime punishable by imprisonment for a term exceeding one year for the purposes of determining federal firearms eligibility under Section 922(g)(1) of Title 18 of the United States Code.

(b) Subdivision (a) shall not apply to any of the following:

(1) Peace officers listed in Section 830.1 or 830.2, or subdivision (a) of Section 830.33, whether active or honorably retired, other duly appointed peace officers, honorably retired peace officers listed in subdivision (c) of Section 830.5, other honorably retired peace officers who during the course and scope of their employment as peace officers were authorized to, and did, carry firearms, full-time paid peace officers of other states and the federal government who are carrying out official duties while in California, or any person summoned by any of those officers to assist in making arrests or preserving the peace while the person is actually engaged in assisting that officer. Any peace officer described in this paragraph who has been honorably retired shall be issued an identification certificate by the law enforcement agency from which the officer has retired. The issuing agency may charge a fee necessary to cover any reasonable expenses incurred by the agency in issuing certificates pursuant to this paragraph and paragraph (3).

Any officer, except an officer listed in Section 830.1 or 830.2, subdivision (a) of Section 830.33, or subdivision (c) of Section 830.5 who retired prior to January 1, 1981, shall have an endorsement on the identification certificate stating that the issuing agency approves the officer's carrying of a loaded firearm.

No endorsement or renewal endorsement issued pursuant to paragraph (2) shall be effective unless it is in the format set forth in subparagraph (D) of paragraph (1) of subdivision (a) of Section 12027, except that any peace officer listed in subdivision (f) of Section 830.2 or in subdivision (c) of Section 830.5, who is retired between

ER001219

January 2, 1981, and on or before December 31, 1988, and who is authorized to carry a loaded firearm pursuant to this section, shall not be required to have an endorsement in the format set forth in subparagraph (D) of paragraph (1) of subdivision (a) of Section 12027 until the time of the issuance, on or after January 1, 1989, of a renewal endorsement pursuant to paragraph (2).

(2) A retired peace officer, except an officer listed in Section 830.1 or 830.2, subdivision (u) of Section 830.33, or subdivision (c) of Section 830.5 who retired prior to January 1, 1981, shall petition the issuing agency for renewal of his or her privilege to carry a loaded firearm every five years. An honorably retired peace officer listed in Section 830.1 or 830.2, subdivision (a) of Section 830.33, or subdivision (c) of Section 830.5 who retired prior to January 1, 1981, shall not be required to obtain an endorsement from the issuing agency to carry a loaded firearm. The agency from which a peace officer is honorably retired may, upon initial retirement of the peace officer, or at any time subsequent thereto, deny or revoke for good cause the retired officer's privilege to carry a loaded firearm. A peace officer who is listed in Section 830.1 or 830.2, subdivision (a) of Section 830.33, or subdivision (c) of Section 830.5 who is retired prior to January 1, 1981, shall have his or her privilege to carry a loaded firearm denied or revoked by having the agency from which the officer retired stamp on the officer's identification certificate "No CCW privilege."

(3) An honorably retired peace officer who is listed in subdivision (c) of Section 830.5 and authorized to carry loaded firearms by this subdivision shall meet the training requirements of Section 832 and shall qualify with the firearm at least annually. The individual retired peace officer shall be responsible for maintaining his or her eligibility to carry a loaded firearm. The Department of Justice shall provide subsequent arrest notification pursuant to Section 11105.2 regarding honorably retired peace officers listed in subdivision (c) of Section 830.5 to the agency from which the officer has retired.

(4) Members of the military forces of this state or of the United States engaged in the performance of their duties.

(5) Persons who are using target ranges for the purpose of practice shooting with a firearm or who are members of shooting clubs while hunting on the premises of those clubs.

(6) The carrying of pistols, revolvers, or other firearms capable of being concealed upon the person by persons who are authorized to carry those weapons pursuant to Article 3 (commencing with Section 12050) of Chapter 1 of Title 2 of Part 4.

(7) Armored vehicle guards, as defined in *Section 7521 of the Business and Professions Code*, (A) if hired prior to January 1, 1977, or (B) if hired on or after that date, if they have received a firearms qualification card from the Department of Consumer Affairs, in each case while acting within the course and scope of their employment.

(8) Upon approval of the sheriff of the county in which they reside, honorably retired federal officers or agents of federal law enforcement agencies, including, but not limited to, the Federal Bureau of Investigation, the Secret Service, the United States Customs Service, the Federal Bureau of Alcohol, Tobacco, and Firearms, the Federal Bureau of Narcotics, the Drug Enforcement Administration, the United States Border Patrol, and officers or agents of the Internal Revenue Service who were authorized to carry weapons while on duty, who were assigned to duty within the state for a period of not less than one year, or who retired from active service in the state.

Retired federal officers or agents shall provide the sheriff with certification from the agency from which they retired certifying their service in the state, the nature of their retirement, and indicating the agency's concurrence that the retired federal officer or agent should be accorded the privilege of carrying a loaded firearm.

Upon approval, the sheriff shall issue a permit to the retired federal officer or agent indicating that he or she may carry a loaded firearm in accordance with this paragraph. The permit shall be valid for a period not exceeding five years, shall be carried by the retiree while carrying a loaded firearm, and may be revoked for good cause.

The sheriff of the county in which the retired federal officer or agent resides may require recertification prior to a permit renewal, and may suspend the privilege for cause. The sheriff may charge a fee necessary to cover any reasonable expenses incurred by the county.

(c) Subdivision (a) shall not apply to any of the following who have completed a regular course in firearms training approved by the Commission on Peace Officer Standards and Training:

(1) Patrol special police officers appointed by the police commission of any city, county, or city and county under the express terms of its charter who also, under the express terms of the charter, (A) are subject to suspension

or dismissal after a hearing on charges duly filed with the commission after a fair and impartial trial, (B) are not less than 18 years of age or more than 40 years of age, (C) possess physical qualifications prescribed by the commission, and (D) are designated by the police commission as the owners of a certain beat or territory as may be fixed from time to time by the police commission.

(2) The carrying of weapons by animal control officers or zookeepers, regularly compensated as such by a governmental agency when acting in the course and scope of their employment and when designated by a local ordinance or, if the governmental agency is not authorized to act by ordinance, by a resolution, either individually or by class, to carry the weapons, or by persons who are authorized to carry the weapons pursuant to *Section 14502 of the Corporations Code*, while actually engaged in the performance of their duties pursuant to that section.

(3) Harbor police officers designated pursuant to *Section 663.5 of the Harbors and Navigation Code*.

(d) Subdivision (a) shall not apply to any of the following who have been issued a certificate pursuant to Section 12033. The certificate shall not be required of any person who is a peace officer, who has completed all training required by law for the exercise of his or her power as a peace officer, and who is employed while not on duty as a peace officer.

(1) Guards or messengers of common carriers, banks, and other financial institutions while actually employed in and about the shipment, transportation, or delivery of any money, treasure, bullion, bonds, or other thing of value within this state.

(2) Guards of contract carriers operating armored vehicles pursuant to California Highway Patrol and Public Utilities Commission authority (A) if hired prior to January 1, 1977, or (B) if hired on or after January 1, 1977, if they have completed a course in the carrying and use of firearms which meets the standards prescribed by the Department of Consumer Affairs.

(3) Private investigators and private patrol operators who are licensed pursuant to Chapter 11.5 (commencing with Section 7512) of, and alarm company operators who are licensed pursuant to Chapter 11.6 (commencing with *Section 7590) of, Division 3 of the Business and Professions Code*, while acting within the course and scope of their employment.

(4) Uniformed security guards or night watch persons employed by any public agency, while acting within the scope and course of their employment.

(5) Uniformed security guards, regularly employed and compensated in that capacity by persons engaged in any lawful business, and uniformed alarm agents employed by an alarm company operator, while actually engaged in protecting and preserving the property of their employers or on duty or en route to or from their residences or their places of employment, and security guards and alarm agents en route to or from their residences or employer-required range training. Nothing in this paragraph shall be construed to prohibit cities and counties from enacting ordinances requiring alarm agents to register their names.

(6) Uniformed employees of private patrol operators and private investigators licensed pursuant to Chapter 11.5 (commencing with *Section 7512) of Division 3 of the Business and Professions Code*, while acting within the course and scope of their employment.

(e) In order to determine whether or not a firearm is loaded for the purpose of enforcing this section, peace officers are authorized to examine any firearm carried by anyone on his or her person or in a vehicle while in any public place or on any public street in an incorporated city or prohibited area of an unincorporated territory. Refusal to allow a peace officer to inspect a firearm pursuant to this section constitutes probable cause for arrest for violation of this section.

(f) As used in this section, "prohibited area" means any place where it is unlawful to discharge a weapon.

(g) A firearm shall be deemed to be loaded for the purposes of this section when there is an unexpended cartridge or shell, consisting of a case that holds a charge of powder and a bullet or shot, in, or attached in any manner to, the firearm, including, but not limited to, in the firing chamber, magazine, or clip thereof attached to the firearm; except that a muzzle-loader firearm shall be deemed to be loaded when it is capped or primed and has a powder charge and ball or shot in the barrel or cylinder.

(h) Nothing in this section shall prevent any person engaged in any lawful business, including a nonprofit organization, or any officer, employee, or agent authorized by that person for lawful purposes connected with that

business, from having a loaded firearm within the person's place of business, or any person in lawful possession of private property from having a loaded firearm on that property.

(i) Nothing in this section shall prevent any person from carrying a loaded firearm in an area within an incorporated city while engaged in hunting, provided that the hunting at that place and time is not prohibited by the city council.

(j)

(1) Nothing in this section is intended to preclude the carrying of any loaded firearm, under circumstances where it would otherwise be lawful, by a person who reasonably believes that the person or property of himself or herself or of another is in immediate, grave danger and that the carrying of the weapon is necessary for the preservation of that person or property. As used in this subdivision, "immediate" means the brief interval before and after the local law enforcement agency, when reasonably possible, has been notified of the danger and before the arrival of its assistance.

(2) A violation of this section is justifiable when a person who possesses a firearm reasonably believes that he or she is in grave danger because of circumstances forming the basis of a current restraining order issued by a court against another person or persons who has or have been found to pose a threat to his or her life or safety. This paragraph may not apply when the circumstances involve a mutual restraining order issued pursuant to Division 10 (commencing with *Section 6200) of the Family Code* absent a factual finding of a specific threat to the person's life or safety. It is not the intent of the Legislature to limit, restrict, or narrow the application of current statutory or judicial authority to apply this or other justifications to defendants charged with violating Section 12025 or of committing other similar offenses.

Upon trial for violating this section, the trier of fact shall determine whether the defendant was acting out of a reasonable belief that he or she was in grave danger.

(k) Nothing in this section is intended to preclude the carrying of a loaded firearm by any person while engaged in the act of making or attempting to make a lawful arrest.

(l) Nothing in this section shall prevent any person from having a loaded weapon, if it is otherwise lawful, at his or her place of residence, including any temporary residence or campsite.

(m)

(1) The district attorney of each county shall submit annually a report on or before June 30, to the Attorney General consisting of profiles by race, age, gender, and ethnicity of any person charged with a felony or a misdemeanor under this section and any other offense charged in the same complaint, indictment, or information.

(2) The Attorney General shall submit annually, a report on or before December 31, to the Legislature compiling all of the reports submitted pursuant to paragraph (1).

(3) This subdivision shall remain operative only until January 1, 2005.

DEERING'S CALIFORNIA CODES ANNOTATED
Copyright (c) 2009 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group.
All rights reserved.

\* THIS DOCUMENT REFLECTS ALL URGENCY LEGISLATION ENACTED THROUGH CH. 643 OF \*
THE 2009-2010 REG. SESS., CH. 12 OF THE 2009-2010 2d EX. SESS.,
CH. 30 OF THE 2009-10 3d EX. SESS., CH. 24 OF THE 2009-10 4th EX. SESS.,
THE GOVERNOR'S REORG. PLAN #1 OF 2009, EFF. MAY 10, 2009 & PROP 1F APPROVED
EFF. MAY 20, 2009

PENAL CODE
Part 4. Prevention of Crimes and Apprehension of Criminals
Title 2. Control of Deadly Weapons
Chapter 1. Firearms
Article 3. Licenses to Carry Pistols and Revolvers

GO TO CALIFORNIA CODES ARCHIVE DIRECTORY

*Cal Pen Code § 12050 (2009)*

**Legislative Alert:** LEXSEE 2009 Cal. ALS 288 -- see section 2, effective 01/01/2010.

**§ 12050. Issuance; Restrictions; Revocation; Amendment**

(a)

(1)

(A) The sheriff of a county, upon proof that the person applying is of good moral character, that good cause exists for the issuance, and that the person applying satisfies any one of the conditions specified in subparagraph (D) and has completed a course of training as described in subparagraph (E), may issue to that person a license to carry a pistol, revolver, or other firearm capable of being concealed upon the person in either one of the following formats:

(i) A license to carry concealed a pistol, revolver, or other firearm capable of being concealed upon the person.

(ii) Where the population of the county is less than 200,000 persons according to the most recent federal decennial census, a license to carry loaded and exposed in that county a pistol, revolver, or other firearm capable of being concealed upon the person.

(B) The chief or other head of a municipal police department of any city or city and county, upon proof that the person applying is of good moral character, that good cause exists for the issuance, and that the person applying is a resident of that city and has completed a course of training as described in subparagraph (E), may issue to that person a license to carry a pistol, revolver, or other firearm capable of being concealed upon the person in either one of the following formats:

(i) A license to carry concealed a pistol, revolver, or other firearm capable of being concealed upon the person.

(ii) Where the population of the county in which the city is located is less than 200,000 persons according to the most recent federal decennial census, a license to carry loaded and exposed in that county a pistol, revolver, or other firearm capable of being concealed upon the person.

(C) The sheriff of a county or the chief or other head of a municipal police department of any city or city and county, upon proof that the person applying is of good moral character, that good cause exists for the issuance, and that the person applying is a person who has been deputized or appointed as a peace officer pursuant to subdivision (a) or (b) of Section 830.6 by that sheriff or that chief of police or other head of a municipal police department, may issue to that person a license to carry concealed a pistol, revolver, or other firearm capable of being concealed upon

the person. Direct or indirect fees for the issuance of a license pursuant to this subparagraph may be waived. The fact that an applicant for a license to carry a pistol, revolver, or other firearm capable of being concealed upon the person has been deputized or appointed as a peace officer pursuant to subdivision (a) or (b) of Section 830.6 shall be considered only for the purpose of issuing a license pursuant to this subparagraph, and shall not be considered for the purpose of issuing a license pursuant to subparagraph (A) or (B).

(D) For the purpose of subparagraph (A), the applicant shall satisfy any one of the following:

(i) Is a resident of the county or a city within the county.

(ii) Spends a substantial period of time in the applicant's principal place of employment or business in the county or a city within the county.

(E)

(i) For new license applicants, the course of training may be any course acceptable to the licensing authority, shall not exceed 16 hours, and shall include instruction on at least firearm safety and the law regarding the permissible use of a firearm. Notwithstanding this clause, the licensing authority may require a community college course certified by the Commission on Peace Officer Standards and Training, up to a maximum of 24 hours, but only if required uniformly of all license applicants without exception.

(ii) For license renewal applicants, the course of training may be any course acceptable to the licensing authority, shall be no less than four hours, and shall include instruction on at least firearm safety and the law regarding the permissible use of a firearm. No course of training shall be required for any person certified by the licensing authority as a trainer for purposes of this subparagraph, in order for that person to renew a license issued pursuant to this section.

(2)

(A)

(i) Except as otherwise provided in clause (ii), subparagraphs (C) and (D) of this paragraph, and subparagraph (B) of paragraph (4) of subdivision (f), a license issued pursuant to subparagraph (A) or (B) of paragraph (1) is valid for any period of time not to exceed two years from the date of the license.

(ii) If the licensee's place of employment or business was the basis for issuance of the license pursuant to subparagraph (A) of paragraph (1), the license is valid for any period of time not to exceed 90 days from the date of the license. The license shall be valid only in the county in which the license was originally issued. The licensee shall give a copy of this license to the licensing authority of the city, county, or city and county in which he or she resides. The licensing authority that originally issued the license shall inform the licensee verbally and in writing in at least 16-point type of this obligation to give a copy of the license to the licensing authority of the city, county, or city and county of residence. Any application to renew or extend the validity of, or reissue, the license may be granted only upon the concurrence of the licensing authority that originally issued the license and the licensing authority of the city, county, or city and county in which the licensee resides.

(B) A license issued pursuant to subparagraph (C) of paragraph (1) to a peace officer appointed pursuant to Section 830.6 is valid for any period of time not to exceed four years from the date of the license, except that the license shall be invalid upon the conclusion of the person's appointment pursuant to Section 830.6 if the four-year period has not otherwise expired or any other condition imposed pursuant to this section does not limit the validity of the license to a shorter time period.

(C) A license issued pursuant to subparagraph (A) or (B) of paragraph (1) is valid for any period of time not to exceed three years from the date of the license if the license is issued to any of the following individuals:

(i) A judge of a California court of record.

(ii) A full-time court commissioner of a California court of record.

(iii) A judge of a federal court.

(iv) A magistrate of a federal court.

(D) A license issued pursuant to subparagraph (A) or (B) of paragraph (1) is valid for any period of time not to exceed four years from the date of the license if the license is issued to a custodial officer who is an employee of

the sheriff as provided in Section 831.5, except that the license shall be invalid upon the conclusion of the person's employment pursuant to Section 831.5 if the four-year period has not otherwise expired or any other condition imposed pursuant to this section does not limit the validity of the license to a shorter time period.

(3) For purposes of this subdivision, a city or county may be considered an applicant's "principal place of employment or business" only if the applicant is physically present in the jurisdiction during a substantial part of his or her working hours for purposes of that employment or business.

(b) A license may include any reasonable restrictions or conditions which the issuing authority deems warranted, including restrictions as to the time, place, manner, and circumstances under which the person may carry a pistol, revolver, or other firearm capable of being concealed upon the person.

(c) Any restrictions imposed pursuant to subdivision (b) shall be indicated on any license issued.

(d) A license shall not be issued if the Department of Justice determines that the person is prohibited by state or federal law from possessing, receiving, owning, or purchasing a firearm.

(e)

(1) The license shall be revoked by the local licensing authority if at any time either the local licensing authority is notified by the Department of Justice that a licensee is prohibited by state or federal law from owning or purchasing firearms, or the local licensing authority determines that the person is prohibited by state or federal law from possessing, receiving, owning, or purchasing a firearm.

(2) If at any time the Department of Justice determines that a licensee is prohibited by state or federal law from possessing, receiving, owning, or purchasing a firearm, the department shall immediately notify the local licensing authority of the determination.

(3) If the local licensing authority revokes the license, the Department of Justice shall be notified of the revocation pursuant to Section 12053. The licensee shall also be immediately notified of the revocation in writing.

(f)

(1) A person issued a license pursuant to this section may apply to the licensing authority for an amendment to the license to do one or more of the following:

(A) Add or delete authority to carry a particular pistol, revolver, or other firearm capable of being concealed upon the person.

(B) Authorize the licensee to carry concealed a pistol, revolver, or other firearm capable of being concealed upon the person.

(C) If the population of the county is less than 200,000 persons according to the most recent federal decennial census, authorize the licensee to carry loaded and exposed in that county a pistol, revolver, or other firearm capable of being concealed upon the person.

(D) Change any restrictions or conditions on the license, including restrictions as to the time, place, manner, and circumstances under which the person may carry a pistol, revolver, or other firearm capable of being concealed upon the person.

(2) When the licensee changes his or her address, the license shall be amended to reflect the new address and a new license shall be issued pursuant to paragraph (3).

(3) If the licensing authority amends the license, a new license shall be issued to the licensee reflecting the amendments.

(4)

(A) The licensee shall notify the licensing authority in writing within 10 days of any change in the licensee's place of residence.

(B) If the license is one to carry concealed a pistol, revolver, or other firearm capable of being concealed upon the person, then it may not be revoked solely because the licensee changes his or her place of residence to another county if the licensee has not breached any conditions or restrictions set forth in the license and has not become prohibited by state or federal law from possessing, receiving, owning, or purchasing a firearm. However, any license

ER001225

issued pursuant to subparagraph (A) or (B) of paragraph (1) of subdivision (a) shall expire 90 days after the licensee moves from the county of issuance if the licensee's place of residence was the basis for issuance of the license.

(C) If the license is one to carry loaded and exposed a pistol, revolver, or other firearm capable of being concealed upon the person, the license shall be revoked immediately if the licensee changes his or her place of residence to another county.

(5) An amendment to the license does not extend the original expiration date of the license and the license shall be subject to renewal at the same time as if the license had not been amended.

(6) An application to amend a license does not constitute an application for renewal of the license.

(g) Nothing in this article shall preclude the chief or other head of a municipal police department of any city from entering an agreement with the sheriff of the county in which the city is located for the sheriff to process all applications for licenses, renewals of licenses, and amendments to licenses, pursuant to this article.

# EXHIBIT "B"

ER001227



# WEST VIRGINIA
# FIREARM LAWS

*Courtesy of*

Darrell V. McGraw, Jr.
Attorney General
of
West Virginia

October 2009

Office of the Attorney General
State Capitol Complex
1900 Kanawha Boulevard, East
Building 1, Room E-26
Charleston, West Virginia 25305
(304) 558-8986 - Consumer Protection and AntiTrust Division
(304) 558-2021 - Main Office
Web address: www.wvago.gov
Email address for handgun questions: wvguninfo@wvago.gov



Fellow West Virginians:

My office has prepared this booklet to assist you in learning about West Virginia firearms law, particularly in the area of concealed licenses and where in the country your West Virginia license is recognized.

As laws are subject to change, up-to-date information is available on our website www.wvago.gov.

Please remember that firearms law is not governed solely by West Virginia law. You must comply with federal laws and regulations, all of which are not contained in this booklet. Concealed handgun licenses are issued by the county sheriff's office in each county. A list of those offices is contained herein.

Sincerely,


Darrell V. McGraw, Jr.
West Virginia Attorney General

# TABLE OF CONTENTS

Information About Obtaining a West Virginia Concealed Handgun License . . . . . . . . . . . . . . . . . . 1-2

Information About Handgun Reciprocity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Information About Recognition of West Virginia Handgun Licenses . . . . . . . . . . . . . . . . . . . . . . . . 3

Locations Where Handguns are Restricted or Forbidden . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Frequently Asked Questions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5-6

Provisions of 18 U.S.C. § 922(g) Relating to Those Persons Who Cannot Possess
Firearms and Federal Law Exempting Active and Retired Law Enforcement Offices
From State CCW Laws . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7-10

Selected West Virginia Firearm Laws . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11-29

List of County Sheriff's Offices . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30-32

Concealed Handgun Application . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

ER001230

## License to Carry a Concealed Handgun

A person who wishes to carry a concealed handgun must obtain a license. A license is not required for a person to own a handgun, keep it in his or her home, place of business or other real property. No license is necessary to visibly carry a handgun if the person may lawfully possess a firearm.

Licenses to carry a concealed handgun may be obtained from the sheriff of the county in which the applicant is a resident.

Carrying a concealed handgun without a license is a misdemeanor punishable by incarceration for up to one year and a fine of one hundred to one thousand dollars for a first offense. A second conviction is a felony punishable by incarceration for not less than one nor more than five years and a fine of not less than one thousand nor more than five thousand dollars. W. Va. Code § 61-7-3. Federal law creates exemptions from state CCW laws for active and certain retired law enforcement officers. Copies of those statutes in effect as of the date of this booklet's publication (October 2009) are contained herein.

An applicant for a concealed handgun license must complete an application form. The fees associated with a license application are $75.00 payable to the sheriff's office and $15.00 to the West Virginia State Police for the criminal background check. One may often obtain a laminated wallet size copy of the license through the sheriff's office. Fees for this vary. State law requires the possession of one's license when carrying a concealed handgun.

The West Virginia State Police strongly recommend that if one does not have a concealed handgun permit, all weapons transported in a motor vehicle should be unloaded with the ammunition stored separately.

Lastly, West Virginia law requires that hunting weapons being transported in a vehicle be unloaded and in cases.

It is important to note that while West Virginia is an "open carry" state the ability to carry openly is deemed by law enforcement to apply only to West Virginia residents. West Virginia law enforcement's interpretation of "open carry" is that the handgun must be visible from three sides.

ER001231

**TAB 55**

1  JOHN J. SANSONE, County Counsel
   Answering Defendant of San Diego
2  By JAMES M. CHAPIN, Senior Deputy (SBN 118530)
   1600 Pacific Highway, Room 355
3  San Diego, CA 92101
   Telephone: (619) 531-5244
4  james.chapin@sdcounty.ca.gov
   Attorneys for Defendant William D. Gore
5

6

7

8                UNITED STATES DISTRICT COURT

9              SOUTHERN DISTRICT OF CALIFORNIA

10

11  EDWARD PERUTA,                    )   USSD No. **09-CV-2371 IEG (BLM)**
                                      )
12              Plaintiff,            )
                                      )
13      v.                            )   **DEFENDANT WILLIAM D. GORE'S**
                                      )   **NOTICE OF MOTION AND MOTION**
14  COUNTY OF SAN DIEGO, WILLIAM D.   )   **TO DISMISS COMPLAINT**
    GORE, INDIVIDUALLY AND IN HIS     )   [Fed.R.Civ.P., 12(b)(6)]
15  CAPACITY AS SHERIFF,              )
                                      )
16              Defendants.           )   Date:   December 21, 2009
                                      )   Time:   10:30 a.m.
17                                    )   Dept:   1 – Courtroom of the
                                      )           Hon. Irma E. Gonzalez
18  _____  )

19       PLEASE TAKE NOTICE that on December 21, 2009, at 10:30 a.m., or as soon

20  thereafter as the matter may be heard, in the courtroom of the Honorable Irma E.

21  Gonzalez, United States District Judge, located at 940 Front Street, San Diego,

22  California, Defendant William D. Gore in his official capacity as Sheriff will move to

23  dismiss Plaintiff's Complaint on grounds that it fails to state a claim upon which relief

24  can be granted pursuant to Federal Rules of Civil Procedure, rule 12(b)(6).

25       The motion will be based upon this notice, upon the accompanying memorandum

26  of points and authorities, and upon all papers and pleadings on file in this action.

27  DATED: November 12, 2009          JOHN J. SANSONE, County Counsel

28                                    By: s/ JAMES M. CHAPIN, Senior Deputy
                                      Attorneys for Defendant William D. Gore

                                      1

                                                        09-CV-2371 IEG (BLM)

## Declaration of Service

I, the undersigned, declare:

I, the undersigned, declare under penalty of perjury that I am over the age of eighteen years and not a party to the case; I am employed in, or am a resident of, the County of San Diego, California, where the service occurred; and my business address is: 1600 Pacific Highway, Room 355, San Diego, California.

On November 12, 2009, I served the following documents:  (1) **DEFENDANT WILLIAM D. GORE'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT; (2) DEFENDANT WILLIAM D. GORE'S POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS COMPLAINT** [Fed.R.Civ.P., 12(b)(6)  in the following manner:

☐   By placing a copy in a separate envelope, with postage fully prepaid, for each addressee named below and depositing each in the U. S. Mail at San Diego, California.

☒   By electronic filing, I served each of the above referenced documents by E-filing, in accordance with the rules governing the electronic filing of documents in the United States District Court for the Southern District of California, as to the following parties:

Paul H. Neuharth, Jr., Esq.
Law Offices of Paul H Neuharth
1140 Union Street, Suite 102
San Diego, CA  92101
T: (619) 231-0401
F: (619) 231-8759
E-mail: pneuharth@sbcglobal.net
(Attorney for Plaintiff)

I declare under penalty of perjury that the foregoing is true and correct. Executed on November 12, 2009, at San Diego, California.

By: s/ JAMES M. CHAPIN
E-mail: james.chapin@sdcounty.ca.gov

Edward Peruta v. County of San Diego, et al.; USDC No. 09-CV-2371-IEG (BLM)

**TAB 56**

1   JOHN J. SANSONE, County Counsel
    Answering Defendant of San Diego
2   By JAMES M. CHAPIN, Senior Deputy (SBN 118530)
    1600 Pacific Highway, Room 355
3   San Diego, CA 92101
    Telephone: (619) 531-5244
4   james.chapin@sdcounty.ca.gov
    Attorneys for Defendant William D. Gore
5

6

7

8                   UNITED STATES DISTRICT COURT

9                 SOUTHERN DISTRICT OF CALIFORNIA

10

11  EDWARD PERUTA,                    )    USSD No. **09-CV-2371 IEG (BLM)**
                                      )
12          Plaintiff,                )
                                      )
13      v.                            )    **DEFENDANT WILLIAM D. GORE'S**
                                      )    **POINTS AND AUTHORITIES IN**
14  COUNTY OF SAN DIEGO, WILLIAM D.   )    **SUPPORT OF MOTION TO DISMISS**
    GORE, INDIVIDUALLY AND IN HIS     )    **COMPLAINT**
15  CAPACITY AS SHERIFF,              )    [Fed.R.Civ.P., 12(b)(6)]
                                      )
16          Defendants.               )    Date:    December 21, 2009
                                      )    Time:    10:30 a.m.
17                                    )    Dept:    1 – Courtroom of the
                                      )             Hon. Irma E. Gonzalez
18  _____ )

19                                 **I**

20                          **INTRODUCTION**

21          Plaintiff alleges that he was denied a permit to carry a concealed weapon by the

22  Sheriff's Department because he was not a resident of San Diego County and because he

23  did not show good cause. (Complaint ¶ 36.) The Complaint challenges California Penal

24  Code section 12050 on the grounds that it violates the Second Amendment, the Equal

25  Protection clause, and the constitutional right to travel. Plaintiff admits that he is not a

26  resident of San Diego County, having simply rented space at a temporary campground,

27  Campland on the Bay, in San Diego for five months combined in 2008 and 2009 and for

28  three months in 2007. (Complaint, ¶ 18.) He further alleges as good cause for a

                                     1

1    concealed weapons permit that he travels extensively with cash and valuables, often in
2    rural areas, and that he places himself in high crime areas to gather news.  He challenges
3    the "residency," "good cause" and "moral character" provisions of the statute and their
4    application to him.  (Complaint, ¶¶ 30-39.)  He does not allege that his application was
5    denied on lack of moral character grounds.  Penal Code sections 12050-12054 are filed
6    herewith as Exhibit "A."

## II

## THERE IS NO CONSTITUTIONAL RIGHT TO
## CARRY CONCEALED WEAPONS IN PUBLIC

10          Plaintiff's first cause of action alleges that the statutory "county residency" and
11    "good cause" requirements violate his right to bear arms under the Second Amendment.
12    Recently, the United States Supreme Court, in *District of Columbia v. Heller,* 554 U.S.
13    __; 128 S. Ct. 2783; 171 L.Ed.2d 637 (2008), in the course of invalidating a prohibition
14    by the District of Columbia on the possession of usable handguns in the home,
15    announced that the Second Amendment guarantees the individual right to possess and
16    carry weapons in case of confrontation, self-defense, or other traditionally lawful
17    purposes, unconnected with service in a militia.  A majority of the court held "that the
18    District's ban on handgun possession in the home violates the Second Amendment, as
19    does its prohibition against rendering any *lawful firearm in the home operable for the*
20    *purpose of immediate self-defense." Heller,* 554 U.S. at ___; 171 L.Ed.2d at 683 (italics
21    added).

22          The court emphasized that "the right secured by the Second Amendment is not
23    unlimited.  From Blackstone through the 19th-century cases, commentators and courts
24    routinely explained that the right [to keep and bear arms] was not a right to keep and
25    carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Id.*
26    at ___; 171 L.Ed.2d at 678.  Although the court declined to adopt a level of scrutiny to be
27    imposed upon Second Amendment restrictions or specify the limitations the government
28    may place on an individual's right to possess firearms, a nonexclusive list of the many

2

1    "presumptively lawful regulatory measures" was enumerated. *Heller* at ___, n. 26; 171

2    L.Ed.2d at 678, n. 26.  The court declared:

3        [T]he majority of the 19th-century courts to consider the question held that
         *prohibitions on carrying concealed weapons were lawful* under the Second
4        Amendment or state analogues. [Citations.] Although we do not undertake
         an exhaustive historical analysis today of the full scope of the Second
5        Amendment, nothing in our opinion should be taken to cast doubt on
         longstanding prohibitions on the possession of firearms by felons and the
6        mentally ill, or laws forbidding the carrying of firearms in sensitive places
         such as schools and government buildings, or laws imposing conditions and
7        qualifications on the commercial sale of arms. [¶] We also recognize
         another important limitation on the right to keep and carry arms. *Miller*
8        said, as we have explained, that the sorts of weapons protected were those
         "in common use at the time." [(*United States v. Miller* (1939) 307 U.S. 174,
9        179 [83 L. Ed. 1206, 59 S. Ct. 816].)]  We think that limitation is fairly
         supported by the historical tradition of prohibiting the carrying of
10       "dangerous and unusual weapons." [Citations.]

11   *Heller*, at ___–___ ; 171 L.Ed.2d at 678–679 (fn. omitted, italics added).

12       Penal Code section 12050 does not regulate the possession of a gun in the home for

13   lawful purposes of confrontation or self-defense, as did the law declared unconstitutional

14   in *Heller*.  Rather, it involves the regulation of the carrying of concealed weapons in

15   public places.  Further, carrying a firearm concealed on the person or in a vehicle is not in

16   the nature of a common use of a gun for lawful purposes which the court declared to be

17   protected by the Second Amendment in *Heller*.  Unlike possession of a gun for protection

18   within a residence, carrying a concealed firearm presents a recognized "threat to public

19   order," and is "'prohibited as a means of preventing physical harm to persons other than

20   the offender.' [Citation.]" *People v. Hale*, 43 Cal. App. 3d 353, 356 (1974).  A person

21   who carries a concealed firearm on his person or in a vehicle, "which permits him

22   immediate access to the firearm but impedes others from detecting its presence, poses an

23   'imminent threat to public safety ....' [Citation.]" *People v. Hodges,* 70 Cal. App. 4th

24   1348, 1357 (1999).

25       Rather than cast any doubt upon the continued constitutional validity of concealed

26   weapons bans, the *Heller* opinion specifically expressed constitutional approval of the

27   accepted statutory proscriptions against carrying concealed weapons. *Heller,* 554 U.S.

28   ___, ___ ; 171 L.Ed.2d at 678.  Thus, in the aftermath of *Heller*, the prohibition "on the

3

ER001236

1  carrying of a concealed weapon without a permit, continues to be a lawful exercise by the

2  state of its regulatory authority notwithstanding the Second Amendment." *United States*

3  *v. Hall* (S.D.W.Va., Aug. 4, 2008, No. 2:08-00006) 2008 U.S.Dist. Lexis 59641, *3;

4  *People v. Yarbrough*, 169 Cal. App. 4th 303, 309 (2008).

5                                              III

6                          **THE COMPLAINT FAILS TO ALLEGE**

7                          **A VIOLATION OF EQUAL PROTECTION**

8          Plaintiff's second claim asserts a violation of equal protection by application of the

9  residency and good cause requirements.  Under the Equal Protection Clause of the

10  Fourteenth Amendment, no state shall "deny to any person within its jurisdiction the equal

11  protection of the laws."  The Equal Protection Clause "is essentially a directive that all

12  persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living*

13  *Center, Inc.*, 473 U.S. 432, 439 (1985).  If dissimilarly situated persons are treated

14  differently, there is no equal protection violation.  *E & T Realty v. Strickland*, 830 F. 2d

15  1107, 1109 (11th Cir. 1987).  When a government's action does not involve a suspect

16  classification or implicate a fundamental right, even intentional discrimination will survive

17  constitutional scrutiny for an equal protection violation as long as it bears a rational

18  relation to a legitimate state interest.  *New Orleans v. Dukes*, 427 U.S. 297, 303-04 (1976);

19  *Cleburne*, 473 U.S. at 439; *Lockary v. Kayfetz*, 917 F.2d 1150, 1155 (9th Cir. 1990).

20  Weapons permit applicants do not constitute a protected class.

21          Because Plaintiff is not a member of a suspect class or quasi-suspect class and no

22  fundamental right is involved, he must show how he was treated differently than others

23  similarly situated.  After making this showing, his allegations must establish that the

24  Sheriff intentionally discriminated against him and that there was no rational basis for

25  doing so.  Plaintiff's allegations are simply that he should be considered a resident of the

26  County of San Diego because of his occasional visits here and that he has shown good

27  cause by stating that he voluntarily places himself in situations and places he perceives as

28  placing him at risk.

                                              4

1       Furthermore, there can be no equal protection violation where state action bears a

2    rational relation to a legitimate state interest. *Armendariz v. Penman,* 75 F. 3d 1311,

3    1326 (9th Cir. 1996). The actions must be "malicious, irrational or plainly arbitrary" to

4    sustain an equal protection claim. *Id.,* quoting *Lockary,* 917 F. 2d at 1156. The statute

5    that establishes the procedures and the actions of the Sheriff in carefully screening those

6    who are permitted to carry concealed weapons in public can hardly be characterized as

7    irrational.

8    **IV**

9    **THE CONCEALED WEAPONS PERMIT PROCESS DOES NOT**

10    **IMPLICATE THE CONSTITUTIONAL RIGHT TO TRAVEL**

11       Plaintiff's final claim is that the concealed weapons permit process violates his

12    constitutional right to travel. A state law implicates the right to travel when it actually

13    deters such travel, when impeding travel is its primary objective or when it uses any

14    classification which serves to penalize the exercise of that right. *Attorney Gen. of New*

15    *York v. Soto-Lopez,* 476 U.S. 898, 903 (1986). State restrictions on concealed weapons

16    fall into none of those categories. Plaintiff is free to travel without carrying concealed

17    weapons.

18    **CONCLUSION**

19       The Complaint fails to state a claim on any constitutional ground. Plaintiff has a

20    remedy in state court to challenge the determination of the Sheriff's Department by writ

21    proceeding. This motion to dismiss should be granted without leave to amend.

22    DATED: November 12, 2009      Respectfully submitted,

23                            JOHN J. SANSONE, County Counsel

24                            By: s/ JAMES M. CHAPIN, Senior Deputy

25                            Attorneys for Defendant William D. Gore

26

27

28

5

**TAB 57**

1  JOHN J. SANSONE, County Counsel
   Answering Defendant of San Diego
2  By JAMES M. CHAPIN, Senior Deputy (SBN 118530)
   1600 Pacific Highway, Room 355
3  San Diego, CA 92101
   Telephone: (619) 531-5244
4  james.chapin@sdcounty.ca.gov
   Attorneys for Defendant William D. Gore
5

6

7

8              UNITED STATES DISTRICT COURT

9            SOUTHERN DISTRICT OF CALIFORNIA

10

11  EDWARD PERUTA,                    )  USSD No. **09-CV-2371 IEG (BLM)**
                                      )
12           Plaintiff,              )
                                      )  **DEFENDANT WILLIAM D. GORE'S**
13      v.                           )  **NOTICE OF LODGMENT IN**
                                      )  **SUPPORT OF MOTION TO DISMISS**
14  COUNTY OF SAN DIEGO, WILLIAM D.  )  **COMPLAINT**
    GORE, INDIVIDUALLY AND IN HIS    )  [Fed.R.Civ.P., 12(b)(6)
15  CAPACITY AS SHERIFF,             )
                                      )
16           Defendants.            )  Date:    December 21, 2009
                                      )  Time:    10:30 a.m.
17                                    )  Dept:    1 – Courtroom of the
                                      )           Hon. Irma E. Gonzalez
18  _____ )

19      Defendant William D. Gore hereby lodges copies of the following exhibit in

20  support of his motion to dismiss complaint, as follows:

21      **Exhibit A:**  Penal Code Sections 12050-12054

22  DATED: November 12, 2009          JOHN J. SANSONE, County Counsel

23                                    By: s/ JAMES M. CHAPIN, Senior Deputy
                                      Attorneys for Defendant William D. Gore
24

25

26

27

28

                                      1

# EXHIBIT A

ER001240

# PENAL CODE
# SECTION 12050-12054

12050.  (a) (1) (A) The sheriff of a county, upon proof that the person applying is of good moral character, that good cause exists for the issuance, and that the person applying satisfies any one of the conditions specified in subparagraph (D) and has completed a course of training as described in subparagraph (E), may issue to that person a license to carry a pistol, revolver, or other firearm capable of being concealed upon the person in either one of the following formats:

   (i) A license to carry concealed a pistol, revolver, or other firearm capable of being concealed upon the person.

   (ii) Where the population of the county is less than 200,000 persons according to the most recent federal decennial census, a license to carry loaded and exposed in that county a pistol, revolver, or other firearm capable of being concealed upon the person.

   (B) The chief or other head of a municipal police department of any city or city and county, upon proof that the person applying is of good moral character, that good cause exists for the issuance, and that the person applying is a resident of that city and has completed a course of training as described in subparagraph (E), may issue to that person a license to carry a pistol, revolver, or other firearm capable of being concealed upon the person in either one of the following formats:

   (i) A license to carry concealed a pistol, revolver, or other firearm capable of being concealed upon the person.

   (ii) Where the population of the county in which the city is located is less than 200,000 persons according to the most recent federal decennial census, a license to carry loaded and exposed in that county a pistol, revolver, or other firearm capable of being concealed upon the person.

   (C) The sheriff of a county or the chief or other head of a municipal police department of any city or city and county, upon proof that the person applying is of good moral character, that good cause exists for the issuance, and that the person applying is a person who has been deputized or appointed as a peace officer pursuant to subdivision (a) or (b) of Section 830.6 by that sheriff or that chief of police or other head of a municipal police department, may issue to that person a license to carry concealed a pistol, revolver, or other firearm capable of being concealed upon the person. Direct or indirect fees for the issuance of a license pursuant to this subparagraph may be waived. The fact that an applicant for a license to carry a pistol, revolver, or other firearm capable of being concealed upon the person has been deputized or appointed as a peace officer pursuant to subdivision (a) or (b) of Section 830.6 shall be considered only for the purpose of issuing a license pursuant to this subparagraph, and shall not be considered for the purpose of issuing a license pursuant to subparagraph (A) or (B).

   (D) For the purpose of subparagraph (A), the applicant shall satisfy any one of the following:

(i) Is a resident of the county or a city within the county.

(ii) Spends a substantial period of time in the applicant's principal place of employment or business in the county or a city within the county.

(E) (i) For new license applicants, the course of training may be any course acceptable to the licensing authority, shall not exceed 16 hours, and shall include instruction on at least firearm safety and the law regarding the permissible use of a firearm. Notwithstanding this clause, the licensing authority may require a community college course certified by the Commission on Peace Officer Standards and Training, up to a maximum of 24 hours, but only if required uniformly of all license applicants without exception.

(ii) For license renewal applicants, the course of training may be any course acceptable to the licensing authority, shall be no less than four hours, and shall include instruction on at least firearm safety and the law regarding the permissible use of a firearm. No course of training shall be required for any person certified by the licensing authority as a trainer for purposes of this subparagraph, in order for that person to renew a license issued pursuant to this section.

(2) (A) (i) Except as otherwise provided in clause (ii), subparagraphs (C) and (D) of this paragraph, and subparagraph (B) of paragraph (4) of subdivision (f), a license issued pursuant to subparagraph (A) or (B) of paragraph (1) is valid for any period of time not to exceed two years from the date of the license.

(ii) If the licensee's place of employment or business was the basis for issuance of the license pursuant to subparagraph (A) of paragraph (1), the license is valid for any period of time not to exceed 90 days from the date of the license. The license shall be valid only in the county in which the license was originally issued. The licensee shall give a copy of this license to the licensing authority of the city, county, or city and county in which he or she resides. The licensing authority that originally issued the license shall inform the licensee verbally and in writing in at least 16-point type of this obligation to give a copy of the license to the licensing authority of the city, county, or city and county of residence. Any application to renew or extend the validity of, or reissue, the license may be granted only upon the concurrence of the licensing authority that originally issued the license and the licensing authority of the city, county, or city and county in which the licensee resides.

(B) A license issued pursuant to subparagraph (C) of paragraph (1) to a peace officer appointed pursuant to Section 830.6 is valid for any period of time not to exceed four years from the date of the license, except that the license shall be invalid upon the conclusion of the person's appointment pursuant to Section 830.6 if the four-year period has not otherwise expired or any other condition imposed pursuant to this section does not limit the validity of the license to a shorter time period.

(C) A license issued pursuant to subparagraph (A) or (B) of paragraph (1) is valid for any period of time not to exceed three years from the date of the license if the license is issued to any of the following individuals:

(i) A judge of a California court of record.

(ii) A full-time court commissioner of a California court of record.

(iii) A judge of a federal court.

(iv) A magistrate of a federal court.

(D) A license issued pursuant to subparagraph (A) or (B) of paragraph (1) is valid for any period of time not to exceed four years from the date of the license if the license is issued to a custodial officer who is an employee of the sheriff as provided in Section 831.5, except that the license shall be invalid upon the conclusion of the person's employment pursuant to Section 831.5 if the four-year period has not otherwise expired or any other condition imposed pursuant to this section does not limit the validity of the license to a shorter time period.

(3) For purposes of this subdivision, a city or county may be considered an applicant's "principal place of employment or business" only if the applicant is physically present in the jurisdiction during a substantial part of his or her working hours for purposes of that employment or business.

(b) A license may include any reasonable restrictions or conditions which the issuing authority deems warranted, including restrictions as to the time, place, manner, and circumstances under which the person may carry a pistol, revolver, or other firearm capable of being concealed upon the person.

(c) Any restrictions imposed pursuant to subdivision (b) shall be indicated on any license issued.

(d) A license shall not be issued if the Department of Justice determines that the person is prohibited by state or federal law from possessing, receiving, owning, or purchasing a firearm.

(e) (1) The license shall be revoked by the local licensing authority if at any time either the local licensing authority is notified by the Department of Justice that a licensee is prohibited by state or federal law from owning or purchasing firearms, or the local licensing authority determines that the person is prohibited by state or federal law from possessing, receiving, owning, or purchasing a firearm.

(2) If at any time the Department of Justice determines that a licensee is prohibited by state or federal law from possessing, receiving, owning, or purchasing a firearm, the department shall immediately notify the local licensing authority of the determination.

(3) If the local licensing authority revokes the license, the Department of Justice shall be notified of the revocation pursuant to Section 12053. The licensee shall also be immediately notified of the revocation in writing.

(f) (1) A person issued a license pursuant to this section may apply to the licensing authority for an amendment to the license to do one or more of the following:

(A) Add or delete authority to carry a particular pistol, revolver, or other firearm capable of being concealed upon the person.

(B) Authorize the licensee to carry concealed a pistol, revolver, or other firearm capable of being concealed upon the person.

(C) If the population of the county is less than 200,000 persons according to the most recent federal decennial census, authorize the licensee to carry loaded and exposed in that county a pistol, revolver, or other firearm capable of being concealed upon the person.

(D) Change any restrictions or conditions on the license, including restrictions as to the time, place, manner, and circumstances under which the person may carry a pistol, revolver, or

other firearm capable of being concealed upon the person.

(2) When the licensee changes his or her address, the license shall be amended to reflect the new address and a new license shall be issued pursuant to paragraph (3).

(3) If the licensing authority amends the license, a new license shall be issued to the licensee reflecting the amendments.

(4) (A) The licensee shall notify the licensing authority in writing within 10 days of any change in the licensee's place of residence.

(B) If the license is one to carry concealed a pistol, revolver, or other firearm capable of being concealed upon the person, then it may not be revoked solely because the licensee changes his or her place of residence to another county if the licensee has not breached any conditions or restrictions set forth in the license and has not become prohibited by state or federal law from possessing, receiving, owning, or purchasing a firearm. However, any license issued pursuant to subparagraph (A) or (B) of paragraph (1) of subdivision (a) shall expire 90 days after the licensee moves from the county of issuance if the licensee's place of residence was the basis for issuance of the license.

(C) If the license is one to carry loaded and exposed a pistol, revolver, or other firearm capable of being concealed upon the person, the license shall be revoked immediately if the licensee changes his or her place of residence to another county.

(5) An amendment to the license does not extend the original expiration date of the license and the license shall be subject to renewal at the same time as if the license had not been amended.

(6) An application to amend a license does not constitute an application for renewal of the license.

(g) Nothing in this article shall preclude the chief or other head of a municipal police department of any city from entering an agreement with the sheriff of the county in which the city is located for the sheriff to process all applications for licenses, renewals of licenses, and amendments to licenses, pursuant to this article.


12050.2. Within three months of the effective date of the act adding this section, each licensing authority shall publish and make available a written policy summarizing the provisions of subparagraphs (A) and (B) of paragraph (1) of subdivision (a) of Section 12050.


12051. (a) (1) The standard application form for licenses described in paragraph (3) shall require information from the applicant including, but not limited to, the name, occupation, residence and business address of the applicant, his or her age, height, weight, color of eyes and hair, and reason for desiring a license to carry the weapon. Applications for licenses shall be filed in writing, and signed by the applicant. Any license issued upon the application shall set forth the licensee's name, occupation, residence and business address, his or her age, height, weight, color of eyes and hair, the reason for desiring a license to carry the weapon, and shall, in addition, contain a description of the weapon or weapons authorized to be carried, giving the name of the manufacturer, the

serial number, and the caliber. The license issued to the licensee
may be laminated.

(2) Applications for amendments to licenses shall be filed in
writing and signed by the applicant, and shall state what type of
amendment is sought pursuant to subdivision (f) of Section 12050 and
the reason for desiring the amendment.

(3) (A) Applications for amendments to licenses, applications for
licenses, amendments to licenses, and licenses shall be uniform
throughout the state, upon forms to be prescribed by the Attorney
General. The Attorney General shall convene a committee composed of
one representative of the California State Sheriffs' Association, one
representative of the California Police Chiefs' Association, and one
representative of the Department of Justice to review, and as deemed
appropriate, revise the standard application form for licenses. The
committee shall meet for this purpose if two of the committee's
members deem that necessary. The application shall include a section
summarizing the statutory provisions of state law that result in the
automatic denial of a license.

(B) The forms shall contain a provision whereby the applicant
attests to the truth of statements contained in the application.

(C) An applicant shall not be required to complete any additional
application or form for a license, or to provide any information
other than that necessary to complete the standard application form
described in subparagraph (A), except to clarify or interpret
information provided by the applicant on the standard application
form.

(D) The standard application form described in subparagraph (A) is
deemed to be a local form expressly exempt from the requirements of
the Administrative Procedures Act, Chapter 3.5 (commencing with
Section 11340) of Part 1 of Division 3 of Title 2 of the Government
Code.

(b) Any person who files an application required by subdivision
(a) knowing that statements contained therein are false is guilty of
a misdemeanor.

(c) Any person who knowingly makes a false statement on the
application regarding any of the following shall be guilty of a
felony:

(1) The denial or revocation of a license, or the denial of an
amendment to a license, issued pursuant to Section 12050.

(2) A criminal conviction.

(3) A finding of not guilty by reason of insanity.

(4) The use of a controlled substance.

(5) A dishonorable discharge from military service.

(6) A commitment to a mental institution.

(7) A renunciation of United States citizenship.


12052.  (a) The fingerprints of each applicant shall be taken and
two copies on forms prescribed by the Department of Justice shall be
forwarded to the department. Upon receipt of the fingerprints and the
fee as prescribed in Section 12054, the department shall promptly
furnish the forwarding licensing authority a report of all data and
information pertaining to any applicant of which there is a record in
its office, including information as to whether the person is
prohibited by state or federal law from possessing, receiving,
owning, or purchasing a firearm. No license shall be issued by any

licensing authority until after receipt of the report from the
department.

(b) However, if the license applicant has previously applied to
the same licensing authority for a license to carry firearms pursuant
to Section 12050 and the applicant's fingerprints and fee have been
previously forwarded to the Department of Justice, as provided by
this section, the licensing authority shall note the previous
identification numbers and other data that would provide positive
identification in the files of the Department of Justice on the copy
of any subsequent license submitted to the department in conformance
with Section 12053 and no additional application form or fingerprints
shall be required.

(c) If the license applicant has a license issued pursuant to
Section 12050 and the applicant's fingerprints have been previously
forwarded to the Department of Justice, as provided in this section,
the licensing authority shall note the previous identification
numbers and other data that would provide positive identification in
the files of the Department of Justice on the copy of any subsequent
license submitted to the department in conformance with Section 12053
and no additional fingerprints shall be required.


12052.5.  The licensing authority shall give written notice to the
applicant indicating if the license is approved or denied within 90
days of the initial application for a new license or a license
renewal or 30 days after receipt of the applicant's criminal
background check from the Department of Justice, whichever is later.


12053.  (a) A record of the following shall be maintained in the
office of the licensing authority:
    (1) The denial of a license.
    (2) The denial of an amendment to a license.
    (3) The issuance of a license.
    (4) The amendment of a license.
    (5) The revocation of a license.
    (b) Copies of each of the following shall be filed immediately by
the issuing officer or authority with the Department of Justice:
    (1) The denial of a license.
    (2) The denial of an amendment to a license.
    (3) The issuance of a license.
    (4) The amendment of a license.
    (5) The revocation of a license.
    (c) Commencing on or before January 1, 2000, and annually
thereafter, each licensing authority shall submit to the Attorney
General the total number of licenses issued to peace officers,
pursuant to subparagraph (C) of paragraph (1) of subdivision (a) of
Section 12050, and to judges, pursuant to subparagraph (A) or (B) of
paragraph (1) of subdivision (a) of Section 12050. The Attorney
General shall collect and record the information submitted pursuant
to this subdivision by county and licensing authority.

12054.   (a) Each applicant for a new license or for the renewal of a license shall pay at the time of filing his or her application a fee determined by the Department of Justice not to exceed the application processing costs of the Department of Justice for the direct costs of furnishing the report required by Section 12052. After the department establishes fees sufficient to reimburse the department for processing costs, fees charged shall increase at a rate not to exceed the legislatively approved annual cost-of-living adjustments for the department's budget. The officer receiving the application and the fee shall transmit the fee, with the fingerprints if required, to the Department of Justice. The licensing authority of any city, city and county, or county may charge an additional fee in an amount equal to the actual costs for processing the application for a new license, excluding fingerprint and training costs, but in no case to exceed one hundred dollars ($100), and shall transmit the additional fee, if any, to the city, city and county, or county treasury. The first 20 percent of this additional local fee may be collected upon filing of the initial application. The balance of the fee shall be collected only upon issuance of the license.

The licensing authority may charge an additional fee, not to exceed twenty-five dollars ($25), for processing the application for a license renewal, and shall transmit an additional fee, if any, to the city, city and county, or county treasury. These local fees may be increased at a rate not to exceed any increase in the California Consumer Price Index as compiled and reported by the California Department of Industrial Relations.

(b) In the case of an amended license pursuant to subdivision (f) of Section 12050, the licensing authority of any city, city and county, or county may charge a fee, not to exceed ten dollars ($10), except that the fee may be increased at a rate not to exceed any increase in the California Consumer Price Index as compiled and reported by the California Department of Industrial Relations, for processing the amended license and shall transmit the fee to the city, city and county, or county treasury.

(c) If psychological testing on the initial application is required by the licensing authority, the license applicant shall be referred to a licensed psychologist used by the licensing authority for the psychological testing of its own employees. The applicant may be charged for the actual cost of the testing in an amount not to exceed one hundred fifty dollars ($150). Additional psychological testing of an applicant seeking license renewal shall be required only if there is compelling evidence to indicate that a test is necessary. The cost to the applicant for this additional testing shall not exceed one hundred fifty dollars ($150).

(d) Except as authorized pursuant to subdivisions (a), (b), and (c), no requirement, charge, assessment, fee, or condition that requires the payment of any additional funds by the applicant may be imposed by any licensing authority as a condition of the application for a license.

Exhibit A

**TAB 58**

PAUL H. NEUHARTH, JR (State Bar # 147073)
1140 Union Street, Suite 102
San Diego, CA 92101
Telephone: (619) 231-0401
Facsimile: (619) 231-8759

Attorney for Plaintiff
EDWARD PERUTA

FILED

09 OCT 23 AM 11: 59

CLERK U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: _____ DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

EDWARD PERUTA,

     Plaintiff,

     vs.

COUNTY OF SAN DIEGO, WILLIAM D.

GORE, INDIVIDUALLY AND IN HIS

CAPACITY AS SHERIFF,

     Defendants.

Case No.: '09 CV 2371 IEG - BLM

COMPLAINT FOR DAMAGES
42 U.S.C. §§ 1983, 1988

COME NOW the Plaintiff Edward Peruta, by and through undersigned counsel, and

complaint of Defendants as follows:

## THE PARTIES

1. Petitioner Edward Peruta (hereinafter referred to as "Plaintiff/Petitioner") is a natural

    person and a citizen of the United States and of the State of California, residing in San

    Diego County, California.

2. Defendant San Diego County is a municipal entity organized under the Constitution and

    laws of the State of California.

COMPLAINT FOR DAMAGES - 1

3. Defendant William Gore is the Sheriff of San Diego County, and as such, he is responsible for formulating, executing and administering the challenged laws, customs and practices against plaintiffs, and is in fact presently enforcing the challenged laws, customs, and practices against plaintiff. Defendant Gore is sued in both his individual and official capacities.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343, 2201, 2202, and 42 U.S.C. § 1983

5. Venue lies in this court pursuant to 28 U.S.C. § 1391.

## STATEMENT OF FACTS

*Background*

6. The Second Amendment to the United States Constitution provides: "A well regulated Militia being necessary to the security of a free State, the right of the people to keep and bear Arms shall not be infringed."

7. The Second Amendment, by way of the Fourteenth Amendment of the United States Constitution, prohibits states from depriving law-abiding individuals of their right to keep and bear arms.

8. The Second Amendment guarantees the right to carry handguns for self-defense.

9. States are allowed to regulate the carrying of handguns, such that states can prohibit the possession of firearms by felons and the mentally ill, or prohibit the carrying of firearms in sensitive places such as schools and government buildings.

COMPLAINT FOR DAMAGES - 2

10. States are not allowed to completely ban the carrying of handguns for self-defense, or impose regulations on the right to carry handguns that are inconsistent with the Second Amendment.

11. With few exceptions, California has banned the carrying of concealed weapons, (California Penal Code § 12025), and public carrying of loaded handguns, (California Penal Code § 12031).

12. California does allow for the issuance of a permit to carry a concealed loaded handgun in public, for self defense, and in small population counties, an individual may obtain a license to carry a loaded and exposed handgun. California Penal Code § 12050(a).

13. To obtain a permit to carry a handgun, applicants must pass a criminal background check, as required by California Penal Code §12052, and successfully complete a handgun training course, as required by California Penal Code §12050(a)(1)(E). An applicant must submit an application for a permit to carry a handgun to the county sheriff in which the applicant resides or spends a substantial amount of time in regard to the applicant's principal place of employment or business being located in that county. Before the county sheriff issues a license to carry a concealed weapon, the county sheriff makes a determination as to whether the applicant is of good moral character and has good cause for a license to carry a concealed weapon.

14. Even if an applicant successfully completes a background check and the handgun training course, the permit will only be issued if in the discretion of the county sheriff, it is found that the applicant is of good moral character and has shown that there is a good cause for the permit. California Penal Code §§ 12050(a)(1)(A), (B). Because county sheriffs have discretion in determining whether an applicant is of good moral character, and whether an

ER001250

applicant has "good cause" for a permit, there is no continuity in the issuance of handgun carrying permits.  In some counties, such as San Diego, applicants are rarely issued a handgun carrying permit, but in other counties, handgun carrying permits are issued to most law-abiding applicants.

15. Because county sheriffs have discretion in determining whether an applicant is of good moral character, and whether an applicant has good cause for a permit, the issuance of a license to carry a concealed weapon leads to the disparate treatment of applicants in California applying for a license to carry a concealed weapon.  As such, applicants are not protected by the Equal Protection clause of the 14th Amendment of the United States Constitution.

16. Defendants' policy of requiring fulltime residence in San Diego County before issuing a license to carry a concealed weapon, violates the right to travel guaranteed by the 14th Amendment of the United States Constitution.

*Violations of Plaintiff's Right to Bear Arms*

17. Plaintiff Edward Peruta maintains several residences across the United States, including but not limited to a residence in San Diego County.  Plaintiff maintains a permanent mailing address in San Diego, California, where he and his wife have a room in which they keep a wardrobe and other personal items.

18. Plaintiff and his wife have made their motor home their permanent residence, and stay in San Diego for extended period of times.  Plaintiff reserved space at Campland on the Bay, in San Diego, California, from November 15, 2008 through April 15, 2009.  He had also reserved space at the same place from February, 2007 through April, 2007.

COMPLAINT FOR DAMAGES - 4

19. Plaintiff is the founder, and sole stockholder of American News and Information Services, Inc., a news and information company that operates throughout the United States, and which gathers and provides raw, breaking news video, photographs, and news tips to various mainstream media outlets.

20. As part of Plaintiff's media duties, he often enters high crime areas, which puts him at risk of criminal assaults and in need of the ability to defend himself against the real possibility of being the target of violent crimes.

21. Plaintiff Peruta and his wife travel extensively throughout the United States in their motor home, carrying large sums of cash, valuables and equipment, which makes them a target for violent crimes.

22. As part of Plaintiff's travels, he and his wife often find it necessary to stay in extremely remote rural areas of the United States, including California, which makes them vulnerable physical attacks, due to the fact that they are often limited in their ability to receive immediate assistance from law enforcement or other public safety personnel.

23. Plaintiff is a certified National Rifles Association, (N.R.A.), instructor with the authority to train and certify individuals in the N.R.A. Basic Pistol Safety Course.

24. Plaintiff has a valid pistol permit issued by the State of Connecticut, and is recognized by the Department of Public Safety to teach the pistol course required to obtain a Connecticut Pistol Permit.

25. Plaintiff was assigned as a marine small arms instructor, (rifle and pistol), at the United States Naval Academy, in 1969.

26. Plaintiff successfully completed the Connecticut Municipal Training Course, in 1970.

ER001252

27. Plaintiff is a former law enforcement officer from the state of Connecticut. Plaintiff was a law enforcement officer from 1969 to 1971.

28. Plaintiff obtained, and provided to the San Diego County Sheriff, the required 8 Hour Firearms Safety and Proficiency Certificate, in accordance with California Penal Code § 12050(E)(i).

29. The Firearms Licensing and Permits Unit of the State of California Department of Justice found Plaintiff eligible to possess firearms.

30. The Second Amendment right to bear arms, and the inherent right of self-defense and self-preservation it advances, are not considered by Defendant San Diego County to constitute "good cause" for the issuance of a permit to carry a concealed weapon.

31. Defendant Sheriff William Gore is continuing San Diego County's "good cause" policy for denying permits to carry a concealed weapon.

32. Pursuant to Defendant San Diego County's "good cause" policy, Plaintiff was denied a permit to carry a concealed weapon by Defendant Sheriff William Gore's predecessor, and it is obvious that re-submission of the same application to Defendant Sheriff Gore would be futile.

33. But for the lack of a permit to carry a concealed weapon, Plaintiff would carry a concealed weapon for self-defense.

34. On November 17, 2008, Plaintiff requested a license to carry a concealed weapon from the San Diego County Sheriff's License Division, at which time he was interviewed by a licensing supervisor to determine whether he satisfied the licensing criteria.

35. On February 3, 2009, Plaintiff submitted an application for a license to carry a concealed weapon.

COMPLAINT FOR DAMAGES - 6

36. Plaintiff was denied a license to carry a concealed weapon, because the San Diego County Sheriff's licensing division made a finding that Plaintiff did not have good cause, and was not a resident of San Diego County. It was deemed that Plaintiff did not have good cause, because Plaintiff could not document any specific threat of harm, and primary reasons for desiring a license to carry a concealed weapon were due to the fact that he often carried large amounts of cash, valuables and equipment in his motor home, and also because his duties as a news investigator placed him in high crime areas.

37. Defendants have deprived Plaintiff of his right to carry a handgun for self-defense purposes, which is guaranteed by the Second Amendment, because there is a general ban on the exposed carrying of loaded handguns, and because of subjective "good cause" policy.

38. Plaintiff has shown that he has "good cause" for the license to carry a concealed weapon. However, the Defendants' arbitrary and capricious application of California Penal Code § 12050's "good cause" requirement has resulted in the denial to Plaintiff of a license to carry a concealed weapon, and violates Plaintiff's right to equal protection of the laws that is guaranteed by the 14th Amendment of the United States Constitution.

39. Plaintiff has shown he is a resident of San Diego County. However, Defendants' application of California Penal Code § 12050's residency requirement, has developed into an irrational and unjustified policy that requires fulltime residency in San Diego County, and violates Plaintiff's right to travel that is guaranteed by the 14th Amendment of the United States Constitution.

///

///

COMPLAINT FOR DAMAGES - 7

**FIRST CLAIM FOR RELIEF**
**U.S. CONST., AMEND. II – RIGHT TO BEAR ARMS, 42 U.S.C. § 1983**
**AGAINST ALL DEFENDANTS**

40. Plaintiff/Petitioner hereby realleges and incorporates by reference the allegations set forth in Paragraphs 1 through 35 above as set forth herein in full.

41. Plaintiff is a law abiding individual, competent in the safe handling and operation of handguns, and in need of the ability to defend himself and his wife against violent attacks.  Plaintiff is also in need of the ability to defend his valuable property, which he travels throughout California with.  Accordingly, there exists no reason to deny Plaintiff a permit to carry a concealed weapon under California Penal Code § 12050.

42. By maintaining and enforcing a set of customs, practices, and policies depriving Plaintiff of a permit to carry a concealed weapon, including but limited to requiring subjective "good cause" beyond the interest in self-defense and conditioning the consideration of an application for a permit to carry a concealed weapon on a durational residency requirement, Defendants are propagating customs, policies, and practices that violate the Second and Fourteenth Amendments to the United States Constitution, damaging Plaintiff's rights in violation of 42 U.S.C. § 1983.  Plaintiffs are therefore entitled to permanent injunctive relief against such customs, policies, and practices.

**SECOND CLAIM FOR RELIEF**
**U.S. CONST., AMEND. XIV-EQUAL PROTECTION, 42 U.S.C. § 1983**
**AGAINST ALL DEFENDANTS**

43. Paragraphs 1 through 38 are incorporated as though fully stated in herein.

///

///

COMPLAINT FOR DAMAGES - 8

44. Plaintiff alleges that Defendants' "good cause" policy is not objective and results in the unequal treatment of similarly situated individuals applying for a license to carry a concealed weapon.

45. By maintaining and enforcing a set of customs, practices, and policies arbitrarily denying Plaintiff of a permit to carry handguns based on a subjective determination of their "good cause" for the permit and their length of residence in the county, Defendants are propagating customs, policies, and practices that violate Plaintiff's rights to equal protection of the laws under the Fourteenth Amendment to the United States Constitution, damaging Plaintiff in violation of 42 U.S.C. § 1983. Plaintiff is therefore entitled to permanent injunctive relief against such customs, policies, and practices.

**THIRD CLAIM FOR RELIEF**
**U.S. CONST., AMEND. XIV-RIGHT TO TRAVEL, 42 U.S.C. § 1983**
**AGAINST ALL DEFENDANTS**

46. Paragraphs 1 through 40 are incorporated as though fully stated herein.

47. The Fourteenth Amendment guarantees individuals the right to interstate and intrastate travel.

48. By demanding that individuals reside fulltime in San Diego County before allowing them to apply for a permit to carry a concealed weapon, Defendants Gore and San Diego County are propagating customs, policies, and practices that violate Plaintiff's right to travel under the Fourteenth Amendment to the United States Constitution, damaging Plaintiff's in violation of 42 U.S.C. § 1983. Plaintiff is therefore entitled to permanent injunctive relief against such customs, policies and practices.

ER001256

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that judgment be entered in his favor and against Defendants as follows:

1. An order permanently enjoining Defendants, their officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the injunction, from enforcing the "good moral character" and "good cause" requirements of California Penal Code §12050 against applicants applying for carrying concealed weapons permits who seek the permit for self-defense and are otherwise qualified to obtain a handgun carrying permit under that section;

2. An order permanently enjoining Defendants, their officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the injunction, from requiring any duration of local residence prior to accepting an application under California Penal Code § 12050;

3. Declaratory relief that the "good moral character" and "good cause" provisions of the California Penal Code § 12050 are unconstitutional either on their face and/or as applied to bar applicants who are otherwise legally qualified to possess firearms and who assert self-defense as their "good cause" for seeking a permit to carry a concealed weapon;

4. Costs of Suit, including attorney fees and costs pursuant to 42 U.S.C. § 1988;

5. Any other further relief as the Court deems just and appropriate.

Respectfully Submitted,

Dated: 10-22-09

PAUL H. NEUHARTH, JR.
Attorney for Plaintiff, PERUTA

COMPLAINT FOR DAMAGES - 10

# PROOF OF SERVICE

STATE OF CALIFORNIA

COUNTY OF LOS ANGELES

I, Claudia Ayala, am employed in the City of Long Beach, Los Angeles County, California. I am over the age eighteen (18) years and am not a party to the within action. My business address is 180 East Ocean Boulevard, Suite 200, Long Beach, California 90802.

On May 23, 2011, I served the foregoing document(s) described as

**APPELLANTS' EXCERPTS OF RECORD**
**VOLUME V of VIII**

on the interested parties in this action by placing
[ ] the original
[X] a true and correct copy
thereof enclosed in sealed envelope(s) addressed as follows:

"See Attached Service List"

  X  (BY MAIL) As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under the practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Long Beach, California, in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date is more than one day after date of deposit for mailing an affidavit.
Executed on May 23, 2011, at Long Beach, California.

  X  (FEDERAL) I declare that I am employed in the office of the member of the bar of this of this court at whose direction the service was made.

_____
CLAUDIA AYALA

*Edward Peruta et al. v. County of San Diego, et. al.*
Case No. 10-56971
DC# CV 09-02371-IEG

James M. Chapin
County of San Diego
Office of County Counsel
1600 Pacific Highway
Room 355
San Diego, CA 92101-2469


Paul Neuharth, Jr. (State Bar #147073)
PAUL NEUHARTH, JR., APC
1140 Union Street, Suite 102
San Diego, CA 92101

# U.S. District Court
## Southern District of California (San Diego)
## CIVIL DOCKET FOR CASE #: 3:09-cv-02371-IEG -BGS

Peruta v. County of San Diego et al
Assigned to: Judge Irma E. Gonzalez
Referred to: Magistrate Judge Bernard G. Skomal
Case in other court: USCA, 10-56971
Cause: 42:1983 Civil Rights Act

Date Filed: 10/23/2009
Date Terminated: 12/10/2010
Jury Demand: Defendant
Nature of Suit: 440 Civil Rights: Other
Jurisdiction: Federal Question

**Plaintiff**

**Edward Peruta**                    represented by **Carl D. Michel**
                                     Michel & Associates PC
                                     180 East Ocean Boulevard
                                     Suite 200
                                     Long Beach, CA 90802
                                     (562)216-4444
                                     Fax: (562)216-4445
                                     Email: cmichel@michellawyers.com
                                     *LEAD ATTORNEY*
                                     *ATTORNEY TO BE NOTICED*

                                     **Paul H Neuharth , JR**
                                     Law Offices of Paul H Neuharth
                                     1140 Union Street
                                     Suite 102
                                     San Diego, CA 92101-3815
                                     (619)231-0401
                                     Fax: (619)231-8759
                                     Email: pneuharth@sbcglobal.net
                                     *LEAD ATTORNEY*
                                     *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Michelle Laxson**                  represented by **Carl D. Michel**
                                     (See above for address)
                                     *LEAD ATTORNEY*
                                     *ATTORNEY TO BE NOTICED*

                                     **Paul H Neuharth , JR**
                                     (See above for address)
                                     *LEAD ATTORNEY*
                                     *ATTORNEY TO BE NOTICED*

**Plaintiff**

**James Dodd**                       represented by **Carl D. Michel**
                                     (See above for address)
                                     *LEAD ATTORNEY*
                                     *ATTORNEY TO BE NOTICED*

                                     **Paul H Neuharth , JR**
                                     (See above for address)
                                     *LEAD ATTORNEY*

**Plaintiff**
**Dr. Leslie Buncher**                represented by   **Carl D. Michel**
                                                       (See above for address)
                                                       *LEAD ATTORNEY*
                                                       *ATTORNEY TO BE NOTICED*

                                                       **Paul H Neuharth , JR**
                                                       (See above for address)
                                                       *LEAD ATTORNEY*
                                                       *ATTORNEY TO BE NOTICED*

**Plaintiff**
**Mark Cleary**                       represented by   **Carl D. Michel**
                                                       (See above for address)
                                                       *LEAD ATTORNEY*
                                                       *ATTORNEY TO BE NOTICED*

                                                       **Paul H Neuharth , JR**
                                                       (See above for address)
                                                       *LEAD ATTORNEY*
                                                       *ATTORNEY TO BE NOTICED*

**Plaintiff**
**California Rifle and Pistol Association**   represented by   **Carl D. Michel**
**Foundation**                                                (See above for address)
                                                              *LEAD ATTORNEY*
                                                              *ATTORNEY TO BE NOTICED*

                                                              **Paul H Neuharth , JR**
                                                              (See above for address)
                                                              *LEAD ATTORNEY*
                                                              *ATTORNEY TO BE NOTICED*

V.

**Defendant**
**County of San Diego**               represented by   **James M Chapin**
                                                       County of San Diego Office of County
                                                       Counsel
                                                       1600 Pacific Highway
                                                       Room 355
                                                       San Diego, CA 92101-2469
                                                       (619)531-5244
                                                       Fax: 619-531-6005
                                                       Email: james.chapin@sdcounty.ca.gov
                                                       *LEAD ATTORNEY*
                                                       *ATTORNEY TO BE NOTICED*

**Defendant**
**William D Gore**                    represented by   **James M Chapin**
*individually and in his capacity as sheriff*          (See above for address)
                                                       *LEAD ATTORNEY*
                                                       *ATTORNEY TO BE NOTICED*

**Amicus**

**Brady Center to Prevent Gun Violence**

represented by **Neil R. O'Hanlon**
Hogan Lovells US LLP
1999 Avenue of the Stars
Suite 1400
Los Angeles, CA 90067
(310) 785-4600
Fax: (310) 785-4601
Email: neil.ohanlon@hoganlovells.com
*ATTORNEY TO BE NOTICED*

**Amicus**

**Center for Constitutional Jurisprudence**

represented by **John C Eastman**
Claremont Institute Center for Constitutional
Jurisprudence
C/O Chapman University School of Law
One University Drive
Orange, CA 92866
(714)628-2587
Fax: (714)844-4817
Email: jeastman@chapman.edu
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**Doctors for Responsible Gun Ownership**

represented by **John C Eastman**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**Law Enforcement Alliance of America**

represented by **John C Eastman**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**Independence Institute**

represented by **John C Eastman**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 10/23/2009 | 1 | COMPLAINT against County of San Diego, William D Gore ( Filing fee $ 350 receipt number CAS006621.), filed by Edward Peruta.(knh) (av1). (Entered: 10/23/2009) |
| 10/23/2009 | 2 | Summons Issued as to County of San Diego, William D Gore. (jah) (Entered: 10/23/2009) |
| 11/12/2009 | 3 | MOTION to Dismiss by William D Gore. (Attachments: # 1 Memo of Points and Authorities, # 2 Notice of Lodgment)(Chapin, James). (jah). (Entered: 11/12/2009) |
| 12/07/2009 | 4 | RESPONSE in Opposition re 3 MOTION to Dismiss filed by Edward Peruta. (Attachments: # 1 Exhibits A-B, # 2 Exhibits C-D)(Neuharth, Paul).on 12/8/2009 - Edited attachment descriptions (jah). (Entered: 12/07/2009) |

| | | |
|---|---|---|
| 12/14/2009 | 5 | REPLY to Response to Motion re 3 MOTION to Dismiss filed by William D Gore. (Chapin, James). (jah). (Entered: 12/14/2009) |
| 12/17/2009 | 6 | ORDER, Court Submits- 3 Motion to Dismiss, and will prepare a written order. Motion hearing scheduled for 12/21/2009 is vacated. (lsf) (Entered: 12/17/2009) |
| 01/14/2010 | 7 | ORDER denying Defendant William D. Gore's 3 Motion to Dismiss. Because Pla's Complaint alleges sufficient facts to state claims for relief that are plausible on their face, Dft's Motion to Dismiss is denied in its entirety. Signed by Judge Irma E. Gonzalez on 1/14/2010. (jah) (jrl). (Entered: 01/14/2010) |
| 01/20/2010 | 8 | ANSWER to 1 Complaint by William D Gore.(Chapin, James). (jah). (Entered: 01/20/2010) |
| 01/21/2010 | 9 | NOTICE AND ORDER SETTING TELEPHONIC ENE. Telephonic, Attys Only Early Neutral Evaluation Conference set for 2/24/2010 09:00 AM before Magistrate Judge Barbara Lynn Major. Signed by Magistrate Judge Barbara Lynn Major on 1/21/2010.(jah) (jrl). (Entered: 01/21/2010) |
| 02/24/2010 | 10 | ORDER Following ENE Conference. Telephonic ENE Conference was held on 2/24/2010. Rule 26(f) Conference shall be completed by 3/10/2010. Joint Discovery Plan shall be lodged w/ Magistrate Judge Major by 3/17/2010. Case Management Conference set for 3/22/2010 09:15 AM before Magistrate Judge Barbara Lynn Major. Counsel shall appear telephonically. Signed by Magistrate Judge Barbara Lynn Major on 2/24/2010.(jah)(jrl). (Entered: 02/24/2010) |
| 02/24/2010 | 11 | Minute Entry for proceedings held before Magistrate Judge Barbara Lynn Major: (T)Early Neutral Evaluation Conference held on 2/24/2010. Order to follow.(Plaintiff Attorney Paul Neuharth, Jr.). (Defendant Attorney James M. Chapin). (mnb) (Entered: 03/01/2010) |
| 03/22/2010 | 12 | SCHEDULING ORDER: Telephonic Case Management Conference was held on 3/22/2010. Any motion to join other parties, to amend the pleadings, or to file additional pleadings shall be filed by 4/22/2010. All other pretrial motions must be filed by 8/27/2010. Mandatory Settlement Conference set for 10/25/2010 09:30 AM before Magistrate Judge Barbara Lynn Major. Final Pretrial Conference set for 1/20/2011 10:30 AM in Courtroom 01 before Judge Irma E. Gonzalez. Memorandum of Contentions of Fact and Law due by 12/13/2010. Proposed Pretrial Order due by 1/3/2011. Signed by Magistrate Judge Barbara Lynn Major on 3/22/2010.(jah) (jrl). (Entered: 03/22/2010) |
| 03/22/2010 | 14 | Minute Entry for proceedings held before Magistrate Judge Barbara Lynn Major: (T)Case Management Conference held on 3/22/2010. Order to follow.(Tape #mA). (Plaintiff Attorney Paul Neuharth, Jr). (Defendant Attorney James Chapin). (mnb) (Entered: 04/05/2010) |
| 03/23/2010 | 13 | ORDER Changing Pretrial Conference Date. Court's 3/22/2010 Case Management Conference 12 is amended as follows: Final Pretrial Conference set for 1/10/2011 10:30 AM in Courtroom 01 before Judge Irma E. Gonzalez. All other requirements, dates and deadlines remain as previously set and will not be modified except for good cause. Signed by Magistrate Judge Barbara Lynn Major on 3/23/2010.(jah) (jrl). (Entered: 03/23/2010) |
| 04/21/2010 | 15 | NOTICE of Association of Counsel by Edward Peruta (Michel, Carl). (jah). (Entered: 04/21/2010) |
| 04/22/2010 | 16 | MOTION for Leave to File First Amended Complaint by Edward Peruta. (Attachments: # 1 Exhibit A, # 2 Memo of Points and Authorities, # 3 Declaration of C.D. Michel)(Michel, Carl). (jah). (Entered: 04/22/2010) |
| 04/29/2010 | 17 | Transfer ORDER : Magistrate Judge Barbara Lynn Major is no longer assigned to case and Magistrate Judge Bernard G. Skomal is now assigned to the case. The new case number is 09cv2371IEG(BGS). Signed by Magistrate Judge Barbara Lynn Major on 4/29/10.(All non-registered users served via U.S. Mail Service)(av1) (Entered: 04/30/2010) |
| 05/12/2010 | 18 | Minute Entry: Mandatory Settlement Conference set for 8/11/2010 02:00 PM in Courtroom |

| | | |
|---|---|---|
| | | 12 before Magistrate Judge Bernard G. Skomal. Counsel shall submit confidential settlement statements to Chambers by 8/4/2010. (jah) (jrl). (Entered: 05/13/2010) |
| 05/18/2010 | 19 | RESPONSE in Opposition re 16 MOTION for Leave to File *First Amended Complaint* filed by County of San Diego, William D Gore. (Attachments: # 1 Proof of Service)(Chapin, James). (jah). (Entered: 05/18/2010) |
| 05/24/2010 | 20 | REPLY to Response to Motion re 16 MOTION for Leave to File *First Amended Complaint* filed by Edward Peruta. (Michel, Carl). (jah). (Entered: 05/24/2010) |
| 05/26/2010 | 21 | Minute Entry. Court finds Motion suitable for determination on the papers submitted and without oral argument. No appearances are required on June 1, 2010. Motions Submitted 16 MOTION for Leave to File *First Amended Complaint*. (bjb) (Entered: 05/26/2010) |
| 06/04/2010 | 22 | Joint MOTION Modification of Scheduling Order by Edward Peruta. (Michel, Carl). (jah). (Entered: 06/04/2010) |
| 06/08/2010 | 23 | NOTICE Regarding Exhibit Attachment by Edward Peruta re 22 Joint MOTION Modification of Scheduling Order *Declaration in Support of Joint Motion of the Parties to Modify Scheduling Order* (Michel, Carl) (vet). (Entered: 06/08/2010) |
| 06/25/2010 | 24 | ORDER granting 16 Motion for Leave to Amend Complaint; the Clerk of Court is directed to file Plaintiffs First Amended Complaint, which is attached as Exhibit A to Plaintiffs Motion for Leave to Amend Complaint 16 . Signed by Judge Irma E. Gonzalez on 6/25/10. (kaj) (Entered: 06/25/2010) |
| 06/25/2010 | 25 | FIRST AMENDED COMPLAINT against County of San Diego, William D Gore, filed by Leslie Buncher, California Rifle and Pistol Association Foundation, Michelle Laxson, Edward Peruta, Mark Cleary, James Dodd.(kaj) (Entered: 06/25/2010) |
| 06/28/2010 | 26 | ORDER Following Early Neutral Evaluation Conference, Setting Rule 26 Compliance and Notice of Case Management Conference; the Rule 26(f) conference shall be completed on or before July 9, 2010; the date of initial disclosure pursuant to Rule 26(a)(1)(A-D) shall occur before July 23, 2010; a Joint Discovery Plan shall be lodged with Magistrate Judge Skomal by delivering the plan directly to chambers or by emailing it to efile_skomal@casd.uscourts.gov, on or before July 28, 2010; a Case Management Conference is set for August 6, 2010 at 10:00am, and shall be telephonic, with attorneys only; Signed by Magistrate Judge Bernard G. Skomal on 6/28/10. (kaj) (jrl). (Entered: 06/28/2010) |
| 07/08/2010 | 27 | Joint MOTION for Protective Order by County of San Diego, William D Gore. (Attachments: # 1 Proof of Service)(Chapin, James). (jah). (Entered: 07/08/2010) |
| 07/09/2010 | 28 | ANSWER to 25 First Amended Complaint with Demand for Jury Trial by William D Gore. (Attachments: # 1 Proof of Service)(Chapin, James). Modified on 7/12/2010 - Added jury trial demand to text (jah). (Entered: 07/09/2010) |
| 07/14/2010 | 29 | PROTECTIVE ORDER granting 27 Joint Motion for Protective Order. Signed by Magistrate Judge Bernard G. Skomal on 7/14/2010. (jah) (jrl). (Entered: 07/15/2010) |
| 08/06/2010 | 30 | Minute Entry for proceedings held before Magistrate Judge Bernard G. Skomal: Case Management Conference held on 8/6/2010. Scheduling Order to follow. (Plaintiff Attorney Carl Michel, Paul Neuharth). (Defendant Attorney James Chapin). (asz) (Entered: 08/06/2010) |
| 08/06/2010 | 31 | SCHEDULING ORDER: Case Management Conference was held on 8/6/2010. All motions, other than motions to amend or join parties, or motions in limine shall be filed by 1/14/2011. Mandatory Settlement Conference set for 12/9/2010 09:00 AM in Courtroom 12 before Magistrate Judge Bernard G. Skomal. Final Pretrial Conference set for 5/16/2011 10:30 AM in Courtroom 01 before Judge Irma E. Gonzalez. Memorandum of Contentions of Fact and Law due by 4/18/2011. Proposed Pretrial Order due by 5/9/2011. Signed by Magistrate Judge Bernard G. Skomal on 8/6/2010.(jah)(jrl). (Entered: 08/06/2010) |

| 09/03/2010 | 32 | Joint MOTION for Order *to Adopt Stipulated Briefing Schedule* by Edward Peruta. (Attachments: # 1 Declaration of C.D. Michel)(Michel, Carl). Modified on 9/7/2010 - Edited attachment description (jah). (Entered: 09/03/2010) |
|---|---|---|
| 09/03/2010 | 33 | Ex Parte MOTION to Seal *Documents in Support of Plaintiffs' Motion for Partial Summary Judgment* by Edward Peruta. (Attachments: # 1 Declaration of Sean Brady)(Michel, Carl). Modified on 9/7/2010 - Edited attachment description (jah). (Entered: 09/03/2010) |
| 09/03/2010 | 34 | MOTION for Partial Summary Judgment by Edward Peruta. (Attachments: # 1 Memo of Points and Authorities, # 2 Statement of Facts, # 3 Exhibit A through WW, # 4 Declaration of Edward Peruta, # 5 Declaration of Michelle Laxson, # 6 Declaration of Mark Cleary, # 7 Declaration of Silvio Montanarella, # 8 Declaration of James Dodd)(Michel, Carl). Modified on 9/7/2010 - Statement of Facts not signed. Email sent to Atty. Edited to removed duplicate attachment descriptions (jah). (Entered: 09/03/2010) |
| 09/08/2010 | 35 | ORDER granting 32 Joint Motion for Order to Adopt Stipulated Briefing Schedule. Parties shall file motions in accordance w/ dates stipulated and set forth in the parties' joint motion. Plaintiffs' Motion for Partial Summary Judgment and Defendants' Cross-Motion for Summary Judgment shall be heard on 11/1/2010. Signed by Judge Irma E. Gonzalez on 9/8/2010. (jah) (jrl). (Entered: 09/08/2010) |
| 09/08/2010 | 36 | ORDER granting Plaintiffs' 33 Ex Parte Motion to Seal Documents in support of Motion for Partial Summary Judgment. Plaintiffs allowed to file Exhibits F, K through L, O through S, U through PP and VV under seal. Signed by Judge Irma E. Gonzalez on 9/8/2010. (jah) (Entered: 09/08/2010) |
| 10/04/2010 | 37 | Amicus Curiae Appearance entered by Neil R. O'Hanlon on behalf of Brady Center to Prevent Gun Violence. (Attachments: # 1 Exhibit [Proposed] Brief of Amicus Curiae Brady Center to Prevent Gun Violence)(O'Hanlon, Neil). Modified on 10/5/2010 - Proof of Service electronically signed by staff. Email sent to Atty to file Corrected Proof of Service (jah). (Entered: 10/04/2010) |
| 10/04/2010 | 38 | MOTION for Summary Judgment by William D Gore. (Attachments: # 1 Memo of Points and Authorities, # 2 Tables of Contents, # 3 Statement of Undisputed Facts, # 4 Gore's Statement of Facts, # 5 Declaration Zimring, # 6 Declaration Pelowitz, # 7 Notice Lodged Docs, # 8 Exhibit 1-15, # 9 Proof of Service)(Chapin, James). Modified on 10/5/2010 - Edited attachment descriptions (jah). (Entered: 10/04/2010) |
| 10/04/2010 | 39 | Ex Parte MOTION to File Exhibits 2-15 Under Seal by William D Gore. (Attachments: # 1 Declaration Chapin, # 2 Proof of Service)(Chapin, James). Modified on 10/5/2010 - Edited text (jah). (Entered: 10/04/2010) |
| 10/05/2010 | 40 | CORRECTED CERTIFICATE OF SERVICE by Brady Center to Prevent Gun Violence re 37 Amicus Curiae Appearance, (O'Hanlon, Neil). Modified on 10/5/2010 - Edited text (jah). (Entered: 10/05/2010) |
| 10/05/2010 | 41 | Joint MOTION for Order *to Adopt Stipulated Briefing Schedule* by Edward Peruta. (Attachments: # 1 Declaration of Sean Brady)(Michel, Carl). Modified on 10/6/2010 - Edited attachment description(jah). (Entered: 10/05/2010) |
| 10/06/2010 | 42 | ORDER granting 41 Joint Motion for Order to Adopt Stipulated Briefing Schedule. Motion Hearing re Plaintiffs' 34 Motion for Partial Summary Judgment and Defendants' 38 Cross-Motion for Summary Judgment set for 11/15/2010 10:30 AM in Courtroom 01 before Judge Irma E. Gonzalez. Signed by Judge Irma E. Gonzalez on 10/6/2010. (jah) (jrl). (Entered: 10/06/2010) |
| 10/06/2010 | 43 | ORDER granting Defendant William Gore's 39 Ex Parte Motion to File Exhibits 2-15 Under Seal. Dft Gore shall be allowed to file Exhibits 2-15 in support of Motion for Summary Judgment under seal in accordance w/ Court's 7/14/2010 Protective Order. Signed by Judge Irma E. Gonzalez on 10/6/2010. (jah) (jrl). (Entered: 10/06/2010) |

| | | |
|---|---|---|
| 10/06/2010 | 44 | Joint MOTION for Order *to Modify Case Scheduling Order* by Edward Peruta. (Attachments: # 1 Declaration of Sean Brady in Support of Joint Motion of the Parties to Modify Case Scheduling Order)(Michel, Carl) (lmt)(mam). (Entered: 10/06/2010) |
| 10/18/2010 | 45 | MOTION for Leave to File Amicus Brief in Support of Pla's Motion for Summary Judgment. (Attachments: # 1 Proposed Amicus Brief)(Eastman, John). Modified on 10/19/2010 - Wrong event. Incorrect filers added. All caps used. Email sent to Atty. Changed to Motion, added judge association, corrected filers and text (jah). (Entered: 10/18/2010) |
| 10/18/2010 | 46 | RESPONSE in Opposition re 38 MOTION for Summary Judgment *and Reply to Defendant's Opposition to Plaintiffs' Motion for Partial Summary Judgment* filed by Edward Peruta. (Attachments: # 1 Declaration of Sean A. Brady, # 2 Declaration of Edward Peruta, # 3 Declaration of Carlisle Moody, # 4 Declaration of Gary Mauser, # 5 Declaration of Brian Patrick, # 6 Exhibit A-P In Support of Consolidated Opposition to Defendant's Motion for Summary Judgment)(Michel, Carl). (jah). (Entered: 10/18/2010) |
| 10/18/2010 | 47 | OBJECTION to Evidence in support of Motion by Edward Peruta re 38 MOTION for Summary Judgment. (Michel, Carl). Modified on 10/19/2010 - Edited text (jah). (Entered: 10/18/2010) |
| 10/18/2010 | 48 | Ex Parte MOTION to Seal Documents in Support of Plaintiffs' Consolidated Opposition/Reply by Edward Peruta. (Attachments: # 1 Declaration of Sean A. Brady) (Michel, Carl). (jah). (Entered: 10/18/2010) |
| 10/19/2010 | 49 | ORDER granting Plaintiffs' 48 Ex Parte Motion to File Documents in support of Consolidated Opposition to Motion for Summary Judgment and Reply to Opposition to Motion for Partial Summary Judgment Under Seal. Plaintiffs allowed to file Exhibits L through O under seal. Signed by Judge Irma E. Gonzalez on 10/19/2010. (jah) (Entered: 10/19/2010) |
| 10/20/2010 | 50 | ORDER granting 44 Joint Motion for Order to Modify the Scheduling Order. The Case Management Order shall be modified during a Case Management Conference to be held one week following ruling on parties' cross-motion for summary judgment. Signed by Magistrate Judge Bernard G. Skomal on 10/20/2010. (jah) (jrl). (Entered: 10/20/2010) |
| 10/29/2010 | 51 | ORDER granting 45 Motion for Leave to File to Amicus Brief. Court construes Mr. O'Hanlon's application and proposed amicus curiae attached as Exhibit 1 to 37 Amicus Curiae Appearance as a motion for leave to file a amicus curiae brief. Court grants both motions. Signed by Judge Irma E. Gonzalez on 10/29/2010. (jah) (jrl). (Entered: 10/29/2010) |
| 11/01/2010 | 52 | REPLY to Response to Motion re 38 MOTION for Summary Judgment filed by William D Gore. (Attachments: # 1 Top Index & Table Authorities, # 2 Objection to Evidence, # 3 Motion to Exceed Page Limit, # 4 Proof of Service)(Chapin, James). Modified on 11/2/2010 - Contains Motion to Exceed Page Limit as an attachment. Email sent to Atty to refile Motion to Exceed Page Limit as separate entry (jah). (Entered: 11/01/2010) |
| 11/02/2010 | 53 | MOTION for Leave to File Excess Pages for Reply re 52 Reply to Response to Motion by William D Gore. (Attachments: # 1 Proof of Service)(Chapin, James). Modified on 11/2/2010 - Added document link and edited text (jah). (Entered: 11/02/2010) |
| 11/03/2010 | 54 | ORDER granting Defendant's 53 Motion for Leave to File Reply in Excess of Pages Limit. Defendant granted leave to file a Reply not exceeding 15 pages. Signed by Judge Irma E. Gonzalez on 11/3/2010. (jah) (jrl). (Entered: 11/03/2010) |
| 11/08/2010 | 55 | Ex Parte MOTION for Leave to File *Sur Reply* by Leslie Buncher, California Rifle and Pistol Association Foundation, Mark Cleary, James Dodd, Michelle Laxson, Edward Peruta. (Attachments: # 1 Exhibit A, # 2 Declaration of Sean Brady, # 3 Declaration of Steve Helsley)(Michel, Carl) (lmt). (Entered: 11/08/2010) |
| 11/08/2010 | 56 | Plaintiff's Consolidated Separate Statement of Undisputed and Disputed Facts - SUPPLEMENTAL DOCUMENT by Leslie Buncher, California Rifle and Pistol Association |

| | | Foundation, Mark Cleary, James Dodd, Michelle Laxson, Edward Peruta *Plaintiffs' Consolidated Separate Statement of Undisputed And Disputed Facts*. (Michel, Carl) (lmt). (Entered: 11/08/2010) |
|---|---|---|
| 11/09/2010 | 57 | RESPONSE in Opposition re 55 Ex Parte MOTION for Leave to File *Sur Reply and Objection to Plaintiff's New Separate Statement* filed by William D Gore. (Attachments: # 1 Proof of Service)(Chapin, James) (lmt). (Entered: 11/09/2010) |
| 11/10/2010 | 58 | ORDER granting 55 Ex Parte Motion for Leave to File Sur-Reply: Plaintiffs' sur-reply shall not exceed five pages.. Signed by Judge Irma E. Gonzalez on 11/10/10. (lmt) (jrl). (Entered: 11/10/2010) |
| 11/15/2010 | 60 | Minute Order for proceedings held before Judge Irma E. Gonzalez: Motion Hearing held on 11/15/2010, Court Submits- 38 MOTION for Summary Judgment filed by William D Gore, and Submits- 34 MOTION for Partial Summary Judgment filed by Edward Peruta, and will prepare a written order. (Court Reporter Frank Rangus).(Plaintiff Attorney C.D. Michel, Sean Brady, Paul H. Neuharth, Jr., Clint Monfort).(Defendant Attorney James M. Chapin). (lsf) (Entered: 11/15/2010) |
| 11/17/2010 | 61 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings (Motion Hearing) held on 11/15/2010, before Judge Irma E. Gonzalez. Court Reporter/Transcriber: Frank J. Rangus. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or the Court Reporter/Transcriber. If redaction is necessary, parties have seven calendar days from the file date of the Transcript to E-File the Notice of Intent to Request Redaction. The following deadlines would also apply if requesting redaction: Redaction Request Statement due to Court Reporter/Transcriber 12/8/2010. Redacted Transcript Deadline set for 12/20/2010. Release of Transcript Restriction set for 2/15/2011. (akr) (Entered: 11/17/2010) |
| 11/30/2010 | 62 | NOTICE *of Lodgement of Recent Authority In Support of Plaintiffs' Motion for Partial Summary Judgment* by Leslie Buncher, California Rifle and Pistol Association Foundation, Mark Cleary, James Dodd, Michelle Laxson, Edward Peruta (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Michel, Carl). (jah). (Entered: 11/30/2010) |
| 12/01/2010 | 63 | Minute Entry for proceedings held before Magistrate Judge Bernard G. Skomal: The MSC will be reset, if necessary, after a decision on the pending motion for summary judgment.(asz) (Entered: 12/01/2010) |
| 12/10/2010 | 64 | ORDER (1) denying 34 Plaintiff's Motion for Partial Summary Judgment; and (2) granting 38 Defendant's Motion for Summary Judgment: the Court concludes that Defendant's policy does not infringe on Plaintiffs' right to bear arms or violate equal protection, the right to travel, the Privileges and Immunities Clause of Article IV, or due process. Accordingly, the Court denies Plaintiffs' Motion for Summary Judgment and grants Defendant's Motion for Summary Judgment. Signed by Judge Irma E. Gonzalez on 12/10/10. (lmt) (av1). (Entered: 12/10/2010) |
| 12/10/2010 | 65 | CLERK'S JUDGMENT IT IS SO ORDERED AND ADJUDGED that the Court concludes that Defendant's policy does not infringe on Plaintiffs' right to bear arms or violate equal protection, the right to travel, the Privileges and Immunities Clause of Article IV, or due process. Accordingly, the Court denies Plaintiffs' Motion for Summary Judgment and grants Defendant's Motion for Summary Judgment. (lmt) (av1). (Entered: 12/10/2010) |
| 12/14/2010 | 66 | NOTICE OF APPEAL as to 65 Clerk's Judgment, 64 Order denying Plaintiff's Motion for Partial Summary Judgment and granting Defendant's Motion for Summary Judgment, by Leslie Buncher, California Rifle and Pistol Association Foundation, Mark Cleary, James Dodd, Michelle Laxson, Edward Peruta. (Filing fee $455 receipt number 0974-3144253.) (Notice of Appeal electronically transmitted to US Court of Appeals.) (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Notice Representation Statement)(Michel, Carl). Modified on 12/14/2010 to edit text re order being appealed. (akr). (Entered: 12/14/2010) |

| 12/16/2010 | 67 | USCA Case Number 10-56971 for 66 Notice of Appeal, filed by James Dodd, California Rifle and Pistol Association Foundation, Michelle Laxson, Mark Cleary, Leslie Buncher, Edward Peruta. (akr) (Entered: 12/16/2010) |
|---|---|---|
| 12/16/2010 | 68 | USCA Time Schedule Order as to 66 Notice of Appeal, filed by James Dodd, California Rifle and Pistol Association Foundation, Michelle Laxson, Mark Cleary, Leslie Buncher, Edward Peruta. (NOTICE TO PARTIES of deadlines regarding appellate transcripts: Appellant shall file transcript designation and ordering form with the US District Court, provide a copy of the form to the court reporter, and make payment arrangements with the court reporter on or by 1/13/2011 (see Ninth Circuit Rule 10-3.1); Due date for filing of transcripts in US District Court is 2/14/2011.) (cc: Court Reporter). (akr) (Entered: 12/16/2010) |
| 12/17/2010 | 69 | TRANSCRIPT DESIGNATION AND ORDERING FORM for date of 11/15/2010 by Leslie Buncher, California Rifle and Pistol Association Foundation, Mark Cleary, James Dodd, Michelle Laxson, Edward Peruta re 66 Notice of Appeal. (Michel, Carl). Modified on 12/17/2010 to edit text to reflect document filed and to link to Notice of Appeal. (akr) (Entered: 12/17/2010) |

| PACER Service Center | | |
|---|---|---|
| Transaction Receipt | | |
| 05/22/2011 14:25:22 | | |
| PACER Login: | tm0137 | Client Code: | Peruta |
| Description: | Docket Report | Search Criteria: | 3:09-cv-02371-IEG - BGS |
| Billable Pages: | 9 | Cost: | 0.72 |

# CERTIFICATE FOR BRIEF IN PAPER FORMAT

*(attach this certificate to the end of each paper copy brief)*

9th Circuit Case Number(s): | 10-56971 |

I, C.D. Michel _____ , certify that this brief is identical to the version submitted electronically on [date] 05/24/2011 _____ .

Date     April 2, 2015 _____

Signature   s/ C.D. Michel _____

        (either manual signature or "s/" plus typed name is acceptable)